**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN  DIVISION**

| | | |
|---|---|---|
| BRUCE WHITE, on behalf of himself and all others similarly situated | ) | CASE NO.  1:11-CV-02615 |
| | ) | |
| | ) | JUDGE:  JAMES S. GWIN |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANT   CRST,   INC.'S   (n/k/a** |
| CRST, INC. | ) | **CRST  EXPEDITED,  INC.)  MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |
| Defendant. | ) | |

Defendant CRST, Inc. (n/k/a CRST Expedited, Inc.) ("CRST") pursuant to Fed.R. Civ.P.

56, submits this Motion for Summary Judgment, as there are no genuine issues of material fact,

and CRST is entitled to judgment as a matter of law.

CRST respectfully submits the attached Memorandum in Support.

Respectfully submitted,

*/s/ Gregory J. Lucht*
GREGORY J. LUCHT (0075045)
JEREMY GILMAN (00014144)
DAVID M. KRUEGER (0085072)
**BENESCH FRIEDLANDER
COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
(T):(216) 363-4500. (F): (216) 363-4588
E-mail:      glucht@beneschlaw.com
                 jgilman@beneschlaw.com
                 dkrueger@beneschlaw.com
*Attorneys for Defendant CRST, Inc.*

## TABLE OF CONTENTS

Page

I.      STATEMENT OF THE ISSUE PRESENTED ........................................................  1

II.     SUMMARY OF ARGUMENT ..............................................................................  1

III.    STATEMENT OF FACTS ......................................................................................  2

        A.      BRUCE WHITE'S APPLICATION FOR EMPLOYMENT
                WITH CRST ...............................................................................................  2

        B.      CRST'S INTERNAL REVIEW OF WHITE'S APPLICATION ..................  3

        C.      WHITE'S ALLEGATIONS AGAINST CRST ............................................  4

IV.     STANDARD FOR SUMMARY JUDGMENT ........................................................  5

V.      LAW & ARGUMENT ...........................................................................................  6

        A.      NOTICE REQUIREMENTS UNDER THE FCRA ....................................  6

                1.      Disclosure Notices under the FCRA ...................................................  7

                2.      Adverse Action Notices under the FCRA ...........................................  7

                3.      Damages for a Willful Violation .........................................................  8

        B.      NO EVIDENCE EXISTS TO SUPPORT WHITE'S CLAIM THAT
                CRST WILLFULLY VIOLATED ANY NOTICE PROVISION OF
                THE FCRA ................................................................................................  9

                1.      The Record is Devoid of any Evidence that CRST Willfully
                        Violated the Disclosure Notice Provision ...........................................  9

                        a.      White was notified and fully aware of his rights under
                                the FCRA .................................................................................  9

                        b.      There is no evidence to support a finding that CRST
                                willfully violated the FCRA ....................................................  10

# TABLE OF CONTENTS
(continued)

Page

2.  White is Unable to Submit Any Evidence of a Violation of the Adverse Action Notice Provision, Let Alone a Willful Violation ............................................................................................. 13

a.  CRST's declination of employment was not based upon the Report .................................................................................. 13

b.  Even if this Court determines that CRST's decision was based upon the Report, CRST's interpretation of the statute was objectively reasonable, entitling CRST to summary judgment on the claim of willfulness ...................... 15

C.  WHITE ADMITTED HE SOUGHT EMPLOYMENT FROM CRST UNDER FALSE PRETENSES ........................................................... 16

VI.  CONCLUSION ..................................................................................... 17

CERTIFICATE OF SERVICE ............................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**<u>CASES</u>**                                                                               Page

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................................................   6

*Ashby v. Farmers Ins. Co. of Oregon*,
    565 F.Supp.2d 1188 (D.Or. 2008) ...............................................   10, 16

*Biegas v. Quickway Carriers, Inc.*,
    573 F.3d 365 (6th Cir. 2009) ....................................................................   6

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................   5

*Edwards v. First American Corp.*,
    U.S. Supreme Court Docket Number 10-708
    (on appeal from the Ninth Circuit) ..........................................................   17

*Fryer v. A.S.A.P. Fire & Safety Corp., Inc.*,
    658 F.3d 85 (1st Cir. 2011) ....................................................................   11

*Goode v. LexisNexis Risk & Information Analytics Group, Inc.*,
    --- F.Supp.2d ---, 2012 WL 975043, *4 (E.D. Pa. March 22, 2012) ..........   10, 16

*Hariton v. Chase Auto Fin. Corp.*,
    No. CV 08-6767, 2010 WL 3075609 (C.D. Cal. Aug. 4, 2010) ..................   13

*Kiblen v. Pickle*,
    33 Wash.App. 387, 395-96, 653 P.2d 1338, 1343 (1982) ..........................   10

*Koehler v. PepsiAmericas, Inc.*,
    268 Fed.Appx. 396 (6th Cir. 2008) ..........................................................   11

*Lagrassa v. Jack Gaughen, LLC*,
    No. 09-cv-0770, 2011 WL 1257384, *5 (M.D. Pa. March 11, 2011),          12-13
    *adopted by* 2011 WL 1257371, *2 (March 30, 2011) ..................................

