# In The Matter Of:

*Bruce White, etc. v.*
*CRST, Inc.*

---

*Bruce D. White*
*May 25, 2012*
*Videotaped Deposition*

---



MEHLER HAGESTROM
Court Reporters

| | |
|---|---|
| 1750 Midland Building | 720 Akron Centre |
| 101 Prospect Avenue, West | 50 South Main Street |
| Cleveland, Ohio  44115-1081 | Akron, Ohio  44308-1828 |
| 216.621.4984   800.822.0650 | 330.535.7300   800.562.7100 |
| fax  216.621.0050 | 330.535.0050  fax |

Schedule@MandH.com     www.MandH.com

*Original File 120525_-_white_bruce.txt*
Min-U-Script® with Word Index

**Videotaped Deposition**

1

1      IN THE UNITED STATES DISTRICT COURT

2      NORTHERN DISTRICT OF OHIO - EASTERN DIVISION

3    BRUCE WHITE, etc.,

4              Plaintiff,

                                    JUDGE JAMES S. GWIN
5       -vs-                        CASE NO. 1:11-CV-02615

6    CRST, INC.,

7              Defendant.

8                    -   -   -   -

9       Videotaped deposition of BRUCE D. WHITE,

10   taken as if upon cross-examination before Dawn M.

11   Fade, a Registered Merit Reporter and Notary

12   Public within and for the State of Ohio, at the

13   offices of Benesch, Friedlander, Coplan &

14   Aronoff, LLP, 200 Public Square, Suite 2300,

15   Cleveland, Ohio, at 9:08 a.m. on Friday,

16   May 25, 2012, pursuant to notice and/or

17   stipulations of counsel, on behalf of the

18   Defendant in this cause.

19                   -   -   -   -

20              MEHLER & HAGESTROM
                  Court Reporters

21
              CLEVELAND                   AKRON
22     1750 Midland Building        720 Akron Centre
       101 West Prospect Avenue     50 South Main Street
23     Cleveland, Ohio 44115        Akron, Ohio 44308
          216.621.4984                 330.535.7300
24        FAX 621.0050                 FAX 535.0050
          800.822.0650                 800.562.7100

25

**Videotaped Deposition**

2

1          APPEARANCES:

2               Matthew A. Dooley, Esq.
               Stumphauzer, O'Toole, McLaughlin,
3               McGlamery & Loughman Co., L.P.A.
               5455 Detroit Road
4               Sheffield Village, Ohio  44054
               (440) 930-4001
5               mdooley@sheffieldlaw.com,

6                    On behalf of the Plaintiff;

7               Jeremy Gilman, Esq.
               David M. Krueger, Esq.
8               Benesch, Friedlander, Coplan & Aronoff, LLP
               200 Public Square, Suite 2300
9               Cleveland, Ohio  44114
               (216) 363-4500
10               jgilman@beneschlaw.com
               dkrueger@beneschlaw.com,
11
                    On behalf of the Defendant.
12
          ALSO PRESENT:
13
               Raymond Andrews, Jr., CLVS, Videographer
14

15

16

17

18

19

20

21

22

23

24

25

**Videotaped Deposition**

3

```
 1              W I T N E S S   I N D E X

 2                                              PAGE

 3       CROSS-EXAMINATION
         BRUCE D. WHITE
 4       BY MR. GILMAN                            6

 5
                E X H I B I T   I N D E X
 6
       EXHIBIT                                  PAGE
 7
         Defendant's Exhibit 1, First Amended
 8       Class Action Complaint                   9

 9       Defendant's Exhibit 2, Plaintiff
         Bruce White Responses to CRST's First
10       Set of Interrogatories                  15

11       Defendant's Exhibit 3, Plaintiff
         Bruce White Responses to CRST's First
12       Request for Production of Documents     22

13       Defendant's Exhibit 6, Bruce Dewayne
         White Application to CRST               31
14
         Defendant's Exhibit 15, Misdemeanor
15       Information                             71

16       Defendant's Exhibit 16, Judgment and
         Sentence on Plea of Nolo Contendere     73
17
         Defendant's Exhibit 17, Judgment and
18       Sentence on Plea of Nolo Contendere     74

19       Defendant's Exhibit 18, Tulsa County
         Work Program (An Alternative to
20       Incarceration) Application and
         Information                             77
21

22              O B J E C T I O N   I N D E X

23     OBJECTION BY                             PAGE

24       MR. DOOLEY                              14
         MR. DOOLEY                              22
25       MR. DOOLEY                              22
```

**Mehler & Hagestrom**
**800.822.0650**

**Videotaped Deposition**

4

1     O B J E C T I O N   I N D E X   C O N T I N U E D

2     OBJECTION BY                                    PAGE

3     MR. DOOLEY                                       26
      MR. DOOLEY                                       38
4     MR. DOOLEY                                       45
      MR. DOOLEY                                       46
5     MR. DOOLEY                                       48
      MR. DOOLEY                                       50
6     MR. DOOLEY                                       52
      MR. DOOLEY                                       58
7     MR. DOOLEY                                       58
      MR. DOOLEY                                       61
8     MR. DOOLEY                                       66
      MR. DOOLEY                                       67
9     MR. DOOLEY                                       68
      MR. DOOLEY                                       69
10    MR. DOOLEY                                       72
      MR. DOOLEY                                       73
11    MR. DOOLEY                                       75
      MR. DOOLEY                                       80
12    MR. DOOLEY                                       81
      MR. DOOLEY                                       83
13    MR. DOOLEY                                       85

14

15

16

17

18

19

20

21

22

23

24

25

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

5

1          THE VIDEOGRAPHER:  We're going on

2     the record.  The time is 9:08 a.m.  Today

3     is Friday, May 25th, 2012.  We're at the

4     offices of Benesch, Friedlander, Coplan &

5     Aronoff to take the deposition of Bruce

6     White, the case titled Bruce White, on

7     Behalf of Himself and All Others Similarly

8     Situated, versus CRST, Inc., in the U.S.

9     District Court, Northern District of Ohio,

10     Eastern Division, Case Number

11     1:11-CV-02615.

12          My name is Randy Andrews, CLVS,

13     from the firm of Mehler & Hagestrom located

14     in Cleveland, Ohio.  The court reporter

15     today is Dawn Fade also from the same firm.

16          Will counsel present please

17     identify themselves for the record.

18          MR. GILMAN:  Jeremy Gilman and

19     David Krueger for the Defendant, CRST, Inc.

20          MR. DOOLEY:  Matt Dooley for the

21     Plaintiff, Bruce White.

22          THE VIDEOGRAPHER:  Will the court

23     reporter please swear in the witness.

24

25

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

6

1        BRUCE D. WHITE, of lawful age, called by the

2     Defendant for the purpose of cross-examination,

3     as provided by the Rules of Civil Procedure,

4     being by me first duly sworn, as hereinafter

5     certified, deposed and said as follows:

6        CROSS-EXAMINATION OF BRUCE D. WHITE

7     BY MR. GILMAN:

8  Q.  Good morning, Mr. White.

9  A.  Good morning.

10 Q.  As you've heard before, my name is Jeremy Gilman.

11    I'm with Benesch.  My colleague Dave Krueger,

12    also with Benesch.  We represent the defendant in

13    this action, CRST, Inc.

14       Please state your full name for the record.

15 A.  Bruce Dewayne White.

16 Q.  And your current residential address?

17 A.  320 South Garnett Road, Tulsa, Oklahoma.

18 Q.  Okay.  And you are the plaintiff in this pending

19    action against CRST, Inc., correct?

20 A.  Yes, I am.

21 Q.  Now, during the course of this deposition if I

22    use the term CRST generally will you understand

23    that I'm referring to the defendant in this

24    action, CRST, Inc.?

25 A.  Yes.

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

7

1  Q.  Have you ever been deposed before?

2  A.  No.

3  Q.  Have you ever been a party to a lawsuit before?

4  A.  Yes.

5  Q.  What lawsuit have you been a party to?

6  A.  Workmen's comp.

7  Q.  A workers' comp claim?

8  A.  Yes.

9  Q.  Any other cases?

10  A.  No.

11  Q.  Where was the workers' comp claim pending?

12  A.  Tulsa, Oklahoma.

13  Q.  And against whom did you assert that claim?

14  A.  It was a glass company I worked for.

15  Q.  Okay.  Let me just give you a couple of basic

16      ground rules regarding depositions, but before I

17      do that, you are represented by counsel here

18      today, correct?

19  A.  Yes, I am.

20  Q.  And your counsel is present with you in this room

21      today?

22  A.  Yes, sir.  Yes, he is.

23  Q.  And that's Matt Dooley?

24  A.  Yes, sir.

25  Q.  Okay.  I'm going to be asking you questions, your

8

```
 1        answers to those questions will constitute
 2        testimony given under oath.  If a question that I
 3        ask you appears unclear to you let me know that
 4        and I'll do my very best to rephrase the question
 5        in a way that will hopefully clarify for you, is
 6        that understood?
 7   A.   Yes, it is.
 8   Q.   If you would like during the course of this
 9        deposition, which I frankly don't imagine will be
10        that long, to take a break let me know or let
11        your counsel know and your counsel will advise me
12        and we'll absolutely accommodate you subject to
13        one minor condition and that is if a question is
14        pending conclude your answer to the question.
15   A.   Okay.
16   Q.   Is that acceptable?
17   A.   That's fine.
18   Q.   Okay.
19   A.   So what I just, break, say I got to go to the
20        bathroom or something?
21   Q.   Absolutely.  Or if you'd like to simply say you'd
22        like to take a break, however you'd like to
23        phrase it would be acceptable.
24   A.   Okay.
25   Q.   By the way, have you ever lived at 1627 East 2nd
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

9

```
 1        Street in Tulsa?
 2   A.   1627, yes.
 3   Q.   Okay.
 4   A.   Uh-huh.
 5   Q.   If you would, one other ground rule, please
 6        articulate your answers fully as opposed to
 7        sometimes occasionally symbolizing your answers,
 8        let's say, with a uh-uh or an uh-huh.
 9   A.   Yes.  Okay.
10   Q.   That way the record will be as clear as possible
11        and will reflect your actual testimony.
12   A.   Yes.
13   Q.   And if you would also, I know you're miked up,
14        but for the benefit of all present if you could
15        just amplify your voice to the greatest extent
16        comfortable for you.
17   A.   Okay.
18   Q.   That would be great.
19   A.   Okay.
20                     -   -   -   -
21        (Thereupon, Defendant's Exhibit 1, First
22        Amended Class Action Complaint, was marked
23        for purposes of identification.)
24                     -   -   -   -
25   Q.   Let me hand you what's been marked for
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

10

1        identification as Plaintiff's or as Exhibit 1 to

2        this deposition.

3    A.  Yeah.

4    Q.  Would you look at that, please, and let me know

5        when you've completed your review of that

6        document.

7    A.  Okay.

8    Q.  Okay.  You have reviewed Exhibit 1, correct?

9    A.  Yes.

10   Q.  And can you identify that document?

11   A.  Yes.  It's me, the plaintiff, on the behalf of

12       myself, a class action complaint against, alleged

13       against CRST.

14   Q.  Is that a document you've seen before?

15   A.  Yes.

16   Q.  Did you read it before it was filed?

17   A.  I looked over it.

18   Q.  Do the allegations in that complaint in fact

19       coincide with your belief as to what is true?

20   A.  Yes, sir.

21   Q.  Okay.  You never worked for CRST, correct?

22   A.  No, sir.

23   Q.  You're not familiar with their processes and

24       policies for recruiting driver applicants, for

25       recruiting truck drivers, is that correct?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

11

1   A.   Well, I know that they con -- well, the school

2        that I went, worked -- I mean went to,

3        Roadmaster, they sent out applications to all the

4        trucking companies and then the trucking

5        companies would have their representative get

6        back with the applicant.

7   Q.   Okay.  Is that the full extent of what you know

8        about CRST's policies and procedures for

9        recruiting and hiring a truck driver applicant?

10  A.   Yes.

11  Q.   Truck drivers?

12  A.   Uh-huh.

13  Q.   Okay.  Let me ask you this question, if I may,

14       your date of birth is ███████, correct?

15  A.   Yes.

16  Q.   And your social security number is █████,

17       is that correct?

18  A.   Yes.

19  Q.   Have you ever spoken with anyone at CRST?

20  A.   I spoke with, I think her name was -- oh, I can't

21       think of her name.  It was a female lady, when

22       recruiting.

23  Q.   Is that the extent of your recollection of any

24       communication you've had with CRST or its

25       personnel?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

12

1    A.   Yes, sir.

2    Q.   Okay.  You don't remember anything else about

3         that?

4    A.   Well, she explained to me, you know, what the

5         situation is going up to the class and stuff, you

6         know, and everything and that's basically it.

7    Q.   That's it?

8    A.   Uh-huh.

9    Q.   You don't remember anything else about those

10        communications?

11   A.   No.

12   Q.   Let me ask this question, if I may, have you

13        spoken with any other or otherwise communicated

14        with any other individuals who had applied for

15        truck driver positions at CRST?

16   A.   No.

17   Q.   Never have?

18   A.   No.

19   Q.   Do you know the experiences of any other

20        individuals who at any time have ever applied for

21        truck driver positions at CRST?

22   A.   No.

23   Q.   Have you ever been a member of a class action?

24   A.   No.

25   Q.   What were the circumstances, if I may, and let me

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

13

1       preface it by saying this -- well, strike that

2       for a moment.

3            Do you have an email address?

4   A.   Yes, I do.

5   Q.   And your email address is what, please?

6   A.   Whitebruce38@gmail.com.

7   Q.   How long have you maintained that email address?

8   A.   About, probably about maybe three years, three to

9       four years.

10  Q.   Did you have that email address at or around the

11      time that you had applied for a truck driver

12      position at CRST?

13  A.   No.

14  Q.   Did you have any email address at the time?

15  A.   Whitebruce@yahoo.com.

16  Q.   Okay.  That was an email address you maintained

17      from when till when?

18  A.   I really don't remember how long I had that email

19      address 'cuz I got a different phone and in order

20      to get that phone you have to change your email

21      address and I was working at the time for Wiltran

22      Trucking.

23  Q.   Uh-huh.

24  A.   Okay.

25  Q.   Do you have any email communication of any kind

14

1        with anyone relating to CRST?

2    A.   No.

3    Q.   And you gave me before your complete and full

4        recitation of your recollection of any

5        communication you've ever had with anyone at

6        CRST, correct?

7                    MR. DOOLEY:  Objection.  You can

8            answer that.

9    Q.   Do you understand the question?

10   A.   Yeah.  Like I said, you know, in the recruiting

11       process the recruiter from CRST might have got in

12       contact with the recruiter at Roadmaster, okay,

13       and then I was talking between the recruiter at

14       Roadmaster and they was going back and letting

15       them know what was going on with, you know,

16       certain issues and situations and what I was

17       going through.

18           But basically a one-on-one conversation with

19       someone, maybe been on the phone, okay.

20   Q.   Okay.  Is that the complete answer to your

21       question?

22   A.   Yes.

23   Q.   And you did understand the question I asked, is

24       that correct?

25   A.   Yes.

15

```
 1   Q.   Let me ask this question, if I may, would you

 2        refer to your Exhibit 1, please.

 3   A.   Uh-huh.

 4                  MR. GILMAN:  Off the record one

 5            second.

 6                  THE VIDEOGRAPHER:  Off the record

 7            at 9:19.

 8                           -  -  -  -

 9        (Thereupon, a discussion was had off the

10        record.)

11                           -  -  -  -

12                  MR. GILMAN:  Back on the record,

13            please.

14                  THE VIDEOGRAPHER:  On the record

15            at 9:20 a.m.

16   Q.   I'll ask you a question about that in just a

17        moment, but in the meantime, if I may, let me ask

18        you to identify this document.

19   A.   Okay.

20                           -  -  -  -

21        (Thereupon, Defendant's Exhibit 2, Plaintiff

22        Bruce White Responses to CRST's First Set of

23        Interrogatories, was marked for purposes of

24        identification.)

25                           -  -  -  -
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

16

1   Q.  Handing you what's been marked for identification

2       as Exhibit 2, if you'd be kind enough to look at

3       that and identify it I would appreciate it.

4   A.  Yes, I remember the document.

5   Q.  Okay.  Mr. White, please go to the very last page

6       of that document and that page --

7               MR. GILMAN:  I'm sorry, did I give

8           you a copy of that, Dave?

9               MR. KRUEGER:  Yes.

10  Q.  The heading on that document is Verification, is

11      that correct?

12  A.  Yes.

13  Q.  Is this a true and correct copy of your

14      signature?

15  A.  Yes.

16  Q.  And you had this notarized in Jefferson County,

17      Colorado?

18  A.  Yes, I had, did.

19  Q.  On April 26th, 2012?

20  A.  Yes.

21  Q.  Now, if you'd be kind enough to go to page 4 of

22      this document.  All right?  You see what is

23      called here Interrogatory Number 7?  It appears

24      toward the lower half of the page.  Do you see

25      that, sir?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

17

```
 1   A.  Yes, I do.

 2   Q.  Okay.  Please read that.

 3   A.  Okay.

 4   Q.  And I just want to ask you a few questions about

 5       that.

 6   A.  Okay.  Identify --

 7   Q.  Oh, you don't have to read it out loud.

 8   A.  Oh.

 9   Q.  You can read it to yourself.  But thank you.

10   A.  Okay.

11   Q.  All right.  Did you see these answers before they

12       were in fact served in this case?

13   A.  The response?

14   Q.  Yes.  You saw the response?

15   A.  Yeah.  Mr. White, yeah.  Uh-huh.  I did, I think

16       I gave a response.

17   Q.  Pardon me, sir?

18   A.  I believe I -- yeah, these was the questions that

19       you sent to me at my house?  Okay.  Yeah.

20   Q.  Your counsel might have.

21   A.  Okay.

22   Q.  Now, in paragraph 7, one of the responses that

23       you gave in paragraph 7 of this interrogatory is

24       you identified Lisa Benson White of 320 South

25       Garnett, Tulsa, Oklahoma 74128.
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

18

1    A.   Yes, sir.

2    Q.   That is your wife?

3    A.   Yes, sir.

4    Q.   And how long has Mrs. White been married to you,

5         please?

6    A.   Been a long time.

7                   MR. DOOLEY:   Glad she's not here

8              to see you pause in response to that.

9    A.   Yeah.

10   Q.   Well, first of all, I'm glad to hear that and I

11        can understand that you might not have the exact

12        date.

13   A.   Yeah, I have problems remembering my anniversary,

14        yeah, she'll be pretty upset.

15   Q.   Okay.  To your knowledge, Mrs. White has never

16        had direct communications with anyone at CRST, is

17        that right?

18   A.   Only through me, what she, what I had told her,

19        you know.

20   Q.   Does Mrs. White have any knowledge about any of

21        the allegations or assertions in this action

22        other than what you might have told her?

23   A.   No.  Just what I told her.

24   Q.   You identify here in this answer Brooke Willey,

25        do you see that?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

19

1   A.  Brooke Willey?

2   Q.  Yes, sir.  It's among the answers you gave to

3       Interrogatory Number 7.

4               MR. DOOLEY:  Middle of the page,

5       Bruce.

6   Q.  Do you see that, by chance?

7   A.  I haven't found it yet.

8               MR. GILMAN:  Matt, would you be

9       able to point that out?

10              MR. DOOLEY:  It's on the next

11      page, Bruce.

