## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **BRUCE WHITE on Behalf of Himself and All Others Similarly Situated,** | |
| Plaintiff, | CASE NO. 1:11-CV-2615 |
| v. | |
| **CRST, INC.,** | UNITED STATES DISTRICT JUDGE JAMES S. GWIN |
| Defendant. | |

## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), Plaintiff, Bruce White ("White") on behalf of himself and all others similarly situated, respectfully moves this Court for a determination and an order certifying the following class of Plaintiffs:

> All natural persons residing in the United States, during the period provided by 15 U.S.C. § 1681p about whom CRST obtained and/or used a consumer report for employment purposes.

White also seeks to certify the following subclasses of Plaintiffs:

### Disclosure Subclass

a. All persons residing in the United States who applied for employment with CRST during the period provided by 15 U.S.C. § 1681p via facsimile, telephone, electronic mail, by regular mail, or other similar means, and about whom, during the application process CRST procured a criminal background report or other consumer report without first notifying those persons verbally, electronically, or in writing that they have a right to obtain a free copy of consumer report from the consumer reporting agency within 60 days, and also have a right to dispute the accuracy or completeness of any information in the consumer report directly with the consumer reporting agency.

**Adverse Action Subclass**

b.      All persons residing in the United States who applied for employment with CRST via facsimile, telephone, electronic mail, by regular mail, or other similar means and against whom CRST took adverse action based in whole or in part upon the consumer report without providing verbal, electronic, or written notice within 3 days of taking adverse action (i) that adverse has been taken based in whole or in part on the consumer report, (ii) the name, address, and telephone number of the consumer reporting agency, (iii) that the consumer reporting agency did not make the decision to take adverse action and is unable to provide the consumer with specific reasons why the adverse action was taken, (iv) that the consumer may request a free copy of the report and may dispute with the consumer reporting agency the accuracy or completeness of the report, as required by 15 U.S.C. § 1681 b(b)(3)(B).

White respectfully requests that this Court enter an Order certifying the Class and Subclasses as defined above, deeming White an adequate representative of the Class and Subclasses, and appointing Matthew A. Dooley, Anthony R. Pecora and Dennis M. O'Toole of Stumphauzer, O'Toole, McLaughlin, McGlamery & Loughman Co., LPA and Leonard A. Bennett of Consumer Litigation Associates, P.C. as Class Counsel.  A memorandum in support is attached hereto and incorporated herein.

STUMPHAUZER, O'TOOLE, McLAUGHLIN, McGLAMERY & LOUGHMAN CO., LPA

By:      /s/ Matthew A. Dooley
         Matthew A. Dooley (OH Bar 0081482)
         Dennis M. O'Toole (OH Bar 0003274)
         Anthony R. Pecora (OH Bar 0069660)
         5455 Detroit Road
         Sheffield Village, Ohio  44054
         Telephone:     (440) 930-4001
         Facsimile:     (440) 934-7208
         Email:         mdooley@sheffieldlaw.com
                        dotoole@sheffieldlaw.com
                        apecora@sheffieldlaw.com
         *Counsel for Bruce White and the putative Class*

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................................... 1

II. STATEMENT OF THE CASE AND FACTUAL BACKGROUND .................................... 2

    A. The Applicable FCRA Requirements Governing an Employer's Access to and Use of
    Consumer Reports ............................................................................................................... 2

        1. The FCRA requires consent to procure a consumer report for employment purposes and the
        employer's express disclosure of specific FCRA rights .................................................... 4

        2. The FCRA requires adverse action notice to be provided to consumers ...................... 5

    B. Statement of Facts ............................................................................................................... 6

        1.  CRST's hiring practices willfully violate the FCRA .................................................... 7

        2.  White's Experience ....................................................................................................... 9

III. CLASS CERTIFICATION IS APPROPRIATE .............................................................. 10

    A.   The requirements of Fed. R. Civ. P. 23(a) are satisfied ................................................ 12

        1.   Numerosity ................................................................................................................. 13

        2.   The commonality requirement is satisfied because the claims arise from the application of
        identical statutory provisions to standardized forms and conduct................................. 14

        3.   Typicality .................................................................................................................... 18

        4.   Adequacy of Representation ....................................................................................... 19

    B.  The requirements of Fed. R. Civ. P. 23(b)(3) are satisfied ............................................ 21

        1.   Common questions predominate because the class claims arise from a common nucleus of
        fact and involve overriding common questions............................................................. 21

            a.   The disclosure class claims are subject to common proof ................................... 21

            b.   The adverse action notice claims are subject to common proof .......................... 24

        2.   A class action is the superior method of adjudication because individual litigation is not
        feasible and the claims are manageable......................................................................... 25

IV. CONCLUSION .................................................................................................................... 27

## **TABLE OF AUTHORITIES**

### Cases

*Allapattah Services, Incorporated v. Exxon Corporation*, 333 F.3d 1248, 1261 (11th Cir. 2003) .................................................................................................................. 11, 21

*Amchem Prods. v. Windsor,* 521 U.S. 591, 615 (1997) .......................................... 10,11, 21,25, 26

*Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 340 (4th Cir. 1998) ........ 15, 18, 19

*Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir.2004) ........................................... 26

*Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) .................................... 26

*Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992) ................ 14

*Chakejian v. Equifax Info. Services LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) ............................ .................................................................................................. 12, 15, 18, 19, 21, 23

*Cushman v. Trans Union Corp.*, 115 F.3d 220 (3d Cir. 1997) .................................................... 22

*Daffin,* 458 F.3d at 552. ....................................................................................................... 7, 13

*Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001) .............................. 2

*East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) ............................................................................................................ 19

*Effreys v. Communications Workers*, 212 F.R.D. 320, 322 (E.D. Va. 2003) .............................. 14

*Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974)................................................................. 6, 12

*Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972) ...................................................... 25

*Esplin,* ............................................................................................................................... 12

*Fisher v. Virginia Elec. and Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003) ................... 15, 19

*Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 .............. 12, 15, 18, 19, 24

*Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 432 (6th Cir.2012) ................................... 6

*Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ........................... 2

*Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 430 (4th Cir. 2003)................................... 20

*Hall, et al. v. Vitran Express, Inc.*, N.D. Ohio Case No. 1:09-CV-00800.................................... 14

*Haywood v. Barnes*, 109 F.R.D. 568, 576 (E.D.N.C. 1986)....................................................... 13

*Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997) ................................ 25

*In re A.H. Robins Co., Inc.*, 880 F.2d 709, 713 (4th Cir. 1989)................................................. 25

*In re American Medical Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996)............................................. 14

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785, 796 (3d Cir. 1995) ........................................................................................................... 19

*In Re Lee Memory Gardens, Inc.,* 333 B.R. 76 (M.D.N.C. 2005) citing *Black's Law Dictionary (*8th Ed. 2004)............................................................................................................ 22

*In re Mexican Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001)................................... 26

*In re Southeast Hotel Properties Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 607 (W.D.N.C. 1993)........................................................................................................... 19, 20

*In re Vitamins Antitrust Litigation, 209 F.R.D. 251 (D. D.C. 2002)*............................................ 21

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d 409, 417 (6th Cir. 2012)............................................................................................... 7, 11, 13, 18, 26

*Jeffreys v. Communications Workers*, 212 F.R.D. 320, 322 (E.D. Va. 2003) ................. 14, 15, 19

*Keele,* 149 F.3d at 594 ............................................................................................................ 15

*Kelchner v. Sycamor Manor Health Center*, 305 F.Supp.2d 429, 433 (M.D. Pa. 2004)............... 5

