**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **BRUCE WHITE on Behalf of Himself and All Others Similarly Situated,** | |
| Plaintiff, | CASE NO. 1:11-CV-2615 |
| v. | |
| **CRST, INC.,** | UNITED STATES DISTRICT JUDGE JAMES S. GWIN |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**[INTENTIONALLY LEFT BLANK]**

# TABLE OF CONTENTS

I. OVERVIEW ........................................................................................................................1

II. PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS.........................................1

  A.  FACTS REGARDING "BRUCE WHITE'S APPLICATION FOR EMPLOYMENT ...........1

  B.  FACTS REGARDING "CRST'S INTERNAL REVIEW OF WHITE'S APPLICATION .....3

  C.  FACTS REGARDING "WHITE'S ALLEGATIONS AGAINST CRST." .............................4

III. CRST'S SUMMARY JUDGMENT SHOULD BE DENIED ....................................................7

  A.  A REASONABLE JURY WOULD (OR COULD FIND THAT CRST VIOLATED THE
FCRA,15 U.S.C. § 1681B(B)(2)(B)(I)...................................................................................7

  B.  A REASONABLE JURY WOULD (OR COULD) FIND THAT CRST VIOLATED FCRA,
15 U.S.C. § 1681B(B)(3)(B)(I) ..............................................................................................14

  C.  A REASONABLE JURY WOULD (OR COULD) FIND THAT CRST'S CONDUCT WAS
RECKLESS ..............................................................................................................................16

IV. CONCLUSION ......................................................................................................................20

# **TABLE OF AUTHORITY**

**Cases**

*Adams v. LexisNexis Risk & Info. Analytics Group, Inc.*, 2010 U.S. Dist. LEXIS 47123 (D.N.J. May 12, 2010) ................................................................................................................. 12

*Ashby v. Farmers Ins. Co. of Oregon*, 565 F. Supp. 2d 1188, 1206 (D. Or. 2008) ...................... 17

*Bach v. First Union Nat. Bank*, 149 F. App'x 354, 364 (6th Cir. 2005) ...................................... 17

*Bakker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir.1998) ........................................................... 20

*Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702, 705-06 (6th Cir. 2009) ................................ 13

*Boggio v. USAA Fed. Sav. Bank,* 2011 U.S. Dist. LEXIS 99438 (S.D. Ohio Sept. 2, 2011) ....... 17

*Boris v. Choicepoint Services, Inc.*, 249 F. Supp. 2d 851, 862 (W.D. Ky. 2003) ................... 11, 20

*Cairns v. GMAC Mortg. Corp.*, 2007 U.S. Dist. LEXIS 16689 (D. Ariz. Mar. 5, 2007) .............. 17

*Centuori v. Experian Information Solutions, Inc.,* 431 F.Supp.2d 1002, 1007 (D.Ariz.2006) ..... 18

*Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 499 (E.D. Pa. 2009) .............................. 9

*Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001 ............................... 7

*Edwards v. Toys ""R'' Us*, 527 F. Supp. 2d 1197, 1214-15 (C.D. Cal. 2007)................................. 19

*Gillespie v. Equifax Info. Servs., LLC*, 2008 U.S. Dist. LEXIS 85150 (N.D. Ill. Sept. 15, 2008) 19

*Hammond v. Citibank, N.A.*, 2011 U.S. Dist. LEXIS 109818 (S.D. Ohio Sept. 27, 2011)............11

*Ins. Co. v. Burr*, 551 U.S. 47 (2007)............................................................................................ 15

*Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ...................................................................... 10

*Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998) .................................11

*Langston v. Rizza Chevrolet, Inc.*, 2008 U.S. Dist. LEXIS 96133 (N.D. Ill. Nov. 24, 2008) . 17, 19

*Lewis v. Ohio Prof'l Elec. Network LLC*, 190 F. Supp. 2d 1049, 1056......................................... 11

*Mullins v. Equifax Info. Servs., LLC*, 2007 U.S. Dist. LEXIS 62912 (E.D. Va. Aug. 27, 2007) .. 17

*Picha v. City of Parma*, 1992 U.S. App. LEXIS 6291, 6-7 (6th Cir. Ohio Mar. 25, 1992) .......... 18

*Robinson v. Barrow*, 1:11-CV-01609, 2012 WL 1004738 (N.D. Ohio Mar. 22, 2012). ................. 1

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007)  15, 16, 17, 18.

*Safeco Ins. Co. v. Burr,* 551 U.S. 47 (2007) ................................................................................ 15

*Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626 (D. Md. Jan. 25, 2012) ........... 18

*Slantis v. Capozzi & Assocs., P.C.*, 2010 U.S. Dist. LEXIS 124198, 12-14 (M.D. Pa. Aug. 10, 2010) ......................................................................................................................................... 19

*Stevenson v. TRW, Inc.*, 987 F.2d 288 (5th Cir. Tex. 1993) at 293–94 ........................................ 17

*Surowitz v. Hilton Hotels, Corp.*, 383 U.S. 363 (1966)................................................................. 9

*Thibodeaux v. Rupers*, 196 F.Supp.2d 585, 592 (S.D.Ohio 2001) ............................................... 18

*Williams v. LexisNexis Risk Mgmt.*, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007)......11

*Wilson v. Seiter*, 501 U.S. 294 (U.S. 1991) ................................................................................. 18

*Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir. 1990) ................................................................... 18

**Statutes**

15 U.S.C. § 1681a(k)(1)(B)(ii) .................................................................................................... 14

15 U.S.C. § 1681b(b)(2)(B) .......................................................................................... 5, 7, 8, 9

15 U.S.C. § 1681b(b)(2)(B)(i) .................................................................................................. 8, 9

15 U.S.C. § 1681b(b)(3)(B) ........................................................................................................ 14

15 U.S.C. § 1681i............................................................................................................... 8, 10