*Long v. Hilfiger*,
    671 F.3d 371 (3d Cir. 2012) ....................................................................   15

## <u>TABLE OF AUTHORITIES</u>
(continued)

**<u>CASES</u>**                                                                                          Page

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................................    6

*Matthiesen v. Banc One Mortgage Corp.*,
    173 F.3d 1242 (10th Cir. 1999)  ................................................................    16-17

*Obabueki v. Choicepoint, Inc.*,
    236 F.Supp.2d 278 (S.D.N.Y. 2002)...........................................................    15

*Phelps v. Dunn*,
    965 F.2d 93 (6th Cir. 1992)  ......................................................................    6

*Price v. Transunion, LLC*,
    737 F.Supp.2d 281 (E.D. Pa. 2010)  ..........................................................    12

*Safeco Ins. Co. of America v. GEICO Ins. Co.*,                                      1, 10, 11,
    551 U.S. 47 (2007) ....................................................................................    12, 13, 14,
                                                                                                                    15, 16

*Sasaya v.  Earle*,
    No. 1:11-CV-00628, 2012 WL 314159, *5 (N.D. Ohio Feb. 1, 2012) .......    6

*Shannon v. Equifax Info. Srvs.*,
    764 F.Supp.2d 714 (E.D. Pa. 2011)  ..........................................................    13

*Street v. J.C. Bradford and Co.*,
    886 F.2d 1472 (6th Cir. 1989)  ..................................................................    6, 8

*United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*,
    484 U.S. 29 (1987) ....................................................................................    17

*Van Straaten v. Shell Oil Prods. Co. LLC*,
    --- F.3d ---, 2012 WL 134011, *2 (7th Cir. 2012) ....................................    15

*Vidoni v. Acadia Corp.*,
    No. 11-cv-00448, 2012 WL 1565128, *4 (D. Me. April 27, 2012) ............    12

## TABLE OF AUTHORITIES
(continued)

**OTHER AUTHORITY**                                                        Page

Fed.Evid.R. 201(b)(2) ...................................................................   2

Fed.Evid.R. 201(c)(2), (d) ............................................................   2

Fed.R. Civ.P. 56 ..........................................................................   Cover
                                                                        page, 6

15 U.S.C. § 1681(a) ......................................................................   16, 17

15 U.S.C. § 1681a(k)(1)(B)(ii) ......................................................   8

15 U.S.C. § 1681b(b)(2)(B) ..........................................................   1, 7

15 U.S.C. § 1681b(b)(2)(C) ..........................................................   6

15 U.S.C. §1681b(b)(3)(B) ...........................................................   1, 7, 8,
                                                                        13, 16

15 U.S.C. § 1681m(a) ...................................................................   13

15 U.S.C. § 1681m(a)(3) ...............................................................   7

15 U.S.C. § 1681n .........................................................................   10

15 U.S.C. § 1681n(a) .....................................................................   8, 11

15 U.S.C. § 1681*o* .......................................................................   8

38 U.S.C. § 4301 *et seq.* ...............................................................   11, 12

<u>**MEMORANDUM IN SUPPORT**</u>

**I.   STATEMENT OF THE ISSUE PRESENTED**

**Whether CRST is Entitled to Summary Judgment as to Plaintiff's Claim That CRST Willfully Violated 15 U.S.C. §1681b(b)(2)(B) and/or 15 U.S.C. §1681b(b)(3)(B) of the Fair Credit Reporting Act ("FCRA")**

**II.   SUMMARY OF ARGUMENT**

The sole legal question before this Court is whether Plaintiff Bruce White ("White") has adduced any evidence whatsoever that CRST <u>willfully</u> violated the FCRA's notice requirements when it procured White's criminal background report and/or when it decided not to hire White as a commercial truck driver.  According to United States Supreme Court precedent, in order for White to establish a willful violation of the FCRA, he must prove that CRST knowingly violated the statute and/or that its alleged omissions entailed an "unjustifiably high risk of harm" that was either known to CRST or so obvious that it should have been known.   The record in this case, however, is completely devoid of any evidence to support a willful violation claim.  By failing to conduct a single deposition in this case, White cannot and will not be able to submit sufficient evidence to support his claims and to defeat this dispositive motion.

It is undisputed that (1) White gave CRST express, written permission to run his criminal background report, (2) he was notified of his right to request a copy of the criminal background report, and (3) <u>prior</u> to applying to CRST he already possessed a copy of the report, knew it was inaccurate, and was already taking corrective action.  Moreover, CRST's decision not to hire White does not constitute "adverse action" under the FCRA and/or CRST's reasonable interpretation thereof.  Accordingly, in light of the U.S. Supreme Court's decision in *Safeco Ins. Co. of America v. GEICO Ins. Co.*, 551 U.S. 47 (2007), and White's complete lack of evidence to support his willful violation claim, judgment in favor of CRST is warranted as a matter of law.