12  A.  Oh, okay.

13             MR. DOOLEY:  He didn't tell you to

14      turn it over.

15  A.  Okay.

16             MR. DOOLEY:  There you go.

17  A.  Oh, okay.  Yeah, I see it.

18  Q.  Okay.  And you see some names thereafter,

19     correct?

20  A.  Yes.  Ron Corbett, yeah, Brandi Northway.

21  Q.  Have you ever communicated with Brooke Willey?

22  A.  No.

23  Q.  Is this a name you've ever heard of before this

24     deposition today?

25  A.  That's the first time I ever heard of Brooke

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

20

1      Willey.

2  Q.  Okay.  So the answer is that's correct, you have

3      never heard of the name Brooke Willey before

4      today?

5  A.  That's right.  That's correct.  No.

6  Q.  What about Ron Corbett, the name that appears

7      afterwards, have you ever heard that name before

8      today?

9  A.  No, sir.

10 Q.  Have you ever communicated with Mr. Corbett?

11 A.  No.

12 Q.  And Brandi Northway, have you ever communicated

13     with Brandi Northway?

14 A.  Yes, sir.

15 Q.  And you previously identified in answers to other

16     questions I asked you in this deposition --

17 A.  Yeah, she was the lady I spoke with at CRST.

18 Q.  Okay.

19 A.  Brandi Northway, that's the lady I couldn't

20     remember her name.

21 Q.  Got it.

22 A.  Okay.

23 Q.  Right.  And you previously identified the

24     totality of the communications you had with

25     Mrs. Norway --

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

21

1    A.   Yes.

2    Q.   Northway.

3    A.   Yes.

4    Q.   Northway, I'm sorry.

5         And Josh Birr on the next page, please, have

6         you ever heard of that name before today?

7    A.   No, sir.

8    Q.   And I take it then you've never had any

9         communications with Josh Birr, is that right?

10   A.   Yes, sir, I never had a communication with him.

11   Q.   Okay.  Let's go back to Exhibit 1, if we may.

12        Could you go to page 4 of that, please.  Do you

13        see page 4?

14   A.   Yes, sir.

15   Q.   Okay.  And you see the document, I'm sorry, the

16        heading Class Action Allegations?

17   A.   Yes, sir.

18   Q.   And look at paragraph 18 of the complaint, if you

19        would, the first amended complaint, which is

20        Exhibit 1, do you see that?

21   A.   Yes, sir.

22   Q.   Would you read that to yourself and let me know

23        when you've done, when you're done.

24   A.   Okay.  I'm through.

25   Q.   You've read that?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

22

1    A.   Yes.

2    Q.   Tell me all the facts that you contend support

3         that allegation in paragraph 18 of the first

4         amended complaint.

5                   MR. DOOLEY:  Objection.  You can

6              answer, Bruce.

7    A.   Okay.  Well, after CRST received the background

8         report and they knew the information was in it

9         and everything they didn't let me know that I

10        could get a copy of it freely after they knew

11        that, you know, all the information was in the

12        background report and then, also, they didn't let

13        me contest to the information in the background

14        report, that's what I feel that this paragraph is

15        telling me.

16   Q.   Is that the sum total of your response to the

17        question I asked about the facts you have

18        supporting paragraph 18 of the complaint?

19                  MR. DOOLEY:  Objection.  Go ahead,

20             Bruce.

21   A.   Yes, sir.

22   Q.   Okay.

23                       -   -   -   -

24             (Thereupon, Defendant's Exhibit 3, Plaintiff

25             Bruce White Responses to CRST's First Request

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

23

1              for Production of Documents, was marked for

2              purposes of identification.)

3                        -  -  -  -

4    Q.   Let me hand you what's been marked for

5         identification as Exhibit 3.  Handing you what's

6         been marked for identification as Exhibit 3, can

7         you identify that document?

8    A.   Okay.

9    Q.   Do you recognize that document, Mr. White?

10   A.   Yes.

11   Q.   And is this a true and correct copy of your

12        responses to CRST's first request for production

13        of documents as served upon your counsel in this

14        action?

15   A.   Yes.

16   Q.   Did you produce all documents in your possession,

17        custody and control responsive to this document

18        production request?

19   A.   Yes.

20   Q.   Did you withhold from production any documents?

21   A.   No.

22   Q.   Now, according to my understanding, and I don't

23        know if you remember this or not, but your

24        counsel produced to us 19 pages of documents in

25        response to our document production request, does

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

24

1       that generally coincide with your recollection as

2       to how many documents you made available to your

3       counsel in response to these document production

4       requests or did you make available more documents

5       than that?

6   A.   Well, I made available whatever I had containing

7       to my case so I really don't know the exact

8       number of documents that I gave my counsel, but

9       whatever I had.

10  Q.   Was it a large volume of documents?

11  A.   Like I say, I just, I couldn't remember how many

12      pages I gave him.  I just, everything that I had

13      at home on record about the case, I mean,

14      trucking company I forwarded it to my attorney.

15  Q.   Okay.  You were asked to fill out an application

16      for employment at or -- strike that.

17           You filled out an application for employment

18      as a truck driver at CRST, correct?

19  A.   Yes, sir.

20  Q.   Did you read the application before filling it

21      out?

22               MR. DOOLEY:  Jeremy, just to

23          clarify, you said he filled out an

24          application for employment at CRST, you

25          didn't mean physically at CRST, you mean an

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

25

```
 1                    application for a job with CRST, correct?
 2                         MR. GILMAN:  Thank you very much.
 3               I'll rephrase the question.
 4   Q.  You completed, filled out an application to be
 5       employed as a truck driver by CRST?
 6   A.  Yes, I did.
 7   Q.  Is that correct?
 8                         MR. GILMAN:  Did that satisfy you?
 9                         MR. DOOLEY:  Thank you.
10                         MR. GILMAN:  Thank you.
11   Q.  Did you read that application?
12   A.  I read over it, about basically, you know,
13       putting jobs, your previous jobs and educational,
14       you know, schooling that you had, yeah, I read
15       over it.
16   Q.  Okay.  And were you satisfied that you had filled
17       out that application completely?
18   A.  Yes, sir.
19   Q.  Were you satisfied that you had filled out that
20       application accurately?
21   A.  Yes, sir.
22   Q.  Did you conceal or withhold any information in
23       that application from CRST?
24   A.  No, sir.
25   Q.  In the course of your career -- and if you don't
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

26

```
 1        mind my asking, you are approximately 42 years
 2        old?
 3   A.   Yes, sir.
 4   Q.   You have filled out a number of applications for
 5        employment, correct?
 6   A.   Yes, sir.
 7   Q.   You've read various applications for employment?
 8   A.   Yes, sir.
 9   Q.   In the course of applying for employment in the
10        past have you ever been, have you ever received a
11        criminal background report about yourself?
12                  MR. DOOLEY:   Objection.
13   A.   They, they give you the piece of paper says,
14        stating that, you know, you put everything, if
15        you have a criminal background or not and, yes, I
16        seen them, the form, and I filled it out, I have,
17        you know, something, issues in my background
18        which I normally try to give the truth.
19   Q.   Which issues in your background, sir?
20   A.   Just the issue in 1992 where the background
21        company had the wrong information about my, my
22        incident.
23   Q.   You said you've filled out applications in the
24        past and have received in the past criminal
25        background reports?
```

Bruce D. White - May 25, 2012
Videotaped Deposition

27

1   A.   Yeah, it basically asks you if you had any, got
2        in any trouble, you know, background report.
3   Q.   Do you have copies of any of those applications
4        that you filled out from prior employers?
5   A.   No.
6   Q.   Do you have copies of any of the criminal
7        background reports that you received prior to the
8        time you applied for a truck driver position at
9        CRST?
10  A.   No, they didn't give me a background report.
11  Q.   Okay.  So you had never received a background
12       report from any prior employers from whom you
13       were seeking truck driver employment?
14  A.   Annett Holdings, okay.
15  Q.   Could you spell that, please?
16  A.   Annett Holdings.  Honestly, I'm not a good
17       speller.
18  Q.   That's okay.  Where are they based?
19  A.   Des Moines, Iowa, I believe.
20  Q.   And you applied for a truck driver position
21       there?
22  A.   It's, it's -- I don't think it's under the Annett
23       Holdings, I think it's under another name.
24  Q.   Okay.  Tell me about your experience with Annett
25       Holdings.

28

```
 1   A.   Okay.  Well, they just gave me a form, a
 2        background check of what I was charged with in
 3        1992.
 4   Q.   Uh-huh.
 5   A.   Okay.  And it had on there shooting with intent
 6        to kill, a felony, and that was it, okay, which
 7        that was the wrong background report.  And then
 8        on the hard copy, the records downtown in Tulsa
 9        it said shooting with intent to kill, felony
10        reckless use of a firearm reduced to a
11        misdemeanor.  Okay.
12   Q.   So Annett Holdings provided you with a background
13        report in the past?
14   A.   Yes.
15   Q.   Did you -- strike that.
16            Who issued that background report, if you
17        know?
18   A.   I don't know.  I just know that's where I got
19        that background report from.
20   Q.   Did you take steps to correct the background
21        report?
22   A.   Yes, I did.
23   Q.   Who did you take steps with?
24   A.   Well, it was HireRight, I had to call them and
25        let them know that what they had on the
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

29

1      background report was incorrect and I had to go

2      downtown and get the hard copy and take it back

3      to my truck driving school, which in turn faxed

4      the information over to HireRight and let them

5      know that the information they had on my

6      background report was not correct.  So they end

7      up, you know, retracting what they put in the

8      background report.

9   Q.  Were you hired by Annett Holdings?

10  A.  No.

11  Q.  Do you know why you weren't hired by Annett

12      Holdings?

13  A.  No, I do not.

14  Q.  Approximately what year was this?

15  A.  Around 19 -- 2009.

16  Q.  2009?

17  A.  Yes.

18  Q.  Was it before or after your application for

19      employment at CRST?

20  A.  It was before.

21  Q.  Before?

22  A.  Yes.

23  Q.  Do you have any documents at all in your

24      possession relating to your experience with

25      Annett Holdings?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

30

1    A.   No.

2                        MR. DOOLEY:  If I may, I don't

3              want to interrupt the deposition, but there

4              were some documents produced by Mr. White

5              in response to the request regarding that

6              so you should have those in front of you.

7                        MR. GILMAN:  Do you have the Bates

8              numbers for those?

9                        MR. DOOLEY:  White 2.  I'm looking

10             at it.

11                       MR. GILMAN:  White 2.  Let me see.

12                       MR. DOOLEY:  Would you like my

13             copy?

14                       MR. GILMAN:  Can I just see.

15             Let's go off the record for one moment.

16                       THE VIDEOGRAPHER:  Off the record

17             at 9:38.

18                            -  -  -  -

19                       (Off the record.)

20                            -  -  -  -

21                       THE VIDEOGRAPHER:  On the record

22             at 9:40 a.m.

23    Q.   All right.  We were talking before about your

24         application at CRST, correct?

25    A.   Yes, sir.

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

31

```
 1                        -   -   -   -

 2              (Thereupon, Defendant's Exhibit 6, Bruce

 3              Dewayne White Application to CRST, was marked

 4              for purposes of identification.)

 5                        -   -   -   -

 6    Q.   Let me hand you what has been marked for

 7         identification as Exhibit 6 to this deposition.

 8    A.   Okay.

 9    Q.   Handing you what's been marked for identification

10         as Exhibit 6 to your deposition, do you recognize

11         this document?

12    A.   Yes, sir.

13    Q.   Can you identify it, please?

14    A.   It's an application to CRST.

15    Q.   Whose handwriting is this, please?

16    A.   This is my handwriting.

17    Q.   Your handwriting appears on the, on all pages of

18         this application on which handwriting appears?

19    A.   No, sir.

20    Q.   Whose handwriting also appears on this?

21    A.   My job placement counselor that was at

22         Roadmaster.

23    Q.   Okay.  What did you write and what did your job

24         placement counselor write on this application?

25    A.   Okay.  Page 1, that's my handwriting.
```

32

1   Q.   All right.

2   A.   Page 3, that's my handwriting.

3                MR. DOOLEY:  And just for the

4            record, he's referencing the page numbers

5            it looks like at the top of the fax, when

6            you say page 3 it is page 2, but it is

7            noted page 3 at the top.

8                MR. GILMAN:   Okay.

9   A.   And page 4 the top portion with the N/A is my

10       handwriting, the, it says question N, Have you

11       ever been -- no, I mean, not that.  I'm sorry.

12       Where was that.

13           If answer to any question is yes, detail

14       circumstances, and date, that right there was

15       written by my placement, job coordinator, I mean,

16       counselor at Roadmaster.

17   Q.   Okay.  Well, let me interrupt you just for a

18       moment, to make sure I'm clear.

19   A.   Uh-huh.

20   Q.   Where it says here Driving Record N/A and N/A,

21       who wrote the N/A?

22   A.   I wrote the N/A.

23   Q.   And underneath that where there are various boxes

24       that are checked, who inserted those check marks?

25   A.   I did.

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

33

```
 1   Q.   Okay.  And there is, there are two lines
 2        underneath those checks, If answer to any
 3        question is yes, state details, circumstances,
 4        and date, and then there's two lines of
 5        handwritten text, who wrote them?
 6   A.   That was my job placement coordinator at
 7        Roadmaster.
 8   Q.   And -- I'm sorry.  And do you remember his or her
 9        name?
10   A.   I believe her name was Jean Wallace.
11   Q.   Jane Wallace?
12   A.   Jean.
13   Q.   Jean?
14   A.   Yes.
15   Q.   Is Jean a male or a female?
16   A.   Female.
17   Q.   And where was Roadmaster located?
18   A.   Tulsa, Oklahoma.
19   Q.   And where did Ms. Wallace receive the information
20        to include in these two lines here?
21   A.   Now, I gave her the information about the 1992
22        shooting, but she also had information from my
23        background report.
24   Q.   Okay.  Roadmaster had obtained a background
25        report on you?
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

34

1   A.   Yes.

2   Q.   Were you aware of that?

3   A.   When she let me know what was on, in my

4        background report.

5   Q.   Okay.  Did she show you a copy of that background

6        report?

7   A.   I believe she did, yes.

8   Q.   Was that a HireRight background report?

9   A.   Yes, sir.

10  Q.   And she told you she was getting a background

11       report for you?

12  A.   I don't think she told me, I just think she

13       automatically done it.

14  Q.   Okay.

15  A.   Because she was, reason why she done it, because

16       I was having a hard time with finding employment.

17  Q.   Why were you having a hard time finding

18       employment, if you know?

19  A.   Huh?

20  Q.   I'm sorry.  Why were you having a hard time

21       finding employment, if you know?

22  A.   No, I didn't know what reason why I wasn't

23       getting hired, I just knew it was I wasn't

24       getting hired for some reason.  And so she pulled

25       up my background report and seen the 1992

35

1          discharging of a firearm felony that was on the

2          HireRight background report which was incorrect.

3     Q.   Do you recall when she -- strike that.

4               Did you interact with her in person?

5     A.   Yes.  Yes.  In the office.

6     Q.   In the office of Roadmaster?

7     A.   Yes, sir.

8     Q.   Do you remember the date?

9     A.   The date that I talked to her?

10    Q.   Yes, sir.

11    A.   Yeah, it was around, I believe it was August

12         2009.

13    Q.   Was it only one day in which you had that

14         conversation with her, where you communicated

15         with her?

16    A.   One day when we talked about my background

17         report?

18    Q.   Yes, sir.

19    A.   Well, it's probably been more than one day

20         because I was like trying to get it disputed and

21         everything and she gave me the numbers to

22         HireRight and told me to call them and I had to

23         do some foot work and go get the hard copy and

24         bring it back to her and she had to fax the

25         information over to HireRight for them to retract

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

36

1      their information that they had on my background

2      report.

3  Q.  Okay.  So this is before you had applied to CRST,

4      correct?

5  A.  Yes, I believe so.

6  Q.  And you had received a copy of your background

7      report from HireRight and you contend that it

8      contained erroneous information about your

9      criminal conviction?

10 A.  Yes.

11 Q.  And the information that background report

12     contained which you believed was erroneous was

13     that it had indicated you had been convicted of a

14     felony relating to the discharge of a firearm?

15 A.  Yes.

16 Q.  When in fact it was pled down to a misdemeanor?

17 A.  Yes.

18 Q.  And did you contact HireRight after that time

19     relating to that background report?

20 A.  Yes, I did.

21 Q.  Did you contact HireRight prior to applying to

22     CRST?

23 A.  No.

24 Q.  But you were shown the background report before

25     you applied to CRST, correct?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

37

```
 1   A.   Yes.
 2   Q.   Okay.  Let me make sure I understand the
 3        chronology.  Approximately when were you shown
 4        the background report obtained by HireRight?
 5   A.   It was August 2009.
 6   Q.   Okay.  And when did you apply for a truck driver
 7        position at CRST?
 8   A.   Probably September.
 9   Q.   So would you say there was about a month between
10        the time you were shown the background report by
11        Roadmaster and the time you applied for
12        employment at CRST?
13   A.   I believe there was, yes.
14   Q.   So for at least a month before you applied to
15        CRST you knew that the background report was
16        erroneous?
17   A.   It was incorrect, yes.
18   Q.   Did you do anything in that intervening month to
19        try to correct that background report?
20   A.   Okay.  Like I said, I called HireRight and let
21        them know that the background report has some
22        false information in it, okay, incorrect, then I
23        had to go downtown and get the hard copy.
24   Q.   Uh-huh.
25   A.   Okay.  Bring it back to my truck driving school
```

**Mehler & Hagestrom**
**800.822.0650**

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

38

```
 1        and give it to my job placement counselor which

 2        in turn I believe she faxed the information over

 3        to HireRight, okay, and then after me, I guess,

 4        assuming that they had corrected it I got the

 5        pre-hire from CRST.

 6   Q.   Let me make sure I understand this sequence, if I

 7        can.  You said before that you received the

 8        background report from Roadmaster that Roadmaster

 9        had obtained from HireRight in August of 2009, is

10        that correct, sir?

11   A.   Yes.

12   Q.   And about a month elapsed between that time and

13        the time you applied for employment at CRST, to

14        your recollection?

15   A.   Yes.

16   Q.   In that intervening month, in other words, during

17        that month period or so --

18   A.   Okay.

19   Q.   -- did you take steps during that time to correct

20        the background report?

21                  MR. DOOLEY:  Objection.  Asked and

22             answered.  Go ahead, Bruce.