*Kelvin D. Daniel, et al v. Swift Transportation Corp.*, Civ. 2:11-cv-01548-PHX-ROS (D. Az. August 8, 2011) ............................................................................................................ 5

*Kliener v. First National Bank of Atlanta*, 97 F.R.D. 683 (N.D. Ga. 1983) ................................ 11

*Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 142 (4th Cir. 2001) ...................................... 15, 25

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997) .............................................. 27

*McGlothlin v. Connors*, 142 F.R.D. 626 (W.D. Va. 1992)........................................................ 15

*McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632 (6th Cir. 2000);........................................ 8

*Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006) ........................................ 13

*Morris v. Wachovia Securities, Inc.*, 223 F.R.D. 284, 295 (E.D. Va. 2004) ............................... 18

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).......................................... 26

*Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004) ............................ 25

*Ostrof v. State Farm Mutual Auto. Insurance Co.*, 200 F.R.D. 521, 530 (D. Md. 2001)............. 20

*Perry v. FleetBoston Financial Corp*., 229 F.R.D. 105 (E.D.Pa. 2005)...................................... 12

*Pfaff v. Whole Foods Mkt. Group, Inc.*, 2010 U.S. Dist. LEXIS 104784 (N.D. Ohio Sept. 29,
2010)........................................................................................................................................ 25

*Reardon v. Closetmaid Corp.*, 2011 WL 1628041 ........................................................ 5, 12,16, 19

*Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986) .................................................... 13

*Ryals v. HireRight*, Case No. 3:09CV625 (E.D. Va.) .................................................................. 9

*Safeco Ins. Co. v. Burr*, 551 U.S. 47 ( 2007) ................................................................. 22, 23, 24

*Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d
706 (1974) ............................................................................................................................... 19

*Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626 (D. Md. Jan. 25, 2012) ............ 5

*Smilow v. Southwestern Bell Mobile Systems*, 323 F.3d 32 (1st Cir. 2003) ................................ 11

*Soutter v. Equifax Info. Services, LLC*, 2011 WL 1226025 (E.D. Va. Mar. 30, 2011) .......... 12, 20

*Sprague v. General Motors Corporation*, 133 F.3d 388, 399 (6th Cir. 1998)............................. 18

*Steinberg v. Nationwide Mutual Insurance Company*, 324 F.R.D. 67 (E.D. N.Y. 2004) ............ 11

*Sterling v Velsicol Chemical Corporation*, 855 F.2d 1188, 1196 (6th Cir. 1988)................. 12, 26

*Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir. 1990) ................................................................. 15

*Summerfield v. Equifax Info. Services LLC*, 264 F.R.D. 133 (D.N.J. 2009) ............................... 12

*Talbott*, 191 F.R.D. .................................................................................................................. 25

*Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 241 (6th Cir.1994) ........................................ 6

*Triad v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974)............................... 25

*United States v. Ramsey*, 785 F.2d 184 (7th Cir. 1986)............................................................. 22

*Violette v. P. A. Days, Inc.*, 214 F.R.D. 207, 212 (S.D. Ohio 2003)........................................... 13

*Wal–Mart Stores, Inc. v. Dukes*, U.S., 131 S.Ct. 2541
, 2550, 180 L.Ed.2d 374 (2011) ....................................................................... 6, 11, 14, 18

*Williams v. LexisNexis Risk Mgmt. Inc.*, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) .. 12, 15, 23

*Winkler v. DTE, Inc.* 205 F.R.D. 235 (D. Az. 2001) .................................................................. 11

*Wiseman v. First Citizens Bank & Trust Co.*, 212 F.R.D. 482, 489 (W.D.N.C. 2003) ............... 19

*Zeno v. Ford Motor Company*, 238 F.R.D. at 183.................................................................... 11

## Statutes

15 U.S.C. § 1681a.................................................................................................................... 8

15 U.S.C. § 1681a(b). ............................................................................................................ 22

15 U.S.C. § 1681 a(d)(1)......................................................................................................... 2

15 U.S.C. § 1681a(k) .............................................................................................................. 5

15 U.S.C. § 1681b(a) .............................................................................................................. 2

15 U.S.C. § 1681b(a)(3)(B) ..................................................................................................... 3

15 U.S.C. § 1681 b(b) ............................................................................................ 1, 5
15 U.S.C. § 1681b(b)(2) ...................................................................................... 3, 4, 6, 21
15 U.S.C. § 1681b(b)(2)(A)(i) .................................................................................... 4
15 U.S.C. § 1681b(b)(2)(A)(ii) ................................................................................... 4
15 U.S.C. § 1681b(b)(2)(B) ................................................................................... 4, 24
15 U.S.C. § 1681b(b)(2)(B)(i) ................................................................................... 16
15 U.S.C. § 1681b(b)(2)(B)(ii) .................................................................................. 4
15 U.S.C. § 1681b(b)(3) ...................................................................................... 3, 5, 6. 24
15 U.S.C. § 1681 b(b)(3)(A) ...................................................................................... 6
15 U.S.C. § 1681 b(b)(3)(B) ................................................................................... 2, 10
15 U.S.C. § 1681 b(b)(3)(B)(i)(I) ............................................................................... 16
15 U.S.C. § 1681 b(b)(3)(B)(i)(II) .............................................................................. 17
15 U.S.C. § 1681 b(b)(3)(B)(i)(III) ............................................................................. 17
15 U.S.C. § 1681 b(b)(3)(B)(i)(IV) ............................................................................. 17
15 U.S.C. § 1681 g(c)(3) ........................................................................................ 17
15 U.S.C. § 1681k .................................................................................................. 9
15 U.S.C. § 1681m(a)(3) ........................................................................................ 24
15 U.S.C. § 1681n .................................................................................................. 22
15 U.S.C. § 1681n(1)(A) ...................................................................................... 3, 22
15 U.S.C. § 1681p .................................................................................................. 1

## Other Authorities
116 Cong. Rec. 36570 (1970) .................................................................................. 2

## Rules
Fed. R. Civ. P. 23(a) ................................................................. 1, 2, 10 11, 12, 19
Fed. R. Civ. P. 23(a)(1) .......................................................................................... 12
Fed. R. Civ. P. 23(a)(2) .......................................................................................... 15
Fed. R. Civ. P. 23(a)(4) .......................................................................................... 19
Fed.R.Civ.P. 23(b)(3) ....................................................................... 1,2, 11, 12, 21, 26
Fed. R. Civ. P. 23(b)(3)(A). ..................................................................................... 26
Fed. R. Civ. P. 26(a) ............................................................................................... 8
Fed. R. Civ. P. 26(e) ............................................................................................... 8
Fed. R. Civ. P.  37(c)(1) ........................................................................................... 8

## Treatises
Moore's Federal Practice § 23.25[4][b][ii] (2002) ...................................................... 20

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b), requires employers to make certain specific disclosures, use certain standard form documents and to follow specified policies and practices where they may use "consumer reports" to assess the qualifications of prospective and current employees.

The record evidence conclusively establishes that the Defendant, CRST, Inc. ("CRST"), disregards these mandates.  CRST adopted its own set of standard practices that are repugnant to the FCRA requirements.  These illegal practices violate the privacy rights of thousands of individuals ("consumers or prospective employees") who CRST has considered hiring over the past five or more years. As a result, CRST has illegally gained access to many of these consumers' private and personal information.  Even more, the "consumer reports" obtained by CRST about many of these consumers contain potentially derogatory information that may be inaccurate or false.  Yet, CRST failed to timely notify such consumers about these reports so that the information could be verified or corrected with CRST or with the consumer reporting agency that issued the report.