15 U.S.C. § 1681i(a) ..................................................................................................................... 8

15 U.S.C. § 1681n ............................................................................................................... 13, 16

iii

15 U.S.C. §§ 1681g ........................................................................................................ 12
15 U.S.C. §§ 1681m ....................................................................................................... 12
15 U.S.C. 1681b(b)(2)(B)(i) ............................................................................................. 8
1681b(b)(3)(B) ................................................................................................................. 5
1681j(a) .......................................................................................................................... 12
1681j(b) .......................................................................................................................... 12
Section 1681n ................................................................................................................. 13

**Rules**

Fed. R. Civ. P. 30(b)(6) ..................................................................................................... 6
Fed. R. Civ. P. 33 ................................................................................................... 3, 6, 18
Fed. R. Civ. P. 36 ........................................................................................................ 2, 6
Fed. R. Civ. P. 26(a)(1) ..................................................................................................... 6
Fed. R. Civ. P. 56 ........................................................................................................... 10
Fed. R. Civ. P. 30(b)(1) ................................................................................................... 12
Fed.R.Civ.P. 56(a) ............................................................................................................ 1

## I.     OVERVIEW

Since at least 2006, Defendant CRST, Inc. ("CRST") has obtained and used the personal Fair Credit Reporting Act (FCRA) governed "consumer reports" of applicants to make its hiring decisions.  And yet in that period and even through the date of this filing, CRST has done so with largely no compliance with the rigorous FCRA requirements that operate as legally necessary preconditions to such use.   Because any fair reading of the law and consideration of the facts in a light favorable to the non-moving plaintiff would establish both of the FCRA violations Mr. White has alleged, CRST's summary judgment motion must necessarily be denied.

## II.    PLAINTIFF'S STATEMENT OF DISPUTED MATERIAL FACTS

The Court has of course had recent occasion to restate the now familiar standard for Summary Judgment and consideration of the Parties' asserted facts.  And yet, as familiar as this standard should be to both sides, as in Robinson, "the Defendant relied entirely on [its] own version of the facts and made no effort to make the proper argument: based on the facts *as alleged by Plaintiff*[.]"  *Robinson v. Barrow*, 1:11-CV-01609, 2012 WL 864045 (N.D. Ohio Mar. 13, 2012) *motion to certify appeal denied,* 1:11-CV-01609, 2012 WL 1004738 (N.D. Ohio Mar. 22, 2012).  There are substantial material facts in dispute.  Accordingly, Mr. White responds to CRST's statement as follows.

### A.     FACTS REGARDING "BRUCE WHITE'S APPLICATION FOR EMPLOYMENT." (Def. Motion 8-9)

Prior to his application to CRST, Mr. White had attended truck-driving school at a third-party school, Roadmaster.  That company also assisted him in finding employment. (White Dep. p. 11). Roadmaster employee Ms. Wallace worked with Mr. White to find a driving position and in that process he was constantly denied employment.  (White Dep. p. 34-45). After Roadmaster

1

requested a copy of Mr. White's HireRight report directly from HireRight in August 2009, Ms. Wallace discovered that a 1992 misdemeanor conviction for discharging a firearm was inaccurately reported by HireRight as "SWIK, SHOOTING WITH INTENT TO KILL" -- a felony.  (White Dep. p. 36) (Def. Motion at 8).  Mr. White then contacted HireRight to dispute this grossly inaccurate information.  (White Dep. p. 40-41).

As CRST represents, Mr. White submitted a facsimile application to CRST on September 10, 2009 and received only the limited disclosures contained within the application identified as CRST's Exhibit 1. (Def. Motion at 8).  Ms. Wallace assisted Mr. White with his application to CRST, and truthfully disclosed his 1992 misdemeanor conviction. (White Dep. pp. 33, 43).  She also attached a copy of Roadmaster's copy of the inaccurate HireRight report together with a copy of the local court records in an email to CRST recruiting employee Brandi Northway. (Northway Affidavit, Ex. B, attached to CRST's Motion for Summary Judgment).

CRST also asserts that Mr. White has testified that he concedes "falsifying his application[.]" (Def. Motion at 9).  CRST's accusations are false, as stated hereafter.  But they are also immaterial to this case.  Mr. White testified that at the time he was completing his application to CRST, he simply did not recall the 1998 and 1999 offenses that were discovered by the company during the course of litigation. (White Dep. p. 81, 83-84).  He also assumed that CRST was seeking information limited to a 10 year period, as the application did for employment information.  (Id. at 80-81).  As for the 1992 offense, albeit nearly 17 years before the application, Mr. White explained that the criminal information contained on his application was authored by his Wallace, his career counselor.  (Id. at 81-82) She had reviewed the report, was aware of the inconsistency, and wanted to proactively address the issue. (Id.) At no point did Mr. White testify or even suggest that he intentionally falsified any information submitted to

CRST.

**B.     FACTS REGARDING "CRST'S INTERNAL REVIEW OF WHTE'S APPLICATION."  (Def. Motion 9-10)**

On September 18, 2009, Mr. White received a pre-hire letter from CRST inviting him to attend orientation in Oklahoma City.   (Ex. A, September 18, 2009 Pre-Hire Letter, CRST000388).  In light of Mr. White's inaccurate HireRight report, Ms. Wallace was surprised yet pleased by the pre-hire letter, such that she confirmed with Ms. Northway that the inaccurate HireRight report would not later bar Mr. White from further consideration. (Northway Affidavit, Ex. B, attached to CRST's Motion).