### III.    STATEMENT OF FACTS

#### A.  UNDERLINE BRUCE WHITE'S APPLICATION FOR EMPLOYMENT WITH CRST

On September 10, 2009, White applied (via facsimile) for a position as a truck driver with CRST.  (ECF 29, Am. Compl., April 27, 2012, ¶ 7)[1]  As part of his application to CRST,[2] White conceded that he read, understood and signed a Disclosure, which provided:

> In connection with my application for employment including contract services with [CRST], I understand that consumer reports which may contain public information may be requested from DAC Services, Tulsa, Oklahoma. * * * I further understand that such reports may contain public record information concerning my driving record, criminal records, etc. * * * .
>
> **I AUTHORIZE WITHOUT RESERVATION, ANY PARTY OR AGENCY CONTACTED BY DAC TO FURNISH THE ABOVE-MENTIONED INFORMATION WITH REGARD TO THIS APPLICATION FOR EMPLOYMENT.**
>
> I have a right to make a request to DAC, upon proper identification, of the nature and substance of all information provided with regard to the undersigned; and the names of the recipients of any reports about me which DAC has previously furnished within the two-year period preceding my request.

(**Ex. 1**, pg. 6) (emphasis in original); (**Ex. 2**, pg. 45:8-19.)

Moreover, in completing the application, White represented to CRST that his criminal history included only a 1992 misdemeanor conviction for discharging a firearm.  (**Ex. 1**, pg. 3.) In August of 2009, White, assisted by Roadmaster, discovered that DAC Services, also known as HireRight (hereafter "DAC"),[3] a third-party consumer reporting agency, was inaccurately reporting the prior 1992 conviction.  (**Ex. 2**, pp. 28:12-29:22, 33:1-23, 35:8-36:3.)  Thus, when

---

[1] White authenticated employment application is attached hereto as **Exhibit 1**.  *See* Deposition of Bruce White, 31:1-16, and Exhibit 6 thereto.  All excerpted portions of White's Deposition cited in this Motion are attached hereto as **Exhibit 2**.  White's entire deposition transcript with exhibits is filed concurrently with this Motion.

[2] White submitted his application to CRST through Roadmaster, a truck driver instructional and job placement school in Tulsa, Oklahoma.  (**Ex. 2**, pp. 11:1-6, 33:6-18.)  White was assisted by Jean Wallace, a job placement supervisor with Roadmaster.  (**Ex. 2**, pp. 11:1-6, 33:6-18.)

[3] DAC Services is the trade name of HireRight Solutions, Inc. as it is registered with the Oklahoma Secretary of State.  Fed.Evid.R. 201(b)(2) (judicial notice of facts include those facts which can be accurately determined from a source whose accuracy cannot reasonably be questioned).  The Court may properly take judicial notice of this fact in deciding this Motion for Summary Judgment.  Fed.Evid.R. 201(c)(2), (d).

White completed his application, he already knew that his criminal background report (the "Report") inaccurately indicated that his 1992 conviction was a felony conviction for Shooting with the Intent to Kill. (**Ex. 2**, pg. 36:3-17.) White also knew before he applied to CRST that his Report did not indicate any other criminal history other than a 1992 felony conviction.

So when White submitted his application to CRST, he (by and through Roadmaster) accompanied it with, among other things, a copy of his on-line court records correctly portraying the 1992 misdemeanor conviction. (**Ex. 2**, pg. 43:12-24); (**Ex. 3A**.)[4] Therefore, immediately upon receipt of White's application, the CRST recruiter was aware that White was never convicted in 1992 of a felony as inaccurately stated in the Report, but only convicted of a misdemeanor. (**Ex. 3A**, **3B**.)

After submitting his application to CRST, the CRST recruiter contacted White. (**Ex. 2**, pg. 60:11-22.) White admitted that he does not recall any details of his conversation with the CRST recruiter besides discussing the logistics for the pre-hire orientation. (*Id.*)

It was not until his deposition on May 25, 2012, that White conceded to falsifying his application by failing to disclose to CRST that he had 1999 misdemeanor convictions for a hit and run and driving under suspension. (**Ex. 2**, pp. 74:10-17, 76:1-4, 80:2-18.) White admits his failure to completely and honestly disclose these misdemeanor convictions to CRST constitutes a material misrepresentation. (**Ex. 2**, pp. 82:24-83:23.)

## B. CRST'S INTERNAL REVIEW OF WHITE'S APPLICATION

While CRST received White's application in September 2009, the internal review process did not actually take place until December 2009. On December 1, 2009, CRST ran White's Report. (**Ex. 3C**.) On December 4, 2009, in evaluating White's candidacy for employment, CRST employees discussed that while the Report showed a felony conviction, the application

---

[4] **Exhibit 3** is the Affidavit of Brandi Northway, the CRST driver recruiter who was involved with White's application.

showed that White was only convicted of a misdemeanor.  (**Ex. 3D**.)  After obtaining and reviewing the accurate court records confirming White's 1992 misdemeanor conviction, CRST determined that due to White's discharge from his prior job and the "weapon **charges**," White was "DMS" ("Doesn't Meet Standards").  (**Ex. 3D**, emphasis added.)  Unfortunately, CRST was unable to reach White before he arrived at CRST's pre-hire orientation to alert him of its decision.

After White's arrival at the pre-hire orientation, CRST informed White that it would not be hiring him as a driver.  (**Ex. 2**, pp. 63:7-64:8.)  It is White's understanding that CRST's decision was based on his criminal history.  (*Id.*)  White does not recall anything else regarding his conversation with CRST at the pre-hire orientation besides that CRST "didn't want to mess with it."  (**Ex. 2**, pp. 87:24-88:3.)