23   A.   Okay.

24                  MR. GILMAN:  I just want to make

25             sure I understand the sequence.
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

39

```
 1   A.   All right.  That's what I done, like I said,

 2        after I found out what they had in the background

 3        report was incorrect I went and called the

 4        lady -- see, I had the number from Roadmaster,

 5        she gave me the number to HireRight, okay, so I

 6        end up calling the lady in HireRight and then

 7        letting her know that the information that they

 8        had in the background report was wrong, so I had

 9        to go downtown and get the hard copy, okay, go on

10        down there and got the hard copy, brought it back

11        to Roadmaster and she faxed it over to the lady

12        at HireRight and then so I'm thinking they had,

13        you know, retracted their information and I got a

14        pre-hire letter from CRST.

15   Q.   Okay.  And I heard that testimony and thank you

16        for that.  My specific question is whether you

17        engaged in that activity, the activity that you

18        just --

19   A.   Yes.  Yes.

20   Q.   -- whether you engaged in it before you applied

21        for employment to CRST?

22   A.   Oh, getting the information?

23   Q.   Yes.  Because as I understand your testimony, you

24        learned of the, what you contended to be the

25        erroneous criminal report in August and about a
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

40

1      month later you applied for employment at CRST

2      and I'm wondering if during that month before you

3      applied for employment at CRST --

4  A.   Okay.  Well --

5  Q.   Let me finish the question, if I may.  -- within

6      that month prior to the time you filled out your

7      CRST application you had taken steps to correct

8      what you considered to be the erroneous criminal

9      background report?

10  A.   Yes.

11              MR. DOOLEY:  Bruce, do you

12          understand the question?

13  A.   Yes.

14              MR. DOOLEY:  Okay.  Good.

15  A.   Yeah.

16  Q.   It was before you applied for CRST, to CRST?

17  A.   Yes.  Yes.  I mean, I mean, yes.

18  Q.   Do you remember or do you not have a specific

19      recollection?

20  A.   Well, like I said, after I went through the

21      process of getting all my information like the

22      hard copy from downtown and brought it back to my

23      job placement counselor I got award or a pre-hire

24      from CRST, so --

25              MR. DOOLEY:  That's an indirect

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

41

```
 1              answer to your question I understand,

 2              but --

 3                   MR. GILMAN:  No, that's all right.

 4   Q.  Is that a complete answer to the question?

 5   A.  Yes.

 6   Q.  Let's go back to Exhibit 6, if we may.

 7   A.  Okay.

 8   Q.  Did you talk to anyone at or communicate with

 9       anyone through any medium, phone, fax, email,

10       letter, in person, at HireRight regarding any of

11       the background reports obtained relating to you?

12   A.  Yes.

13   Q.  Who did you talk to and when, or communicate

14       with?

15   A.  Who did I talk to?

16   Q.  Well, who did you communicate with and when?

17   A.  Oh.  I have her name in my phone, can I -- I got

18       her name, I put the number down that I contacted

19       her with in my phone, I kept it for a record.  I

20       don't know her name, but I have it in my phone.

21   Q.  That's fine.

22   A.  Okay.

23                   MR. DOOLEY:  Can we go off the

24              record for a second?

25                   MR. GILMAN:  Uh-huh.
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

42

```
 1              THE VIDEOGRAPHER:  Off the record
 2        at 9:52.
 3                    -   -   -   -
 4        (Thereupon, a discussion was had off the
 5        record.)
 6                    -   -   -   -
 7              MR. GILMAN:  Let's go back on.
 8              THE VIDEOGRAPHER:  On the record
 9        at 9:54.
10  Q.  Would you just, let's -- we're back on the
11      record.  What's the name of the individual at
12      HireRight?
13  A.  Her name was Amber.
14  Q.  Do you have a last name for her?
15  A.  No.
16  Q.  Do you have a phone number for her?
17  A.  Yes, I do.
18  Q.  What is that, please?
19  A.  It's (918) 664-9991.
20  Q.  Do you have a notation as to when you
21      communicated with her?
22  A.  I have her extension too, extension 2223.
23  Q.  And do you have any information in your phone or
24      elsewhere as to when you communicated with Amber
25      at HireRight?
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

43

1    A.  No.

2    Q.  Okay.  Would you be kind enough to turn off the

3        phone?

4    A.  Yes, I am.

5    Q.  Thank you.  Let's go back to the application

6        which is Exhibit 6.

7    A.  Okay.

8    Q.  And the fax indicates here that, okay, we're on

9        page 04 of this fax, which is the third page,

10       correct?

11   A.  Yes.

12   Q.  All right.  So we were discussing before the

13       check marks are your check marks, you wrote

14       those, correct?

15   A.  Yes.

16   Q.  The information appearing below the check marks

17       which says, quote, "1992 discharged a firearm,

18       shot up in the air Misd and fine only," that was

19       written by Amber or, no, I'm sorry, that was

20       written by -- strike that -- that was written by

21       Roadmaster?

22   A.  Yes.

23   Q.  Do you remember who at Roadmaster wrote that?

24   A.  Her name, Jean Wallace.

25   Q.  Jean Wallace, thank you.  And did she write this

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

44

1        in your presence?

2   A.   Yes.

3   Q.   And that's based on information that you gave her

4        at that time?

5   A.   Yes.

6   Q.   Now, there's educational background thereafter,

7        do you see that?

8   A.   Yes.

9   Q.   Who checked those boxes?

10  A.   I did.

11  Q.   And who wrote the educational history?

12  A.   Me.

13  Q.   On page 05 of this document who signed this

14       document and dated it and filled in the other

15       handwritten information on it?

16  A.   I did.

17  Q.   All right.  And let's go to page 06.  Do you see

18       page 06?

19  A.   Yes, sir.

20  Q.   Who filled out those check marks?

21  A.   I did.

22  Q.   And you see the section that says Agreement on

23       page 06?

24  A.   Yes, sir.

25  Q.   Who dated and signed that page?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

45

| | |
|---|---|
| 1 | A.  I did. |
| 2 | Q.  So from that I can assume then that you read this |
| 3 | document completely, correct? |
| 4 | A.  Yeah.  Yeah.  I scanned over it, yes. |
| 5 | Q.  You were given a full opportunity to read it |
| 6 | before signing it, correct? |
| 7 | A.  Yes. |
| 8 | Q.  And let's go to page 07 of this document. |
| 9 | A.  Uh-huh. |
| 10 | Q.  Whose handwriting appears on this page? |
| 11 | A.  Mine. |
| 12 | Q.  And, again, you read the Disclosure and Release |
| 13 | before signing and dating this document, correct? |
| 14 | A.  Yes. |
| 15 | Q.  And you were given a full and a complete |
| 16 | opportunity to read that before signing this |
| 17 | document and submitting this application to CRST, |
| 18 | correct? |
| 19 | A.  Yes. |
| 20 | Q.  Now, you're not seeking any actual damages in |
| 21 | this lawsuit, is that correct? |
| 22 | A.  Am I seeking -- the only thing I want is it not |
| 23 | to happen to anyone else, you know. |
| 24 | Q.  That's all you're seeking in this lawsuit? |
| 25 | MR. DOOLEY:  Objection.  Go ahead, |

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

46

1           Bruce.

2   A.   Okay.  Well, honestly, you know, I don't want it

3        to happen to anyone else and go through, you

4        know, the things that I had to go through, like

5        not being able to get a job just because of false

6        background reports, you know, being tooken all

7        the way to Oklahoma City, going through

8        orientation and all of a sudden told, you know,

9        you're not, you're not going to be able to get

10       the job when you know in fact you had every, all

11       the information handed out to you, wasn't nothing

12       trying to be, you know, held back from you, yeah.

13  Q.   But as you testified before, you do not know and

14       have no information about the individual

15       experience of any other CRST truck driver

16       applicant, is that correct?

17             MR. DOOLEY:   Objection.  Go ahead,

18       Bruce.

19  Q.   Is that correct?

20  A.   Yeah.

21  Q.   Now, you said before that you have been or have

22       had experiences where you were unable to obtain

23       employment with other potential employers as a

24       truck driver because of your criminal background

25       check?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

47

1   A.   I believe that probably was maybe one of the

2        issues.

3   Q.   With whom?

4   A.   Well, TMC, Annett Holdings, Stevens, we have

5        Werner.  There's many more, I just don't

6        recollect all the names of the trucking companies

7        that I applied for.

8   Q.   And were you rejected from possible employment by

9        many trucking companies?

10  A.   Yes, sir.

11  Q.   Did you receive criminal background reports with

12       respect to those particular applications?

13  A.   I mean, I guess they followed the same

14       procedures, but I never did get a background

15       report from them either.

16  Q.   You went through the list, TMC, do you know what

17       that stands for, by chance?

18  A.   No.

19  Q.   Any other trucking companies you can think of?

20  A.   Yeah.  Stevens, Werner, Covenant, Prime.  So, I

21       mean, yes.

22  Q.   Are you employed now?

23  A.   Yes, I am.

24  Q.   With whom are you employed?

25  A.   Waste Control Management, Waste Control.

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

48

```
 1   Q.   Are you employed in a truck driving capacity?

 2   A.   Yes, I drive a dump trash truck.

 3   Q.   If I may, I don't want to inquire about

 4        communications you've had with your counsel, by

 5        which I mean Matt and any of Matt's colleagues,

 6        but I would like to know the circumstances by

 7        which you located Matt's firm or perhaps they

 8        located you prior to your engaging them to be

 9        your counsel.

10                     MR. DOOLEY:   Objection.

11   Q.   Can you tell me that?

12   A.   How did I find out about Matt then?

13   Q.   Yes.

14   A.   Through the HireRight class action suit.

15   Q.   Is that the Ryals versus HireRight case?

16   A.   I believe it is.

17   Q.   How did you know about that case, the Ryals case?

18   A.   How did I know?

19   Q.   Yes, sir.

20   A.   Well, because I was a victim in the process of

21        them having the wrong background information.

22   Q.   Okay.  So the Ryals versus HireRight case was a

23        case that was pending in federal court in

24        Virginia, if I recall correctly, right?

25   A.   I don't know what court it was in, I just know I
```

Bruce D. White - May 25, 2012
Videotaped Deposition

49

1       got a letter in the mail showing, you know,

2       saying that I might have been a victim in the

3       HireRight, and which I was, and I just responded

4       to the letter and sent them the information.

5   Q.  Were you a member of the class that settled the

6       HireRight case, the Ryals versus HireRight case?

7   A.  No.  I didn't get any financial compensation, no.

8       I just -- no.

9   Q.  How did you know you were somehow connected with

10      or part of the Ryals versus HireRight case?

11  A.  Just the company HireRight had the wrong

12      information, background information in which I

13      went through the same situation that the people I

14      believe also engaged in that type of activity to

15      HireRight.

16  Q.  Uh-huh.

17  A.  And I just responded to the attorneys that gave,

18      sent the letter to my house and let them know,

19      sent my information back to them letting them

20      know what happened to me.

21  Q.  Do you still have communications in your

22      possession relating to your involvement in or

23      participation in the Ryals versus HireRight

24      litigation?

25  A.  I don't, no.

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

50

1   Q.   Were you a member of the class of plaintiffs that

2        settled that case?

3   A.   No.

4                    MR. DOOLEY:  Objection.  Go ahead.

5            Sorry.

6   A.   No.

7   Q.   If you weren't a member of the class of

8        plaintiffs involved in that case why did you

9        receive a letter, if you know?

10  A.   I don't know.  I couldn't -- I don't know,

11       honestly.  It was a good thing.

12  Q.   What was a good thing?

13  A.   Just receiving a letter, because, I mean, I had

14       the wrong information on my background report.

15  Q.   You had the wrong information on your background

16       report and so when you received a letter from

17       attorneys relating to the Ryals litigation what

18       did you do?

19  A.   I just sent my information in back to the

20       attorneys.

21  Q.   What information did you send in?

22  A.   That my background report that I had got previous

23       from Roadmaster.

24  Q.   Okay.  When did the Ryals case settle?

25  A.   I have no idea.

Bruce D. White - May 25, 2012
Videotaped Deposition

51

```
 1   Q.   Did you receive any compensation relating to the
 2        Ryals class action litigation?
 3   A.   No.
 4   Q.   Did the document that you received -- how many
 5        documents did you receive relating to the Ryals
 6        litigation?
 7   A.   I can't remember.
 8   Q.   Did they appear to be official court looking sort
 9        of documents if you know what I'm saying?  I know
10        the question --
11   A.   I believe it was, but I don't remember how many
12        documents.
13   Q.   For example, let me -- you've looked at some
14        documents here in this litigation and they have
15        this sort of, if you look at Exhibit 3, you have
16        it in front of you, it has in the United States
17        District Court and then it has a plaintiff versus
18        defendant and this sort of formal presentation
19        suggesting a court document.
20   A.   Uh-huh.
21   Q.   When you received documents in the Ryals
22        litigation did it have similar, did it appear
23        similarly to that?
24   A.   Like I said, it could have.  I don't remember.
25        It could have, but I don't remember.  I just know
```

1      I got information from that HireRight case so it

2      could have been in that form.

3   Q.  When did you get that information, if you know?

4   A.  Like I said, I can't recollect the exact date.

5   Q.  Would it have been before you applied for

6      employment as a truck driver with CRST?

7   A.  No.  It was after that.

8   Q.  It was after that?

9   A.  Right.

10  Q.  So as a result of your involvement in or

11     connection with the Ryals litigation you located

12     your current counsel in this lawsuit?

13              MR. DOOLEY:  Jeremy, can I just

14          put a standing objection on so I don't

15          interrupt your flow, but at the time those

16          communications went out we were appointed

17          class counsel and there are enough

18          positions out there that say that we were

19          appointed class counsel, communications

20          with class members can be privileged.  I

21          know you haven't got that far yet, I just

22          want to put that on the record and let you

23          continue.

24              MR. GILMAN:  Right.  Okay.  You

25          were appointed class counsel in Ryals?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

53

1              MR. DOOLEY:  Yes.

2              MR. GILMAN:  Okay.

3    Q.  The --

4              MR. GILMAN:  Matt, let me ask you

5         this, was Mr. White a member of the

6         plaintiff class in the Ryals litigation?

7              MR. DOOLEY:  There were 650,000

8         class members, sitting here today I can't

9         tell you specifically where Mr. White fit

10        into that 650,000 number, size class.  I

11        think his interpretation of your question

12        of being a class member is him trying to

13        figure out whether that means did I get

14        money or not and I think, as you probably

15        read the class notices in that case, there

16        were a number of classes and subclasses and

17        I think that Mr. White was a member of a

18        subclass known as the 1681i class or the i

19        claims class which involved class members

20        who made disputes with HireRight and

21        allegations that HireRight mishandled those

22        disputes.  There were approximately 21,000

23        members of that subclass which was a group

24        of the 650,000 folks, I think he fits into

25        that, but I need my documents to really be

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

54

```
 1              accurate about that.
 2   Q.  In the course of the, of your involvement in the
 3       Ryals versus HireRight class action litigation
 4       did you receive communication from anyone about
 5       participation in another class action lawsuit or
 6       a possible new class action lawsuit?
 7   A.  No, I just sent my information to my lawyer.
 8   Q.  How did -- who approached you or did you approach
 9       counsel about a possible lawsuit against CRST?  I
10       just want to know who broached that subject.
11   A.  Who brought it to me?
12   Q.  Yes.
13   A.  Well, my counsel.
14   Q.  Okay.  Through a letter?
15   A.  Yes.
16   Q.  Do you still have that letter?
17   A.  I don't know.
18              MR. DOOLEY:  Do you understand the
19          question, Bruce?
20   A.  Not exactly.  I mean, I mean, all I know, we got
21       in contact with one another and then, you know,
22       he found out that some issue was wrong.
23              MR. DOOLEY:  Jeremy, can we go off
24          the record for just a second?
25              MR. GILMAN:  Sure.
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

55

```
 1                    THE VIDEOGRAPHER:  Off the record
 2          at 10:10 a.m.
 3                       -   -   -   -
 4          (Thereupon, a discussion was had off the
 5          record.)
 6                       -   -   -   -
 7             (Thereupon, a recess was had.)
 8                       -   -   -   -
 9                    MR. GILMAN:  Back on, please.
10                    THE VIDEOGRAPHER:  On the record
11          at 10:26 a.m.
12  Q.  Mr. White, you testified before, as I recall,
13      that, you know, throughout your career you have
14      sought employment with various trucking companies
15      and have had your application denied on multiple
16      occasions, is that correct?
17  A.  Yes, sir.
18  Q.  And I take it that occurred before you applied
19      for employment at CRST and after you applied for
20      employment at CRST?
21  A.  I believe so, yes.
22  Q.  And some of those rejections of your application
23      that preceded your application at CRST were
24      based, according to your opinion, on your
25      criminal background report?
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

56

1    A.   Yes, sir.

2    Q.   You applied for some of those positions in the

3         earlier part of the 2000s?

4    A.   The trucking positions?

5    Q.   Yes, sir.

6    A.   I believe so, yes.

7    Q.   So say in the 2000 to 2005 period you would have

8         applied for various truck driver positions with

9         various trucking companies?

10   A.   Not -- are you asking did I get hired by trucking

11        companies?

12   Q.   No.  You applied for positions.

13   A.   Yes, I believe so.

14   Q.   And those applications were rejected?

15   A.   Okay.  Now, I had had trucking jobs.

16   Q.   I understand that, but my question, sir, is

17        whether during that period of time you also

18        applied for other trucking jobs say during the

19        2000 to 2005 period?

20   A.   Okay.  I believe so, yes.

21   Q.   Were some of those applications rejected?

22   A.   I believe so, yes.

23   Q.   Were many of them rejected?

24   A.   Yes.

25   Q.   Do you believe they were rejected because of your

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

```
 1        criminal background report?
 2   A.   It's a possibility.
 3   Q.   What do you base that answer on, possibility?
 4   A.   Just because of the HireRight situation where the
 5        information they had was incorrect.
 6   Q.   Did you know the information was incorrect during
 7        that time period?
 8   A.   Of -- well, I knew it -- I didn't know it was
 9        incorrect until the counselor at Roadmaster let
10        me know.
11   Q.   Okay.
12   A.   Not --
13   Q.   Go ahead.  Finish your answer.
14   A.   Okay.  And when she pulled up my background and
15        everything and looked at it then I knew it was
16        incorrect.
17   Q.   How do you know then that the rejections that
18        occurred say during the 2000 to 2005 time frame
19        were based at least in part on an erroneous
20        criminal background report?
21   A.   Well, since she had filed all my job
22        applications, faxed them to the trucking
23        companies with all the information included from
24        my background report --
25   Q.   Uh-huh.
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

58

1   A.   -- that's my belief that that's why I wasn't

2        hired.

3   Q.   Did those other trucking companies provide you

4        with criminal background reports?

5   A.   No, sir.

6   Q.   Did they inform you that they were going to

7        obtain a criminal background report on you?

8   A.   No, sir.

9   Q.   CRST did, though, inform you of that, correct?

10                    MR. DOOLEY:   Objection.

11  A.   In, I guess in the last page on Exhibit 6 that

12       they said they was going to pull up my background

13       report, but they didn't tell me that they, that I

14       could get a copy of it free and it also didn't

15       tell me that I could dispute the information in

16       the background report.  I never got that

17       information.

18  Q.   Well, you knew that from previous applications

19       you submitted to truck driving companies, didn't

20       you?

21                    MR. DOOLEY:   Objection.

22  A.   No.  No, sir.

23  Q.   You had never been informed of that in

24       applications, prior applications you submitted to

25       trucking companies?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

59

1    A.   No, sir.

2    Q.   But you knew that CRST was in fact going to

3         obtain a criminal background report on you?

4    A.   Yes, sir.

5    Q.   Did you request a copy of the criminal background

6         report from CRST?

7    A.   No, sir.

8    Q.   You knew that Roadmaster was obtaining a criminal

9         background report on you before you applied for

10        CRST, correct?

11   A.   No, sir.

12   Q.   Did you obtain a copy of the criminal background

13        report from Roadmaster after they received it?

14   A.   Yeah, I got it after she found out the reason why

15        I wasn't getting hired.

16   Q.   Did you -- and what about all the positions you

17        applied for between 2000 and 2005, what then is

18        your basis for saying that you were rejected from

19        those positions --

20   A.   Because --

21   Q.   -- because of your criminal background?

22   A.   Because the job placement, coordinator, she

23        provided them with all the information so all

24        those trucking companies that I applied for was

25        through Roadmaster.