Given that White's claims and those of the putative Class members arise from CRST's adoption of policies and practices that are contrary to FCRA requirements, the classic case for class treatment is presented here.  It has been repeatedly recognized that class certification is particularly appropriate where the class claims arise from standardized forms or policies and procedures that are common to all proposed class members. Here, the proposed Class and Sub-Classes have FCRA claims that arise from the same illegal standardized forms and procedures

that have been implemented by CRST.  As fully demonstrated below, the requirements of Fed.

R. Civ. P. Rule 23(a) and 23(b)(3) are fully satisfied.

It is therefore respectfully submitted that this Court grant Plaintiff's Motion for Class

Certification.

## II.     STATEMENT OF THE CASE AND FACTUAL BACKGROUND

### A.  The Applicable FCRA Requirements Governing an Employer's Access to and Use of Consumer Reports

Congress enacted the Fair Credit Reporting Act ("FCRA") in 1970 to better ensure

that consumer reports were accurate and to protect consumers from their arbitrary use:

> Employers were placing increasing reliance on consumer reporting
> agencies to obtain information on the backgrounds of prospective
> employees. Congress found that in too many instances agencies
> were reporting inaccurate information that was adversely affecting
> the ability of individuals to obtain employment. As Representative
> Sullivan remarked, "with the trend toward ... the establishment of
> all sorts of computerized data banks, the individual is in great
> danger of having his life and character reduced to impersonal
> 'blips' and key-punch holes in a stolid and unthinking machine
> which can literally ruin his reputation without cause, and make him
> unemployable." 116 Cong. Rec. 36570 (1970)."

*Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001).  These consumer

oriented objectives support a liberal construction of the FCRA.  *Guimond v. Trans Union Credit*

*Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995).

The FCRA establishes the "permissible purposes" for accessing a "consumer report"

about a consumer. 15 U.S.C. § 1681b(a). [1]     Section 1681b(a) authorizes the release of a

---

[1]   The FCRA defines a "consumer report" in 15 U.S.C. § 1681a(d)(1) as:
          (d)  Consumer Report
     (1) In general. The term "consumer report" means any written, oral, or other communication of any
information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit
capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be
used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility
for
(A)  subject to section 624, credit or insurance to be used primarily for personal, family, or household purposes;

consumer report by a consumer reporting agency to a person it has reason to believe "intends to use the information for employment purposes".  15 U.S.C. § 1681b(a)(3)(B).  However, an employer is not automatically entitled to access and then use the consumer report.  The FCRA requires the employer to first get the consumer's "consent" to the release of the report and, then, if the report is found to have negative information, the employer must properly notify the consumer about that information if it is used as a factor in the employment decision. *See* 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

The Plaintiff's First Amended Complaint ("FAC") (Docket No. 29, 41-2) asserts two causes of action based upon these requirements of the FCRA. FAC ¶¶ 30-37.  The FAC alleges that CRST is subject to liability pursuant to 15 U.S.C. § 1681n(1)(A) entitled "Civil Liability For Willful Noncompliance". This FCRA civil liability provision provides in relevant part:

> (a) In general. "Any person who *willfully fails to comply with any requirement imposed under this title with respect to any consumer* is liable to that consumer in an amount equal to the sum of
> (1)
>     (A)… damages of not less than $100 and not more than $1,000; . . . [and]
> (2) such amount of punitive damages as the court may allow[.]

(emphasis added).  Under this provision, a person is liable to any consumer for violating any requirement with respect to that consumer for up to $1,000 if the violation is determined to be "willful."  The FAC seeks statutory damages of up to $1000 per class member, and unliquidated punitive damages.  The FCRA requirements that Plaintiff contends that CRST "willfully" violated with respect to the proposed Class and Sub-classes are described below.

---

(B)  employment purposes; or
(C)  any other purpose authorized under section 604 [§ 1681b].

    **1.**    **The FCRA requires consent to procure a consumer report for employment purposes and the employer's express disclosure of specific FCRA rights.**

Initially, the FCRA establishes a two-step procedure by which an employer must first obtain the *consent* of the prospective or current employee authorizing the employer to procure a consumer report about that person. See 15 U.S.C. § 1681b(b)(2). This provision generally requires that the employer must first make a "clear and conspicuous disclosure" in a *single* document that "consists solely of the disclosure that a consumer report may be obtained for employment purposes". 15 U.S.C. § 1681b(b)(2)(A)(i).  Once this disclosure is made, the prospective or current employee must authorize the access in writing. 15 U.S.C. § 1681b(b)(2)(A)(ii).

However, the "clear and conspicuous" stand-alone disclosure and "written authorization" requirements found under 15 U.S.C. § 1681b(b)(2)(A)(i) and 15 U.S.C. § 1681b(b)(2)(A)(ii) do not apply to applicants such as White and putative class members seeking a trucking position by mail, telephone, computer or other similar means.  Rather this narrow category of non-in-person trucking applicants is entitled to receive notice and provide authorization in writing, ***orally, or electronically***.  *See* 15 U.S.C. § 1681b(b)(2)(B). The oral, written or electronic notice that a consumer report will be obtained is coupled with a requirement that the employer notify the applicant of a right to receive a free copy of the consumer report provided by the CRA within 60 days ***and*** a right to dispute the accuracy and completeness of the report. *Id.* Most important, ***after*** receiving these notifications, the applicant must likewise authorize in writing, orally or electronically the procurement of the consumer report.  *See* 15 U.S.C. § 1681b(b)(2)(B)(ii).

4

Once the employer has made these disclosures and obtained the consumer's authorization, the employer is then authorized to access that person's private and personal information *at any time* thereafter. *See Kelchner v. Sycamor Manor Health Center*, 305 F.Supp.2d 429, 433 (M.D. Pa. 2004)("Based on our reading of the plain language of this subsection, "any time" prior to procurement can only mean that the required disclosure could take place not only in close proximity to the employer's seeking of the report, but also months or even years prior to taking such action."). *See also Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011); *see also Kelvin D. Daniel, et al v. Swift Transportation Corp.*, Civ. 2:11-cv-01548-PHX-ROS (D. Az. August 8, 2011) (Doc. 33); *see also Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626 (D. Md. Jan. 25, 2012).

### 2.        The FCRA requires adverse action notice be provided to consumers.

Once the mandated pre-consent disclosures are made and consent is obtained, and a consumer report is procured, 15 U.S.C. § 1681b(b)(3) establishes procedures that an employer must follow in *using* a consumer report that contains potentially derogatory information. Title 15 U.S.C. § 1681b(b)(3) requires that if the employer is "intending to take" an "adverse action" based *in whole or in part on information in the consumer report* then the employer must provide the applicant a copy of the report and a copy of a description of a consumer's rights under the FCRA *before* the "adverse action" is taken:[2] 15 U.S.C. § 1681b(b)(3).  The purpose for requiring this notice is to provide the prospective or current employee a meaningful period of time to meet with the employer and the consumer reporting agency to explain or correct the accuracy or veracity of information in that report.