Despite this pre-review letter, CRST explains that its actual "internal review process did not actually take place until December 2009."  (Def. Motion at 9).  Mr. White agrees.  The actual internal review and adverse action material to this case occurred only after CRST obtained and used its own HireRight consumer report.  On December 1, 2009, CRST ordered its HireRight report, which still inaccurately reported a felony conviction for "SWIK, SHOOTING WITH INTENT TO KILL".  (Northway Affidavit, Ex. C, attached to CRST's Motion).  CRST's witness testified that although she had initially received a copy of Mr. White's HireRight report from his career counselor, CRST policy requires that she independently procure and use only CRST's own consumer report.  (Northway Dep. p. 40, 67). Upon obtaining Mr. White's HireRight report, Ms. Northway noted the inaccurate felony on the report and requested a decision from the safety department.  (Northway Affidavit, Ex. D, attached to CRST's Motion).  The safety department then procured and used a second consumer report for Mr. White from LexisNexis (Accurint), another consumer reporting agency, to determine whether additional corroborating information was available.  (Northway Affidavit, Ex. D, attached to CRST's Motion) (Ex. B, December 4, 2009 Accurint Report, CRST000399-401).  Indeed, a copy of the local court docket offered by

Mr. White was not as important to CRST as the ill-prepared public records data sold to CRST by both HireRight and LexisNexis.

Despite providing the safety department with court records from Mr. White's local jurisdiction confirming the misdemeanor conviction, the safety department concluded, "I understand he pled it down but he shot *at someone*" (emphasis added).  (Northway Affidavit, Ex. D, attached to CRST's Motion).  The notion that Mr. White shot at a human being could only come from his HireRight report, which indicated that Mr. White had been convicted of "SWIK, SHOOTING WITH INTENT TO KILL."  For CRST to contend that the HireRight report did not play a role in its decision to reject Mr. White is disingenuous at best.

While CRST was obtaining multiple consumer reports, Mr. White was traveling by bus to orientation in Oklahoma City.  (Northway Affidavit, Ex. D, attached to CRST's Motion). Shortly after his arrival, he was pulled from orientation and advised that he would be sent home due to his criminal background.  (White Dep. p. 87-88) (Ex. C, December 7, 2009 email from Josh Birr to Ron Tardiff and Steve Reichart, CRST000437)("Please remove Mr. White from orientation in OKC.  This application packet was declined by management on Friday due to criminal history."). Mr. White was confused, as he was under the impression that his inaccurate HireRight had been corrected following his dispute four months earlier.  After all, he had received a pre-hire letter from CRST *after* filing his dispute.  CRST simply sent Mr. White home without providing mandatory disclosures that are intended to advise applicants like him of their rights to receive a copy of the report from CRST and dispute -- repeatedly if necessary -- with the consumer reporting agency. (White Dep. p. 87-88)

  C.  FACTS REGARDING "WHITE'S ALLEGATIONS AGAINST CRST."
        (Def. Motion at 10-11).

CRST appears to believe that a plaintiff such as Mr. White is limited to the explanations

and evidence of such defendant's misconduct that he can himself offer in his personal Rule 30(b)(1) deposition.  (Def. Motion at 10-11, *in passim*).  CRST misunderstands civil procedure. The plaintiff's deposition elicited Mr. White's personal knowledge, nothing more.  It is not a means to determine all of the evidence available to his counsel in proving his case.  *Contrast* Fed. R. Civ. P. 26(a)(1), 30(b)(6), 33 and 36.

The majority of CRST's employment applications are submitted by non-in-person means.  (Willey Dep. p. 10).  For White and every other applicant who applies for a DOT regulated position online, by fax or by phone, the FCRA contains specific, yet simple, disclosure requirements.  *See* 15 U.S.C. §§ 1681b(b)(2)(B) and 1681b(b)(3)(B). In addition to informing applicants that a consumer report may be obtained for employment purposes, CRST must provide oral, written, or electronic notice to the applicant ***before obtaining the report*** of the applicants' right to obtain a free copy of a consumer background report from the consumer reporting agency within 60 days, and to dispute accuracy or completeness of any information in a consumer background report directly with the consumer reporting agency. 15 U.S.C. § 1681b(b)(2)(B).  These are not a trivial rights; they are a fundamental element of the consumer-minded focus of the FCRA. CRST never advises applicants of these rights prior to obtaining consumer reports.  Instead, CRST adopted a procedure used by companies ***not*** engaged in the transportation industry.

CRST provides all applicants -- even those who apply by non-in-person means -- with a legally infirm disclosure form that should only be used for in-person applicants.  (Northway Dep. p. 35-36). The form does not advise applicants of their rights to a free copy of the report and to dispute its accuracy.  (Ex. D, Disclosure Form, CRST002018-2019).  Worse, once CRST uses a consumer report either in whole or in part to decline employment, it never advises applicants that

it must provide a copy of the report to them upon request.  (Northway Dep. p. 81)(Ex. D, Disclosure Form, CRST002018-2019). Nor does CRST provide required disclosures containing the CRA's contact information together with reaffirmance that the information can be disputed with the CRA.  Instead, CRST tells applicants that they can provide any rebuttal information directly to CRST.  (Northway Dep. p. 71-73, 79). Even if an applicant provides such rebuttal information to CRST, the information is never communicated to the CRA and the report remains inaccurate.  (Id.)  As the applicant continues to seek employment with other carriers, the inaccurate information will continually surface until a dispute is ultimately lodged with the CRA.