## C.  WHITE'S ALLEGATIONS AGAINST CRST

On April 27, 2012, White filed his First Amended Class Action Complaint.  (ECF 29.) White alleges that CRST failed to provide him with a summary of his rights and did not provide him with "adverse action" notification.  (ECF 29, ¶¶ 12-13.)  White alleges that CRST's violations of the FCRA were willful, wanton, and reckless.  (ECF 29, ¶ 18.)

During White's deposition he confirmed that he has two, and only two, specific criticisms against CRST to support his claim of a "willful" violation:

> Q. Tell me all of the facts that you contend support that allegation in paragraph 18 of the first amended complaint.
> A. Okay.  Well, after CRST received the background report and they knew the information was in it and everything they didn't let me know that I could get a copy of it freely after they knew that, you know, all the information was in the background report and then, also, they didn't let me contest to the information in the background report, that's what I feel this paragraph is telling me.
> Q. Is that the sum total of your response to the question I asked about the facts you have supporting paragraph 18 of the complaint?
> A. Yes, sir.

(**Ex. 2**, pg. 22:2-21.) (Objections omitted.)  When further questioned about his criticisms against CRST, White admits that he was aware CRST was going to run his Report and again reiterated that his specific complaints in this case are limited to allegedly not knowing he could obtain a free copy of the Report and contest the information.  (**Ex. 2**, pp. 58:3-59:4.)

While White claims CRST willfully violated the FCRA, White offers no testimony in support of a willful violation, as opposed to merely a negligent one.[5]  He admits he has no knowledge of CRST's policies or procedures when making hiring decisions, except that a CRST recruiter works with Roadmaster in obtaining applicants.

> Q. Okay.  You never worked for CRST, correct?
> A. No, sir.
> Q. You're not familiar with their processes and policies for recruiting driver applicants, for recruiting truck drivers, is that correct?
> A. Well, I know that they con -- well, the school that I went, worked -- I mean went to, Roadmaster, they sent out application to all the trucking companies and then the trucking companies would have their representative get back with the applicant.
> Q. Okay.  Is that the full extent of what you know about CRST's policies san procedures for recruiting and hiring a truck driver applicant?
> A. Yes.

(**Ex. 2**, pp. 10:21-11:10.)   White does not assert a claim for actual damages for a negligent violation; rather, White's entire claim against CRST is predicated solely on a willful violation of the FCRA.  (ECF 29, ¶¶ 18-19, Prayer for Relief.)

## IV.    STANDARD FOR SUMMARY JUDGMENT

In order to defeat summary judgment, the ultimate burden lies with White to show the existence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986);

---

[5] Aside from White and his wife, Lisa Benson White, no other witness identified in White's interrogatory responses and initial disclosures has testified to date in this action.  And Mrs. White admittedly knows nothing about the pertinent facts in this case.  (Deposition of Lisa Benson White, May 25, 2012, pg. 10:3-17, deposition filed concurrently with this Motion.)  Due to the extreme brevity of Mrs. Benson White's deposition, the deposition is attached in its entirety hereto as **Exhibit 4**.  Notably, the discovery deadline for dispositive motions has now expired.  (ECF 30.)

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts...  In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586–87; Fed.R. Civ.P. 56(e).

In order to meet this burden, the United States Supreme Court in *Anderson* held that "the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment. This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff had had a full opportunity to conduct discovery." *Anderson*, 477 U.S. at 257; *Street v. J.C. Bradford and Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).  As such, the moving party need only "point out" that no triable factual issues exist. *Phelps v. Dunn*, 965 F.2d 93, 97 (6th Cir. 1992).

Thus, CRST is entitled to summary judgment by "showing-that is, pointing out to the district court-that there is an absence of evidence" to support White's case.  *Sasaya v. Earle*, No. 1:11-CV-00628, 2012 WL 314159, *5 (N.D. Ohio Feb. 1, 2012), *quoting Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 373–74 (6th Cir. 2009).

## V.    LAW & ARGUMENT

### A.  NOTICE REQUIREMENTS UNDER THE FCRA

The FCRA places certain notice requirements on prospective employers before obtaining and/or using criminal background reports and other consumer reports in the hiring and selection process.  These  notice requirements, however, vary depending on the timing and method applications are submitted to prospective employers and whether the available position is regulated by the Department of Transportation ("DOT").  15 U.S.C. § 1681b(b)(2)(C).  Here,

White (1) applied for a truck driver position at CRST, (2) he faxed his application to CRST and (3) CRST ran White's criminal background report before having any in-person communication with him.  Accordingly, the applicable FCRA notice provisions at issue are 15 U.S.C. § 1681b(b)(2)(B) for the requisite notice prior to running a criminal background report ("Disclosure Notices") and 15 U.S.C. § 1681b(b)(3)(B) relating to the notices necessary if adverse action is taken ("Adverse Action Notices").

### 1.    Disclosure Notices under the FCRA

The Disclosure Notices required under 15 U.S.C. § 1681b(b)(2)(B) before a criminal background report is obtained are set forth as follows:

> If a consumer described in subparagraph (C) applies for employment by mail, telephone, computer, or other similar means, at any time before a consumer report is procured or caused to be procured in connection with that application--
>
>> (i) the person who procures the consumer report on the consumer for employment purposes shall provide to the consumer, by oral, written, or electronic means, notice that a consumer report may be obtained for employment purposes, and a summary of the consumer's rights under section 1681m(a)(3) of this title; and
>>
>> (ii) the consumer shall have consented, orally, in writing, or electronically to the procurement of the report by that person.