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

60

```
 1                    MR. DOOLEY:  Bruce, do you
 2              understand he's talking about between the
 3              year 2000 and the year 2005 when he's
 4              asking his question?
 5   A.   That's when I was in school, Roadmaster.
 6   Q.   When were you at Roadmaster?
 7   A.   They -- I'm not for sure what day I was there.
 8   Q.   No, not the day, approximately when were you at
 9        Roadmaster, what year?
10   A.   It was around 2009.
11   Q.   Okay.  Did -- you mentioned before that Brandi
12        Northway from CRST initiated communication with
13        you.
14   A.   Uh-huh.
15   Q.   And do you remember generally what that
16        communication was about?
17   A.   Basically I guess it was bus information,
18        confirmation number, hotel information,
19        orientation time.
20   Q.   Do you have any other recollection of the
21        communication you had with her?
22   A.   Basically that, yeah, just that right there.
23   Q.   Do you have any notes of that communication?
24   A.   No.
25   Q.   Do you have any, do you maintain a diary of any
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

61

1      kind?

2   A.  No.

3   Q.  A journal of any kind?

4   A.  No.

5   Q.  Do you have any email communications relating to

6       that?

7   A.  No.

8   Q.  Do you know the date of that communication?

9   A.  No.  I don't remember the date.

10  Q.  Do you know the time that that communication

11      occurred, the time of the day?

12  A.  No.

13  Q.  Do you remember how long the communication was?

14  A.  No.

15  Q.  You don't remember the entirety of the

16      communication that you had with Brandi Northway

17      on that day, do you?

18              MR. DOOLEY:  Objection.

19  A.  Well, I'm remembering she had to give me the

20      information about the travel plan, the bus

21      confirmation number, also the hotel and then

22      orientation time.

23  Q.  Did you attend orientation?

24  A.  Yes, I did.

25  Q.  And did you talk to any other CRST applicants at

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

62

```
 1      orientation?
 2  A.  Just briefly to say hi and bye, you know, hi.  I
 3      don't remember their name, just speaking, you
 4      know, casually.
 5  Q.  You have no records of any of the individuals
 6      with whom you spoke at that orientation?
 7  A.  Well, I spoke to one guy that had a wreck, he hit
 8      a bridge going 65 miles an hour, he was in
 9      training, a student, and he was telling me that
10      CRST wasn't a good company to work for.
11  Q.  Uh-huh.
12  A.  And that was after the fact that I was told that
13      I was -- don't no -- no longer needed.  Well, he
14      said you don't really need to work for there
15      anyway because it's not a good company.  And that
16      was one of their employees.
17  Q.  It was one of whose employees?
18  A.  CRST.
19  Q.  Do you remember who said that?
20  A.  He was a dispatch, he worked in dispatch, because
21      he, once he had the accident he went to dispatch.
22  Q.  Do you remember the name of that individual?
23  A.  No, sir.
24  Q.  You're unable to identify that person, is that
25      correct?
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

63

```
 1    A.   If I see him again.  Now, I can remember faces,
 2         but names I kind of have a problem.  I can
 3         remember the face.
 4    Q.   But do you have any mechanism that you can think
 5         of for identifying that person by name?
 6    A.   No, sir.
 7    Q.   After the orientation or at the orientation do
 8         you remember any communications you had with
 9         anyone from CRST?
10    A.   Yes, it was one of their I guess recruiters.  And
11         she told me that the head guy seen the
12         information and he didn't want to mess with it,
13         so --
14    Q.   Is that the sum, is that the totality of the
15         communication you had with that individual?
16    A.   Yes, sir.
17    Q.   Do you remember anything else about that
18         communication?
19    A.   No, just that I wasn't hired, you know.
20    Q.   Okay.  Do you remember who that person was?
21    A.   A female, that's all I know.  I don't remember
22         her name.
23    Q.   Do you remember the date upon which that
24         communication took place?
25    A.   Honestly, I can't remember the date.
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

64

```
 1   Q.  What did you say after that, did you --
 2   A.  I said okay, you know.  Well, what I told them, I
 3       was like, well, you have my information, why come
 4       you didn't let me know before I got on the bus
 5       and come all the way down here and everything,
 6       you know.  And she said, well, I'm sorry, Bruce,
 7       he seen it and he just, you know, didn't want to
 8       mess with it.
 9   Q.  When you refer to "he," "he seen it," who is he,
10       do you know?
11   A.  Well, she told me it was the head person over at
12       CRST, the head, I guess the owner, he had the
13       final say so.
14   Q.  Did she -- do you know who that person was who
15       said that to you?
16   A.  I don't remember his name.  I know it was a guy.
17       I don't remember his name.
18   Q.  A guy said that to you or I thought you --
19   A.  No, no, no.  The female told me, but she said
20       that he, the guy, the main guy over the CRST, the
21       owner, he didn't want to mess with it anymore.
22       He didn't --
23   Q.  Did she -- you don't know who that person was who
24       said that to you, correct?
25   A.  I don't know the lady, job, the recruiter's name,
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

65

```
 1        I don't know her name.
 2   Q.   And you don't know the name of the person to whom
 3        she was referring, is that correct?
 4   A.   Right.  Well, she probably said it, but I can't
 5        remember his name.
 6   Q.   Okay.  Let me go back to your application for a
 7        moment.  Look at the, look at page 03 of your
 8        application.  You were asked to identify your
 9        employment record for the past ten years, is that
10        right?
11   A.   Uh-huh.
12   Q.   Did you fill this out completely?
13   A.   No.
14   Q.   Did you provide your complete employment
15        application, employment history for the preceding
16        ten years in this application?
17   A.   No.
18   Q.   Why didn't you complete that in a, why
19        didn't you --
20   A.   Its entirety?
21   Q.   Why didn't you fill out that information
22        completely?
23   A.   I just did the most recent jobs that I had at
24        that time.
25   Q.   Okay.
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

66

```
 1   A.   Yeah.
 2   Q.   Did you identify -- so you didn't answer this
 3        question accurately, is that right?
 4                      MR. DOOLEY:   Objection.
 5   A.   Huh?  No.  I just gave them the most recent jobs
 6        that I had, contacts and everything.  Uh-huh.
 7   Q.   The question asked, the application asked you to
 8        fill out your employment record for the past ten
 9        years, right?
10   A.   Uh-huh.
11   Q.   You saw that when you completed this application,
12        correct?
13   A.   Right.
14   Q.   You didn't fill out your employment record for
15        the past ten years including periods of
16        unemployment, is that right?
17   A.   Okay.  Yeah.
18   Q.   That's correct?
19   A.   That's correct.
20   Q.   Why did you not fill out this application
21        completely?
22   A.   Because I, it was like I didn't want to give them
23        every job I worked for for the last ten years and
24        it seemed like they didn't really mind anyway,
25        you know.  I just gave them most current and --
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

67

| | | |
|---|---|---|
| 1 | Q. | Why didn't you want to give them every job you |
| 2 | | had had for the past ten years? |
| 3 | A. | Honestly, I couldn't remember like addresses and |
| 4 | | phone numbers and things like that, that's the |
| 5 | | reason why I didn't put everything.  These two |
| 6 | | jobs I probably had the addresses and remembered |
| 7 | | certain, you know, things about them that I could |
| 8 | | write down at that particular time. |
| 9 | Q. | Did you indicate anywhere on this application |
| 10 | | that you were not providing a complete answer to |
| 11 | | the question because you couldn't remember the |
| 12 | | other information? |
| 13 | A. | No. |
| 14 | Q. | So you suggested in your application that these |
| 15 | | two jobs constituted your entire employment |
| 16 | | record for the past ten years when in fact that |
| 17 | | was inaccurate, is that right? |
| 18 | | MR. DOOLEY:  Objection. |
| 19 | A. | Okay.  Well, I wasn't, I wasn't intending to tell |
| 20 | | them, you know, say that these are the only jobs |
| 21 | | I had for the last ten years.  Now, if they |
| 22 | | wanted me to provide more jobs then I would have |
| 23 | | to take the application home and get, you know, |
| 24 | | other information. |
| 25 | Q. | But they asked specifically to provide the |

68

```
 1        employment record for the past ten years?

 2   A.   Right.  Well --

 3   Q.   Correct?

 4   A.   Yes, they did.  Uh-huh.

 5   Q.   And you did not do that, correct?

 6   A.   Yes.  I didn't give them all the jobs I had for

 7        ten years, no.

 8   Q.   So this application misrepresented your

 9        employment history for the preceding ten years,

10        correct?

11                    MR. DOOLEY:   Objection.

12   A.   Huh?

13   Q.   Is that correct?

14   A.   No, it didn't.

15   Q.   This did not misrepresent your employment history

16        for the preceding ten years?

17   A.   No.  I, I worked jobs, but I didn't include it in

18        the application.  Now, if they would have had a

19        problem where they would have told me, well, this

20        is not complete, Bruce, we want you to fill this

21        all out, I'd be like okay.  But normally, you

22        know, some you can just put the current jobs and

23        then they'll call the job and then okay.  But if

24        they have, if they say, well, you need to at

25        least provide more work history and I'll be like
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

69

```
 1        okay, I'll do that, you know.  But if they don't

 2        ask for it -- I know they asked for the last ten

 3        years, but I didn't put it down so, and they

 4        didn't make a big deal out of it.

 5   Q.   Uh-huh.  So you knew when submitting this

 6        application that you had worked other positions

 7        for the preceding ten years but were not

 8        including that in your application, correct?

 9   A.   Just because I didn't remember numbers and dates

10        and the addresses and stuff, right, I didn't have

11        all that information on hand.

12   Q.   But my specific question is you knew when you

13        submitted this application that the information

14        provided in your answer to this particular

15        question seeking your employment record for the

16        past ten years, you knew that this answer was

17        inaccurate because it was incomplete, correct?

18                  MR. DOOLEY:   Objection.

19   Q.   Is that correct?

20   A.   I didn't know it was inaccurate.  I just put what

21        I recollect, my jobs I had recently.

22   Q.   Let me, I want to make sure that you answer the

23        question directly, with all due respect, sir.

24   A.   Okay.  I understand.  Yes, sir.

25   Q.   The question asked a specific question.
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

70

1   A.   Uh-huh.   Ten years.

2   Q.   Ten years, right?

3   A.   Yeah.   I didn't provide ten years of work history

4        just because I didn't remember addresses and

5        numbers, I just gave them what I did remember and

6        it was sufficient to get the application process.

7   Q.   Did you know when you submitted this you worked

8        for other employers during that ten-year period?

9   A.   Yes, I did.

10  Q.   Did you ever supplement this application to

11       provide the information that you did not include

12       when you submitted it?

13  A.   I don't understand the question.

14  Q.   Do you know what it means to supplement?

15  A.   Nutrients you mean?

16  Q.   Yeah.   Did you ever, when you got home did you

17       ever, did you notify CRST that there were more

18       employers that I worked for in the past ten

19       years, but I don't remember right now who they

20       are so I'm going to go back and get that

21       information and fill it in so that my application

22       is complete, did you do that?

23  A.   No, I did not.

24  Q.   Did you attempt to add to your response so that

25       it would in fact be a complete response to the

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

71

1      question?

2  A.   No, I did not.

3  Q.   Okay.  So you allowed this information to

4       constitute your full response to this part of

5       your employment application, correct?

6  A.   Yes, sir.

7  Q.   And as presented it was inaccurate because it

8       didn't constitute the entire ten-year employment

9       history, is that right?

10  A.  Well, I believe so.

11  Q.  Okay.

12                      -  -  -  -

13       (Thereupon, Defendant's Exhibit 15,

14       Misdemeanor Information, was marked for

15       purposes of identification.)

16                      -  -  -  -

17  Q.  Now, let me, I'm going to hand you what's been

18      marked for identification as Exhibit 15 and ask

19      if you'd be kind enough to look at that.

20              MR. DOOLEY:  We're going out of

21          order, right?

22              MR. GILMAN:  Yeah.

23  Q.  Have you had a chance to look at Exhibit 15?

24  A.  Yes.

25  Q.  Do you recognize this document?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

72

1    A.   Yes.

2    Q.   Are you the Bruce Dewayne White that is

3         identified as a defendant in this document?

4    A.   Yes.

5    Q.   And do you recall this proceeding, the State of

6         Oklahoma versus Bruce Dewayne White?

7    A.   Yes.

8    Q.   Okay.  You were charged in this Misdemeanor

9         Information with three counts, is that correct?

10   A.   Yes.

11                  MR. DOOLEY:  Jeremy, just so I

12             don't interrupt you, I'm just going to put

13             a standing objection on the record as to

14             any questions about this particular

15             document, Exhibit 15, and how it may relate

16             to his application and just leave it at

17             that.

18   Q.   The, this document is indeed a true and correct

19        copy of the Misdemeanor Information that was

20        filed against you by the State of Oklahoma in

21        January 1999, correct?

22   A.   Okay.  Yes.

23   Q.   Is that true?

24   A.   Uh-huh.

25   Q.   Okay.  You remember this criminal case against

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

73

```
 1        you by the State of Oklahoma, right?

 2   A.   Okay.  Yes.

 3   Q.   Do you?

 4   A.   Yes.

 5   Q.   Have you always been aware of this criminal case?

 6   A.   Yes.

 7   Q.   Okay.

 8                         -   -   -   -

 9        (Thereupon, Defendant's Exhibit 16, Judgment

10        and Sentence on Plea of Nolo Contendere, was

11        marked for purposes of identification.)

12                         -   -   -   -

13   Q.   And let me hand you what's been marked for

14        identification as Exhibit 16.  I'm going to hand

15        you what has been marked for identification as

16        Exhibit 16 and ask you to look that over and

17        identify it.

18              MR. DOOLEY:  And, Jeremy, if

19              you'll permit I'll just enter a standing

20              objection on like grounds as to the

21              questions regarding Exhibit 16 and its

22              relevance to the case.

23   Q.   Let me know when you've had a chance to review

24        that document.

25   A.   Okay.
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

74

```
 1    Q.   Okay.  You've had a chance to look at and review

 2         Exhibit 16?

 3    A.   Yes.

 4    Q.   And are you the same Bruce Dewayne White as the

 5         defendant identified in this exhibit?

 6    A.   Yes, I am.

 7    Q.   And this relates to the same criminal case that

 8         we referred to before with respect to Exhibit 15?

 9    A.   Yes, sir.

10    Q.   You entered a plea of nolo contendere to a charge

11         of hit and run collision which was asserted

12         against you in Count 1 of the Misdemeanor

13         Information that was previously identified as

14         Exhibit 15, correct?

15    A.   Yes, sir.

16    Q.   And you were found guilty of that count, correct?

17    A.   Yes, sir.

18    Q.   And this is indeed a true and correct copy of the

19         judgment and sentence of plea -- I'm sorry,

20         judgment and sentence on plea of nolo contendere

21         misdemeanor that was entered against you by the

22         State of Oklahoma in July of 1999, correct?

23    A.   Yes, sir.

24                        -   -   -   -

25              (Thereupon, Defendant's Exhibit 17, Judgment
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

75

1            and Sentence on Plea of Nolo Contendere, was

2            marked for purposes of identification.)

3                         -   -   -   -

4    Q.   I'm going to hand you what's been marked for

5         identification as Exhibit 17.

6    A.   Okay.

7                    MR. DOOLEY:   Jeremy, I'll enter my

8            standing objection and to what I assume

9            will be also 18.

10   Q.   Have you completed your review of Exhibit 17?

11   A.   Yes, sir.

12   Q.   Okay.  Are you the same Bruce Dewayne White as

13        the defendant who is identified in Exhibit 17?

14   A.   Yes, I am.

15   Q.   And this document again relates to the case of

16        State of Oklahoma versus Bruce Dewayne White,

17        defendant, correct?

18   A.   Yes, it does.

19   Q.   And this is a judgment and sentence on plea of

20        nolo contendere misdemeanor in which the court

21        found you guilty of driving under suspension

22        which was Count 2 of the Misdemeanor Information

23        filed against you by the State of Oklahoma that

24        we previously identified as Exhibit 15, correct?

25   A.   Yes, sir.

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

76

```
 1   Q.   You entered a plea of nolo contendere on that

 2        driving under suspension charge and the court

 3        found you guilty on that charge?

 4   A.   Yes, sir.

 5   Q.   Now, Count 2, if you want to look at Exhibit 15,

 6        do you have Exhibit 15?

 7   A.   Uh-huh.

 8   Q.   Count 2 alleged that Bruce Dewayne White, on or

 9        about November 9, 1998, in Tulsa County, State of

10        Oklahoma and within the jurisdiction of this

11        Court did commit the crime of driving under

12        suspension, a misdemeanor, by unlawfully,

13        willfully, knowingly and wrongfully drive and

14        operate a motor vehicle, to-wit:  a 1988 Nissan

15        bearing the tag, number sign, #OK IJV-407, on a

16        public highway in the State, to-wit 1130 North

17        Lewis, in Tulsa, Oklahoma, Tulsa County,

18        Oklahoma, without first obtaining a Driver's

19        License therefor driving while under suspension,

20        correct?

21   A.   Yes, sir.

22   Q.   And that charge asserted against you was in fact

23        true, is that correct?

24   A.   Yes, sir.

25   Q.   And you did not contest that charge and were
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

77

1      found guilty as charged, right?

2  A.  Yes, sir.

3  Q.  Were you aware of the fact that this conviction

4      had been entered against you?  You knew it was

5      entered against you, right?

6  A.  Yes, sir.

7  Q.  You appeared in court on this, correct?

8  A.  Yes, sir.

9  Q.  And at the time this was entered against you you

10     were an adult, correct?

11 A.  Yes, sir.

12                    -   -   -   -

13         (Thereupon, Defendant's Exhibit 18, Tulsa

14         County Work Program (An Alternative to

15         Incarceration) Application and Information,

16         was marked for purposes of identification.)

17                    -   -   -   -

18 Q.  And let me hand you what's been marked for

19     identification as Exhibit 18.  Handing you what's

20     been marked for identification as Exhibit 18, can

21     you identify that document, please?

22 A.  Okay.

23 Q.  Okay.  Can you identify that document, please?

24 A.  Yes.

25 Q.  What is that document?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

78

```
 1   A.   District Court of Tulsa County, State of
 2        Oklahoma, State of Oklahoma, versus Bruce Dewayne
 3        White, leaving the scene of an accident offense.
 4   Q.   All right.  Let me ask you this, if I may, just
 5        to --
 6   A.   Uh-huh.
 7   Q.   -- move the process along and help you identify
 8        this.  Are you the Bruce Dewayne White identified
 9        in this document?
10   A.   Yes.
11   Q.   I'm sorry, please?
12   A.   Yes.
13   Q.   Thank you.  And this relates to the criminal
14        sentence that was imposed against you as a result
15        of the guilty conviction entered against you on
16        those three charges, right?
17   A.   Yes.
18   Q.   And this correctly identifies your address as
19        1627 East 2nd Street, Tulsa, Oklahoma 71006 at
20        that time?
21   A.   Yes, sir.
22   Q.   Now, let's go back to Exhibit 6 for a moment,
23        please.  Do you have Exhibit 6?
24   A.   Uh-huh.  Yes, sir.
25   Q.   Let's go to the third page of that which is
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

79

1      identified by the fax page number 04, do you see

2      that?

3  A.   Okay.

4  Q.   And let's go to the various boxes that you

5      checked.  Do you see number C or letter C?