---

[2] The FCRA defines "adverse action" in the employment context in 15 U.S.C. § 1681a(k) as follows:
    (k)      Adverse Action
        (1)   Actions included. The term "adverse action"
        (B)   means . . .  (ii)    a denial of employment or any other decision for employment purposes that
              adversely affects any current or prospective employee;

Like the provisions of 15 U.S.C. § 1681b(b)(2), 15 U.S.C. § 1681b(b)(3) distinguishes between trucking applicants with in-person contact and those who apply by mail, telephone, computer or other similar means.  As to in-person applicants, 15 U.S.C. § 1681 b(b)(3)(A) provides that **before** taking adverse action based on the consumer report, the employer must provide the applicant: (1) with a copy of the report, and (2) a written statement of rights prescribed by the Federal Trade Commission under §609 of the FCRA.  Conversely, for trucking applicants like White who apply via mail, telephone, computer or other similar means, the employer must provide the applicant, within three (3) days of taking adverse action, an oral, written or electronic notification:

1.   that adverse action was taken in whole or in part on the report received from a CRA;

2.   of the name, address and telephone number of the CRA that furnished the report;

3.   that the CRA did not make the adverse decision and cannot provide the applicant with a specific reason the adverse action was taken; and

4.   that the consumer may, upon providing proper identification, request a free copy of the report and dispute with the CRA the accuracy or completeness of the report.

### B.  Statement of Facts.

The Parties, not unexpectedly, disagree as to the merits of White's claim.  However, a Motion for Class Certification is not the proper posture for CRST to challenge such merits.  As the Sixth Circuit recently explained:

We have indicated, both before and after *Dukes,* that *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974). "merely stand[s] for the proposition that ... the relative merits of the underlying dispute are to have no impact upon the determination of the propriety of the class action." *Gooch v. Life Investors Ins. Co. of Am.,* 672 F.3d 402, 432 (6th Cir.2012) (quoting *Thompson v. Cnty. of Medina, Ohio,* 29 F.3d 238, 241 (6th Cir.1994)) (alteration in original) (internal quotation marks omitted). "[W]hether the class members will ultimately be successful in their

claims is not a proper basis for reviewing a certification of a class action." *Daffin*, 458 F.3d at 552.

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d 409, 417 (6th Cir. 2012).

### 1.    CRST's hiring practices willfully violate the FCRA.

Like many trucking companies in today's market, CRST accepts job applications online, via facsimile and via telephone.  New drivers are often recruited from the litany of trucking schools scattered throughout the United States.  There, drivers enjoy the benefits of a career services department staffed by recruiters paid to funnel applicants to CRST.  Such was the case with White, who applied to CRST via facsimile on September 10, 2009.  (CRST's Answer to FAC, Doc. 31, ¶ 7).

Once CRST receives an application, a CRST representative contacts the applicant by telephone to discuss his qualifications for employment.  (Exhibit A, Call Scripts, CRST001871-1875, Submitted under Seal).  As evidenced by CRST's own call scripts, CRST touts the benefits of employment, but ***never*** mentions that a consumer report will be obtained as a precondition for employment.  Worse, these scripts ***do not*** include any communication to applicants of their rights to a free copy of the consumer report, and to dispute the accuracy or completeness of the information.   Instead, applicants are asked to sign a disclosure that merely mentions the FCRA in passing, but wholly fails to advise of the applicants' statutory rights.[3]   (Exhibit B, CRST Release Agreement, CRST 000415, Submitted under Seal)

---

[3] The FCRA disclosure requirements for non-in-person trucking applicants are different than those applied to in-person applicants.  For in-person applicants, the employer is required to give the applicant a copy of his report and a written summary of his rights under the FCRA prepared by the Federal Trade Commission ***before*** making a final decision.  ***Such pre-adverse action notice does not apply to truck drivers who seek employment by non-in-person means.***  CRST utilizes a legally infirm "one size fits all" policy to the detriment of online, fax, and telephone applicants who never see the consumer report, and are never told they have a statutory right to not only get a ***free*** copy from the consumer reporting agency ***and/or*** CRST, but to ***dispute*** it as well.  The right to dispute is perhaps the most paramount right contained in the FCRA.

7

Behind the scenes, CRST employees evaluate applications in accordance with CRST's hiring guidelines. (Exhibit C, Most Recent CRST Hiring Guidelines, CRST001880-1883, Submitted under Seal)   During the course of discovery, CRST produced **no** documents evidencing any policy or procedure to comply with the FCRA. Indeed, CRST did not identify a single policy that provided guidance to recruiters regarding their obligation to seek appropriate authorization from applicants based upon legally sound disclosures.   Nor did CRST identify any documents that explained adverse action procedures to its nationwide network of recruiters. Either such CRST procedures to comply with the FCRA genuinely do not exist, or White is entitled to an inference that they do not exist.  *McMahan & Co. v. Po Folks, Inc.*, 206 F.3d 627, 632 (6th Cir. 2000); ("[T]he general rule is that '[w]here relevant information ... is in the possession of one party and not provided, then an adverse inference may be drawn that such information would be harmful to the party who fails to provide it." citations omitted.); *see also* Fed. R. Civ. P.  37(c)(1) ("If a party fails to provide information or identify a witness as required by Fed. R. Civ. P.   26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.")

Among the many steps taken to screen applicants, CRST orders a consumer report from HireRight Solutions, Inc., a mega-consumer reporting agency that primarily serves the trucking industry.[4] (Exhibit D October 19, 2007 Recruiting Training Class Notes, CRST002311, Submitted under Seal), ("DAC is FCRA approved, and we can make legal decisions regarding

---

[4] HireRight provides many *a la carte* services for its clients, including "DAC" reports and "Wide Screen Reports". DAC reports summarize an applicant's employment history using data submitted to HireRight by former employers. Wide Screen reports purport to summarize an applicant's criminal record history based upon publicly available records.  Both reports are "consumer reports" within the meaning of the FCRA.  See 15 U.S.C. § 1681a.

hiring based on the DAC 20/20 criminal background report.")[5] These consumer reports purportedly confirm an applicant's employment and criminal history.  Frequently, these reports are shown to be grossly inaccurate, and difficult to correct.  For example, HireRight recently settled a nationwide class action alleging in part that HireRight unnecessarily burdened consumers during the dispute process.[6]

CRST should be well-aware of the legal obligations underscoring the use of consumer reports for employment purposes.  Indeed, CRST's 2002 contract with HireRight spells out the requirements under the FCRA with specificity.   (Exhibit E, 2002 HireRight/CRST Contract, CRST001857-1868 Submitted under Seal).  These requirements were repeated in a subsequent 2010 agreement between CRST and HireRight.  (Exhibit F, 2010 HireRight/CRST Contract, CRST001843-1856, Submitted under Seal).  HireRight even published a guide to comply with the FCRA that included sample disclosures that CRST *could have* provided to applicants. (Exhibit G, FCRA Overview and Instructions, CRST002077-2102, Submitted under Seal). CRST did not actually consult this guide until *after* this litigation was filed. (Exhibit H, Email Correspondence between Brooke Willey and HireRight, CRST002074-2076, Submitted under Seal)

### 2.    White's Experience

White experienced the flaws of CRST's policies first-hand when he was initially hired by CRST only to be told on the first day of orientation that his criminal record precluded employment.  (Exhibit I, September 18, 2009 Offer of Employment, CRST000457, Submitted

---

[5] HireRight has operated under several different trade names in the last 5 years, including "DAC" and "USIS".

[6] In *Ryals v. HireRight,* Case No. 3:09CV625 (E.D. Va.) (Doc. 3), the plaintiffs further alleged that HireRight failed to provide contemporaneous notification to consumers at the time HireRight provided adverse public record information to employers.  See 15 U.S.C. § 1681k. The court certified the class upon the parties' joint motion, which included more than 650,000 truck drivers nationwide.

under Seal).  In the course of completing his application, White disclosed a 1992 misdemeanor conviction for discharging a firearm.  (Exhibit J, September 10, 2009 Application, CRST000389-393, Submitted under Seal).  On December 1, 2009 -- while White was already en route to orientation -- CRST obtained his consumer report from HireRight, which inaccurately identified a felony conviction for shooting with intent to kill. (Exhibit K, December 1, 2009 HireRight Report, CRST000397-398, Submitted under Seal) (CRST's Answer to FAC, Doc. 31, ¶ 9-10).[7] Prior to obtaining his report, CRST never advised White that he could obtain a free copy within 60 days from HireRight, and could dispute any inaccurate or misleading information.