CRST was made aware of its FCRA obligations first in 2002 when it contracted with HireRight for the purchase of consumer reports for employment purposes, and again in 2010 when it reaffirmed its commitment to HireRight.  (Ex. E and Ex. F attached to Plaintiff's Motion for Class Certification, 2002 and 2010 Contracts between CRST and HireRight, respectively). Indeed, from 2006 through 2011, CRST spent ***more than $3 million dollars*** on consumer reports.  (Ex. E, Analysis of Expenses, CRST002071-2073).   Both contracts contained express provisions referencing the FCRA and required CRST to provide proper disclosures as a precondition to legally sound consent.  (Ex. E and Ex. F attached to Plaintiff's Motion for Class Certification, 2002 and 2010 Contracts between CRST and HireRight, respectively).  Similarly, the contracts explained CRST's obligation to provide adverse action notice to applicants consistent with FCRA mandates.  (Id.)  To support its customers, HireRight even provided CRST with a compliance manual that included sample disclosures and forms for CRST's reference and use. (Ex. F, Email Correspondence between Brooke Willey and HireRight, CRST002074-2076) (Ex. G, FCRA Overview and Instructions, CRST002077-2102). Armed with this information,

CRST buried its head in the sand. (Willey Dep. p. 66)  Brooke Willey, CRST's VP of Human Resources admitted that she read HireRight's compliance materials for the first time in December 2011 after Mr. White filed suit, but has yet to change CRST's policies or practices even 7 months later.  (Id. at 84).  Her testimony that she "is in the process of reviewing that process" would be comical but for the devastating impact CRST's non-compliance has on applicants. (Id. at 83).

Scott Randall, CRST's Director Safety, candidly admitted that he is not "well studied" regarding the FCRA, and instead focuses his efforts on compliance with the Federal Motor Carrier Safety Regulations (FMCSR).  (Randall Dep. pp. 57-58)  These regulations are wholly separate and distinct from the FCRA and do not overlap contrary to Mr. Randall's impression. The consequences of this general ignorance of the FCRA are compounded by the fact that hiring decisions involving consumer reports are made in Mr. Randall's department.  (Randall Dep. pp. 29-30).  And when adverse action is taken, neither the safety department nor the recruiting department provide proper adverse action notice to applicants -- only a generic opportunity to provide rebuttal information to CRST.  (Randall Dep. pp. 54-56) (Northway Dep. p. 71-73, 79).

## III.   CRST'S SUMMARY JUDGMENT SHOULD BE DENIED.[1]

### A.   A REASONABLE JURY WOULD (OR COULD) FIND THAT CRST VIOLATED THE FCRA, 15 U.S.C. § 1681b(b)(2)(B)(i).

In Count One of his First Amended Complaint ("FAC")(Doc.29), Mr. White alleges that CRST failed to provide him with a summary of his consumer rights set forth in the Fair Credit Reporting Act, 15 U.S.C. § 1681b(b)(2)(B)[2] before his consumer report could be lawfully

---

[1] Mr. White generally addresses each of CRST's legal arguments in comparable order.  However, he does not expressly structure an opposition to Section C of Defendant's argument.  (Def. Motion at 22).  As stated above, Mr. White never committed a deliberate falsehood and all counsel understand that.  Further, even if he somehow were to have done so, this does not nullify the governance and protections of the FCRA.  In fact, unlike state tort claims regarding unlawful termination, application inaccuracies are irrelevant in a FCRA case. *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001).

[2] This section applies to positions for employment regulated by the Department of Transportation.  White was

obtained by CRST. (FAC ¶ 12, Doc. 29).  As CRST asserts, there is no dispute that Mr. White ostensibly consented to the procurement of the report by signing CRST's employment application.  *See* 15 U.S.C. § 1681b(b)(2)(B)(ii).  Instead, Mr. White alleges that CRST violated 15 U.S.C. § 1681b(b)(2)(B)(i), which demands that in the context of an application that was not taken in person -- before an employer may permissibly use a consumer's FCRA governed report for an employment purpose -- it must make the full set of stated disclosures.  Specifically, the employer must disclose to the consumer that:

1.  A consumer report was to be obtained for employment purposes (15 U.S.C. 1681b(b)(2)(B)(i));

2.  The consumer had a right under section 612 [§ 1681j] to "a free copy of a consumer report on the consumer from the consumer reporting agency" from whom the employer obtained its report (15 U.S.C. § 1681m(a)(3)(i));

3.  The consumer's right to this free report would only last for 60 days (15 U.S.C. § 1681m(a)(3)(i)); and

4.  The consumer had a right as provided at FCRA § 1681i(a) to dispute the accuracy or completeness of any information in a consumer report furnished by that consumer reporting agency (15 U.S.C. § 1681m(a)(3)(ii)).

Necessarily this disclosure must also contain the name and address of the reporting agency to whom the consumer would make a dispute and from whom he would request his free report.

It is undisputed that CRST did not make, and did not even attempt to make, most of these disclosures.  Its procedures do not inform consumers such as Mr. White that they are entitled to a free report, from where they can request it or that such request occur within 60 days.  Nor does CRST provide the mandatory disclosure of the process and right to make a formal dispute under 15 U.S.C. § 1681i(a). In fact, CRST's compliance with the FCRA lays solely in the hands of its recruiters, who do not seek appropriate FCRA authorization from applicants using the mandatory

---

applying for such a position.

requirements of 15 U.S.C. § 1681b(b)(2)(B)(i).  (Northway Dep. pp. 7-12)  Further, Ms. Willey, though responsible for "ensuring adherence" to the FCRA when she was hired in March of 2010, failed to even review CRST's FCRA compliance until the herein action was filed. (Willey Dep. pp. 21-22, 24-25, 44).  Ms. Willey testified that CRST lacks a written FCRA policy despite having written policies for other employment law issues. (Willey Dep. pp. 16-18; 33-34)

CRST's summary judgment argument as to the merits of the 15 U.S.C. § 1681b(b)(2)(B) claim does not challenge any of these omissions.  Instead, it relies upon several positions that ask the Court to ignore the plain language of the statute.  First, CRST suggests that it need only address the omission of the "free report" disclosure because that is the only 15 U.S.C. § 1681b(b)(2)(B)(i) disclosure that Mr. White listed in his Rule 30(b)(1) deposition.  Such argument places more importance on an individual plaintiff's deposition than is appropriate in practice or under the Federal Rules.  In fact, even if Mr. White had a complete lack of knowledge about the law or his FAC, his lack of knowledge demonstrated in his deposition does not invalidate his claims or make him an inadequate representative. *Chakejian v. Equifax Info. Servs. LLC,* 256 F.R.D. 492, 499 (E.D. Pa. 2009);  *see also Surowitz v. Hilton Hotels, Corp.*, 383 U.S. 363 (1966)    Mr. White is an informed plaintiff and active in his case, of course.  But he is a truck driver, not an attorney.  Whether or not he understands the nuances and details of FCRA subsections, he remains entitled to their protections.