The rights referenced in subsection (i) require a prospective employer to inform the consumer orally, in writing, or electronically of the right (1) to obtain a free copy of the consumer report from the consumer reporting agency who produced the report within 60 days and (2) to dispute the accuracy or completeness of the consumer report.  15 U.S.C. § 1681m(a)(3).

### 2.    Adverse Action Notices under the FCRA

The Adverse Action Notices required once "adverse action" is taken are as follows:

> (i) If a consumer described in subparagraph (C) applies for employment by mail, telephone, computer, or other similar means, and if a person who has procured a consumer report on the consumer for employment purposes takes adverse action on the employment application based in whole or in part on the report, then the person must provide to the consumer to whom the report relates, * * * within 3 business days of taking such action, an oral, written or electronic notification--

(I) that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency;

(II) of the name, address and telephone number of the consumer reporting agency that furnished the consumer report (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis);

(III) that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and

(IV) that the consumer may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report.

15 U.S.C. § 1681b(b)(3)(B) (emphasis added). "Adverse action" under the FCRA includes "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a (k)(1)(B)(ii). Like the Disclosure Notices, the Adverse Action Notices may be provided orally, electronically, or in writing.

### 3. Damages for a Willful Violation

The damages available for an FCRA violation depend on the nature of the violation. If a violation of the FCRA was negligent, the consumer is only entitled to actual damages. 15 U.S.C. § 1681o. In contrast, "[a]ny person who willfully" violates the FCRA is liable for either actual damages or statutory damages not less than $100 and not more than $1,000. 15 U.S.C. § 1681n(a) (emphasis added). Here, White seeks only statutory damages for a willful violation. (ECF 29, ¶¶ 18-19, Prayer for Relief.) Thus, it is not enough for White to present evidence that CRST simply violated the FCRA; rather, unless White presents sufficient affirmative evidence of a willful violation, CRST is entitled to summary judgment. *Street*, 886 F.2d at 1479-80.

**B. NO EVIDENCE EXISTS TO SUPPORT WHITE'S CLAIM THAT CRST WILLFULLY VIOLATED ANY NOTICE PROVISION OF THE FCRA**

        **1.      The Record is Devoid of Any Evidence that CRST Willfully Violated the Disclosure Notice Provision**

            ***a. White was notified and fully aware of his rights under the FCRA***

White admits that CRST, by and through its Disclosure form, notified him that the Report would be obtained. White acknowledged that he had a full opportunity to read the Disclosure prior to signing, and admits he knew CRST would obtain the Report in evaluating his candidacy for employment.  (**Ex. 2**, pp. 45:8-19, 58:9-17, 59:2-4.)  And by executing the Disclosure, White consented to CRST's procurement of the Report.  (**Ex. 1**, pg. 6); (**Ex. 2**, pp. 58:3-59:4.)

During White's deposition, he repeatedly confirmed that his only criticisms of CRST are that it did not inform him that he was entitled to a free copy of his Report or of the right to dispute it.  (**Ex. 2**, pg. 22:2-21.)  However, the terms of the Disclosure itself informed White that he had the right to request a copy of the Report from DAC Services.

> In connection with my application for employment including contract services with you, I understand that consumer reports which may contain public information may be requested from DAC Services, Tulsa, Oklahoma. * * * I further understand that such reports may contain public record information concerning my driving record, criminal records, etc. * * * .
>
> **I AUTHORIZE WITHOUT RESERVATION, ANY PARTY OR AGENCY CONTACTED BY DAC TO FURNISH THE ABOVE-MENTIONED INFORMATION WITH REGARD TO THIS APPLICATION FOR EMPLOYMENT.**
>
> <u>I have a right to make a request to DAC, upon proper identification, of the nature and substance of all information provided with regard to the undersigned</u>; and the names of the recipients of any reports about me which DAC has previously furnished within the two-year period preceding my request.

(**Ex. 1**, pg. 6) (bold emphasis in original and underlined emphasis added).

Admittedly, the word "free" is not set forth in the Disclosure, but it is beyond dispute that CRST notified White that he could obtain a copy of the report and it is certainly implied that the copy would be free.  And let us not forget that White actually had a copy of the Report <u>before</u> he

applied to CRST, and he (by and through Roadmaster) provided it to CRST with his application. CRST was, therefore, aware that White already possessed a copy of the Report.

Moreover, at the time White applied to CRST, he was already in the process of disputing the accuracy of the Report, and the court records supporting White's dispute were provided to CRST.  Thus, the evidence in this case clearly establishes that not only was White aware of his right to dispute the Report, but also that CRST possessed and reviewed accurate information related to White's 1992 misdemeanor conviction.[6]

The purpose of the FCRA "is to afford employees time to 'discuss reports with employers or otherwise respond before adverse action is taken.'" *Goode v. LexisNexis Risk & Information Analytics Group, Inc.*, --- F.Supp.2d ---, 2012 WL 975043, *4 (E.D. Pa. March 22, 2012). Therefore, the purpose of the FCRA and its Disclosure Notice provision was satisfied, such that CRST at the very least substantially complied with the FCRA Disclosure Notices.  *Kiblen v. Pickle*, 33 Wash.App. 387, 395-96, 653 P.2d 1338, 1343 (1982).; *see, e.g.*, *Goode*, *supra*; *Ashby v. Farmers Ins. Co. of Oregon*, 565 F.Supp.2d 1188, 1208-09 (D.Or. 2008).