6  A.   Yes.

7  Q.   It's the middle of the page.  This part of your

8      application asked whether you have ever had a

9      license, permit or privilege suspended or

10     revoked, is that correct?

11 A.   Yes, it does.

12 Q.   What did you answer?

13 A.   No.

14 Q.   That was not true, is that correct?

15 A.   I heard in the last ten years.

16 Q.   What does the question say specifically?  Look at

17     C.

18 A.   It says have you ever had a license, permit,

19     privilege suspended or revoked.

20 Q.   The word for the last ten years appears nowhere

21     in this application with respect to that

22     question, is that right?

23 A.   Yes.

24 Q.   And in fact the word ever is even underlined for

25     emphasis, isn't that true?

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

80

1    A.   Okay.   Right.

2    Q.   And your license in fact had been suspended, is

3         that correct?

4    A.   Yes.

5    Q.   But you wrote that it had never been suspended,

6         is that correct?

7                        MR. DOOLEY:   Objection.

8    A.   Yes.

9    Q.   That answer was inaccurate, is that right?

10   A.   Yes.

11   Q.   Now, you were aware when you completed this

12        application that your license had in fact been

13        suspended in the past, correct?

14   A.   Yes.

15   Q.   But yet knowing that you still represented in

16        this employment application that your license had

17        never been suspended, is that correct?

18   A.   Yes.

19   Q.   Would you agree with me that you misrepresented

20        that fact on your application to CRST?

21   A.   Well, honestly, I might have not recollected,

22        remembered it got suspended because it was like a

23        long time ago and I was assuming that they only

24        go ten years back, but it didn't say it in the

25        application, but that's what I was under the

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

81

1       assumption, that they only go ten years back from

2       that, your record.

3    Q.  And what was that assumption based on when the

4       application --

5    A.  I might have --

6    Q.  I'm sorry?

7    A.  I might have spoke to the counselor or the, my

8       job coordinator, I mean, placement coordinator

9       and asked 'em, and, you know, she possibly told

10       me, well, it's probably just ten years back.

11    Q.  You're testifying under oath now.

12    A.  Okay.

13    Q.  That conversation did not take place with the

14       coordinator, you're thinking that perhaps it did,

15       but you don't recall that conversation, is that

16       correct?

17                    MR. DOOLEY:   Objection.

18    A.  Okay.  Like I said, I don't recall.  You know,

19       you brought this to my attention and that's been

20       so long ago I forgot about that.

21    Q.  If you thought that the application sought only

22       information that was for the past ten years then

23       why then at the bottom of this application on

24       page 04 did you refer to a 1992 event?  1992 was

25       more than ten years ago.

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

82

1   A.   Uh-huh.

2   Q.   Is that correct?

3   A.   Yeah.   But that's not my handwriting.

4   Q.   But that's based on information you provided to

5        the counselor you claimed.

6   A.   She had information already pulled up on my

7        background, she knew that.  And I didn't know

8        that that was the reason why that I wasn't

9        getting a job at that particular time.  When she

10       pulled up my background report she said on your

11       background report you have something on there

12       that's saying reck, I mean, discharge of firearm

13       felony and then she brought it to my attention.

14            I remember the incident, yes.  Okay.  So

15       that's the reason why I thought that I wasn't

16       getting no job, because it was a felony instead

17       of a misdemeanor, which they had the wrong

18       information.

19   Q.   Uh-huh.

20   A.   Yes.

21   Q.   Well, you saw this application before it was

22       submitted, correct?

23   A.   Uh-huh.

24   Q.   You certified that the application, the

25       information contained in the application was true

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

83

1      and complete to the best of your knowledge,

2      right?

3  A.  To the best of my knowledge, yes, sir.

4  Q.  You knew that you had been convicted of a

5      misdemeanor of driving while under suspension,

6      right?

7  A.  Yes, sir.  Uh-huh.

8  Q.  You never presented that information to CRST in

9      your job application, is that correct?

10 A.  Yes, sir.

11 Q.  You were trying to get a job as a truck driver,

12     correct?

13 A.  Yes, sir.

14 Q.  You were trying to get a job that required you to

15     drive?

16 A.  Yes, sir.

17 Q.  This question asked you if you had ever had your

18     license suspended, that's a pretty relevant

19     question for someone who's seeking a truck driver

20     job, wouldn't you agree with me on that?

21              MR. DOOLEY:   Objection.

22 Q.  Would you agree with me on that?

23 A.  I believe so.

24 Q.  But you never provided that information, correct?

25 A.  No.  I didn't provide the information, yeah.  I

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

84

1      must have not remembered.  I mean, you know, I

2      didn't remember.

3  Q.  Well, let me, let's go back to this court

4      proceeding.

5  A.  Uh-huh.

6  Q.  This court proceeding lasted several months, is

7      that right?

8  A.  The court proceedings?

9  Q.  Yeah.

10  A.  I think I was in jail and then I got out and

11      signed the paper admitting guilt and paid a fine

12      and that was it.

13  Q.  Well, let me ask you a question about that.  On

14      this hit and run collision, driving under

15      suspension, and taxes due state charges, there

16      were three charges assessed against you, right,

17      Mr. White?

18  A.  Okay.

19  Q.  Is that correct?

20  A.  Yeah.

21  Q.  You were arrested?

22  A.  Yeah.  I went to jail.

23  Q.  Okay.  Who arrested you, the Tulsa sheriff's

24      department?

25  A.  Tulsa police.

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

85

```
 1   Q.   They arrested you as a result of the hit and run
 2        and -- well, why don't you tell me, do you
 3        remember?
 4   A.   Yeah.  Well, it happened, hit and run, I left the
 5        scene of an accident and they came and arrested
 6        me.
 7   Q.   Okay.
 8   A.   Uh-huh.
 9   Q.   And they sent you to the county jail?
10   A.   Yes, sir.
11   Q.   How long were you in the county jail for?
12   A.   I don't remember.
13   Q.   Were you in the county jail for a matter of hours
14        or a matter of days or a matter of weeks?
15   A.   It could have been days.
16   Q.   May I ask, with all due respect, if that's the
17        only time you've been incarcerated?
18                   MR. DOOLEY:  Objection.
19   A.   No, I've been in jail for other issues, but, I
20        mean, at that time I was in jail, yeah, traffic,
21        stuff like that.
22   Q.   I take it that that was an event that you
23        remembered afterwards, right?
24   A.   I'm sorry?
25   Q.   Was that an event that you remembered afterwards?
```

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

86

1   A.  Every time I go --

2                   MR. DOOLEY:  After what?

3   A.  After what?

4                   MR. DOOLEY:  I'm sorry.

5   A.  Yeah.

6   Q.  After you were incarcerated?

7   A.  Yeah.  I remember when I go to jail, yeah,

8       because it's, the experience.  Have you ever went

9       to jail?

10  Q.  And you knew why you were in jail, right?

11  A.  Yeah.

12  Q.  Okay.

13                  MR. GILMAN:  I'm going to go off

14          the record now for a little while.

15                  MR. DOOLEY:  Good.

16                  MR. GILMAN:  And then after we're

17          going to wrap up your deposition.

18                  THE VIDEOGRAPHER:  Off the record

19          at 11:02 a.m.

20                      -  -  -  -

21          (Thereupon, a recess was had.)

22                      -  -  -  -

23                  MR. GILMAN:  Back on.

24                  THE VIDEOGRAPHER:  On the record

25          at 11:20 a.m.

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

87

1   Q.   You testified before that you attended and, or

2        you appeared for a CRST orientation session.

3   A.   Yes, sir.

4   Q.   Okay.  Do you remember where that was?

5   A.   Oklahoma City.

6   Q.   Do you remember the approximate date of that?

7   A.   Matter of fact -- no, it don't even say it on the

8        pre-hire letter.  I don't know exactly what date

9        it was.

10   Q.   Okay.

11   A.   I can't remember.

12   Q.   And do you recall who you spoke to from CRST at

13        that, when you appeared at that orientation

14        session?

15   A.   Like I say, I didn't remember the job coordinator

16        name, dispatch whatever her name was when I got

17        there, I don't remember her name, the one that

18        told me they no longer need me.  I don't remember

19        her name.

20   Q.   Okay.  And so you don't remember the person from

21        CRST with whom you spoke at the orientation

22        session?

23   A.   No, sir.

24   Q.   Okay.  And did they tell you -- do you remember

25        specifically what they told you beyond what you

**Bruce D. White - May 25, 2012**
**Videotaped Deposition**

88

1       said before?

2   A.  Yes, they told me that he seen my background

3       report and he didn't want to mess with it.

4   Q.  Did you receive any document from anyone at CRST

5       at that time?

6   A.  No, I didn't.

7   Q.  Is it that you don't recall receiving a document

8       or you --

9   A.  No, I know I didn't receive.  Just a bus ticket

10      back home.

11  Q.  And you knew at that time that it was because of

12      your criminal background report?

13  A.  That's what she told me.

14  Q.  So when you left you knew it was because of that?

15  A.  Yes.

16  Q.  What steps did you take thereafter to address the

17      criminal background report?

18  A.  I talked to Roadmaster and they sent the lady

19      from Florida down here to further help, I believe

20      further to help me get a job and I ended up

21      getting a trucking job with Wiltran, okay, after

22      the fact, but, I mean, it took like maybe three

23      to four months, maybe six months to get my

24      employment with Wiltran.

25  Q.  Okay.  Do you remember anything else about the

Bruce D. White - May 25, 2012
Videotaped Deposition

89

1      orientation session?

2   A.  Just getting up early in the morning, sitting in

3       the driver lounge, waiting for the instructor

4       people to get there, went in the room, classroom,

5       sat down at the desk, they had paperwork in front

6       of us, we started filling out the paperwork and

7       maybe 30 minutes or 40 minutes into the session

8       the lady called me to the back saying that, that

9       they don't, you know, they couldn't use me

10      because of my background.

11                  MR. GILMAN:  Let's go off the

12              record for a moment.

13                  THE VIDEOGRAPHER:  Off the record

14              at 11:23.

15                      -  -  -  -

16                  (Off the record.)

17                      -  -  -  -

18                  MR. GILMAN:  Back on.

19                  THE VIDEOGRAPHER:  On the record

20              at 11:24.

21                  MR. GILMAN:  Mr. White, we have no

22              further questions at this time.  We're

23              going to adjourn the deposition.  If there

24              is any need to examine you further we will

25              coordinate that with your counsel.

**Videotaped Deposition**

90

1           THE WITNESS:  Yes, sir.

2           MR. GILMAN:  Okay.  Do you want to

3      instruct him as to reading?

4           MR. DOOLEY:  We'll read.

5           THE VIDEOGRAPHER:  You also have a

6      right to review the video or you could

7      waive that right, will you waive the

8      viewing of the videotape?

9           MR. DOOLEY:  We'll waive the

10      viewing of the videotape.

11           THE VIDEOGRAPHER:  This concludes

12      the deposition.  The time is 11:25 a.m.

13

14           _____

15           BRUCE D. WHITE

16

17

18

19

20

21

22

23

24

25

**Videotaped Deposition**

91

```
 1

 2

 3                    C E R T I F I C A T E

 4
      The State of Ohio, )   SS:
 5    County of Cuyahoga.)

 6


 7          I, Dawn M. Fade, a Notary Public within and
      for the State of Ohio, authorized to administer
 8    oaths and to take and certify depositions, do
      hereby certify that the above-named witness was
 9    by me, before the giving of their deposition,
      first duly sworn to testify the truth, the whole
10    truth, and nothing but the truth; that the
      deposition as above-set forth was reduced to
11    writing by me by means of stenotypy, and was
      later transcribed into typewriting under my
12    direction; that this is a true record of the
      testimony given by the witness; that the deponent
13    or a party requested that the deposition be
      reviewed by the deponent; that said deposition
14    was taken at the aforementioned time, date and
      place, pursuant to notice or stipulations of
15    counsel; that I am not a relative or employee or
      attorney of any of the parties, or a relative or
16    employee of such attorney or financially
      interested in this action.
17
            IN WITNESS WHEREOF, I have hereunto set my
18    hand and seal of office, at Cleveland, Ohio, this
      _____ day of _____, A.D. 20_____.
19

20

      _____,
21    Dawn M. Fade, Notary Public, State of Ohio
      1750 Midland Building, Cleveland, Ohio  44115
22    My commission expires October 27, 2012

23

24

25
```

Bruce White, etc. v.
CRST, Inc.

Videotaped Deposition

Bruce D. White
May 25, 2012

**#**

**#OK (1)** 76:15

**0**

**03 (1)** 65:7
**04 (3)** 43:9;79:1;81:24
**05 (1)** 44:13
**06 (3)** 44:17,18,23
**07 (1)** 45:8

**1**

**1 (8)** 9:21;10:1,8;15:2;
21:11,20;31:25;74:12
**1:11-CV-02615 (1)** 5:11
**10:10 (1)** 55:2
**10:26 (1)** 55:11
**11:02 (1)** 86:19
**11:20 (1)** 86:25
**11:23 (1)** 89:14
**11:24 (1)** 89:20
**1130 (1)** 76:16
**15 (9)** 71:13,18,23;72:15;
74:8,14;75:24;76:5,6
**16 (5)** 73:9,14,16,21;74:2
**1627 (3)** 8:25;9:2;78:19
**1681i (1)** 53:18
**17 (4)** 74:25;75:5,10,13
**18 (7)** 21:18;22:3,18;75:9;
77:13,19,20
**19 (2)** 23:24;29:15

**1988 (1)** 76:14
**1992 (7)** 26:20;28:3;33:21;
34:25;43:17;81:24,24
**1998 (1)** 76:9
**1999 (2)** 72:21;74:22

**2**

**2 (8)** 15:21;16:2;30:9,11;
32:6;75:22;76:5,8
**2000 (5)** 56:7,19;57:18;
59:17;60:3
**2000s (1)** 56:3
**2005 (5)** 56:7,19;57:18;
59:17;60:3
**2009 (6)** 29:15,16;35:12;
37:5;38:9;60:10
**2012 (2)** 5:3;16:19
**21,000 (1)** 53:22
**2223 (1)** 42:22
**25th (1)** 5:3
**26th (1)** 16:19

**2nd (2)** 8:25;78:19

**3**

**3 (7)** 22:24;23:5,6;32:2,6,7;

**51:15
30 (1)** 89:7
**320 (2)** 6:17;17:24

**4**

**4 (4)** 16:21;21:12,13;32:9
**40 (1)** 89:7
**42 (1)** 26:1

**6**

**6 (8)** 31:2,7,10;41:6;43:6;
58:11;78:22,23
**65 (1)** 62:8
**650,000 (1)** 53:7,10,24
**664-9991 (1)** 42:19

**7**

**7 (4)** 16:23;17:22,23;19:3
**71006 (1)** 78:19
**74128 (1)** 17:25

**9**

**9 (1)** 76:9
**9:08 (1)** 5:2
**9:19 (1)** 15:7
**9:20 (1)** 15:15
**9:38 (1)** 30:17
**9:40 (1)** 30:22
**9:52 (1)** 42:2
**9:54 (1)** 42:9
**918 (1)** 42:19

**A**

**able (3)** 19:9;46:5,9
**absolutely (2)** 8:12,21
**acceptable (2)** 8:16,23
**accident (3)** 62:21;78:3;
85:5
**accommodate (1)** 8:12
**according (2)** 23:22;55:24
**accurate (1)** 54:1
**accurately (2)** 25:20;66:3
**action (14)** 6:13;19,24;9:22;
10:12;12:23;18:21;
21:16;23:14;48:14;51:2;
54:3,5,6
**activity (3)** 39:17,17;49:14
**actual (2)** 9:11;45:20
**add (1)** 70:24
**address (11)** 6:16;13:3,5,7,
10,14,16,19,21;78:18;
88:16
**addresses (4)** 67:3,6;69:10;
70:4
**adjourn (1)** 89:23
**admitting (1)** 84:11
**adult (1)** 77:10

**advise (1)** 8:11
**after (20)** 22:7,10;29:18;
36:18;38:3;39:2;40:20;
52:7,8;55:19;59:13,14;
62:12;63:7;64:1;86:2,3,
6,16;88:21
**afterwards (3)** 20:7;85:23,25
**again (3)** 45:12;63:1;75:15
**against (17)** 6:19;7:13;10:12,
13;54:9;72:20,25;74:12,
21;75:23;76:22;77:4,5,
9;78:14,15;84:16
**age (1)** 6:1
**ago (3)** 80:23;81:20,25
**agree (3)** 80:19;83:20,22
**Agreement (1)** 44:22
**ahead (6)** 22:19;38:22;
45:25;46:17;50:4;57:13
**air (1)** 43:18
**allegation (1)** 22:3
**allegations (4)** 10:18;18:21;
21:16;53:21
**alleged (2)** 10:12;76:8
**allowed (1)** 71:3
**along (1)** 78:7
**Alternative (1)** 77:14
**always (1)** 73:5
**Amber (3)** 42:13,24;43:19
**Amended (1)** 9:22;21:19;
22:4
**among (1)** 19:2
**amplify (1)** 9:15
**Andrews (1)** 5:12
**Annett (9)** 27:14,16,22,24;
28:12;29:9,11,25;47:4
**anniversary (1)** 18:13
**answer (19)** 8:14;14:8,20;
18:24;20:2;22:6;32:13;
33:2;41:1,4;57:3,13;
66:2;67:10;69:14,16,22;
79:12;80:9
**answered (1)** 38:22
**answers (6)** 8:1;9:6,7;
17:11;19:2;20:15
**anymore (1)** 64:21
**anything (5)** 12:2,9;37:18;
63:17;88:25
**anyway (2)** 62:15;66:24
**anywhere (1)** 67:9
**appear (2)** 51:8;22
**appeared (3)** 77:7;87:2,13
**appearing (1)** 43:16
**appears (8)** 8:3;16:23;20:6;
31:17,18,20;45:10;79:20
**applicant (1)** 11:6;9;46:16
**applicants (2)** 10:24;61:25
**application (56)** 24:15,17,20,
24;25:1,4,11,17,20,23;
29:18;30:24;31:3,14,18,
24;40:7;43:5;45:17;
55:15,22,23;65:6,8,15,
16;66:7,11,20;67:9,14,
23;68:8,18;69:6,8,13;

70:6,10,21;71:5;72:16;
77:15;79:8,21;80:12,16,
20,25;81:4,21,23;82:21,
24,25;83:9
**applications (12)** 11:3;26:4,7,
23;27:3;47:12;56:14,21;
57:22;58:18,24,24
**applied (25)** 12:14,20;13:11;
27:8,20;36:3,25;37:11,
14;38:13;39:20;40:1,3,
16;47:7;52:5;55:18,19;
56:2,8,12,18;59:9,17,24
**apply (1)** 37:6
**applying (2)** 26:9;36:21
**appointed (3)** 52:16,19,25
**appreciate (1)** 16:3
**approach (1)** 54:8
**approached (1)** 54:8
**approximate (1)** 87:6
**approximately (5)** 26:1;
29:14;37:3;53:22;60:8
**April (1)** 16:19
**Aronoff (1)** 5:5
**around (4)** 13:10;29:15;
35:11;60:10
**arrested (4)** 84:21,23;85:1,5
**articulate (1)** 9:6
**ask (14)** 8:3;11:13;12:12;
15:1,16,17;17:4;53:4;
69:2;71:18;73:16;78:4;
84:13;85:16
**asked (14)** 14:23;20:16;
22:17;24:15;38:21;65:8;
66:7,7;67:25;69:2,25;
79:8;81:9;83:17
**asking (4)** 7:25;26:1;56:10;
60:4
**asks (1)** 27:1
**assert (1)** 7:13
**asserted (2)** 74:11;76:22
**assertions (1)** 18:21
**assessed (1)** 84:16
**assume (2)** 45:2;75:8
**assuming (2)** 38:4;80:23
**assumption (2)** 81:1,3
**attempt (1)** 70:24
**attend (1)** 61:23
**attended (1)** 87:1
**attention (2)** 81:19;82:13
**attorney (1)** 24:14
**attorneys (3)** 49:17;50:17,20
**August (3)** 35:11;37:5;38:9;
39:25
**automatically (1)** 34:13
**available (3)** 24:2,4,6
**award (1)** 40:23
**aware (4)** 34:2;73:5;77:3;
80:11