Immediately, White's CRST recruiter consulted with CRST's Director of Safety regarding the felony record contained in White's HireRight report.  (Exhibit L, Communication between Brandi Northway and Randi Kopecky, CRST000070, Submitted under Seal)  Despite clarification from White's recruiter, the Director of Safety concluded, "I understand he pled it down, but he shot at someone".   Shortly after arriving at orientation, White was summoned to speak with a CRST representative, who informed him that he was being discharged due to the information contained in his HireRight report.  No one told White that CRST was obligated to provide him with a copy of the report upon his request, nor was he provided with any other information required by 15 U.S.C. § 1681b(b)(3)(B).  Indeed, CRST has no policy or procedure requiring that this information ever be communicated to applicants at all.

## III.    CLASS CERTIFICATION IS APPROPRIATE.

Class certification requires a representative plaintiff to establish the four requirements of Fed. R. Civ. P. 23(a) and two of the requirements of Rule 23(b).  *See e.g. Amchem Prods., Inc. v.*

---

[7] Interestingly, HireRight disclaims that the information in its consumer reports may be inaccurate, and that employment decisions "should not be based solely upon information contained in this report.  Positive ID requires a fingerprint search.  The user of this report is responsible for following applicable local, state and federal laws with respect to the procurement and use of this information."  (Exhibit K, December 1, 2009 HireRight Report, CRST000397-398, Submitted under Seal).

*Windsor,* 521 U.S. 591, 613 (1997).   The plaintiff must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequate representation serve to limit class claims to those that are fairly encompassed within the claims of the named plaintiffs. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (U.S. 2011);  *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d 409, 416 (6th Cir. 2012).

Rule 23(b)(3) further requires that: (1) questions of law or fact common to all class members predominate over individual issues, and (2) that the class action mechanism be superior to other available means of adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) "requires a demonstration that questions of law or fact common to the class predominate over individual questions and that the class action is superior to other available methods to adjudicate the controversy fairly and efficiently. " *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d at 416  (6th Cir. 2012).

Federal courts routinely certify claims that arise from standard form contracts, documents and standardized conduct.[8]  This principle of class action law applies equally as well in the realm

---

[8]*See Allapattah Services, Incorporated v. Exxon Corporation*, 333 F.3d 1248, 1261 (11th Cir. 2003) (certifying breach of contract claims where "all of the dealer agreements were materially similar and Exxon purported to reduce the price of wholesale gas for all dealers"); *Smilow v. Southwestern Bell Mobile Systems*, 323 F.3d 32, 39-42 (1st Cir. 2003) (certifying breach of contract claim based on standard form mobile phone contract and alleged breach thereof in charging for incoming calls); *Zeno v. Ford Motor Company*, 238 F.R.D. at 183; *Steinberg v. Nationwide Mutual Insurance Company*, 324 F.R.D. 67, 79 (E.D. N.Y. 2004) (certifying breach of contract claim involving materially similar automobile insurance contract and a Nationwide's common practice of taking "betterment" deductions on claims under those insurance contracts); *Winkler v. DTE, Inc.* 205 F.R.D. 235, 243 (D. Az. 2001) (certifying breach of contract claim based on standard purchase contracts of used car dealer and overcharges of official registration fees); *Kliener v. First National Bank of Atlanta,* 97 F.R.D. 683, 692 (N.D. Ga. 1983) ("claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of

of FCRA class actions.[9]  As fully developed below, this case fits within this genre of cases.  The Rule 23 requirements are satisfied.

## A.     The requirements of Fed. R. Civ. P. 23(a) are satisfied.

Federal Rule of Civil Procedure 23(a) requires that a movant demonstrate as a threshold:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and, (4) the representative parties will fairly and adequately protect the interest of the class.

Among the three primary types of class actions, White seeks certification under Fed. R. Civ. P. 23(b)(3), as common questions of law or fact predominate over any questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).

Resolving doubts in favor of class certification furthers the salutary purpose of compensating victims of widespread wrong.  *See generally*, *Esplin*, *supra*. Further, "[t]he procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense."  *Sterling v. Velsicol Chemical Corporation*, 855 F.2d 1188, 1196 (6th Cir. 1988).

---

contract cases are routinely certified as such.") (citations omitted).

[9]      *Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011); *Williams v. LexisNexis Risk Mgmt.*, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007); *Souter v. Equifax Info. Servs.*, LLC, 2011 U.S. Dist. LEXIS 34267 (E.D. Va. Mar. 30, 2011); *Summerfield v. Equifax Info. Services LLC*, 264 F.R.D. 133, 136 (D.N.J. 2009); *Chakejian v. Equifax Information Services*, LLC, 256 F.R.D. 492 (E.D Pa. 2009); *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D.Pa. 2005); *Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 (N.D. Ill. Oct. 15, 2008).

1.      **Numerosity**

Rule 23(a)(1) of the Federal Rules of Civil Procedure requires that the class be "so numerous that joinder of all members is impracticable." *Violette v. P. A. Days, Inc.*, 214 F.R.D. 207, 212 (S.D. Ohio 2003). "While no strict numerical test exists, "substantial" numbers of affected consumers are sufficient to satisfy this requirement. *Daffin,* 458 F.3d at 552." *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d 409, 418 (6th Cir. 2012). "When the class is large, numbers alone are dispositive . . . ." *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D. Ill. 1986). There is no set minimum number of potential class members that fulfills the numerosity requirement. See *Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006). The fact that the precise number of class members cannot be determined at the certification stage does not preclude class certification. *See Haywood v. Barnes*, 109 F.R.D. 568, 576 (E.D.N.C. 1986). The court may rely on reasonable estimates of the number of class members. *Id.*

During the course of discovery, CRST identified approximately ***43,000*** individuals by name who sought employment with CRST from December 1, 2006 through December 1, 2011. (Exhibit M, Putative Class List, Submitted under Seal)[10] Pursuant to CRST's policies, CRST

---

[10] CRST contends that the relevant statute of limitations is limited to two years from the date CRST obtained a consumer report. (CRST's Answer to FAC, Doc. 13, ¶45). Title 15 U.S.C. § 1681p permits a claim under the FCRA "not later than the earlier of—

> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
> (2) 5 years after the date on which the violation that is the basis for such liability occurs."

In a similar case from the Northern District of Ohio addressing the application of a five-year statute of limitations to a trucking company under the FCRA, District Judge Dan Aaron Polster concluded,

> Finally, Defendant argues that amendment is futile because the limitations period has expired for those putative class members who applied for employment between April 7, 2004 and April 7, 2007. Specifically, Defendant argues that because the USIS notice informed applicants that Vitran had obtained copies of their consumer report, provided the results of the consumer report, enclosed the report to the applicants, and provided contact information

13

obtained a consumer report regarding each one of these applicants without proper disclosure and authorization.  Assuming only 5% of the total number of applicants was declined because of information contained in the report, approximately **2,150** applicants did not receive proper adverse action notice.  The sheer size of the Class and Subclass is sufficiently large to conclude that the claims are so numerous that joinder of all members is impracticable.