CRST's second merits challenge to Count One is that while CRST may not have expressly made these mandatory disclosures, it "certainly implied that the [Plaintiff's consumer report] would be free."  (Def. Motion at 15).  CRST's failure to make the other mandatory disclosures, even beyond the contrived "you are entitled to a free copy" 'implication' is fatal to this defense.  For example, CRST does not claim that it also somehow impliedly disclosed Mr.

White's rights to dispute under 15 U.S.C. § 1681i or that his free report would only be available for 60 days. Additionally the right to obtain a free copy of the report is critical to -- in fact a necessary condition of -- the applicant's right to dispute the contents of report. Statutory rights created for consumers under the FCRA should not be given such short shrift as proposed by CRST.

But even as to its "implied disclosure" defense, the Motion does not suggest any provision of the FCRA, case law interpreting it, or even any analysis by which the Court could "read between the lines" to create an "implied" disclosure option for compliance. *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) ("[W]hen the statutory language is plain, we must enforce it according to its terms.") (citations omitted). CRST asks the Court to read into the law, qualifications and anti-consumer limitations that are not found in the statutory text. Section 1681b(b)(2)(B) mandates that an employment-purposed user such as CRST "who procures the consumer report on the consumer for employment purposes shall provide" these specific disclosures to the consumer. The requirements of the statute are clear: prior to procuring a consumer report the CRST must notify the applicant that the report can be obtained for *free* from the credit reporting agency if the request is made within 60 days. The words in CRST's application -- "have a right to make a request" -- are a poor substitute for an express statement of the right created in the statute: not to make the request, but to *receive* the copy *free* if the request is timely made. This is a requirement imposed upon CRST and is a condition of obtaining consent and authorization to procure a report containing information personal to the applicant, and critical to CRST's decision to employ or not to employ the applicant.

CRST's position, similar to others addressed later, also ignores the broad remedial purpose of the FCRA that demands a pro-consumer liberal construction. The Court must be

10

"guided by the fact that the FCRA is to be liberally construed in favor of the consumer[.]"  *Jones v. Federated Fin. Reserve Corp.*, 144 F.3d 961, 964 (6th Cir. 1998) (citations omitted).  As with other courts around the country, those in this circuit have continued to recognize and demand such remedial focus.  *See e.g. Lewis v. Ohio Prof'l Elec. Network LLC*, 190 F. Supp. 2d 1049, 1056 (S.D. Ohio 2002) ("The Fair Credit Reporting Act is remedial legislation, which is to be liberally construed in favor of consumers." citing *Jones*, 144 F.3d at 964); *Hammond v. Citibank, N.A.*, 2011 U.S. Dist. LEXIS 109818 (S.D. Ohio Sept. 27, 2011) (same); *Boris v. Choicepoint Services, Inc.*, 249 F. Supp. 2d 851, 863 (W.D. Ky. 2003) as *amended sub nom. Boris v. ChoicePoint Services Inc.*, CIV.A. 3:01CV-342-H, 2003 WL 23009851 (W.D. Ky. Aug. 21, 2003) (same).

CRST's final merits challenge to Count One argues that it should be freed of its notice obligations because Mr. White would have already realized the benefit of such disclosures.  He had previously received a copy of his consumer report from Roadmaster and he had already through Roadmaster made an accuracy dispute.  (Def. Motion at 15-16).  As addressed above, CRST's factual assumptions are incorrect.  They are certainly disputed.

CRST also ignores the fact that it obtained and used not only a HireRight consumer report, but as well a second LexisNexis "Accurint" report.  In CRST's "Tenstreet" intranet program, CRST Safety Supervisor, Josh Birr and Safety Director, Randy Kopecky, discuss Mr. White's 20/20 HireRight report, his application and his Accurint[3] report and how each differs in regard to his criminal history.  (Northway Dep. pp. 51-52).  *Williams v. LexisNexis Risk Mgmt.*, 2007 U.S. Dist. LEXIS 62193 (E.D. Va. Aug. 23, 2007) (Certifying a class action based upon LexisNexis' role an employment background check consumer reporting agency); *Adams v.*

---

[3] Incredibly, CRST uses Accurint reports when it is aware that they contain unreliable information and should not be used to make employment decisions.  (Willey Dep. pp. 71-73)

*LexisNexis Risk & Info. Analytics Group, Inc.*, 2010 U.S. Dist. LEXIS 47123 (D.N.J. May 12, 2010) (Rejecting LexisNexis' Rule 12(b)(6) challenge to the classification of its Accurint background checks as FCRA-governed consumer reports).  CRST cannot and does not attempt to dispute that: (a) it used the Accurint report to make an employment decision regarding Mr. White (Northway Dep. pp. 51-52) or that (b) until discovery in this case Mr. White had never been told by CRST or anyone else that he could obtain his free Accurint report within 60 days, that it had been used in CRST's employment decision or that he could dispute the inaccurate information in the report.  CRST's failure to disclose both reports is fatal to its position.