> **b.**    ***There is no evidence to support a finding that CRST willfully violated the FCRA**.*

Even if there were sufficient evidence to survive summary judgment as to whether CRST violated the FCRA Disclosure Notices, White can only survive summary judgment if there are questions of fact which would allow a finding that CRST acted willfully, and not merely negligently.  15 U.S.C. § 1681n (statutory damages only available for willful violations).  In *Safeco Ins. Co. of America v. GEICO Ins. Co.*, 551 U.S. 47 (2007), the United States Supreme Court addressed the level of conduct necessary to constitute a "willful" violation of the FCRA.

---

[6] However, White never disclosed to CRST his 1999 misdemeanor convictions for hit and run and driving under suspension.  White knowingly misrepresented his criminal history to CRST.  (**Ex. 2**, pp. 74:10-17, 76:1-4, 80:2-18, 82:24-83:23.)  White's falsification denied CRST the opportunity to properly review his application.

> We have said before that "willfully" is a "word of many meaning whose construction is often dependent on the context in which it appears," and where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well. This construction reflects common law usage, which treated actions in "reckless disregard" of the law as "willful" violation." The standard civil usage thus counsels reading the phrase "willfully fails to comply" in § 1681n(a) as reaching reckless FCRA violations, and this is so both on the interpretative assumption that Congress knows how we construe statutes and expects us to run true to form, and under the general rule that a common law term in a statute comes with a common law meaning, absent anything pointing another way.

*Id.* at 57-58.

Thus, recklessness is attributed its common law meaning of "conduct violating an objective standard: action entailing an 'unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* at 60. Recklessness, however, requires more than showing that a defendant should have known about the FCRA's requirements.

> Thus, in the context of the ADEA, the FLSA, and the FCRA, the Supreme Court has held that an employer's violation is willful if the employer either knew or showed reckless disregard as to whether its conduct was prohibited by the statute. We note also that the Sixth Circuit, in an unpublished decision, has similarly held that, for claims under USERRA, a violation of the statute is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute."

> Following the Supreme Court's direction that the term "willfulness" generally imports a reckless disregard standard, we hold that the term "willful" as used in § 4323(d)(1)(C) of USERRA refers to a knowing violation or action taken in reckless disregard of the obligations imposed by USERRA. Under this standard, "[a] finding of willfulness requires something more than merely showing that an employer knew about the [statute] and its potential applicability in the workplace." Where an employer engaged in "reasonable, good-faith efforts to determine that [its actions] complied with the [statute]," a finding of willfulness is inappropriate even though the employer's actions in fact violated the statute. Instead, it must be shown that the employer acted with "reckless disregard of, or deliberate indifference to, [the] employer's [statutory] obligations."

*Fryer v. A.S.A.P. Fire & Safety Corp., Inc.*, 658 F.3d 85, 91-92 (1st Cir. 2011) (internal citations omitted), *citing, e.g.*, *Koehler v. PepsiAmericas, Inc.*, 268 Fed.Appx. 396 (6th Cir. 2008).

While the First Circuit in *Fryer* and the Sixth Circuit in *Koehler* were technically addressing the definition of "willful" as used in the Uniformed Services Employment and

Reemployment Rights Act, 38 U.S.C. § 4301 *et seq.*, the common law definition of "willful" is generally applied with the same meaning throughout federal statutes.  *E.g.*, *Safeco*, 551 U.S. at 57-58 ("willful" as used in FCRA comports with common law meaning).  Accordingly, as applied to the FCRA, a defendant cannot have acted willfully if it acted reasonably and in good faith.  *Vidoni v. Acadia Corp.*, No. 11-cv-00448, 2012 WL 1565128, *4 (D. Me. April 27, 2012).

Here, White's only criticisms are that CRST did not tell him he could get a free report or contest the information.  (**Ex. 2**, pp. 22:2-21, 58:3-59:4.)  White offers no testimony which would constitute a willful, as opposed to merely negligent, violation of the FCRA.  Foremost, White cannot claim that CRST's alleged nondisclosure created an "unjustifiably high risk of harm," *Safeco*, 551 U.S. at 60; White has not suffered any actual harm, admits that he knew the Report was inaccurate before applying to CRST, and that he took corrective action by contacting DAC.  (**Ex. 2**, pp. 37:2-38:5, 39:1-14.)

Similarly, White admitted that he has no knowledge of CRST's policies or procedures regarding hiring or performing criminal background reports and therefore cannot point to any affirmative evidence that CRST recklessly disregarded the FCRA.  (**Ex. 2**, pp. 10:21-11:10.)  Even if there were an "unjustifiably high risk of harm," White offers no evidence that the risk was "known or so obvious that it should [have been] known" by CRST, or any testimony that CRST acted in bad faith in failing to provide certain information.  *Vidoni*, 2012 WL 1565128 at *4; *Price v. Transunion, LLC*, 737 F.Supp.2d 281, 288 (E.D. Pa. 2010) (willful violation of the FCRA is "on the same order as willful concealments or misrepresentations.")