**B**

**back (28)** 11:6;14:14;15:12;
21:11;29:2;35:24;37:25;

39:10;40:22;41:6;42:7,
10;43:5;44:12;49:4;19;
50:19;55:9;65:6;70:20;
78:22;80:24;81:1,10;
84:3;86:23;88:10;89:8,
18
**background (78)** 22:7,12,13,
26:11,15,17,19,20,25;
27:2,7,10,11;28:2,7,12,
16,19,20;29:1,6,8;33:23,
24;34:4,5,8,10,25;35:2,
36:16;16,11,19,24;37:4,
10,15,19,21;38:8,20;
39:2,8;40:9;41:1,14;48:21;
49:12;50:14,15,22;
55:25;57:1,14,20,24;
58:4,7,12,16;59:3,5,9,12,
21;82:7,10,11;88:2,12,
17;89:10
**base (1)** 57:3
**based (6)** 27:18;44:3;55:24;
57:19;81:3;82:4
**basic (1)** 7:15
**basically (6)** 12:6;14:18;
25:12;27:1;60:17,22
**basis (1)** 59:18
**Bates (1)** 30:7
**bathroom (1)** 8:20
**bearing (1)** 76:15
**before (40)** 6:10;7:1,3,16;
10:14,16;14:3;17:11;
19:23;20:3;7;21:6;
24:20;29:18,20,21;
30:23;36:3,24;37:14;
38:7;39:20;40:2,16;
43:12;45:6,13,16;46:13,
21;52:5;55:12,18;59:9;
60:11;64:4;74:8;82:21;
87:1;88:1
**Behalf (2)** 5:7;10:11
**belief (2)** 10:19;58:1
**believe (21)** 17:18;27:19;
33:10;34:7;35:11;36:5;
37:13;38:2;47:1;48:16;
49:14;51:11;55:21;56:6,
13,20,22,25;71:10;
83:23;88:19
**believed (1)** 36:12
**below (1)** 43:16
**benefit (1)** 9:14
**Benesch (5)** 5:4;6:11,12
**Benson (1)** 17:24
**best (3)** 8:4;83:1,13
**between (5)** 14:13;37:9;
38:12;59:17;60:2
**beyond (1)** 87:25
**big (1)** 69:4
**Birr (2)** 21:5,9
**birth (1)** 11:14
**bottom (1)** 61:2
**boxes (3)** 32:23;44:9;79:4
**Brandi (6)** 19:20;20:12,13,

Case: 1:11-cv-02615-JG  Doc #: 41-1  Filed: 06/14/12  94 of 99.  PageID #: 368

Bruce White, etc. v.
CRST, Inc.

Videotaped Deposition

Bruce D. White
May 25, 2012

19;60:11;61:16
**break (3)** 8:10,19,22
**bridge (1)** 62:8
**briefly (1)** 62:2
**bring (5)** 35:24;37:25
**broached (1)** 54:10
**Brooke (5)** 18:24;19:1,21,
25;20:3
**brought (5)** 39:10;40:22;
54:11;81:19;82:13
**Bruce (29)** 5:5,6,21;6:1,6,15;
15:22;19:5,11;22:6,20,
25;31:2;38:22;40:11;
46:1,18;54:19;60:1;
64:6;68:20;72:2,6;74:4;
75:12,16;76:8;78:2,8
**bus (4)** 60:17;61:20;64:4;
88:9
**bye (1)** 62:2

**C**

**call (3)** 28:24;35:22;68:23
**called (5)** 6:1;16:23;37:20;
39:3;89:8
**calling (1)** 39:6
**came (1)** 85:5
**can (23)** 10:10;14:7;17:9;
18:11;22:5;23:6;30:14;
31:13;38:7;41:17,23;
45:2;47:19;48:11;52:13,
20;54:23;63:1,2,4;
68:22;77:20,23
**capacity (1)** 48:1
**career (2)** 25:25;55:13
**case (23)** 5:6,10;17:12;24:7,
13;48:15,17,17,22,23;
49:6,6,10;50:2,8,24;
52:1;53:15;72:25;73:5,
22;74:7;75:15
**cases (1)** 7:9
**casually (1)** 62:4
**certain (2)** 14:16;67:7
**certified (2)** 6:5;82:24
**chance (5)** 19:6;47:17;
71:23;73:23;74:1
**change (1)** 13:20
**charge (5)** 74:10;76:2,3,22,
25
**charged (3)** 28:2;72:8;77:1
**charges (3)** 78:16;84:15,16
**check (7)** 28:2;32:24;43:13,
13,16;44:20;46:25
**checked (3)** 32:24;44:9;
79:5
**checks (1)** 33:2
**chronology (1)** 37:3
**circumstances (4)** 12:25;
32:14;33:3;48:6
**City (2)** 46:7;87:5
**Civil (1)** 6:3
**claim (3)** 7:7,11,13
**claimed (1)** 82:5

**claims (1)** 53:19
**clarify (2)** 8:5;24:23
**Class (25)** 9:22;10:12;12:5,
23;21:16;48:14;49:5;
50:1;7;51:2;52:17,19,20,
25;53:6,8,10,12,15,18,
19,19;54:3,5,6
**classes (1)** 53:16
**classroom (1)** 89:4
**clear (2)** 9:10;32:18
**Cleveland (1)** 5:14
**CLVS (1)** 5:12
**coincide (2)** 10:19;24:1
**colleague (1)** 6:11
**colleagues (1)** 48:5
**collision (2)** 74:11;84:14
**Colorado (1)** 16:17
**comfortable (1)** 9:16
**commit (1)** 76:11
**communicate (3)** 41:8,13,16
**communicated (7)** 12:13;
19:21;20:10,12;35:14;
42:21,24
**communication (16)** 11:4;
13:25;14:5;21:10;50:4,4;
60:12,16,21,23;61:8,10,
13,16;63:15,18,24
**communications (10)**
18:16;20:24;21:9;48:4;
49:21;52:16,19;61:5;
63:8
**comp (3)** 7:6,7,11
**companies (13)** 11:4,5;47:6,
9,19;55:14;56:9,11;
57:23;58:3,19,25;59:24
**company (6)** 7:14;24:14;
26:21;49:11;62:10,15
**compensation (2)** 49:7;51:1
**Complaint (7)** 9:22;10:12,
18;21:18,19;22:4,18
**complete (11)** 14:3;30:4,14;
45:15;65:14,18;67:10;
68:20;70:22,25;83:1
**completed (5)** 10:5;25:4;
66:11;75:10;80:11
**completely (5)** 25:17;45:3;
65:12,22;66:21
**con (1)** 11:1
**conceal (1)** 25:22
**conclude (1)** 8:14
**condition (1)** 8:13
**confirmation (2)** 60:18;61:21
**connected (1)** 49:9
**connection (1)** 52:11
**considered (1)** 40:8
**constitute (3)** 8:1;71:4,8
**constituted (1)** 67:15
**contact (4)** 14:12;36:18,21;
54:21
**contacted (1)** 41:18
**contacts (1)** 66:6
**contained (3)** 36:8,12;82:25
**containing (1)** 24:6

**contend (2)** 22:2;36:7
**contended (1)** 39:24
**Contendere (6)** 73:10;
74:10,20;75:1,20;76:1
**contest (2)** 22:13;76:25
**continue (1)** 52:23
**control (3)** 23:17;47:25,25
**conversation (4)** 14:18;
35:14;81:13,15
**convicted (2)** 36:13;83:4
**conviction (3)** 36:9;77:3;
78:15
**coordinate (1)** 89:25
**coordinator (2)** 32:15;33:6;
59:22;81:8,8,14;87:15
**copies (2)** 27:3,6
**Coplan (1)** 5:4
**copy (19)** 16:8,13;22:10;
23:11;28:8;29:2;30:13;
34:5;35:23;36:6;37:23;
39:9,10;40:22;58:14;
59:5,12;72:19;74:18
**Corbett (3)** 19:20;20:6,10
**correct (80)** 6:19;7:18;10:8,
21,25;11:14,17;14:6,24;
16:11,13,19;19:22;20:5;
23:11;24:18;25:1,7;
26:5;28:20;29:6;30:24;
36:4,25;37:19;38:10,19;
40:7;43:10,14;45:3,6,13,
18,21;46:16,19,19;55:16;
58:9;59:10;62:25;64:24;
65:3;66:12,18,19;68:3,5,
10,13;69:8,17,19;71:5;
72:9,18,21;74:14,16,18,
22;75:17,24;76:20,23;
77:7,10;79:10;14;80:3,6,
13,17;81:16;82:2,22;
83:9,12,24;84:19
**corrected (1)** 38:4
**correctly (2)** 48:24;78:18
**counsel (19)** 5:16;7:17,20;
8:11,11;17:20;23:13,24;
24:3,8;48:4,9;52:12,17,
19,25;54:9,13;89:25
**counselor (8)** 31:21,24;
32:16;38:1;40:23;57:9;
81:7;82:5
**Count (5)** 74:12,16;75:22;
76:5,8
**counts (1)** 72:9
**County (8)** 16:16;76:9,17;
77:14;78:1;85:9,11,13
**couple (1)** 7:15
**course (5)** 6:21;8:8;25:25;
26:9;54:2
**Court (16)** 5:9,14,22;48:23,
25;51:8,17,19;75:20;
76:2,11;77:7;78:1;84:3,
6,8
**Covenant (1)** 47:20
**crime (1)** 76:11
**criminal (25)** 26:11,15,24;

27:6;36:9;39:25;40:8;
46:24;47:11;55:25;57:1,
20;58:4;7;59:3,5,8,12,
21;72:25;73:5;74:7;
78:13;88:12,17
**cross-examination (2)**
**CRST (71)** 5:8,19;6:13,19,22,
24;10:13,21;11:19,24;
12:15,21;13:12;14:1,6,
11;18:16;20:17;22:7;
24:18,24,25;25:1,5,23;
27:9;29:19;30:24;31:3,
14;36:3,22,25;37:7,12,
15;38:5,13;39:14,21;
40:1,3,7,16,16,24;45:17;
46:15;52:6;54:9;55:19,
20,23;58:9;59:2,6,10;
60:12;61:25;62:10,18;
63:9;64:12,20;70:17;
80:20;83:8;87:2,12,21;
88:4
**CRST's (4)** 11:8;15:22;
22:25;23:12
**current (4)** 6:16;52:12;
66:25;68:22
**custody (1)** 23:17
**cuz (1)** 13:19

**D**

**damages (1)** 45:20
**date (13)** 11:14;18:12;32:14;
33:4;35:8,9;52:4;61:8,9;
63:23,25;87:6,8
**dated (2)** 44:14,25
**dates (1)** 69:9
**dating (1)** 45:13
**Dave (2)** 6:11;16:8
**David (1)** 5:19
**Dawn (1)** 5:15
**day (7)** 35:13,16,19;60:7,8;
61:11,17
**days (2)** 85:14,15
**deal (1)** 69:4
**Defendant (9)** 5:19;6:2,12,
23;51:18;72:3;74:5;
75:13,17
**Defendant's (8)** 9:21;15:21;
22:24;31:2;71:13;73:9;
74:25;77:13
**denied (1)** 55:15
**department (1)** 84:24
**deposed (2)** 6:5;7:1
**deposition (11)** 5:5;6:21;8:9;
10:2;19:24;20:16;30:3;
31:7,10;86:17;89:23
**depositions (1)** 7:16
**Des (1)** 27:19
**desk (1)** 89:5
**detail (1)** 32:13
**details (1)** 33:3
**Dewayne (10)** 6:15;31:3;
72:2,6;74:4;75:12,16;

76:8;78:2,8
**diary (1)** 60:25
**different (1)** 13:19
**direct (1)** 18:16
**directly (1)** 69:23
**discharge (2)** 36:14;82:12
**discharged (1)** 43:17
**discharging (1)** 35:1
**Disclosure (1)** 45:12
**discussing (1)** 43:12
**discussion (3)** 15:9;42:4;
55:4
**dispatch (4)** 62:20,20,21;
87:16
**dispute (1)** 58:15
**disputed (1)** 35:20
**disputes (2)** 53:20,22
**District (4)** 5:9,9;51:17;78:1
**Division (1)** 5:10
**document (35)** 10:6,10,14,
15:18;16:4,6,10,22;
21:15;23:7,9,17,25;24:3;
31:11;44:13,14;45:3,8,
13,17;51:4,19;71:25;
72:3,15,18;73:24;75:15;
77:21,23,25;78:9;88:4,7
**Documents (17)** 23:1,13,16,
20,24;24:2,4,8,10;29:23;
30:4;51:5,9,12,14,21;
53:25
**done (5)** 21:23,23;34:13,15;
39:1
**Dooley (51)** 5:20,20;7:23;
14:7;18:7;19:4,10,13,16;
22:5,19;24:22;25:9;
26:12;30:2,9,12;32:3;
38:21;40:11,14,25;
41:23;45:25;46:17;
48:10;50:4;52:13;53:1,
7;54:18,23;58:10,21;
60:1;61:11;66:4;67:18;
68:11;69:18;71:20;
72:11;73:18;75:7;80:7;
81:17;83:21;85:18;86:2,
4,15
**down (8)** 36:16;39:10;
41:18;64:5;67:8;69:3;
88:19;89:5
**downtown (5)** 28:8;29:2;
37:23;39:9;40:22
**drive (3)** 48:2;76:13;83:15
**driver (18)** 10:24;11:9;12:15,
21;13:11;24:18;25:5;
27:8,13,20;37:6;46:15,
24;52:6;56:8;83:11,19;
89:3
**drivers (2)** 10:25;11:11
**Driver's (1)** 76:18
**driving (2)** 29:3;32:20;
37:25;48:1;58:19;75:21;
76:2,11,19;83:5;84:14
**due (3)** 69:23;84:15;85:16
**duly (1)** 6:4

Bruce White, etc. v.
CRST, Inc.

Videotaped Deposition

Bruce D. White
May 25, 2012

**dump (1)** 48:2
**during (10)** 6:21;8:8;38:16,
19;40:2;56:17,18;57:6,
18;70:8

**E**

**earlier (1)** 56:3
**early (1)** 89:2
**East (2)** 8:25;78:19
**Eastern (1)** 5:10
**educational (3)** 25:13;44:6,
11
**either (1)** 47:15
**elapsed (1)** 38:12
**else (6)** 12:2,9;45:23;46:3;
63:17;88:25
**elsewhere (1)** 42:24
**em (1)** 81:9
**email (11)** 13:3,5,7,10,14,16,
18,20,25;41:9;61:5
**emphasis (1)** 79:25
**employed (4)** 25:5;47:22,
24;48:1
**employees (2)** 62:16,17
**employers (5)** 27:4,12;
46:23;70:8,18
**employment (36)** 24:16,17,
24;26:5,7,9;27:13;
29:19;34:16,18,21;
37:12;38:13;39:21;40:1,
3;46:23;47:8;52:6;
55:14,19,20;65:9,14,15;
66:8,14;67:15;68:1,9,15;
69:15;71:5,8;80:16;
88:24
**end (2)** 29:6;39:6
**ended (1)** 88:20
**engaged (3)** 39:17,20;49:14
**engaging (1)** 48:8
**enough (5)** 16:2,21;43:2;
52:17;71:19
**enter (2)** 73:19;75:7
**entered (7)** 74:10,21;76:1;
77:4,5,9;78:15
**entire (2)** 67:15;71:8
**entirety (2)** 61:15;65:20
**erroneous (6)** 36:8,12;
37:16;39:25;40:8;57:19
**even (2)** 79:24;87:7
**event (3)** 81:24;85:22,25
**ever (25)** 7:1,3;8:25;11:19;
12:20,23;14:5,19;21,23,
25;20:7,10,12;21:6;
26:10,10;32:11;70:10,
16,17;79:8,18,24;83:17;
86:8
**every (4)** 46:10;66:23;67:1;
86:1
**everything (9)** 12:6;22:9;
24:12;26:14;35:21;
57:15;64:5;66:6;67:5
**exact (3)** 18:11;24:7;52:4

**exactly (2)** 54:20;87:8
**examine (1)** 89:24
**example (1)** 51:13
**Exhibit (42)** 9:21;10:1,8;15:2,
21;16:2;21:11,20;22:24;
23:5,6;31:2,7,10;41:6;
43:6;51:15;58:11;71:13,
18,23;72:15;73:9,14,16,
21;74:2,5,8,14,25;75:5,
10,13,24;76:5,6;77:13,
19,20;78:22,23
**experience (4)** 27:24;29:24;
46:15;86:8
**experiences (2)** 12:19;46:22
**explained (1)** 12:4
**extension (2)** 42:22,22
**extent (3)** 9:15;11:7,23

**F**

**face (1)** 63:3
**faces (1)** 63:1
**fact (16)** 10:18;17:12;36:16;
46:10;59:2;62:12;67:16;
70:25;76:22;77:3;79:24;
80:2,12,20;87:7;88:22
**facts (2)** 22:2,17
**Fade (1)** 5:15
**false (2)** 37:22;46:5
**familiar (1)** 10:23
**far (1)** 52:21
**fax (6)** 32:5;35:24;41:9;
43:8,9;79:1
**faxed (3)** 29:3;38:2;39:11;
57:22
**federal (1)** 48:23
**feel (1)** 22:14
**felony (6)** 28:6,9;35:1;
36:14;82:13,16
**female (5)** 11:21;33:15,16;
63:21;64:19
**few (1)** 17:4
**figure (1)** 53:13
**filed (4)** 10:16;57:21;72:20;
75:23
**fill (8)** 24:15;65:12,21;66:8,
14,20;68:20;70:21
**filled (12)** 24:17,23;25:4,16,
19;26:4,16,23;27:4,4;
40:6;44:14,20
**filling (2)** 24:20;89:6
**final (1)** 64:13
**financial (1)** 49:7
**find (1)** 48:12
**finding (3)** 34:16,17,21
**fine (4)** 8:17;41:21;43:18;
84:11
**finish (2)** 40:5;57:13
**firearm (5)** 28:10;35:1;
36:14;43:17;82:12
**firm (3)** 5:13,15;48:7
**first (10)** 6:4;9:21;15:22;
18:10;19:25;21:19;22:3,