> **2.**      **The commonality requirement is satisfied because the claims arise from the application of identical statutory provisions to standardized forms and conduct.**

Commonality requires that there be at least one dominant question of law or fact common to the members of the class.  *In re American Medical Sys.,* 75 F.3d 1069, 1080 (6th Cir. 1996); *see also Jeffreys v. Communications Workers*, 212 F.R.D. 320, 322 (E.D. Va. 2003); *Central Wesleyan College v. W.R. Grace & Co.*, 143 F.R.D. 628, 636 (D.S.C. 1992), aff'd 6 F.3d 177 (4th Cir. 1993) (stating that commonality "does not require that all, or even most, issues be common, nor that common issues predominate, but only that common issues exist").  The common issue must be such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (U.S. 2011) (What matters to class certification is "' the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.' " Citation omitted).

---

for further information, the applicants Plaintiff seeks to add had already discovered Defendant's FCRA violations. As the statute of limitations is two years for those who have discovered an FCRA violation, these putative class members have no cause of action.

However, simply because these applicants were provided certain information by USIS about their consumer report, does not mean that they had notice of Vitran's violations of the FCRA. The critical issue in this litigation is whether Vitran met its obligations under the FCRA. USIS providing certain information to consumers does not demonstrate that Vitran met its obligations.

*Hall, et al. v. Vitran Express, Inc.*, N.D. Ohio Case No. 1:09-CV-00800 (Doc. 28).

Commonality is a liberal standard that cannot be defeated by the mere existence of some factual variances in individual grievances amongst class members. *Jeffreys*, 212 F.R.D. at 322. Not all factual or legal questions raised in the litigation need to be common as long as at least one issue is common to all class members.  *McGlothlin v. Connors*, 142 F.R.D. 626 (W.D. Va. 1992).  The commonality requirement simply requires that the class present dispositive questions that will propel the case through the system.  *See Stott v. Haworth*, 916 F.2d 134, 145 (4th Cir. 1990); *Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 146 (4th Cir. 2001).  Much like the typicality requirement, commonality ensures that only plaintiffs capable of advancing the same factual and legal arguments are grouped together as a class.  *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998); *Fisher v. Virginia Elec. and Power Co.*, 217 F.R.D. 201, 212 (E.D. Va. 2003).

Commonality is satisfied in a FCRA case alleging a uniform violation of the FCRA's disclosure and notice provisions. *Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 at *4:

> "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a) (2)." *Keele,* 149 F.3d at 594. A common set of operative facts is ordinarily present when the defendants are claimed to have engaged in "standardized conduct towards members of the proposed class." *Id* **\*4** Plaintiffs allege that the form of Equifax's standard file disclosures to class members, all of whom had delinquent Sherman accounts, violated the FCRA. Equifax's uniform use of the "Date of Last Activity" field to convey dates of first delinquency constitutes a common nucleus of operative fact giving rise to the class claims. The proposed class thus satisfies the commonality requirement of Rule 23(a)(2).

*See also Williams v. LexisNexis Risk Mgmt.*, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007); *Chakejian v. Equifax Information Services, LLC,* 256 F.R.D. at 498.  Upon the two claims alleged in this FCRA case,

[T]here are numerous questions of law or fact common to the class. These

include, but are not limited to, whether the forms used by [the employer] to obtain consent to procure a consumer report from the class member violated the FCRA; whether [the employer] relied on derogatory information in consumer reports to deny employment to the sub-class members in violation of the FCRA; whether [the employer] was required by the FCRA to provide a copy of the consumer report to sub-class members at least five (5) days before refusing to hire the subclass members; and whether [the employer] acted willfully. Accordingly, plaintiff has established commonality.

*Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011). In contrast to the limited uniformity in some cases, the claims alleged by the Plaintiff are nearly if not actually identical to those asserted on behalf of the putative class. The success of the Plaintiff's claims would be similarly dispositive for the class. White seeks to represent a class of individuals who – between December 1, 2006 and the present – were the subject of consumer reports obtained by CRST for employment purposes. Among this group are those to whom CRST did not provide notice of their FCRA rights **before** obtaining the report. Further, the class also consists of smaller subclass of applicants who did not receive adverse action notice from CRST within 3 days of CRST's determination to decline employment based upon a consumer report. At each level, the putative class members' claims share common questions of law and fact that predominate over all individual issues. Indeed, the determination of class membership is effectively answered by a series of "yes or no" questions: either CRST notified applicants of their FCRA rights, or it did not.

Core questions of law and fact common to the Classes are difficult to ignore:

> A. Whether CRST violated 15 U.S.C. § 1681b(b)(2)(B)(i) by failing to provide the consumer with verbal, electronic, or written notice of a right to obtain a free copy of a consumer report from the consumer reporting agency within 60 days;
>
> B. Whether CRST violated 15 U.S.C. § 1681b(b)(2)(B)(i) by failing to provide the consumer with verbal, electronic, or written notice of a right to dispute the accuracy or

completeness of any information in the consumer report directly with the consumer reporting agency;

C.  Whether CRST, within 3 business days of taking adverse action, provided oral, written, or electronic notification to consumer that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency as required by 15 U.S.C. § 1681 b(b)(3)(B)(i)(I);

D.  Whether CRST, within 3 business days of taking adverse action, provided oral, written, or electronic notification to consumer of the name, address and telephone number of the consumer reporting agency that furnished the consumer report (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis) as required by 15 U.S.C. § 1681 b(b)(3)(B)(i)(II);

E.  Whether CRST, within 3 business days of taking adverse action, provided oral, written, or electronic notification to consumer that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; as required by 15 U.S.C. § 1681 b(b)(3)(B)(i)(III);

F.  Whether CRST, within 3 business days of taking adverse action, provided oral, written, or electronic notification to consumer that the consumer may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report as required by 15 U.S.C. § 1681 b(b)(3)(B)(i)(IV);

G.  Whether CRST, within 3 business days of receiving a consumer's request for a copy of a consumer report from the person who procured the report, together with proper identification, provided the consumer with a copy of a report and a copy of the consumer's rights as prescribed by the Federal Trade Commission under 15 U.S.C. § 1681 g(c)(3);

H.  Whether CRST knowingly and intentionally acted in conscious disregard of the rights of the consumer.

17

I.  Whether CRST was negligent in its (or had a complete lack of) training, supervision, and/or implementation of policies and procedures concerning the appropriate usage of consumer reports;

J.  Whether CRST acted willfully in disregard of the rights of the consumer.

Crucially, these common questions can be resolved with reference to standardized conduct and documents.  The claims of all class members derive from the same procedures implemented by CRST. The commonality requirement is satisfied as more fully developed in the demonstration of "predominance" below. *See Chakejian v. Equifax Information Services, LLC,* 256 F.R.D. at 497.

### 3.  Typicality

It has been noted that "the premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  *Sprague v. General Motors Corporation*, 133 F.3d 388, 399 (6th Cir. 1998); see also *Broussard v. Meineke Discount Muffler Shops*, 155 F.3d 331, 340 (4th Cir. 1998) (quoting *Sprague v. General Motors Corporation*, 133 F.3d 388, 399 (6th Cir.1998)).  "Commonality and typicality "tend to merge" because both of them "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Dukes,* 131 S.Ct. at 2551 n. 5." *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d 409, 418 (6th Cir. 2012).

The typicality requirement is met when the class representative demonstrates that: (1) "[his] interests are squarely aligned with the interests of the class members;" and (2) "[his] claims arise from the same events or course of conduct and are premised on the same legal

theories as the claims of the class members." *Fisher v. Virginia Electric and Power Company*, 217 F.R.D. 201, 217 (E.D. Va. 2003) (citing *Jeffreys v. Communications Workers*, 212 F.R.D. 320, 322 (E.D. Va. 2003); *Morris v. Wachovia Securities, Inc.*, 223 F.R.D. 284, 295 (E.D. Va. 2004).