Yet even if on summary judgment the Court were not obligated to draw all reasonable inferences in Mr. White's favor, ***and*** could find that he understood that he had the FCRA rights CRST never disclosed, ***and*** had seen an earlier version of his HireRight report, such "facts" would be immaterial.  First, nothing in the FCRA's statutory text qualifies or limits its disclosure provisions to consumers who were then not informed of their rights.  For example, most consumers already know that the FCRA provides a mechanism for them to obtain a free annual consumer report.  *See* 15 U.S.C. §§ 1681g, 1681j(a).  Or if a consumer is once denied credit based on a credit report, he or she likely already received from a creditor a statement of their rights to a free report and to make a dispute.  *See* 15 U.S.C. §§ 1681m, 1681j(b).  By CRST's odd view of the FCRA, once a consumer had first learned that they had certain FCRA rights, no other creditor, user or reporting agency need comply with the statutes multiple and redundant disclosure requirements.  Or similarly, once a consumer had seen a copy of their credit or consumer report on one date, they were never again entitled to learn that they could again request a more recent free copy.

Mr. White may simply respond to CRST's assertion that "the FCRA need not apply once

someone at some time has made similar compliance or disclosures" by stating:  No.  That is not what the statute says.  That regardless of the purpose or usefulness of such redundant disclosures, the law is unwavering in its command.  But support for Mr. White's position can also go further. Such redundant disclosures and notices, and copies of consumer reports have a meaningful purpose.  A consumer may not understand the details or substance of his rights.  Or know that he can receive a current copy of his consumer report to determine if the reporting agency has corrected the disputed information.  The Federal Trade Commission has addressed this very argument in the contest of an employer's argument that it need not make duplicative disclosures or provide a second copy of an employment report. Weisburg, FTC Informal Staff Opinion Letter, June 27, 1997 (Ex. H) (emphasis added).[4]

CRST's argument is more correctly asserted as a challenge to Mr. White's proof of causation for actual damages.  But of course he is not seeking actual damages and instead brings suit for FCRA statutory and punitive damages.  15 U.S.C. § 1681n.  *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702, 705-06 (6th Cir. 2009).[5]

Based on the plain reading of § 1681b(b)(2)(B)(i), Mr. White has established each element of that subsection and therefore has stated a claim for relief for CRST's violation of it.

---

[4]  Also available at http://www.ftc.gov/os/statutes/fcra/weisberg.shtm.

[5]  "The defendants, however, insist that the statute requires something more—that Beaudry allege a different form of 'injury': consequential damages. … But the Act imposes no such hurdle on *willfulness* claimants.…Section 1681n, which creates the cause of action for willful violations, also does not impose the consequential-damages requirement that defendants wish to add to the statute. "Any consumer," it says, may sue to recover "any actual damages ... *or* damages of not less than $100 and not more than $1000" from "[a]ny person who willfully fails to comply with any requirement imposed under [the FCRA] with respect to [that] consumer." 15 U.S.C. § 1681n(a)(1)(A) (emphasis added). Because "actual damages" represent an *alternative* form of relief and because the statute permits a recovery when there are no identifiable or measurable actual damages, this subsection implies that a claimant need not suffer (or allege) consequential damages to file a claim." *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702, 705-06 (6th Cir. 2009).

13

**B.**     **A REASONABLE JURY WOULD (OR COULD) FIND THAT CRST VIOLATED FCRA, 15 U.S.C. §1681b(b)(3)(B)(i).**

In addition to the disclosure notice required 15 U.S.C. § 1681m(a)(3), CRST was subject to the requirements of 15 U.S.C. § 1681b(b)(3)(B) in the event that it took adverse action in respect to Mr. White.  "Adverse action" under the FCRA includes a denial of employment.  15 U.S.C. § 1681a(k)(1)(B)(ii).  Mr. White was denied employment by CRST, which CRST would concede constitutes an "adverse action."  And CRST does not contend that it made any of the disclosures otherwise listed at 15 U.S.C. § 1681b(b)(3)(B).  Instead, its sole merits defense to Count Two is the claim that its adverse hiring action was not "based in whole or in part" on CRST's review of Mr. White's criminal background report.

Initially, such an argument is entirely inappropriate for summary judgment.  There is a substantial factual dispute between CRST's litigation account of its decision-making process and that described by Mr. White and by CRST's documents and deposed employee witnesses.  Ms. Northway testified (1) that it was CRST's policy to order consumer reports for applicants for its own internal review (Northway Dep. 40: 30, 33-40; (2) CRST ordered, received and reviewed a Mr. White's consumer report (Northway Dep. 44, 67, 69); (3) a discharge of a firearm conviction would not immediately disqualify an individual from CRST's hiring guidelines (Northway Dep. 42); (4) CRST reviewed a HireRight report that inaccurately reported a conviction upon a guilty plea for "SWIK - shooting with intent to kill"  (Northway Dep. 44; (5) the inaccurate SWIK was re-reported throughout CRST's chain of command via its internal database known as Tenstreet (Northway Dep. 44); (5) if an applicant has a criminal background, Northway was required to get hiring approval from a direct manager (Northway Dep. 49, 50); (6) that Northway's direct manager approved Mr. White to be hired (Northway Dep. 50); (7) that despite the hiring approval by Northway's direct manager, another manager named Josh Birr entered a written statement in

14

to the Tenstreet database concerning Mr. White, repeating the inaccurate information directly from Mr. White's HireRight report "20/20 shows 1992 shooting with intent to kill.  Application shows this was a misdemeanor conviction and he only received a fine," (Northway Dep. 51-52, 54-55); (8) a different manager, Randy Kopecky, entered written statements into Tenstreet "with the recent discharge and weapons charges, I would say DMS," which means "does not meet standards" (Northway Dep. 55-56); (9) Northway attempted to correct Birr's and Kopecky's understanding of Mr. White's criminal background as reported on 20/20 (Northway Dep. 56); (10) despite Northway's attempt to correct their misunderstanding, Kopecky disregarded that explanation in favor of his view of the 20/20 report that "I understand he pled it down, but he shot at someone, DMS" (Northway Dep. 57, 60): (11) nowhere other than the criminal background report is there any mention of shooting with intent to kill (Northway Dep. 60-61). Certainly a reasonable jury could find that CRST's hiring decision was based at least in part on CRST's review of Mr. White's consumer report.