In short, even assuming White's testimony evidences that CRST violated the FCRA, there is no testimony to suggest that the violation was willful.  And because there is no record evidence that could demonstrate a willful or reckless violation, summary judgment is warranted and White's claims should be dismissed.  *Lagrassa v. Jack Gaughen, LLC*, No. 09-cv-0770,

2011 WL 1257384, *5 (M.D. Pa. March 11, 2011), *adopted by* 2011 WL 1257371, *2 (March 30, 2011) ("There is no record evidence that could demonstrate that [defendant's] actions were knowing or reckless, only Plaintiff's argument that [defendant] violated the FCRA. * * * Thus, Plaintiff's claim for willful violation of the FCRA likewise must fail."); *accord Shannon v. Equifax Info. Srvs.*, 764 F.Supp.2d 714, 725 (E.D. Pa. 2011) (although there was little evidence in record as to defendant's procedures regarding FCRA compliance, plaintiff failed to present evidence of recklessness, warranting summary judgment in defendant's favor); *Hariton v. Chase Auto Fin. Corp.*, No. CV 08-6767, 2010 WL 3075609 (C.D. Cal. Aug. 4, 2010) ("Plaintiff provides no evidence that [defendant's] actions were willful.  Therefore, at best his cause of action must be based on negligent noncompliance with the FCRA," warranting summary judgment in favor of defendant).

**2.  White is Unable to Submit Any Evidence of a Violation of the Adverse Action Notice Provision, Let Alone a Willful Violation**

**a**. *CRST's declination of employment was not based upon the Report*

The duty to provide the Adverse Action Notices is triggered only if the decision to take adverse action is "based <u>in whole or in part</u> on the report * * * ."  15 U.S.C. § 1681b(b)(3)(B) (emphasis added).  In discussing the meaning of "based in whole or in part" under the FCRA, the United States Supreme Court in *Safeco* held:

> Under this most natural reading of § 1681m(a), then, an increased rate is not "based in whole or in part on" the credit report <u>unless the report was a necessary condition</u> of the increase.
>
> As before, there are textual arguments pointing another way.  The statute speaks in terms of basing the action "in part" as well as wholly on the credit report, and this phrasing could mean that adverse action is "based on" a credit report whenever the report was considered in the rate-setting process, even without being a necessary condition for the rate increase.  But there are good reasons to think Congress preferred GEICO's necessary-condition reading.
>
> If the statute has any claim to lucidity, not all "adverse actions" require notice, only those "based … on" information in a credit report.  <u>Since the statute does not explicitly call for notice when a business acts adversely merely after consulting a report, conditioning the requirement on action "based … on" a</u>

> report suggests that the duty to report arises from some practical consequence of reading the report, not merely some subsequent adverse occurrence that would have happened anyway. * * * So it makes sense to suspect that Congress meant to require notice and prompt a challenge by the consumer only when the consumer would gain something if the challenge succeeded.

*Safeco*, 551 U.S. at 63-64 (emphasis added).

Thus, merely "consulting" a criminal background report prior to taking adverse action is not sufficient to trigger the duty to provide the Adverse Action Notices. Rather, White's criminal background report must have been a "necessary condition" to CRST's decision to not hire White; put another way, CRST must have actually relied upon the Report such that White "would gain something" by successfully challenging the inaccuracy in the Report. *Id.*

On September 10, 2009, White knew the information in the Report was inaccurate and a copy of the online docket from 1992 (which accurately reflected White's conviction) was provided to CRST with his application. (**Ex. 3A**.) On September 18, 2009, the CRST recruiter and Roadmaster (who was assisting White) then exchanged a series of emails discussing that White had only been convicted of the misdemeanor offense. (**Ex. 3B**.)

On December 4, 2009, CRST personnel discussed that while the Report showed a felony conviction, the application indicated that White was only convicted of a misdemeanor. (**Ex. 3D**.) Ultimately, CRST decided it would not offer White a position based upon White's "discharge" from his prior job and the "weapon charges." (**Ex. 3D**, emphasis added.)

This is dispositive of whether CRST had a duty to provide the Adverse Action Notices as CRST's decision not to hire White was not based upon the Report, but instead was based upon information contained in White's application as well as the correct and actual felony charge reflected on the online docket from the Tulsa Clerk of Courts website. The Court concluded in *Safeco* that adverse action is "based" on a report "only when the consumer would gain something" by successfully challenging the content of the report. *Safeco*, 551 U.S. at 64. In this

case, having permitted White to challenge the inaccuracy of the Report would not have changed CRST's hiring decision; CRST was already aware that White had only been convicted of a misdemeanor, and instead it was the felony *charge* in conjunction with White's termination from his previous job that served to disqualify him.  Thus, White had nothing to gain from a challenge to the content of the Report, such that CRST did not have a duty to provide the Adverse Action Notices.  *Id.*; *cf. Obabueki v. Choicepoint, Inc.*, 236 F.Supp.2d 278, 284-85 (S.D.N.Y. 2002) (inaccuracy contained in report was "neutralized" when company obtained copy of actual conviction, but still declined to hire applicant due to perceived misrepresentation on application).