25;23:12;76:18
**fit (1)** 53:9
**fits (1)** 53:24
**Florida (1)** 88:19
**flow (1)** 52:15
**folks (1)** 53:24
**followed (1)** 47:13
**follows (1)** 6:5
**foot (1)** 35:23
**forgot (1)** 81:20
**form (3)** 26:16;28:1;52:2
**formal (1)** 51:18
**forwarded (1)** 24:14
**found (8)** 19:7;39:2;54:22;
59:14;74:16;75:21;76:3;
77:1
**four (2)** 13:9;88:23
**frame (1)** 57:18
**frankly (1)** 8:9
**free (1)** 58:14
**freely (1)** 22:10
**Friday (1)** 5:3
**Friedlander (1)** 5:4
**front (3)** 30:6;51:16;89:5
**full (6)** 6:14;11:7;14:3;45:5,
15;71:4
**fully (1)** 9:6
**further (4)** 88:19,20;89:22,
24

**G**

**Garnett (2)** 6:17;17:25
**gave (15)** 14:3;17:16,23;
19:2;24:8,12;28:1;
33:21;35:21;39:5;43:3;
49:17;66:5,25;70:5
**generally (5)** 6:22;24:1;
60:15
**get (24)** 11:5;13:20;22:10;
29:2;35:20,23;37:23;
39:9;46:5,9;47:14;49:7;
52:3;53:13;56:10;58:14;
67:23;70:6,20;83:11,14;
88:20,23;89:4
**getting (10)** 34:10,23,24;
39:22;40:21;59:15;82:9,
16;88:21;89:2
**GILMAN (31)** 5:18,18;6:7,10;
15:4,12;16:7;19:8;25:2,
8,10;30:7,11,14;32:8;
38:24;41:3,25;42:7;
52:24;53:2,4;54:25;
55:9;71:22;86:13,16,23;
89:11,18,21
**give (10)** 7:15;16:7;26:13,18;
27:10;38:1;61:19;66:22;
67:1;68:6
**given (3)** 8:2;45:5,15
**Glad (2)** 18:7,10
**glass (1)** 7:14
**going (21)** 5:1;7:25;12:5;
14:14,15,17;46:7,9;58:6,

12;59:2;62:8;70:20;
71:17,20;72:12;73:14;
75:4;86:13,17;89:23
**Good (9)** 6:8,9;27:16;40:14;
50:11,12;62:10,15;86:15
**great (1)** 9:18
**greatest (1)** 9:15
**ground (2)** 7:16;9:5
**grounds (1)** 73:20
**group (1)** 53:23
**guess (6)** 38:3;47:13;58:11;
60:17;63:10;64:12
**guilt (1)** 84:11
**guilty (5)** 74:16;75:21;76:3;
77:1;78:15
**guy (6)** 62:7;63:11;64:16,
18,20,20

**H**

**Hagestrom (1)** 5:13
**half (1)** 16:24
**hand (9)** 9:25;23:4;31:6;
69:11;71:17;73:13,14;
75:4;77:18
**handed (1)** 46:11
**Handing (4)** 16:1;23:5;31:9;
77:19
**handwriting (10)** 31:15,16,17,
18,20,25;32:2,10;45:10;
82:3
**handwritten (3)** 33:5;44:15
**happen (2)** 45:23;46:3
**happened (2)** 49:20;85:4
**hard (10)** 28:8;29:2;34:16,17,
20;35:23;37:23;39:9,10;
40:22
**head (3)** 63:11;64:11,12
**heading (2)** 16:10;21:16
**hear (1)** 18:10
**heard (8)** 6:10;19:23,25;
20:3,7;21:6;39:15;79:15
**held (1)** 46:12
**help (3)** 78:7;88:19,20
**hereinafter (1)** 6:4
**hi (2)** 62:2,2
**highway (1)** 76:16
**Himself (1)** 5:7
**hired (8)** 29:9,11;34:23,24;
56:10;58:2;59:15;63:19
**HireRight (34)** 28:24;29:4;
34:8;35:2,22,25;36:7,18,
21;37:4,20;38:3,9;39:5,
6,12;41:10;42:12,25;
48:14,15,22;49:3,6,6,10,
11,15,23;52:1;53:20,21;
54:3;57:4
**hiring (1)** 11:9
**history (7)** 44:11;65:15;
68:9,15,25;70:3;71:9
**hit (5)** 62:7;74:11;84:14;
85:1,4
**Holdings (3)** 27:14,16,23,

25;28:12;29:9,12,25;
47:4
**home (4)** 24:13;67:23;
70:16;88:10
**Honestly (6)** 27:16;46:2;
50:11;63:25;67:3;80:21
**hopefully (1)** 8:5
**hotel (2)** 60:18;61:21
**hour (1)** 62:8
**hours (1)** 85:13
**house (2)** 17:19;49:18
**however (1)** 8:22
**Huh (3)** 34:19;66:5;68:12

**I**

**idea (1)** 50:25
**identification (20)** 9:23;10:1;
15:24;16:1;23:2,5,6;
31:4,7,9;71:15,18;73:11,
14,15;75:2,5;77:16,19,
20
**identified (10)** 17:24;20:15,
23;72:3;74:5,13;75:13,
24;78:8;79:1
**identifies (1)** 78:18
**identify (15)** 5:17;10:10;
15:18;16:3;17:6;18:24;
23:7;31:13;62:24;65:8;
66:2;73:17;77:21,23;
78:7
**identifying (1)** 63:5
**IJV-407 (1)** 76:15
**imagine (1)** 8:9
**imposed (1)** 78:14
**inaccurate (5)** 67:17;69:17,
20;71:7;80:9
**Inc (5)** 5:8,19;6:13,19,24
**incarcerated (2)** 85:17;86:6
**Incarceration (1)** 77:15
**incident (2)** 26:22;82:14
**include (3)** 33:20;68:17;
70:11
**included (1)** 57:23
**including (2)** 66:15;69:8
**incomplete (1)** 69:17
**incorrect (9)** 29:1;35:2;
37:17,22;39:3;57:5,6,9,
16
**indeed (2)** 72:18;74:18
**indicate (1)** 67:9
**indicated (1)** 36:13
**indicates (1)** 43:8
**indirect (1)** 40:25
**individual (4)** 42:11;46:14;
62:22;63:15
**individuals (3)** 12:14,20;
62:5
**inform (2)** 58:6,9
**information (71)** 22:8,11,13;
25:22;26:21;29:4,5;
33:19,21,22;35:25;36:1,
8,11;37:22;38:2;39:7,13,

Mehler & Hagestrom
800.822.0650

Case: 1:11-cv-02615-JG   Doc #: 41-1   Filed: 06/14/12   96 of 99.   PageID #: 370

Bruce White, etc. v.
CRST, Inc.

Videotaped Deposition

Bruce D. White
May 25, 2012

22;40:21;42:23;43:16;
44:3,15;46:11,14;48:21;
49:4,12,12,19;50:14,15,
19,21;52:1,3;54:7;57:5,
6,23;58:15,17;59:23;
60:17,18;61:20;63:12;
64:3;65:21;67:12,24;
69:11,13;70:11,21;71:3,
14;72:9,19;74:13;75:22;
77:15;81:22;82:4,6,18,
25;83:8,24,25
**informed (1)** 58:23
**initiated (1)** 60:12
**inquire (1)** 48:3
**inserted (1)** 32:24
**instead (1)** 82:16
**instructor (1)** 89:3
**intending (1)** 67:19
**intent (2)** 28:5,9
**interact (1)** 35:4
**interpretation (1)** 53:11
**Interrogatories (1)** 15:23
**Interrogatory (3)** 16:23;
17:23;19:3
**interrupt (4)** 30:3;32:17;
52:15;72:12
**intervening (2)** 37:18;38:16
**into (3)** 53:10,24;89:7
**involved (2)** 50:8;53:19
**involvement (3)** 49:22;
52:10;54:2
**Iowa (1)** 27:19
**issue (2)** 26:20;54:22
**issued (1)** 28:16
**issues (5)** 14:16;26:17,19;
47:2;85:19

## J

**jail (10)** 84:10,22;85:9,11,13,
19,20;86:7,9,10
**Jane (1)** 33:11
**January (1)** 72:21
**Jean (6)** 33:10,12,13,15;
43:24,25
**Jefferson (1)** 16:16
**Jeremy (8)** 5:18;6:10;24:22;
52:13;54:23;72:11;
73:18;75:7
**job (25)** 25:1;31:21,23;32:15;
33:6;38:11;40:23;46:5,
10;57:21;59:22;64:25;
66:23;67:1;68:23;81:8;
82:9,16;83:9,11,14,20;
87:15;88:20,21
**jobs (14)** 25:13,13;56:15,18;
65:23;66:5;67:6,15,20,
22;68:6,17,22;69:21
**Josh (2)** 21:5,9
**journal (1)** 61:3
**Judgment (2)** 73:9;74:19,20,
25;75:19
**July (1)** 74:22

**June (1)** 11:14
**jurisdiction (1)** 76:10

## K

**kept (1)** 41:19
**kill (2)** 28:6,9
**kind (8)** 13:25;16:2,21;43:2;
61:1,3;63:2;71:19
**knew (18)** 22:8,10;34:23;
37:15;57:8,15;58:18;
59:2,8;69:5,12,16;77:4;
82:7;83:4;86:10;88:11,
14
**knowing (1)** 80:15
**knowingly (1)** 76:13
**knowledge (4)** 18:15,20;
83:1,3
**known (1)** 53:18
**Krueger (3)** 5:19;6:11;16:9

## L

**lady (9)** 11:21;20:17,19;
39:4,6,11;64:25;88:18;
89:8
**large (1)** 24:10
**last (8)** 16:5;42:14;58:11;
66:23;67:21;69:2;79:15,
20
**lasted (1)** 84:6
**later (1)** 40:1
**lawful (1)** 6:1
**lawsuit (7)** 7:3,5;45:21,24;
52:12;54:5,6,9
**lawyer (1)** 54:7
**learned (1)** 39:24
**least (3)** 37:14;57:19;68:25
**leave (1)** 72:16
**leaving (1)** 78:3
**left (2)** 85:4;88:14
**letter (12)** 39:14;41:10;49:1,
4,18;50:9,13,16;54:14,
16;79:5;87:8
**letting (3)** 14:14;39:7;49:19
**Lewis (1)** 76:17
**License (7)** 76:19;79:9,18;
80:2,12,16;83:18
**lines (3)** 33:1,4,20
**Lisa (1)** 17:24
**list (1)** 47:16
**litigation (9)** 49:24;50:17;
51:2,6,14,22;52:11;53:6;
54:3
**little (1)** 86:14
**lived (1)** 8:25
**located (5)** 5:13;33:17;48:7,
8;52:11
**long (9)** 8:10;13:7,18;18:4,
6;61:13;80:23;81:20;
85:11
**longer (2)** 62:13;87:18
**look (12)** 10:4;16:2;21:18;

51:15;65:7,7;71:19,23;
73:16;74:1;76:5;79:16
**looked (3)** 10:17;51:13;
57:15
**looking (2)** 30:9;51:8
**looks (1)** 32:5
**loud (1)** 17:7
**lounge (1)** 89:3
**lower (1)** 16:24

## M

**made (3)** 24:2,6;53:20
**mail (1)** 49:1
**main (1)** 64:20
**maintain (1)** 60:25
**maintained (2)** 13:7,16
**make (7)** 24:4;32:18;37:2;
38:6,24;69:4,22
**male (1)** 33:15
**Management (1)** 47:25
**many (7)** 24:2,11;47:5,9;
51:4,11;56:23
**marked (20)** 9:22,25;15:23;
16:1;23:1,4,6;31:3,6,9;
71:14,18;73:11,13,15;
75:2,4;77:16,18,20
**marks (5)** 32:24;43:13,13,
16;44:20
**married (1)** 18:4
**Matt (6)** 5:20;7:23;19:8;
48:5,12;53:4
**matter (4)** 85:13,14,14;87:7
**Matt's (2)** 48:5,7
**May (14)** 5:3;11:13;12:12,25;
15:1,17;21:11;30:2;
40:5;41:6;48:3;72:15;
78:4;85:16
**maybe (6)** 13:8;14:19;47:1;
88:22,23;89:7
**mean (20)** 11:2;24:13,25,25;
32:11,15;40:17,17;
47:13,21;48:5;50:13;
54:20,20;70:15;81:8;
82:12;84:1;85:20;88:22
**means (2)** 53:13;70:14
**meantime (1)** 15:17
**mechanism (1)** 63:4
**medium (1)** 41:9
**Mehler (1)** 5:13
**member (7)** 12:23;49:5;
50:1,7;53:5,12,17
**members (4)** 52:20;53:8,19,
23
**mentioned (1)** 60:11
**mess (4)** 63:12;64:8,21;
88:3
**Middle (2)** 19:4;79:7
**might (8)** 14:11;17:20;
18:11,22;49:2;80:21;
81:5,7
**miked (1)** 9:13
**miles (1)** 62:8

**mind (2)** 26:1;66:24
**Mine (1)** 45:11
**minor (1)** 8:13
**minutes (2)** 89:7,7
**Misd (1)** 43:18
**misdemeanor (12)** 28:11;
36:16;71:14;72:8,19;
74:12,21;75:20,22;
76:12;82:17;83:5
**mishandled (1)** 53:21
**misrepresent (1)** 68:15
**misrepresented (2)** 68:8;
80:19
**Moines (1)** 27:19
**moment (7)** 13:2;15:17;
30:15;32:18;65:7;78:22;
89:12
**money (1)** 53:14
**month (9)** 37:9,14,18;38:12,
16,17;40:1,2,6
**months (3)** 84:6;88:23,23
**more (7)** 24:4;35:19;47:5;
67:22;68:25;70:17;
81:25
**morning (6)** 6:8,9;89:2
**most (3)** 65:23;66:5,25
**motor (1)** 76:14
**move (1)** 78:7
**Mrs (4)** 18:4,15,20;20:25
**much (1)** 25:2
**multiple (1)** 55:15
**must (1)** 84:1
**myself (1)** 10:12

## N

**N/A (5)** 32:9,20,20,21,22
**name (35)** 5:12;6:10,14;
11:20,21;19:23;20:3,6,7,
20;21:6;27:23;33:9,10;
41:17,18,20;42:11,13,
14;43:24;62:3,22;63:5,
22;64:16,17,25;65:1,2,5;
87:16,16,17,19
**names (3)** 19:18;47:6;63:2
**need (5)** 53:25;62:14;
68:24;87:18;89:24
**needed (1)** 62:13
**never (14)** 10:21;12:17;
18:15;20:3;21:8,10;
27:11;47:14;58:16,23;
80:5,17;83:8,24
**new (1)** 54:6
**next (2)** 19:10;21:5
**Nissan (1)** 76:14
**Nolo (6)** 73:10;74:10,20;
75:1,20;76:1
**normally (2)** 26:18;68:21
**North (1)** 76:16
**Northern (1)** 5:9
**Northway (8)** 19:20;20:12,
13,19;21:2,4;60:12;
61:16

**Norway (1)** 20:25
**notarized (1)** 16:16
**notation (1)** 42:20
**noted (1)** 32:7
**notes (1)** 60:23
**nothing (1)** 46:11
**notices (1)** 53:15
**notify (1)** 70:17
**November (1)** 76:9
**nowhere (1)** 79:20
**Number (17)** 5:10;11:16;
16:23;19:3;24:8;26:4;
39:4,5;41:18;42:16;
53:10,16;60:18;61:21;
76:15;79:1,5
**numbers (6)** 30:8;32:4;
35:21;67:4;69:9;70:5
**Nutrients (1)** 70:15

## O

**oath (2)** 8:2;81:11
**Objection (24)** 14:7;22:5,19;
26:12;38:21;45:25;
46:17;48:10;50:4;52:14;
58:10,21;61:18;66:4;
67:18;68:11;69:18;
72:13;73:20;75:8;80:7;
81:17;83:21;85:18
**obtain (4)** 46:22;58:7;59:3,
12
**obtained (4)** 33:24;37:4;
38:9;41:11
**obtaining (2)** 59:8;76:18
**occasionally (1)** 9:7
**occasions (1)** 55:16
**occurred (3)** 55:18;57:18;
61:11
**Off (18)** 15:4,6,9;30:15,16,19;
41:23;42:1,4;43:2;
54:23;55:1,4;86:13,18;
89:11,13,16
**offense (1)** 78:3
**office (2)** 35:5,6
**offices (1)** 5:4
**official (1)** 51:8
**Ohio (2)** 5:9,14
**Oklahoma (18)** 6:17;7:12;
17:25;33:18;46:7;72:6,
20;73:1;74:22;75:16,23;
76:10,17,18;78:2,2,19;
87:5
**old (1)** 26:2
**once (1)** 62:21
**one (15)** 8:13;9:5;15:4;
17:22;30:15;35:13,16,
19;47:1;54:21;62:7,16,
17;63:10;87:17
**one-on-one (1)** 14:18
**Only (9)** 18:18;35:13;43:18;
45:22;67:20;80:23;81:1,
21;85:17
**operate (1)** 76:14

Bruce White, etc. v.
CRST, Inc.