The scope of White's claims is coextensive with those of the class; his claims are *identical* to those of the putative class members and his interests are squarely aligned with them. Typicality has been found in other similar contested FCRA actions. *Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011); *Gillespie v. Equifax Info. Services, LLC*, 05 C 138, 2008 WL 4614327 at *4; *Chakejian,* 256 F.R.D. at 498.   In particular, White's claims arise out of the exact same hiring practices, which guided CRST's actions in the course of obtaining and using consumer reports to make employment decisions.  Simply put, neither White nor the putative class members received the mandated FCRA disclosures.

### 4.      Adequacy of Representation

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prerequisite is met when: "(1) the named plaintiff has interests common with, and not antagonistic to, the Class' interests; and (2) the plaintiff's attorney is qualified, experienced and generally able to conduct the litigation." *In re Southeast Hotel Properties Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 607 (W.D.N.C. 1993); *Wiseman v. First Citizens Bank & Trust Co.*, 212 F.R.D. 482, 489 (W.D.N.C. 2003).  A class representative must be part of the class and possess the same interest and suffer the same injury as the class members.  *East Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (citing *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974)).

In a class action, litigation by representative parties adjudicates the rights of all class members, and thus basic due process requires that a named plaintiff possess undivided loyalties to absent class members. *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 338 (4th Cir. 1998) (citing e.g., *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785, 796 (3d Cir. 1995). Representation will be considered "adequate" if the class representatives are not disqualified by reason of interests antagonistic to the rest of the class. *Ostrof v. State Farm Mutual Auto. Insurance Co.*, 200 F.R.D. 521, 530 (D. Md. 2001). In a complex lawsuit, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative. *Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 430 (4th Cir. 2003).

Importantly, CRST bears the burden of proving that White is an inadequate class representative. *In re Southeast Hotel Properties Ltd. P'ship Investor Litig.*, *supra* at 607. To defeat the adequacy requirement of Rule 23, White must present a conflict "more than merely speculative or hypothetical." *Gunnells v. Healthplan Services, Inc.,* 348 F.3d 417, 430 (4th Cir. 2003) (citing 5 Moore's Federal Practice § 23.25[4][b][ii] (2002)). But such is not the case here, where White seeks only statutory damages on behalf of himself and all other putative class members.

White has retained counsel experienced in FCRA class action litigation, and competent to represent the interests of the class. Counsel for White in this case are experienced in handling class action lawsuits and have competently handled many cases in this court and elsewhere. *See e.g. Souter v. Equifax Info. Servs*., LLC, 2011 U.S. Dist. LEXIS 34267 (E.D. Va. Mar. 30, 2011) ("[T]he Court finds that Souter's counsel [Leonard Bennett] is qualified, experienced, and able to conduct this litigation. Counsel is experienced in class action work, as well as consumer

protection issues, and has been approved by this Court and others as class counsel in numerous cases."); (Exhibits N, O and P, Declarations of Matthew A. Dooley, Anthony R. Pecora and Leonard A. Bennett respectively.  Moreover, there is no known conflict between White and members of the putative class. White's and Class members' claims are adequate.

    **B.**    **The requirements of Fed. R. Civ. P. 23(b)(3) are satisfied.**

        **1.**    **Common questions predominate because the class claims arise from a common nucleus of fact and involve overriding common questions.**

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 594 (1997), the Supreme Court noted that .  "[I]n general, predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." *Id.*, 521 U.S. at 625. *Allapattah Services*, 333 F.3d at 1260-1261, quoting *In re Vitamins Antitrust Litigation*, 209 F.R.D. 251, 262 (D. D.C. 2002); *Chakejian, LLC,* 256 F.R.D. at 500.

The elements of Plaintiff's substantive claims are subject to proof by generalized, common evidence.  In this case, all putative class members, by definition, were not provided with proper FCRA disclosures during the course of CRST's hiring process.  With statutory damages arising under identical circumstances for each class member, there are almost no individual issues that arise.  Rather, the issues which predominate relate exclusively to whether: (1) CRST's conduct was uniform as to the class members, and (2) the relative culpability of CRST's conduct.  Indeed, the certification of this class requires no individualized inquiry into damages.

        **a.**  **The disclosure class claims are subject to common proof.**

Count I of the First Amended Complaint, which alleges violations of the requirements in the Disclosure Provision, includes the following elements of proof:

1. Is CRST a "person" within the meaning of the FCRA who was seeking consent to obtain a consumer report for employment purposes?

2. If so, did CRST provide written, oral, or electronic disclosure to applicants under 15 U.S.C. § 1681b(b)(2)?

3. Based upon the disclosure, did CRST receive consent from the class member such that CRST maintains obtain the class member's consumer report?

4. If (1) to (3) above are satisfied, did CRST act "willfully" within the meaning of 15 U.S.C. § 1681n(a)(1)?

As demonstrated above, these elements are subject to common, generalized proof. *First,* CRST is a "person" within the meaning of the FCRA who sought a right of procurement to Class Member's private information in a consumer report. The term "person" means any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental subdivision or agency, or other entity. 15 U.S.C. § 1681a(b). CRST concedes it is a corporation and, therefore, a "person". Moreover, there is no dispute that the reports were to be sought for employment purposes. *Second,* CRST's standardized forms and absent FCRA policies demonstrate on their face that CRST violated the FCRA. By using these illegal forms and wholly ignoring the FCRA, CRST obtained illegitimate rights of access to Plaintiff's personal information. *Third,* based upon these infirm disclosures, CRST could not have obtained proper consent from the consumer.

Finally, common evidence can be adduced at trial demonstrating that CRST acted "willfully" within the meaning of the FCRA. *See* 15 U.S.C. §1681n.[11] In fact, all such evidence

---

[11] The Supreme Court decision in *Safeco Ins. Co. v. Burr,* 551 U.S. 47 (2007) construed the meaning of "willfully" in 15 U.S.C. § 1681n. 551 U.S. at 52. The Court stated that, "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well". *Id. at* 68. Therefore, willfulness can be established either by proof that the defendant actually knew that his conduct violated federal law or by reckless disregard of that fact. In other words, *Safeco* followed those circuit courts of appeal who had applied the "knowingly/recklessness" standard under the FCRA. *See Id* at 58, fn. 8 citing *Cushman v. Trans Union Corp.,* 115 F.3d 220, 227 (3d Cir. 1997) as adopting the "reckless disregard" standard. Courts, prior to *Safeco,* who applied a "knew or should have known" standard found that such proof may be made by

would be uniform amongst class member claims.  The critical questions all relate to the state of the law, the FCRA, and Defendant's knowledge of it. *Williams v. LexisNexis Risk Mgmt.*, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007) ("The Plaintiffs' class allegations charge that these standard procedures violated the FCRA, and that, in adopting these procedures, LexisNexis willfully violated the FCRA. It is not readily apparent how an inquiry directed at LexisNexis' state of mind in adopting standard procedures is affected by any particular case in which those standard procedures were applied."); *Chakejian v. Equifax Info. Services LLC*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) ("[T]he inquiry is to Equifax's state of mind in implementing its policies and procedures, not on the customer's particular interaction with the CRA. … the relevant inquiry in this case is what Equifax's state of mind: what information Equifax disclosed or failed to disclose to customers with respect to its reinvestigation procedures, and whether it knew, or consciously disregarded the fact that those disclosures were misleading. To prove willfulness here, a consumer-by-consumer inquiry is not necessary.").