CRST's lone legal argument in challenge to the merit of the adverse action notice claim is based upon an unexplained reliance on *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007). (Def. Motion at 19-20).  Such reliance is remarkable as the Supreme Court's explanation of the qualification "based in whole or in part" is a full rebuttal to CRST's own interpretation.  CRST attempts to argue that it was not obligated to provide an adverse action notice because its final hiring decision would not have been reversed even if Mr. White were thereafter able to dispute and obtain correction of his inaccurate report.  (Id. at 20).  Such an interpretation is ridiculous.  As was explained in *Safeco* (in text even cited by CRST), the adverse action notice obligation is triggered when there is "some practical consequence of [the employer/user's] reading of the report."  *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 64 (2007).  CRST cannot in good faith argue that

15

there is evidence that its reading of Mr. White's consumer reports had no practical consequence. The *entire* exchange between Mr. White's recruiter and CRST's safety department from December 1, 2009 until December 7, 2009 focused on his criminal history.  (Northway Affidavit, Ex. D, attached to CRST's Motion) (Ex. C, December 7, 2009 email from Josh Birr to Ron Tardiff and Steve Reichart, CRST000437).

Consistent with the obligation to interpret the remedial FCRA liberally, the Federal Trade Commission's ("FTC") has provided useful interpretative guidance for the phrase "based in whole or in part."  It explains in relevant part that the report's triggering of "further investigation", which investigation then leads to the adverse action is "based in whole or in part":

> B. Denial based partly on a consumer report. The user of a consumer report must provide an adverse action notice even if the adverse action is based only partly on a consumer report. Similarly, if information received from a consumer report was used to prompt further investigation of the applicant's insurability, and that investigation leads to adverse action, the consumer is entitled to receive an adverse action notice.

*See* Federal Trade Commission, "40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary Interpretations," at 85 (July 2011).[6]

## C.   A REASONABLE JURY WOULD (OR COULD) FIND THAT CRST'S CONDUCT WAS RECKLESS.

As a precondition to the recovery of statutory damages, Mr. White alleges that CRST's FCRA violations were willful.  (FAC, Doc. 29, ¶30-37).  *See* 15 U.S.C. § 1681n.  Prior to the Supreme Court's decision in *Safeco*, most Circuits, including the Sixth Circuit, had held that "while malice or evil motive is not required to award punitive damages pursuant to 15 U.S.C. § 1681n, the defendant must have committed a willful violation by knowingly and intentionally committing an act in conscious disregard for the rights of others. *Stevenson v. TRW, Inc.*, 987

---

[6] *See* http://www.ftc.gov/os/2011/07/110720fcrareport.pdf (hereinafter, "FTC, 40 Years of Experience") (Ex. I).

F.2d 288 (5th Cir. Tex. 1993) at 293–94." *Bach v. First Union Nat. Bank*, 149 F. App'x 354, 364 (6th Cir. 2005). However, in 2007 the Supreme Court adopted the more expansive minority view of willfulness previously followed in the Ninth Circuit and, "[I[nterpreted the term 'willful' to include both a 'knowing' violation of FCRA as well as a 'reckless disregard' of FCRA requirements. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 57, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007)." *Boggio v. USAA Fed. Sav. Bank,* 2011 U.S. Dist. LEXIS 99438 (S.D. Ohio Sept. 2, 2011). This broadening of "willfulness" lowered the bar for such consumer claims. *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 151 (4th Cir. 2008) (lower "burden"); *Mullins v. Equifax Info. Servs., LLC*, 2007 U.S. Dist. LEXIS 62912 (E.D. Va. Aug. 27, 2007) ("less stringent" standard.)

Thus there are now two paths to establish willfulness -- proof that CRST "knowingly" violated the FCRA or proof that it "recklessly" did so. A company recklessly violates the statute if it ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless. *Safeco,* 551 U.S. 47, 127 S.Ct. 2201 (2007). In contrast, "[a] determination of whether the FCRA violation was knowingly committed would require the factfinder to determine a party's subjective state of mind[.]" *Langston v. Rizza Chevrolet, Inc.*, 2008 U.S. Dist. LEXIS 96133 (N.D. Ill. Nov. 24, 2008).

Whether CRST's alleged violation was knowing or merely reckless, or even not willful at all, will almost always remain a question for the jury. *Ashby v. Farmers Ins. Co. of Oregon*, 565 F. Supp. 2d 1188, 1206 (D. Or. 2008) ("Courts that have addressed the issue have held uniformly that whether a FCRA violation is willful is a matter for the jury."); s*ee also Cairns v. GMAC Mortg. Corp.*, 2007 U.S. Dist. LEXIS 16689, at *8 (D. Ariz. Mar. 5, 2007) ("in this case, like in the overwhelming number of cases in which state of mind is dispositive, the issue of punitive

damages is best left for the trier of fact to determine"); *Thibodeaux v. Rupers*, 196 F.Supp.2d 585, 592 (S.D. Ohio 2001)(same); *Smith v. Bob Smith Chevrolet, Inc*., 275 F.Supp.2d 808, 821 (W.D. Ky. 2003)(same); *Centuori v. Experian Information Solutions, Inc.,* 431 F.Supp.2d 1002, 1007 (D. Ariz. 2006)(same). *See also Wilson v. Seiter*, 893 F.2d 861, 866 (6th Cir. 1990), *vacated on other grounds*, 501 U.S. 294 (1991) *Wilson v. Seiter*, 501 U.S. 294 (U.S. 1991). ("[I]n cases in which a defendant's state of mind, such as motive, is in issue, must primarily rely on circumstantial evidence and reasonable inferences drawn from the defendant's conduct, we have frequently held that summary judgment is inappropriate."); *Picha v. City of Parma*, 1992 U.S. App. LEXIS 6291, at * 6-7 (6th Cir. Ohio Mar. 25, 1992).  (same).