> **b.  Even if this Court determines that CRST's decision was based upon the Report, CRST's interpretation of the statute was objectively reasonable, entitling CRST to summary judgment on the claim of willfulness**

It is well established that under *Safeco*, a defendant cannot be held liable for a "willful" violation of the FCRA unless its interpretation of the statute, even if ultimately erroneous, was objectively unreasonable.  *Safeco*, 551 U.S. at 69 ("there is no need to pinpoint the negligence/recklessness line, for Safeco's reading of the statute, albeit erroneous, was not objectively unreasonable."); *e.g.*, *Van Straaten v. Shell Oil Prods. Co. LLC*, --- F.3d ---, 2012 WL 134011, *2 (7th Cir. 2012) ("only a reading that is 'objectively unreasonable' can be deemed a 'willful' violation."); *Long v. Hilfiger*, 671 F.3d 371, 376 (3d Cir. 2012).  In making this determination, courts must examine various factors, including whether the phrase is defined in the statute, whether there is some foundation in the text for the interpretation, and whether there has been any guidance from the federal courts of appeal or the FTC on the issue.  *E.g.*, *Long*, 671 F.3d at 376-77, *citing Safeco*, 551 U.S. at 69-70.

Even if this Court determines that that CRST's interpretation was erroneous, it cannot be said that CRST's interpretation of the "based in whole or in part" language is objectively unreasonable so as to permit a finding of willful conduct.  The phrase is not defined by statute

and there is no guidance from either the FTC or any Circuit which would indicate that CRST's interpretation was in error.  Most importantly, the only decision which appears to define "based in whole or in part" is the Supreme Court's decision in *Safeco*.  And *Safeco* actively supports CRST's interpretation as the Court explicitly rejected the proposition that merely consulting a report was sufficient to trigger the duty to provide the Adverse Action Notices, instead holding that the report must have been a "necessary condition" to the decision.  Such interpretation is further supported through the Court's guidance that the consumer must have "something to gain" from a challenge.  *E.g.*, *Goode*, 2012 WL 975043 at *4 (purpose of the adverse action notification "is to afford employees time to 'discuss reports with employers or otherwise respond before adverse action is taken.'"); *Ashby*, 565 F.Supp.2d at 1208-09.

As such, even if the Court determines that CRST's interpretation of 15 U.S.C. § 1681b(b)(3)(B) is inaccurate, CRST's "reading was not objectively unreasonable, and so falls well short of raising the 'unjustifiably high risk' of violating the statute necessary for reckless liability." *Safeco*, 551 U.S. at 70.

### C. WHITE ADMITTED HE SOUGHT EMPLOYMENT FROM CRST UNDER FALSE PRETENSES

White admittedly falsified his employment application with CRST.  (**Ex. 2**, pp. 74:10-17, 76:1-4, 80:2-18.)  He knowingly failed to alert CRST to his prior 1999 convictions for a hit and run and driving under suspension. These convictions are clearly material to seeking employment as a truck driver.  (**Ex. 2**, pp. 82:24-83:23.)   By filing this lawsuit, White is seeking monetary damages arising out of an employment application process that was predicated upon White's knowing non-disclosure.  By undermining the purpose and policy  of the FCRA, White's claims should be disallowed.

The stated purpose of the FCRA is to ensure a fair and accurate reporting process.  15 U.S.C. § 1681(a); *see also, e.g.*, *Matthiesen v. Banc One Mortgage Corp.*, 173 F.3d 1242, 1245

(10th Cir. 1999).  Specifically, the FCRA was enacted to promote "public confidence" and "efficiency."  15 U.S.C. § 1681(a).  In this case, it is clear that CRST's process of evaluating White's application was fair to White and based on accurate information.  Instead, it was White, through his own misconduct, who deprived CRST of that same fairness and accuracy.  White's efforts to benefit from his own deceit undermines the very purpose of the FCRA, is contrary to public policy, and should not be countenanced or rewarded.  *See, e.g.*, *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 42 (1987) (The public policy exception "doctrine derives from the basic notion that no court will lend its aid to one who founds a cause of action upon an immoral or illegal act * * *.").[7]  For this public policy reason, White's claims should be dismissed.

## VI.    CONCLUSION

Accordingly, CRST respectfully requests this Court grant its Motion for Summary Judgment.

Respectfully submitted,

 */s/ Gregory J. Lucht*
GREGORY J. LUCHT (0075045)
JEREMY GILMAN (00014144)
DAVID M. KRUEGER (0085072)
**BENESCH FRIEDLANDER**
**COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:    (216) 363-4500
Facsimile:    (216) 363-4588
E-mail: glucht@beneschlaw.com
            jgilman@beneschlaw.com
            dkrueger@beneschlaw.com
*Attorneys for Defendant CRST, Inc.*

---

[7] Moreover, by not asserting actual harm, White's standing to pursue this action is in doubt.  This very issue is currently pending before the United States Supreme Court in *Edwards v. First American Corp.*, U.S. Supreme Court Docket Number 10-708 (on appeal from the Ninth Circuit).

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document was filed electronically on the 14th day of June, 2012 in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System.  Parties may access this filing through the Court's Filing System.

*/s/  Gregory J. Lucht*
*One of the Attorneys for Defendant*

7198461 v1