Videotaped Deposition

Bruce D. White
May 25, 2012

**opinion (1)** 55:24
**opportunity (2)** 45:5,16
**opposed (1)** 9:6
**order (2)** 13:19;71:21
**orientation (12)** 46:8;60:19;
61:22,23;62:1,6;63:7,7;
87:2,13,21;89:1
**Others (1)** 5:7
**otherwise (1)** 12:13
**out (34)** 11:3;17:7;19:9;
24:15,17,21,23;25:4,17,
19;26:4,16,23;27:4;
39:2;40:6;44:20;46:11;
48:12;52:16,18;53:13;
54:22;59:14;65:12,21;
66:8,14,20;68:21;69:4;
71:20;84:10;89:6
**over (12)** 10:17;19:14;25:12,
15;29:4;35:25;38:2;
39:11;45:4;64:11,20;
73:16
**owner (2)** 64:12,21

**P**

**page (31)** 16:5,6,21,24;19:4,
11;21:5,12,13;31:25;
32:2,4,6,6,7,9;43:9,9;
44:13,17,18,23,25;45:8,
10;58:11;65:7;78:25;
79:1,7;81:24
**pages (3)** 23:24;24:12;
31:17
**paid (1)** 84:11
**paper (2)** 26:13;84:11
**paperwork (2)** 89:5,6
**paragraph (6)** 17:22,23;
21:18;22:3,14,18
**Pardon (1)** 17:17
**part (5)** 49:10;56:3;57:19;
71:4;79:7
**participation (2)** 49:23;54:5
**particular (5)** 47:12;67:8;
69:14;72:14;82:9
**party (2)** 7:3,5
**past (14)** 26:10,24,24;28:13;
65:9;66:8,15;67:2,16;
68:1;69:16;70:18;80:13;
81:22
**pause (1)** 18:8
**pending (4)** 6:18;7:11;8:14;
48:23
**people (2)** 49:13;89:4
**perhaps (2)** 48:7;81:14
**period (6)** 38:17;56:7,17,19;
57:7;70:8
**periods (1)** 66:15
**permit (3)** 73:19;79:9,18
**person (10)** 35:4;41:10;
62:24;63:5;20;64:11,14,
23;65:2;87:20
**personnel (1)** 11:25
**phone (11)** 13:19,20;14:19;

41:9,17,19,20;42:16,23;
43:3;67:4
**phrase (1)** 8:23
**physically (1)** 24:25
**piece (1)** 26:13
**place (2)** 63:24;81:13
**placement (8)** 31:21,24;
32:15;33:6;38:1;40:23;
59:22;81:8
**Plaintiff (7)** 5:21;6:18;10:11;
15:21;22:24;51:17;53:6
**plaintiffs (2)** 50:1,8
**Plaintiff's (1)** 10:1
**plan (1)** 61:20
**Plea (7)** 73:10;74:10,19,20;
75:1,19;76:1
**please (22)** 5:16,23;6:14;9:5;
10:4;13:5;15:2,13;16:5;
17:2;18:5;21:5,12;
27:15;31:13,15;42:18;
55:9;77:21,23;78:11,23
**pled (1)** 36:16
**point (1)** 19:9
**police (1)** 84:25
**policies (1)** 10:24;11:8
**portion (1)** 32:9
**position (3)** 13:12;27:8,20;
37:7
**positions (10)** 12:15,21;
52:18;56:2,4,8,12;59:16,
19;69:6
**possession (3)** 23:16;29:24;
49:22
**possibility (2)** 57:2,3
**possible (4)** 9:10;47:8;54:6,
9
**possibly (1)** 81:9
**potential (1)** 46:23
**preceded (1)** 55:23
**preceding (4)** 65:15;68:9,
16;69:7
**preface (1)** 13:1
**pre-hire (4)** 38:5;39:14;
40:23;87:8
**presence (1)** 44:1
**present (3)** 5:16;7:20;9:14
**presentation (1)** 51:18
**presented (2)** 71:7;83:8
**pretty (2)** 18:14;83:18
**previous (3)** 25:13;50:22;
58:18
**previously (4)** 20:15,23;
74:13;75:24
**Prime (1)** 47:20
**prior (7)** 27:4,7,12;36:21;
40:6;48:8;58:24
**privilege (2)** 79:9,19
**privileged (1)** 52:20
**probably (8)** 13:8;35:19;
37:8;47:1;53:14;65:4;
67:6;81:10
**problem (2)** 63:2;68:19
**problems (1)** 18:13

**Procedure (1)** 6:3
**procedures (2)** 11:8;47:14
**proceeding (3)** 72:5;84:4,6
**proceedings (1)** 84:8
**process (5)** 14:11;40:21;
48:20;70:6;78:7
**processes (1)** 10:23
**produce (1)** 23:16
**produced (2)** 23:24;30:4
**Production (6)** 23:1,12,18,
20,25;24:3
**Program (1)** 77:14
**provide (8)** 58:3;65:14;
67:22,25;68:25;70:3,11;
83:25
**provided (6)** 6:23;28:12;
59:23;69:14;82:4;83:24
**providing (1)** 67:10
**public (1)** 76:16
**pull (1)** 58:12
**pulled (4)** 34:24;57:14;82:6,
10
**purpose (1)** 6:2
**purposes (9)** 9:23;15:23;
23:2;31:4;71:15;73:11;
75:2;77:16
**put (10)** 26:14;29:7;41:18;
52:14,22;67:5;68:22;
69:3,20;72:12
**putting (1)** 25:13

**Q**

**quote (1)** 43:17

**R**

**Randy (1)** 5:12
**read (16)** 10:16;17:2,7,9;
21:22,25;24:20;25:11,
12,14;26:7;45:2,5,12,16;
53:15
**really (5)** 13:18;24:7;53:25;
62:14;66:24
**reason (7)** 34:15,22,24;
59:14;67:5;82:8,15
**recall (8)** 35:3;48:24;55:12;
72:5;81:15,18;87:12;
88:7
**receive (8)** 33:19;47:11;
50:9;51:1,5;54:4;88:4,9
**received (11)** 22:7;26:10,24;
27:7,11;36:6;38:7;
50:16;51:4,21;59:13
**receiving (2)** 50:13;88:7
**recent (5)** 65:23;66:5
**recently (1)** 69:21
**recess (1)** 55:7;86:21
**recitation (1)** 14:4
**reck (1)** 82:12
**reckless (1)** 28:10
**recognize (3)** 23:9;31:10;
71:25

**recollect (3)** 47:6;52:4;
69:21
**recollected (1)** 80:21
**recollection (5)** 11:23;14:4;
24:1;38:14;40:19;60:20
**record (42)** 5:2,17;6:14;9:10;
15:4,6,10,12,14;24:13;
30:15,16,19,21;32:4,20;
41:19,24;42:1,5,8,11;
52:22;54:24;55:1,5,10;
65:9;66:8,14;67:16;
68:1;69:15;72:13;81:2;
86:14,18,24;89:12,13,
16,19
**records (2)** 28:8;62:5
**recruiter (3)** 14:11,12,13
**recruiters (1)** 63:10
**recruiter's (1)** 64:25
**recruiting (5)** 10:24,25;11:9,
22;14:10
**reduced (1)** 28:10
**refer (3)** 15:2;64:9;81:24
**referencing (1)** 32:4
**referred (1)** 74:8
**referring (2)** 6:23;65:3
**reflect (1)** 9:11
**regarding (9)** 7:16;30:5;
41:10;73:21
**rejected (6)** 47:8;56:14,21,
23,25;59:18
**rejections (2)** 55:22;57:17
**relate (1)** 72:15
**relates (3)** 74:7;75:15;78:13
**relating (10)** 14:1;29:24;
36:14,19;41:11;49:22;
50:17;51:1,5;61:5
**Release (1)** 45:12
**relevance (1)** 73:22
**relevant (1)** 83:18
**remember (54)** 12:2,9;13:18;
16:4;20:20;23:23;24:11;
33:8;35:8;40:18;43:23;
51:7,11,24,25;60:15;
61:9,13,15;62:3,19,22;
63:1,3,8,17,20,21,23,25;
64:16,17;65:5;67:3,11;
69:9;70:4,5,19;72:25;
82:14;84:2;85:3,12;
86:7;87:4,6,11,15,17,18,
20,24;88:25
**remembered (5)** 67:6;80:22;
84:1;85:23,25
**remembering (8)** 18:13;
61:19
**rephrase (2)** 8:4;25:3
**report (60)** 22:8,12,14;26:11;
27:2,10,12;28:7,13,16,
19,21;29:1,6,8;33:23,25;
34:4,6,8,11,25;35:2,17;
36:2,7,11,19,24;37:4,10,
15,19,21;38:8,20;39:3,8,
25;40:9;47:15;50:14,16,
22;55:25;57:1,20,24;

58:7,13,16;59:3,6,9,13;
82:10,11;88:3,12,17
**reporter (2)** 5:14,23
**reports (6)** 26:25;27:7;
41:11;46:6;47:11;58:4
**represent (1)** 6:12
**representative (1)** 11:5
**represented (2)** 7:17;80:15
**Request (6)** 22:25;23:1,12,18,
25;30:5;59:5
**requests (1)** 24:4
**required (1)** 83:14
**residential (1)** 6:16
**respect (5)** 47:12;69:23;
74:8;79:21;85:16
**responded (2)** 49:3,17
**response (11)** 17:13,14,16;
18:8;22:16;23:25;24:3;
30:5;70:24,25;71:4
**Responses (4)** 15:22;17:22;
22:25;23:12
**responsive (1)** 23:17
**result (3)** 52:10;78:14;85:1
**retract (1)** 35:25
**retracted (1)** 39:13
**retracting (1)** 29:7
**review (10)** 10:5;73:23;74:1;
75:10
**reviewed (1)** 10:8
**revoked (2)** 79:10,19
**right (44)** 16:22;17:11;18:17;
20:5,23;21:9;30:23;
32:1,14;39:1;41:3;
43:12;44:17;48:24;52:9;
24;60:22;65:14,10;66:3,9,
13,16;67:17;68:2;69:10;
70:2,19;71:9,21;73:1;
77:1,5;78:4,16;79:22;
80:1;9;83:2,6;84:7,16;
85:23;86:10
**Road (1)** 6:17
**Roadmaster (25)** 11:3;14:12,
14;31:22;32:16;33:7,17,
24;35:6;37:11;38:8,8;
39:4,11;43:21,23;50:23;
57:9;59:8,13,25;60:5,6,
9;88:18
**Ron (2)** 19:20;20:6
**room (2)** 7:20;89:4
**rule (1)** 9:5
**Rules (2)** 6:3;7:16
**run (4)** 74:11;84:14;85:1,4
**Ryals (15)** 48:15,17,22;49:6,
10,23;50:17,24;51:2,5,
21;52:11,25;53:6;54:3

**S**

**same (6)** 5:15;47:13;49:13;
74:4,7;75:12
**sat (1)** 89:5
**satisfied (2)** 25:16,19
**satisfy (1)** 25:8

saw (3) 17:14;66:11;82:21
saying (6) 13:1;49:2;51:9;
59:18;82:12;89:8
scanned (1) 45:4
scene (2) 78:3;85:5
school (4) 11:1;29:3;37:25;
60:5
schooling (1) 25:14
second (3) 15:5;41:24;
54:24
section (1) 44:22
security (1) 11:16
seeking (6) 27:13;45:20,22,
24;69:15;83:19
seemed (1) 66:24
send (1) 50:21
sent (9) 11:3;17:19;49:4,18,
19;50:19;54:7;85:9;
88:18
Sentence (6) 73:10;74:19,
20;75:1,19;78:14
September (1) 37:8
sequence (2) 38:6,25
served (2) 17:12;23:13
session (5) 87:2,14,22;89:1,
7
Set (1) 15:22
settle (1) 50:24
settled (2) 49:5;50:2
several (1) 84:6
sheriff's (1) 84:23
shooting (3) 28:5,9;33:22
shot (1) 43:18
should (1) 30:6
show (1) 34:5
showing (1) 49:1
shown (1) 36:24;37:3,10
sign (1) 76:15
signature (1) 16:14
signed (3) 44:13,25;84:11
signing (3) 45:6,13,16
similar (1) 51:22
Similarly (2) 5:7;51:23
simply (1) 8:21
sitting (2) 53:8;89:2
Situated (1) 5:8
situation (3) 12:5;49:13;
57:4
situations (1) 14:16
six (1) 88:23
size (1) 53:10
social (1) 11:16
somehow (1) 49:9
someone (2) 14:19;83:19
something (3) 8:20;26:17;
82:11
sometimes (1) 9:7
sorry (14) 16:7;21:4,15;
32:11;33:8;34:20;43:19;
50:5;64:6;74:19;78:11;
81:6;85:24;86:4
sort (3) 51:8,15,18
sought (2) 55:14;81:21

South (2) 6:17;17:24
speaking (1) 62:3
specific (4) 39:16;40:18;
69:12,25
specifically (5) 9:3;67:25;
69:12,25
spell (1) 27:15
speller (1) 27:17
spoke (7) 11:20;20:17;62:6,
7;81:7;87:12,21
spoken (2) 11:19;12:13
standing (4) 52:14;72:13;
73:19;75:8
stands (1) 47:17
started (1) 89:6
state (13) 6:14;33:3;72:5,20;
73:1;74:22;75:16,23;
76:9,16;78:1,2;84:15
States (1) 51:16
stating (1) 26:14
steps (3) 58:20,23;38:19;
40:7;88:16
Stevens (2) 47:4,20
still (3) 49:21;54:16;80:15
Street (2) 9:1;78:19
strike (5) 13:1;24:16;28:15;
35:3;43:20
student (1) 62:9
stuff (3) 12:5;69:10;85:21
subclass (2) 53:18,23
subclasses (1) 53:16
subject (2) 8:12;54:10
submitted (6) 58:19,24;
69:13;70:7,12;82:22
submitting (2) 45:17;69:5
sudden (1) 46:8
sufficient (1) 70:6
suggested (1) 67:14
suggesting (1) 51:19
suit (1) 48:14
sum (2) 22:16;63:14
supplement (2) 70:10,14
support (1) 22:2
supporting (1) 22:18
sure (7) 32:18;37:2;38:6,25;
54:25;60:7;69:22
suspended (8) 79:9,19;80:2,
5,13,17,22;83:18
suspension (6) 55:21;76:2,
12,19;83:5;84:15
swear (1) 5:23
sworn (1) 6:4
symbolizing (1) 9:7

**T**

tag (1) 76:15
take (13) 5:5;8:10,22;21:8;
28:20,23;29:2;38:19;
55:18;67:23;81:13;
85:22;88:16
taken (1) 40:7
talk (4) 41:8,13,15;61:25

talked (3) 35:9,16;88:18
talking (3) 14:13;30:23;60:2
taxes (1) 84:15
telling (2) 22:15;62:9
ten (26) 65:9,16;66:8,15,23;
67:2,16,21;68:1,7,9,16;
69:2,7,16;70:1,2,3,18;
79:15,20;80:24;81:1,10,
22,25
ten-year (2) 70:8;71:8
term (1) 6:22
testified (3) 46:13;55:12;
87:1
testifying (1) 81:11
testimony (4) 8:2;9:11;
39:15,23
text (1) 33:5
thank (8) 17:9;25:2,9,10;
39:15;43:5,25;78:13
thereafter (3) 19:18;44:6;
88:16
therefor (1) 76:19
Thereupon (13) 9:21;15:9,
21;22:24;31:2;42:4;
55:4,7;71:13;73:9;
74:25;77:13;86:21
thing (3) 45:22;50:11,12
things (3) 46:4;67:4,7
think (14) 11:20,21;17:15;
27:22,23;34:12,12;
47:19;53:11,14,17,24;
63:4;84:10
thinking (2) 39:12;81:14
third (2) 43:9;78:25
those (21) 8:1;12:9;27:3;
30:6,8;32:24;33:2;
43:14;44:9,20;47:12;
52:15;53:21;55:22;56:2,
14,21;58:3;59:19,24;
78:16
though (1) 58:9
thought (3) 64:18;81:21;
82:15
three (6) 13:8,8;72:9;78:16;
84:16;88:22
through (13) 14:17;18:18;
21:24;40:20;41:9;46:3,
4,7;47:16;48:14;49:13;
54:14;59:25
throughout (1) 55:13
ticket (1) 88:9
till (1) 13:17
titled (1) 5:6
TMC (2) 47:4,16
Today (9) 5:2,15;7:18,21;
19:24;20:4,8;21:6;53:8
told (18) 18:18,22,23;34:10,
12;35:22;46:8;62:12;
63:11;64:2,11,19;68:19;
81:9;87:18,25;88:2,13
took (2) 63:24;88:22
tooken (1) 46:6
top (3) 32:5,7,9

total (1) 22:16
totality (2) 20:24;63:14
toward (1) 16:24
to-wit (2) 76:14,16
traffic (1) 85:20
training (1) 62:9
trash (1) 48:2
travel (1) 61:20
trouble (1) 27:2
truck (23) 10:25;11:9,11;
12:15,21;13:11;24:18;
25:5;27:8,13,20;29:3;
37:6,25;46:15,24;48:1,2;
52:6;56:8;58:19;83:11,
19
trucking (18) 11:4,4;13:22;
24:14;47:6,9,19;55:14;
56:4,9,10,15,18;57:22;
58:3,25;59:24;88:21
true (10) 10:19;16:13;23:11;
72:18,23;74:18;76:23;
79:14,25;82:25
truth (1) 26:18
try (2) 18:6;37:19
trying (5) 35:20;46:12;
53:12;83:11,14
Tulsa (14) 6:17;7:12;9:1;
17:25;28:8;33:18;76:9,
17,17;77:13;78:1,19;
84:23,25
turn (4) 19:14;29:3;38:2;
43:2
two (5) 33:1,4,20;67:5,15
type (1) 49:14

**U**

uh-uh (1) 9:8
unable (2) 46:22;62:24
unclear (1) 8:3
under (11) 8:2;27:22,23;
75:21;76:2,11,19;80:25;
81:11;83:5;84:14
underlined (1) 79:24
underneath (2) 32:23;33:2
understand (15) 6:22;14:9,
23;18:11;37:2;38:6,25;
39:23;40:12;41:1;54:18;
56:16;60:2;69:24;70:13
understanding (1) 23:22
understood (1) 8:6
unemployment (1) 66:16
United (1) 51:16
unlawfully (1) 76:12
up (13) 9:13;12:5;29:7;
34:25;39:6;43:18;57:14;
58:12;82:6,10;86:17;
88:20;89:2
upon (2) 23:13;63:23
upset (1) 18:14
use (3) 6:22;28:10;89:9

**V**

various (6) 26:7;32:23;
55:14;56:8,9;79:4
vehicle (1) 76:14
Verification (1) 16:10
versus (11) 5:8;48:15,22;
49:6,10,23;51:17;54:3;
72:6;75:16;78:2
very (3) 8:4;16:5;25:2
victim (1) 48:20;49:2
VIDEOGRAPHER (14)
22;15:6,14;30:16,21;
42:1,8;55:1,10;86:18,24;
89:13,19
Virginia (1) 48:24
voice (1) 9:15
volume (1) 24:10

**W**

waiting (1) 89:3
Wallace (5) 33:10,11,19;
43:24,25
want (8) 17:4;30:3;38:24;
45:22;46:2;48:3;52:22;
54:10;63:12;64:7,21;
66:22;67:1;68:20;69:22;
76:5;88:3
wanted (1) 67:22
Waste (2) 47:25,25
way (5) 8:5,25;9:10;46:7;
64:5
weeks (1) 85:14
well (41) 11:1,1;12:4;13:1;
18:10;22:7;24:6;28:1,
41:16;46:2;47:4;48:20;
54:13;57:8,21;58:18;
61:19;62:7,13;64:2,3,6,
11;65:4;67:19;68:2,19,
24;71:10;80:21;81:10;
82:21;84:3,13;85:2,4
went (11) 11:2,2;39:3;40:20;
47:16;49:13;52:16;
62:21;84:22;86:8;89:4
weren't (2) 29:11;50:7
Werner (2) 47:5,20
what's (11) 9:25;16:1;23:4,5;
31:9;42:11;71:17;73:13;
75:4;77:18,19
whether (5) 39:16,20;53:13;
56:17;79:8
White (34) 5:6,6,21;6:1,6,8,
15;15:22;16:5;17:15,24;
18:4,15,20;22:25;23:9;
30:4,9,11;31:3;53:5,9,
17;55:12;72:2,6;74:4;
75:12,16;76:8;78:3,8;
84:17;89:21
Whitebruce@yahoocom (1)
13:15

**Whitebruce38@gmailcom (1)** 13:6
**who's (1)** 83:19
**Whose (4)** 31:15,20;45:10; 62:17
**wife (1)** 18:2
**Willey (5)** 18:24;19:1,21; 20:1,3
**willfully (1)** 76:13
**Wiltran (3)** 13:21;88:21,24
**withhold (2)** 23:20;25:22
**within (2)** 40:5;76:10
**without (1)** 76:18
**witness (1)** 5:23
**wondering (1)** 40:2
**word (2)** 79:20,24
**words (1)** 38:16
**work (6)** 35:23;62:10,14; 68:25;70:3;77:14
**worked (9)** 7:14;10:21;11:2; 62:20;66:23;68:17;69:6; 70:7,18
**workers' (2)** 7:7,11
**working (1)** 13:21
**Workmen's (1)** 7:6
**wrap (1)** 86:17
**wreck (1)** 62:7
**write (4)** 31:23,24;43:25; 67:8
**written (4)** 32:15;43:19,20, 20
**wrong (9)** 26:21;28:7;39:8; 48:21;49:11;50:14,15; 54:22;82:17
**wrongfully (1)** 76:13
**wrote (7)** 32:21,22;33:5; 43:13,23;44:11;80:5

### Y

**year (4)** 29:14;60:3,3,9
**years (29)** 13:8,9;26:1;65:9, 16;66:9,15,23;67:2,16, 21;68:1,7,9,16;69:3,7, 16;70:1,2,3,19;79:15,20; 80:24;81:1,10,22,25