Here, the evidence demonstrates that CRST adopted its procedures either knowing, or being reckless in not knowing, that the procedures violated Plaintiffs rights under the FCRA. Evidence of CRST's knowledge or recklessness is generalized and can be adduced on a common

---

demonstrating that the defendant adopted a policy that was in contravention of a person's rights under the Act. *Cushman,* 115 F.3d at 227. ("If . . . TUC adopted its reinvestigation policy either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights, she may be awarded punitive damages.)  To act "knowingly" differs from acting "recklessly". To act "knowingly" has been defined to mean that the act (or omission) was done voluntarily and purposefully, not because of mistake or accident." *See e.g. United States v. Ramsey,* 785 F.2d 184 (7th Cir. 1986). It is commonly understood meaning is "an awareness or understanding of a fact or circumstance; a state of mind in which a person has no substantial doubt about the existence of a fact." *In Re Lee Memory Gardens, Inc.,* 333 B.R. 76 (M.D.N.C. 2005) citing *Black's Law Dictionary (*8th Ed.  2004). The *Safeco* Court did not apply the "knowing" prong of "willfulness", but instead determined that the "recklessness" component of "willfulness" comports with the common law understanding, stating that, "the term recklessness is not self-defining," the common law has generally understood it in the sphere of civil liability *as conduct violating an objective standard*:  action entailing "an unjustifiably high risk of harm that is either known or so obvious that it should be known."  551 U.S. at 68. Therefore, the applicable standard is whether CRST knew or a reasonable person in the defendant's position should have known that the conduct at issue was in violation of rights under the FCRA.

basis on behalf of the alleged class. This further demonstrates predominance.

### b. The adverse action notice claims are subject to common proof.

The claims asserted in Count II are based upon the FCRA's 15 U.S.C. § 1681b(b)(2)(B) and provide for the following elements of proof:

1. Is CRST a "person" within the meaning of the FCRA?

2. If so, did CRST intend to take adverse action where derogatory information appeared in a consumer report about a prospective or current employee?

3. If (2) is decided in the affirmative, did CRST notify the consumer within 3 days of taking the adverse action of the consumer's rights under 15 U.S.C. § 1681b(b)(3) and 15 U.S.C. § 1681m(a)(3)?

4. Did CRST act willfully?

The evidence set forth herein above demonstrates that these elements can be established by generalized proof. *First,* CRST is obviously a "person" within the meaning of the FCRA. Whether CRST takes adverse action when derogatory information is identified in a consumer report is demonstrated by CRST's policies and procedures. (Hiring Guidelines Exhibit C repeated exhibit). Finally, as demonstrated above, whether CRST acted willfully is demonstrated by generalized evidence.

As the court in *Gillespie* observed:

In sum, the outcome of this suit, whatever it may be, will turn on common evidence regarding Equifax's standard file disclosure practice, the legality of that practice, and if illegal whether Equifax's adoption of that standard practice amounted to a willful violation of the FCRA as *Safeco* defines willfulness. It is hard to imagine a case in which the predominance of common over individual issues has been more clearly shown.

*Gillespie*, 2008 WL 4614327 *7. The same holds true here. The outcome of this case turns on common evidence regarding CRST's adoption (or lack thereof) of its FCRA disclosure and

adverse action practices and whether the adoption of those practices amount to a willful violation. This case readily meets the predominance standard.

### 2. A class action is the superior method of adjudication because individual litigation is not feasible and the claims are manageable.

Finally, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3). *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997); *see also Lienhart v. Dryvit Systems, Inc.*, 255 F.3d 138, 142 (4th Cir. 2001); *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 713 (4th Cir. 1989). The factors to be considered in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability. *Pfaff v. Whole Foods Mkt. Group, Inc.,* 2010 U.S. Dist. LEXIS 104784 (N.D. Ohio Sept. 29, 2010); *see also Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

Efficiency is the primary focus in determining whether a class action is the superior method for resolving the controversy presented. *Talbott*, 191 F.R.D. at 106 citing *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972). In examining these factors, it is proper for a court to consider the "inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Triad v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974). "In determining superiority, courts also consider the anticipated amount of recovery for each plaintiff. Class actions are particularly appropriate where multiple lawsuits would not be justified because of the small amount of money sought by the individual plaintiffs." *See Advisory Committee Note* to 1996 Amendment to Rule 23. Thus, the class mechanism permits a

large group of claimants to have their claims adjudicated in a single lawsuit.  FCRA statutory damage cases are ideally suited for class certification, with limited recoveries to be brought under a complex statute. "The procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense." *Sterling v Velsicol Chemical Corporation*, 855 F.2d 1188, 1196 (6th Cir. 1988).  Federal courts have long regarded "consumer claims" as "particularly appropriate for class resolution."  *See Amchem Prods.*, 521 U.S. at 625; *In re Mexican Money Transfer Litig.*, 267 F.3d 743, 747 (7th Cir. 2001); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly certified for class treatment"). As the Sixth Circuit this year explained:

> This is especially true since class members are not likely to file individual actions because the cost of litigation would dwarf any potential recovery. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (finding that in drafting Rule 23(b)(3), "the Advisory Committee had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all' "); *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir.2004) (Posner, J.) (noting that "[t]he *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits" because of litigation costs). Further, the district court observed, any class member who wishes to control his or her own litigation may opt out of the class under Rule 23(b)(3)(A).

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 678 F.3d at 421.  *See also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury.  Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. … Reliance on federal law avoids the complications that can plague multi-state classes under state law, ... , and society may gain from the deterrent effect of financial awards.

The practical alternative to class litigation is punitive damages, not a fusillade of small-stakes claims." Citations omitted).

Here, White seeks only statutory damages per violation of no less than $100 and no more than $1,000 for each class and subclass member.  Indeed, the amount in controversy for any individual claimant is small.  And this potential recovery pales in comparison to the costs of discovery and litigation.  None of the individual claimants posses any controlling interest in the litigation.  Likewise, the absence of any competing classes or other individual claims suggests that without the certification of this case as a class, it is unlikely that the class members would obtain any form of relief.  *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997).  Unless the Court certifies this class, it is highly probable that the class members will receive no relief of any kind.

## IV.    CONCLUSION

Based upon the foregoing argument, White respectfully requests that the Court enter an order certifying the class as defined above, deem White an adequate representative of the class and subclass, and appoint the undersigned as class counsel.

Respectfully submitted,

STUMPHAUZER, O'TOOLE, McLAUGHLIN,
McGLAMERY & LOUGHMAN CO., LPA

By:     /s/ Matthew A. Dooley
        Matthew A. Dooley (OH Bar 0081482)
        Dennis M. O'Toole (OH Bar 0003274)
        Anthony R. Pecora (OH Bar 0069660)
        5455 Detroit Road
        Sheffield Village, Ohio  44054
        Telephone:     (440) 930-4001
        Facsimile:     (440) 934-7208
        Email:         mdooley@sheffieldlaw.com
                       dotoole@sheffieldlaw.com
                       apecora@sheffieldlaw.com

27

CONSUMER LITIGATION ASSOCIATES, P.C.

/s/ Leonard A. Bennett
Leonard A. Bennett (admitted pro hac vice)
763 J. Clyde Morris Boulevard
Suite 1A
Newport News, Virginia 23601
Telephone:     (757) 930-3660
Facsimile:     (757) 930-3662
Email:         lenbennett@clalegal.com

*Counsel for Bruce White and the putative Class*

## CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing Plaintiff's Motion for Class Certification was filed electronically this 21st day of June, 2012.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via regular mail.

/s/ Matthew A. Dooley
*Counsel for Bruce White and the putative Class*

28