Despite the steep burden necessary to withhold from a fact finder the question of willfulness, CRST asks the Court to decide this issue as a matter of law.  As to Count Two, CRST argues, that while its adverse action notice procedures may have been unlawful, they were built from a FCRA interpretation of "based in whole or in part" that was not objectively unreasonable. (Def. Motion at 21-22).   Mr. White has already addressed above the correctness (or incorrectness) of CRST's legal argument on the merits.  Its assertion that no fact finder could conclude that its view of the law was objectively unreasonable is just plainly wrong.  The language at issue, "based in whole or in part" is not so complex as to confuse or mislead an employer using a consumer's criminal background report for hiring. *See Singleton v. Domino's Pizza, LLC*, 2012 U.S. Dist. LEXIS 8626 (D. Md. Jan. 25, 2012), at *9-10 ("Unlike in *Safeco*, where the FCRA provision at issue was "less-than-pellucid," 551 U.S. at 70, the text at issue here appears to have "a plain and clearly ascertainable meaning.").

Even further, CRST, in its attempt to manufacture a "*Safeco*" defense, neglects to offer any evidence or even explanation as to how the Court would find as a matter of law that it had

actually formally adopted the challenged interpretation of "based in whole or in part" upon which it now post-litigation tactically attempts to rely. *Gillespie v. Equifax Info. Servs., LLC*, 2008 U.S. Dist. LEXIS 85150, 20 (N.D. Ill. Sept. 15, 2008) (Lack of evidence that defendant "actually adopted a particular construction" of FCRA).

There is of course substantial evidence, addressed supra  by which a fact finder could conclude that CRST willfully (recklessly or knowingly) violated the FCRA.   A FCRA defendant's failure to try and determine whether or not a process or procedure is legal permits a reasonable inference of recklessness. *Slantis v. Capozzi & Assocs., P.C.*, 2010 U.S. Dist. LEXIS 124198, 12-14 (M.D. Pa. Aug. 10, 2010) (That a defendant "made no attempt to determine" lawfulness "under the FCRA … could support a reasonable inference of negligence, recklessness, or willfulness, but on summary judgment[.]").   Here, CRST has no policy or procedure to ensure FCRA compliance.  (Willey Dep. pp. 84-85).  The failure to develop written procedures and policies for FCRA compliance is evidence of willfulness, as is the failure to adequately train for FCRA compliance.  *Langston v. Rizza Chevrolet, Inc.*, 2008 U.S. Dist. LEXIS 96133 (N.D. Ill. Nov. 24, 2008); *Edwards v. Toys ""R'' Us*, 527 F. Supp. 2d 1197, 1214-15 (C.D. Cal. 2007) ("A reasonable jury, however, could conclude that Toys recklessly failed to train its quality assurance personnel on the requirements of FACTA and also that Toys' established procedures for implementing new POS software posed an "unjustifiably high risk" that Toys would violate FACTA.")

Similarly, the failure or refusal to correct non-compliant FCRA procedures or to do so only after suit is filed permits a reasonable inference of willfulness.  *Edwards v. Toys 'R'' Us*, 527 F. Supp. 2d 1197, 1214-15 (C.D. Cal. 2007) (Defendant "did not discover the violation until suit was filed [could] indicate[] that its monitoring processes (or lack thereof) created an

"unjustifiable risk" that it would violate the statute. Consequently, summary judgment cannot be entered in favor of Toys."). This is not a case "where there was an isolated instance of human error which [Defendant] promptly cured (internal citations omitted) or where, upon discovery, [it] quickly took ameliorative action." *Boris v. Choicepoint Services, Inc.*, 249 F. Supp. 2d 851, 862 (W.D. Ky. 2003). In fact, not only has CRST not changed its unlawful practices, but even as to Mr. White, to date it still has never attempted the required FCRA disclosures and notice. *See id.*; *see also Bakker* v. *McKinnon*, 152 F.3d 1007, 1013 (8th Cir.1998).

CRST was knowingly aware of written industry guidance regarding its obligations under the FCRA. Its reporting agency vendor, HireRight had included same not only by incorporating these obligations into a contract, but also providing CRST a formal compliance manual. (*Supra* at Section II.(C.). Even today, CRST has continued to ignore this information and remains "in the process of reviewing that process". (*Id*. at 83). A jury could more than easily and properly find that CRST's FCRA violations were willful.

## IV.    CONCLUSION

For the above stated reasons, Defendant's Motion for Summary Judgment should be denied.

Respectfully submitted,

STUMPHAUZER, O'TOOLE, McLAUGHLIN, McGLAMERY & LOUGHMAN CO., LPA

By:    /s/ Matthew A. Dooley
          Matthew A. Dooley (OH Bar 0081482)
          5455 Detroit Road
          Sheffield Village, Ohio  44054
          Telephone:    (440) 930-4001
          Facsimile:    (440) 934-7208
          Email:          mdooley@sheffieldlaw.com
          *Counsel for Bruce White and the putative Class*

20

## <u>LOCAL RULE 7.1(F) CERTIFICATION</u>

I certify that the above-captioned case has been assigned to the standard track, and that the foregoing Memorandum adheres to the page limitations set forth in L.R. 7.1(f).

/s/ Matthew A. Dooley
*Counsel for Bruce White and the putative class*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that the foregoing document was filed electronically on the 3rd day of July, 2012 in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System.  Parties may access this filing through the Court's Filing System.

/s/ Matthew A. Dooley
*Counsel for Bruce White and the putative class*