# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN  DIVISION

| | | |
|---|---|---|
| BRUCE WHITE, on behalf of himself and all others similarly situated | ) ) ) | CASE NO.  1:11-CV-02615 |
| | ) | JUDGE:  JAMES S. GWIN |
| Plaintiff, | ) ) | **DEFENDANT CRST, INC.'S (n/k/a CRST** |
| vs. | ) ) | **EXPEDITED, INC.) OPPOSITION TO** **PLAINTIFF'S MOTION FOR CLASS** |
| CRST, INC. | ) ) | **CERTIFICATION** |
| Defendant. | ) ) | |

      Defendant CRST, Inc. (n/k/a CRST Expedited, Inc.) ("CRST") submits this Opposition

to Plaintiff Bruce White's ("White") Motion for Class Certification and respectfully requests the

Court to deny said Motion.

      CRST respectfully submits the attached Memorandum in Support.

Respectfully submitted,

*/s/ Gregory J. Lucht*
GREGORY J. LUCHT (0075045)
JEREMY GILMAN (00014144)
DAVID M. KRUEGER (0085072)
**BENESCH FRIEDLANDER**
**COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
(T):(216) 363-4500. (F): (216) 363-4588
E-mail:    glucht@beneschlaw.com
           jgilman@beneschlaw.com
           dkrueger@beneschlaw.com
*Attorneys for Defendant CRST, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................. iii

I.    STATEMENT OF THE ISSUE PRESENTED ........................................... 1

II.   SUMMARY OF ARGUMENT ................................................. 1

III.  STATEMENT OF FACTS ................................................. 2

      A.    CRST'S INDIVIDUALIZED RECRUITING AND HIRING PROCESS .... 3

            1.    CRST Recruiters Talk to Every Single Applicant But No Uniform
                  Script Exists ........................................ 4

            2.    CRST's Hiring Decision is Highly Individualized ............................ 5

      B.    WHITE'S "FACTUAL" ACCOUNT DOES NOT COMPORT WITH THE
            EVIDENCE ................................................ 6

      C.    WHITE MISREPRESENTED HIS CRIMINAL HISTORY TO CRST
            AND COMPOUNDED THAT MISREPRESENTATION DURING HIS
            DEPOSITION ............................................. 7

IV.   LAW & ARGUMENT ................................................. 8

      A.    NOTICE REQUIREMENTS UNDER THE FCRA ..................................... 8

            1.    Disclosure Notices under the FCRA ................................. 8

            2.    Adverse Action Notices under the FCRA .......................... 9

      B.    REQUIREMENTS FOR CLASS CERTIFICATION ................................. 9

      C.    WHETHER CRST PROVIDED ORAL NOTICE OF THE FCRA
            DISCLOSURE AND ADVERSE ACTION NOTICES IS AN
            INDIVIDUALIZED INQUIRY IN THIS SUIT, DESTROYING
            COMMONALITY AND PREDOMINATING OVER ANY COMMON
            QUESTIONS UNDER FED.R. CIV.P. 23(a)(2) AND (b)(3) ....................... 10

            1.    White Cannot Satisfy the Commonality Requirement ....................... 10

- i -

# TABLE OF CONTENTS
### (continued)

2. White Cannot Satisfy the Predominance Requirement ...................... 11

  a. Disclosure Notices Require An Individualized Inquiry ......... 12

  b. Adverse Action Notices Requires Individual Analysis ......... 13

D. THE STATUTE OF LIMITATIONS PRESENTS INDIVIDUAL QUESTIONS ................................................................................ 14

E. WHITE HAS NOT SUFFERED THE "SAME INJURY" AS PUTATIVE CLASS MEMBERS AFTER JULY 21, 2011 ................................. 15

F. WHITE IS INADEQUATE TO SERVE AS CLASS REPRESENTATIVE . 17

G. A CLASS ACTION IS NOT A SUPERIOR METHOD OF ADJUDICATION ...................................................................... 18

 1. The Devastating Potential Class Damages are Completely Disproportional to any Alleged Harm ................................. 18

 2. Because the FCRA Statutorily Permits Recovery of Attorney's Fees and Punitive Damages, there is Adequate Incentive for Individual Class Members to Prosecute their Claims ......................... 19

H. WHITE'S CLASS (AND SUBCLASS) DEFINITIONS ARE VAGUE, OVERBROAD AND UNTENABLE ........................................... 21

V. CONCLUSION ..................................................... 22

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 AND CIVIL TRIAL ORDER .................................................................. 22

CERTIFICATE OF SERVICE ....................................... 23

# TABLE OF AUTHORITIES

**CASES**                                                                    Page

*Abby v. City of Detroit*
    218 F.R.D. 544 (E.D. Mich. 2003) ............................................................    18

*Alkire v. Irving*
    330 F.3d 802 (6th Cir. 2003) ...............................................................    9

*Amchem Prods., Inc. v. Windsor*
    521 U.S. 591 (1997) ...........................................................................    11

*Barney v. Holzer Clinic, LTD.*
    110 F.3d 1207 (1997) .........................................................................    21

*Beattie v. CenturyTel, Inc.*
    511 F.3d 554 (6th Cir. 2007) ...............................................................    16

*Blades v. Monsanto*
    400 F.3d 562 (8th Cir. 2005) ...............................................................    11

*Burkley v. Asset Acceptance LLC*
    No. CV-12-785035 (Cuyahoga Cm. Pls. June 14, 2012) .........................................    20

*Butler v. Sterling, Inc.*
    2000 WL 353502, *7 (6th Cir. 2000) .......................................................    15

*Campos v. Choicepoint, Inc.*
    237 F.R.D. 478 (N.D. Ga. 2006) ...........................................................    20

*Carter v. Welles-Bowen Realty, Inc.*
    No. 3:09 CV 400, 2010 WL 908464, *2 (N.D. Ohio March 11, 2010) ...................    9, 19

*Coleman v. General Motors Corp.*
    296 F.3d 443 (6th Cir. 2002) ...............................................................    19, 20

*Cromer Fin. Ltd v. Berger*
    205 F.R.D. 113 (S.D.N.Y. 2001) ...........................................................    17

*Darwin v. Int'l Harvester Co.*
    610 F.Supp. 255 (S.D.N.Y. 1985) .........................................................    18

*Friedman-Katz v. Lindt & Sprungli (USA), Inc.*
    270 F.R.D. 150 (S.D.N.Y. 2010) ...........................................................    18

# TABLE OF AUTHORITIES
(continued)

**CASES**        Page

*Gardner v. Equifax Info. Srvs.*
     No. 06-3102, 2007 WL 2261688, *6 (D. Minn. Aug. 7, 2007) ................................. 20

*General Telephone Co. of Southwest v. Falcon*
     457 U.S. 147 (1982) ................................................................. 16

*Grimes v. Race Motion Pictures Birmingham*
     264 F.R.D. 659 (N.D. Ala. 2010) ............................................. 20

*Hall v. Vitran Express, Inc.*
     No. 1:09-CV-00800 (unreported) (N.D. Ohio Oct. 29, 2010) ................................. 15

*Hanlon v. Palace Entertainment Holdings, LLC*
     No. 11-987, 2012 WL 27461, *4 (W.D. Pa. Jan. 3, 2012) ........................................ 18

*In re American Med. Sys.*      10, 11,
     75 F.3d 1069 (6th Cir. 1996) ....................................... 14, 16,
     17

*In re LifeUSA Holding, Inc.*
     242 F.3d 136 (3d Cir. 2001) ..................................................... 12

*In re The Hartford Sales Practices Litig.*
     192 F.R.D. 592 (D. Minn. 1999) ............................................ 11

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*      6, 10,
     678 F.3d 409 (6th Cir. 2012) ................................................. 16, 17

*Jackson v. Southeastern Pa. Transport. Auth.*
     260 F.R.D. 168, 182 (E.D. Pa. 2009) ....................................... 21

*Jane B. Martin v. New York City Dept. of Social Srvs.*
     117 F.R.D. 64 (S.D.N.Y. 1987) ............................................... 17

*Kangisser v. Equifax Info. Srvs.*
     No. 1:12-cv-01610-PAG (N.D. Ohio June 21, 2012) .............................................. 20

*Kaplan v. Pomerantz*
     132 F.R.D. 504 (S.D.N.Y. 2008) ............................................. 18

# TABLE OF AUTHORITIES
(continued)

**CASES**                                                                      Page

*Leysoto v. Mama Mia I, Inc.*
    255 F.R.D. 693 (S.D. Fla. 2009) ................................................................ 18

*London v. Wal-Mart Stores, Inc.*
    340 F.3d 1246 (11th Cir. 2003) ................................................................ 17, 19

*Mayo v. Sears, Roebuck & Co.*
    148 F.R.D. 576 (S.D. Ohio 1993) ............................................................ 16

*Messner v. Northshore Univ. Healthsystem*
    669 F.3d 802 (7th Cir. 2012) .................................................................... 11

*Molina v. Roskam Baking Co.*
    No. 1:09-cv-475, 2011 WL 5979087, *3 (W.D. Mich. Nov. 29, 2011) .................... 13, 15, 16, 17, 20

*Panzirer v. Wolf*
    663 F.2d 365 (2d Cir. 1981) .................................................................... 17

*Perry v. First Nat. Bank*
    459 F.3d 816 (7th Cir. 2006) .................................................................... 21

*Ratner v. Chemical Bank New York Trust Co.*
    54 F.R.D. 412 (S.D.N.Y. 1972) ................................................................ 19

*Rini v. Trident Asset Mgmt. LLC*
    No. CV-12-784942, ¶ 13 (Cuyahoga Cm. Pls. June 13, 2012) ................................. 20

*Rockey v. Courtesy Motors, Inc.*
    199 F.R.D. 578 (W.D. Mich. 2001) .......................................................... 11, 12

*Rowe v. Bankers Life & Cas. Co.*
    No. 09-cv-491, 2012 WL 1068754, *8-9 (N.D. Ill. March 29, 2012) ...................... 12

*Searcy v. eFunds Corp.*
    2010 WL 1337684, *4 (N.D. Ill. Mar. 31, 2010) ...................................... 18

*Seig v. Yard House Rancho Cucamonga, LLC*
    No. CV 07-2105, 2007 WL 6894503, *6 (C.D. Cal. Dec. 10, 2007) ...................... 20

*Sokiranski v. Bay View Law Group, P.C., et al.*
    No. 1:12-cv-01624-SO (N.D. Ohio June 22, 2012) .................................... 20

## TABLE OF AUTHORITIES
(continued)

**CASES**                                                                    Page

*Sprague v. General Motors Corp.*                                          10, 11,
    133 F.3d 388 (6th Cir. 1998) .......................................................  16, 17

*Toldy v. Fifth Third Mortg. Co.*
    No. 1:09 CV 377, 2011 WL 4634154, *1 (N.D. Ohio Sept. 30, 2011) ..................  11, 19

*Vasquez-Torres v. McGrath's Publick Fish House, Inc.*
    No. CV 07-1332, 2007 WL 4812289, *7 (C.D. Cal. Oct. 12, 2007) ......................  20

*Villagran v. Central Ford, Inc.*
    524 F.Supp.2d 866 (S.D. Tex. 2007) .......................................................  20

*Wal-Mart v. Dukes*                                                        6, 9, 10,
    131 S.Ct. 2541 (2011) .......................................................  11, 16,
                                                                            17

*Watkins v. Simmons & Clark, Inc.*
    618 F.2d 398 (6th Cir. 1980) .......................................................  19

*Wilcox v. Commerce Bank of Kansas City*
    474 F.2d 336 (10th Cir. 1973) .......................................................  19


**OTHER AUTHORITY**

Fed.R. Civ.P. 23 .......................................................  1, 2, 9

                                                                            1, 9, 10,
Fed.R. Civ.P. 23(a) .......................................................  11, 16

Fed.R. Civ.P. 23(a)(2).......................................................  10

Fed.R. Civ.P. 23(a)(3).......................................................  16

Fed.R. Civ.P. 23(a)(4).......................................................  17

                                                                            1, 2, 9,
Fed.R. Civ.P. 23(b)(3).......................................................  10, 11

12 U.S.C. § 5582 .......................................................  16

15 U.S.C. § 1681, *et seq.* .......................................................  18

# TABLE OF AUTHORITIES
(continued)

**OTHER AUTHORITY**                                                        Page

15 U.S.C. § 1681b .......................................................................................   21

15 U.S.C. § 1681b(b)(2)(B) .......................................................................   1, 8, 15

15 U.S.C. §1681b(b)(3)(B) .......................................................................   1, 8, 9, 14

15 U.S.C. § 1681m .....................................................................................   21

15 U.S.C. § 1681m(a)(3) ...........................................................................   8, 9, 16

15 U.S.C. § 1681m(h)(8) ...........................................................................   21

15 U.S.C. § 1681n .....................................................................................   19, 20, 21

15 U.S.C. § 1681p .....................................................................................   15, 21

75 FR 57252 ..............................................................................................   16

124 Stat 1376, 2112 ..................................................................................   16

124 Stat. 2039-40 ......................................................................................   16

124 Stat 2113 ............................................................................................   16

2010 Acts. Pub.L. § 111-203 § 1062(a) ...................................................   16

2010 Acts. Pub.L. § 111-203, § 1100(F) ..................................................   16

2010 Acts. Pub.L. § 1100(H) ....................................................................   16

## MEMORANDUM IN SUPPORT

### I.  STATEMENT OF THE ISSUE PRESENTED

**Whether White has satisfied the requirements of Fed.R. Civ.P. 23 to certify a putative class action against CRST for alleged violations of 15 U.S.C. § 1681b(b)(2)(B) ("Disclosure Notices") and 15 U.S.C. § 1681b(b)(3)(B) ("Adverse Action Notices") of the Fair Credit Reporting Act ("FCRA") in relation to the procurement and/or use of criminal background reports.**

### II.  SUMMARY OF ARGUMENT

A multitude of issues exist that preclude class certification.  First, individual questions predominate over common questions on multiple issues which destroys commonality and typicality under Fed.R. Civ.P. 23(a), and makes unified class treatment inappropriate under Fed.R. Civ.P. 23(b)(3).

- Statutorily permitted oral notice of the Disclosure and Adverse Action Notices by CRST recruiters can only be determined on a on a case-by-case basis because CRST has no "uniform" policy that dates back to 2006; and

- All of the FCRA claims are subject to a statute of limitation that contains a discovery rule; and whether each class members' claim is time-barred depends upon when or if that individual discovered his or her claim.

Second, White cannot claim to have suffered the "same injury" as class members after July 21, 2011.  On this date, the summary of rights contained in the FCRA were substantively modified re-defining and significantly narrowing the requisite notices from what was required when White applied in 2009.  Thus, White's claims are not typical of class members' claims beginning July 21, 2011, and also thereby renders him inadequate to represent those class members.

Third, White's falsification and/or misrepresentations during the CRST application process and during his deposition disqualify him as an adequate class representative.  By failing to disclose his prior hit & run and driving under suspension convictions, White materially misrepresented his criminal past on the very job application for which he now seeks to profit.  He

then compounded his misrepresentation during his deposition.   White's credibility will be the focus of cross-examination in defeating his claim against CRST, and therefore will inure to the detriment of the class, thereby precluding White from serving as class representative.

Fourth, a class action is not a superior method of trying these claims under Fed.R. Civ.P. 23(b)(3).

- The staggering potential amount of statutory damages in this case weighs against a finding of superiority in light of the fact that <u>no</u> class member has suffered any actual harm; and

- Because the FCRA provides for a statutory award of attorney's fees and punitive damages, individual class members have adequate incentive to prosecute individual claims, such that a class action mechanism cannot be said to be superior.

Finally, White's class and subclass definitions are vague, overbroad, and untenable.  For these reasons, White has failed to satisfy the requirements of Fed.R. Civ.P. 23.

III.  **STATEMENT OF FACTS**

White's certification argument is riddled with mischaracterizations and manifests a misunderstanding of the record evidence in this case.  He falsely claims that CRST has no policies or procedures in place relating to the FCRA by ignoring the oral policies/training CRST personnel receive.[1]  He erroneously claims that standardized forms, procedures, and conduct exist, which is contradicted by the actual evidence adduced in this case. He also supports his certification motion by retroactively applying alleged "call scripts" that have never been in effect or even made available for reference until mid-2011.   Similarly, he

---

[1] In what appears to be an untimely discovery dispute requesting an evidentiary inference, White alleges that CRST did not produce a single document "evidencing any policy or procedure to comply with the FCRA." (ECF 57, pg. 8, ¶ 1.)  White's most recent version of his Motion for Class Certification was filed July 3, 2012.  While CRST has changed its Opposition to be responsive to the most recent Motion, CRST objects on the grounds set forth in ECF 50 and the Opposition to Plaintiff's Motion to Deem Timely Filed (concurrently filed with this Opposition). Regardless, White's claims are false and misleading, and CRST properly responded to all of White's discovery requests.  Moreover, White totally ignores the applications and other documents CRST produced as well as the training that CRST personnel receive.  (**Ex. 1**, pg. 7:9-25.)  Deposition of Brandi Northway, June 22, 2012, filed in its entirety as ECF 51.

relies upon a HireRight guide that CRST never received until after White filed this lawsuit.[2]
Most fatal to White's argument, however, is his failure to acknowledge or even address the
individualized issues that are rampant in this case.

## A.    CRST'S INDIVIDUALIZED RECRUITING AND HIRING PROCESS

CRST uses a flexible tiered approach when hiring truck drivers.  While a recruiting and
safety/hiring process exists, the components of the process are subject to numerous
individualized inquiries.  CRST recruiters are typically the ones responsible for communication
with each and every applicant regarding (1) his/her application, (2) interest in CRST and (3)
his/her compliance of ever changing hiring guidelines. (**Ex. 1**, pp. 7:1-21, 10:18-11:23, 21:8-19.)
CRST's safety personnel, on the other hand, are primarily responsible for handling orientation
and eventual hiring decisions.   (**Ex. 2**, pp. 7:13-20, 29:22-30:1.)[3] As CRST's frontline of
communication with applicants, CRST recruiters, therefore, generally handle the requisite
notifications under the FCRA for CRST to procure criminal background reports. (**Ex. 1**, pp. 7:1-
21, 10:18-11:23.)

It is undisputed that no two applicants or applications are alike; differences range from
the manner applications are received – on-line, paper, or from truck driving schools –to how and
what CRST recruiters specifically communicate to applicants.  (**Ex. 1**, pp. 12:12-23, 15:4-12,
17:10-18.) Such communications with applicants also can differ depending whether the
discussion is directly with the applicant or the applicant's agent (*i.e.*, Roadmaster or other
driving school employees). (**Ex. 1**, pp. 26:1-16, 29:18-30:20, 32:14-22, 34:11-35:11, 39:9-14.)
More importantly, with no standard/uniform script in place during the relevant time period, the

---

[2] CRST 002077-2102 were not sent to CRST until December 9, 2011.  These documents are listed as Exhibit G to
White's second Motion for Class Certification.  (ECF 57.)  CRST has moved to strike White's second Motion for Class
Certification, (ECF 46-1), for the reasons set forth in ECF 50, and hereby moves to strike the Third Motion for
Class Certification, (ECF 57), on these same grounds.

[3] Deposition of Scott Randall, June 22, 2012, filed in its entirety as ECF 52.

CRST recruiters'[4] communications with individual applicants are probably the single most individualized inquiry at issue in this case.

Finally, because of the multi-stage application process between the recruiting and safety departments, there is no "one-size-fits-all" approach to hiring, and depending upon where the applicant is in the application process, criminal background reports may be procured by either the recruiting or safety departments.  (**Ex. 2**, pp. 9:19-10:7, 11:18-24.)

>    1.    **CRST Recruiters Talk to Every Single Applicant But No Uniform Script Exists**

CRST recruiters speak to <u>each and every applicant</u>.  (**Ex. 1**, pg. 33:8-20.)  CRST recruiters make sure to talk to every applicant before obtaining a criminal background report.  (**Ex. 1**, pp. 7:1-21, 10:18-11:23.)  A criminal background report, however, is not procured for every applicant, and is procured only for those applicants that self-disclose a criminal history.  (**Ex. 1**, pp. 38:5-18, 49:10-50:10, 59:22-23, 63:6-10.)  If an applicant discloses a criminal background, recruiters are required to run reports, regardless of what other information an applicant may provide.  (**Ex. 1**, pg. 40:10-21.)  The undisputed testimony in this case (which White ignores) is that CRST recruiters are trained upon being hired to communicate with every applicant to address the materials submitted in their application, including notifications for procuring criminal background reports.  (**Ex. 1**, pg. 7:9-21, 33:8-20.)

White, however, claims that CRST's recruiting manual contains "call scripts," which do not reference the FCRA; White therefore claims that these purported "call scripts" are uniform documents showing a lack of FCRA compliance in oral communications.  However, the testimony is undisputed that the "call scripts" are not part of the training given to recruiters regarding obtaining and using criminal background reports.  (**Ex. 1**, pg. 9:10-22.)  Notably, the

---

[4] Between 2006 and the present, it is estimated that the number of CRST recruiters has at least tripled in size.

purported "scripts" also were not even collected until April 2011, nearly a year-and-a-half after White's claim accrued.  (ECF 57, Exhibit A.)

The occurrences of any conversations, and thus the contents of the conversations, vary between applicants and may or may not be documented.  (**Ex. 1**, pp. 34:11-35:11, 57:5-12); (**Ex. 2**, pg. 39:9-22.)  More importantly, White has failed to adduce any evidence to the contrary, and admits he has no knowledge to dispute the individualized nature in which CRST communicates with its applicants:

> Q. Do you know the experiences of any other individuals who at any time have ever applied for truck driver positions at CRST?
> A. No.

(**Ex. 3**, 12:19-22.)

White, who would purport to represent the entire putative class, by his own admission cannot support the proposition that his experience with CRST paralleled that of anyone else. Accordingly, what was specifically communicated to applicants back in 2006 or 2011 is unknown without questioning the specific recruiter and applicant involved as to the nature and substance of the conversations.  (**Ex. 1**, pp. 34:11-35:11.)[5]

## 2. CRST's Hiring Decision is Highly Individualized

When hiring truck drivers, CRST's safety department makes the final decision.  (**Ex. 1**, pp. 67:11-14, 69:22-70:3); (**Ex. 2**, pp. 29:22-30:1.)  This decision, however, is always on a case-by-case basis.   (**Ex. 2**, pp. 23:16-24:15, 25:10-26:24, 37:12-38:1.)  Any given adverse employment decision can be based on a myriad of reasons - lying on the application, prior employment issues, criminal background, failed road test and more.  (**Ex. 1**, 75:25-76:9); (**Ex. 2**, pp. 51:22-52:12, 53:2-54:20.)  These reasons, however, may have no connection whatsoever to a

---

[5] Indeed, the potential variation is such that while CRST informs applicants they may obtain a copy of any criminal background report, there may even be variation as to whether CRST tells applicants they are entitled to a "free" report.  (**Ex. 2**, pp. 56:22-57:10.)

criminal background report procured by CRST.  For example, there are situations where CRST may obtain a report on an applicant but ultimately decline employment for other reasons, such as failing the driving or agility tests necessary for employment.  (*Id.*)  Therefore, in order to determine the actual basis (whether in whole or in part) for any employment decision made when a criminal background report has been procured,  requires an applicant-by-applicant review.

Likewise, even if a decision was made "based in whole or in part" on a criminal background report, a case-by-case inquiry is still necessary to determine whether the proper notifications were orally provided under the FCRA.  Depending on when and how the adverse decision is made, CRST recruiting personnel, safety personnel, or both may communicate with any given applicant.  (**Ex. 1**, 69:6-70:25, 77:22-78:17); (**Ex. 2**, pp. 28:12-15, 54:21-56:4.)  As there is no written policy scripting the communication with the applicant upon an adverse decision, what is exactly said or communicated is not known without inquiring of each recruiter, safety personnel, or applicant involved. (**Ex. 1**, pp. 55:9-18, 78:18-22); (**Ex. 2**, pp. 27:4-28:11, 41:13-24, 55:9-56:4.)  White has failed in his class certification motion to negate the fact that the recruiting process and hiring decisions are highly individualized.

## B.  WHITE'S "FACTUAL" ACCOUNT DOES NOT COMPORT WITH THE EVIDENCE

Plaintiff's "factual" recitation is wholly contradicted by the record evidence.[6]  First, White was never hired.[7]  A pre-hire letter is not an offer of employment as recruiters are not

---

[6] White also mischaracterizes the recent Sixth Circuit decision affirming this Court's grant of class certification in *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409 (6th Cir. 2012), as to relevance of the merits of White's claim.  Indeed, the Sixth Circuit observed that the Supreme Court in *Dukes* "clarified that courts may inquire preliminarily into the merits of a suit to determine if class certification is proper, although courts need not resolve all factual disputes on the merits."  *Id.*  To this end, CRST hereby incorporates by reference the arguments and factual recitation set forth in its Motion for Summary Judgment (ECF 40 and Reply contemporaneously filed with this Opposition.)

[7] Contrary to White's Motion, (ECF 57, pg. 9, ¶ 2), there is no dispute that White never worked for CRST, a fact that even White admitted in his deposition.  (**Ex. 3**, pg. 10:20-22.) Deposition of Bruce White filed in its entirety as ECF 41.

authorized to make hiring decisions.  (**Ex. 1**, pp. 40:22-41:18, 42:4-16, 43:4-12); (**Ex. 2**, pg. 38:2-9.)  Rather, it is merely an invitation for the applicant to attend either driving school or a CRST driver orientation <u>subject to</u>, among other things, complying with CRST's hiring standards and satisfying its background/employment verification.  (ECF 54-2.)

Second, prior to running White's criminal background report, CRST:  (1) notified White his criminal background report would be run; (2) obtained his written consent to run the report; (3) informed him of his right to request a copy of the report; and (4) advised him of his right to dispute the report.  (ECF 40, Ex. 1, pg. 6); (**Ex. 1**, pp. 7:1-21, 10:18-11:23, 34:19-35:11.)[8] Finally, CRST's decision not to hire White was based upon felony criminal <u>charges</u> that were identified by White's truck driving school and confirmed in court records; thus, Adverse Action Notice was never triggered.[9]

### C.  WHITE MISREPRESENTED HIS CRIMINAL HISTORY TO CRST AND COMPOUNDED THAT MISREPRESENTATION DURING HIS DEPOSITION

During White's deposition, he admitted he falsified his employment application with CRST by failing to disclose prior 1999 convictions for a hit and run and driving under suspension.  (**Ex. 3**, pp. 74:10-17, 76:1-4, 80:2-18, 82:24-83:23.)  He failed to disclose these material convictions in response to a question on his application asking him whether he had "<u>ever</u> been convicted of a Misdemeanor." (ECF 40, Exhibit 1, pg. 3.)

White further compounded this misrepresentation during his deposition by providing false and contradictory testimony regarding why he omitted the convictions.  Specifically, at various points in the deposition White testified that he "might" have forgotten to include it; that he was aware of the convictions but just "assumed" he did not need to disclose them as they were

---

[8] White contends that a the statute requires a chronological process of which disclosures are necessary before obtaining an applicant's consent.  However, the unambiguous statutory text does not support such a contention.

[9] See generally ECF 40 and Reply to White's Opposition to Summary Judgment, filed contemporaneously with this Opposition

more than 10 years old; and claimed he "heard" from a job placement coordinator that didn't need to disclose the convictions.  Ultimately, White admitted that such a conversation with the job placement coordinator never took place and that he did, in fact, recall the convictions.  (**Ex. 3**, pp. 72:25-73:6, 79:14-15, 80:5-81:18., 83:4-10, 85:13-86:11.)

## IV.    LAW & ARGUMENT

### A.    NOTICE REQUIREMENTS UNDER THE FCRA

The parties agree that the applicable FCRA provisions at issue are 15 U.S.C. § 1681b(b)(2)(B) for the requisite notice prior to running a criminal background report ("Disclosure Notices") and 15 U.S.C. § 1681b(b)(3)(B) relating to the notices necessary if adverse action is taken ("Adverse Action Notices").

#### 1.    Disclosure Notices Under The FCRA

The oral, written or electronic Disclosure Notices required under 15 U.S.C. § 1681b(b)(2)(B) before a criminal background report is obtained are:

- notice that a consumer report may be obtained for employment purposes;

- notice of the summary of the consumer's rights under section 1681m(a)(3) ("Summary of Rights"); and

- that the consumer shall have consented, orally, in writing, or electronically to the procurement of the report

The Summary of Rights at the time of White's application in December 2009 required a prospective employer to inform job applicants orally, in writing, or electronically of the right (1) to obtain a free copy of the consumer report from the consumer reporting agency who produced the report and (2) to dispute the accuracy or completeness of the consumer report ("Summary of Rights").  15 U.S.C. § 1681m(a)(3) (West 2010).

However, the statute was significantly amended in July 2010, and the applicable Summary of Rights are now limited to the name, address, and telephone number of the consumer

reporting entity ("CRA") that produced the report and a notification that the CRA did not make the adverse action decision.   15 U.S.C. § 1681m(a)(3) (West 2012).

### 2.    Adverse Action Notices Under The FCRA

The oral, written or electronic Adverse Action Notices required once "adverse action" is taken "based in whole or in part" on a consumer report are:

- that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency;

- the name, address and telephone number of the consumer reporting agency that furnished the consumer report (including a toll-free telephone number established by the agency if the agency compiles and maintains files on consumers on a nationwide basis);

- that the consumer reporting agency did not make the decision to take the adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and

- that the consumer may request a free copy of a report and may dispute the accuracy or completeness of any information in a report

15 U.S.C. § 1681b(b)(3)(B) (emphasis added).

## B.    REQUIREMENTS FOR CLASS CERTIFICATION

In order to obtain class certification, White must satisfy the prerequisites of Federal Civil Rule 23(a) and 23(b)(3).[10]  All courts must conduct a "rigorous analysis" of whether the Rule 23 requirements are met.  *Carter v. Welles-Bowen Realty, Inc.*, No. 3:09 CV 400, 2010 WL 908464, *2 (N.D. Ohio March 11, 2010) (internal citations omitted); *e.g.*, *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003).  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule--that is, he must be prepared to prove that there [is] *in fact*" evidence to satisfy each requirement of Rule 23(a).  *Wal-Mart v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (emphasis in original).

---

[10] ECF 57, pp. 10-11; *See also*, White's First Amended Class Action Complaint, "Wherefore" clause – ECF 29.

White's failure to satisfy <u>any</u> single element of Rule 23(a) or 23(b)(3) is fatal to his claim for class certification, and White bears the burden of proof to establish all requirements.  *E.g.*, *In re American Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

**C.**   **WHETHER CRST PROVIDED ORAL NOTICE OF THE FCRA DISCLOSURE AND ADVERSE ACTION NOTICES IS AN INDIVIDUALIZED INQUIRY IN THIS SUIT, DESTROYING COMMONALITY AND PREDOMINATING OVER ANY COMMON QUESTIONS UNDER FED.R. CIV.P. 23(a)(2) AND (b)(3).**

**1.**   **White Cannot Satisfy The Commonality Requirement**

White's Motion lists a litany of self-serving common issues.   (ECF 57, pp. 16-18.) However, as the United States Supreme Court observed in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011), merely "[r]eciting these questions is not sufficient to obtain class certification."  *Id.*  Instead, the common contention "must be of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is <u>central to the validity of each one of the claims in one stroke</u>."  *Id.* (emphasis added). Post-*Dukes*, the Sixth Circuit held that commonality is not determined by whether there are common questions, but whether there are "common <u>answers</u>," the resolution of which will advance the litigation.  *In re Whirlpool Corp.*, 678 F.3d at 418-19.

While White posits a generic list of common questions, the only question that can lead to a common <u>answer</u> which moves the litigation forward is whether, by proving that CRST did not orally give him the Disclosure and/or Adverse Action Notices, White will also prove that CRST did not give the notices to other class members, thereby establishing class-wide liability.  In this regard, *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) is instructive.

In *Sprague*, part of the class claims centered on theories of estoppel and bilateral contracts, which turned on whether GM had made certain oral or written representations to class

members.  In reversing the District Court's decision to grant class certification, the Sixth Circuit

held that the claims did not satisfy the requirements Fed.R. Civ.P. 23(a) because:

> Each putative side deal involved * * * representations GM might have made to
> the retiree, whether orally, in writing, or both. * * * Proof that GM had
> contracted to confer vested benefits on one early retiree would not necessarily
> prove that GM had made such contract with a different early retiree.

*Sprague*, 133 F.3d at 398 (citations omitted), *citing American Med. Sys.*, 75 F.3d at 1081.  Class-

wide treatment was not appropriate because the putative class members' claims depended upon

facts peculiar to them.  *Id.*

Unless the plaintiff can uniformly prove the content, nature, and extent of individual

statements made to applicants, there is no potential for a "common answer" that is capable of

resolving the class's "claims in one stroke."  *Dukes*, 131 S.Ct. at 2551.  Here, neither a uniform

process nor common answer exists and White has failed to adduce any evidence to the contrary.

### 2.     White Cannot Satisfy the Predominance Requirement

Although the issue of predominance shares common features with the commonality

requirement of Rule 23(a), "[t]he predominance requirement of subdivision (b)(3) is 'far more

demanding' than the 'commonality' requirement of subdivision (a)."  *Toldy v. Fifth Third Mortg.

Co.*, No. 1:09 CV 377, 2011 WL 4634154, *1 (N.D. Ohio Sept. 30, 2011), *quoting In re The

Hartford Sales Practices Litig.*, 192 F.R.D. 592, 604 (D. Minn. 1999); *Amchem Prods., Inc. v.

Windsor*, 521 U.S. 591, 623-24 (1997).  If, in order to establish the defendant's liability, "the

members of the proposed class will need to present evidence that varies from member to

member, then it is an individual question."  *Messner v. Northshore Univ. Healthsystem*, 669 F.3d

802, 815 (7th Cir. 2012) (emphasis added), *quoting Blades v. Monsanto*, 400 F.3d 562, 566 (8th

Cir. 2005).

"Common issues do not predominate where, as here, the focus must be on minute aspects

of individual transactions in order to establish liability."  *Rockey v. Courtesy Motors, Inc.*, 199

F.R.D. 578, 592 (W.D. Mich. 2001).   In this regard, class certification based upon oral statements is appropriate only when the statements are <u>materially uniform</u>, such that the class is certified on the grounds that the generalized statements go towards establishing class-wide liability.  *Rowe v. Bankers Life & Cas. Co.*, No. 09-cv-491, 2012 WL 1068754, *8-9 (N.D. Ill. March 29, 2012).[11]

Here, while White claims he did not receive the requisite Disclosure or Adverse Action Notices, he also admits that he simply does not remember many parts of his oral communication with CRST.[12]  White is, of course, free to take such position.  Absent granting CRST's Motion for Summary Judgment, however, it is an issue that will have to be resolved at trial, by the jury, weighing White's testimony against that of CRST.   Whether CRST orally provided the Disclosure and/or Adverse Action Notices to White, the very core of his claim, is therefore an individualized issue.

### a.     Disclosure Notices Require An  Individualized Inquiry

What this dispute is about, and what must be proven to establish CRST's liability, is <u>what</u> was communicated, or not communicated, to <u>each</u> applicant.  In order to overcome this obvious deficiency, White argues that CRST has "call scripts" that recruiters use and that, because the "scripts" do not reference the FCRA requirements, a class-wide determination may be made that the communications were deficient.  The dispositive issue is whether the purported "call scripts" prove that CRST's oral statements to applicants were <u>materially uniform for all class members between December 1, 2006 to the present</u>.  *Rowe*, 2012 WL 1068754 at *8.  White's reliance on the "call scripts" is severely misplaced.

---

[11]  In denying the plaintiff's motion to certify a class action RICO claim in *Rowe*, the court observed that because the plaintiff did not provide evidence suggesting that "uniform, scripted, and standardized sales presentations" were used, plaintiff "failed to demonstrate that potential members of the nationwide class received uniform written or oral misrepresentations or omissions." *Id.* (citations omitted), *citing In re LifeUSA Holding, Inc.*, 242 F.3d 136, 146 (3d Cir. 2001). Accordingly, the court held that predominance was not satisfied. *Id.*

[12]  (*See generally* Motion for Summary Judgment, ECF 40.)

Foremost, White never authenticates the purported "call scripts" or even provides testimonial context such that they should not be considered as evidentiary support in determining certification.[13]  White's failure to authenticate the "calls scripts" is the obvious result of the fact that they are not actually "call scripts" as he claims; recruiters are not required to use these "scripts," nor are they even used in training recruiters.  (**Ex. 1**, pg. 9:10-22.)  Also, the document which contains these "scripts" was notably not even released until <u>April 2011</u>.  (ECF 57, Exhibit A.)[14]  Thus, even if the scripts constituted evidence of "materially uniform" communications with applicants (which they do not), there is no evidence of any standardized communications before April 2011.  Accordingly, White could not represent such a class since his claim accrued in December 2009, nearly a year-and-a-half prior to when the alleged "scripts" were even collected.

White cannot, and makes no effort to, show that there were any materially uniform or scripted oral communications that CRST recruiters had with applicants at the time of White's application in December 2009.  Even taking White's "evidence" at face value, there exists a question as to the scope and content of individual notices to class members between December 1, 2006 and March 2011; thus, establishing liability becomes "an individualized issue, with resolution of Plaintiff's notice claim resolving nothing about whether other class members each received their own notice" under the FCRA.  *Molina v. Roskam Baking Co.*, No. 1:09-cv-475, 2011 WL 5979087, *3 (W.D. Mich. Nov. 29, 2011).

---

[13] Indeed, White has failed to authenticate (or provide testimonial background) for Exhibits A, C, D, E, and F in his Motion for Class Certification.  While recognizing that the evidentiary burden for certification is typically not as stringent as that for summary judgment, CRST objects to White's unauthenticated Exhibits in this case given that CRST challenges that the Exhibits are what White purports them to be, specifically as to the alleged "call scripts."

[14] Despite the fact that the parties agreed to file this and other Exhibits under seal, *see* Joint Motion for Entry of Proposed Stipulated Protective Order, (ECF 23), and Joint Motion to Seal Exhibits to Plaintiff's Motion for Class Certification, (ECF 47), White has now elected to file electronically even though these Motions remaining pending before the Court.

### b.      Adverse Action Notices Requires Individual Analysis

Individual questions also predominate as to the Adverse Actions Notices.  White's effort to certify a class action as to the Adverse Action Notices presumes that <u>every</u> applicant for whom a criminal background report was procured and who was ultimately not offered a position was declined employment based upon the report.  However, there are circumstances where an applicant self-discloses a criminal record which CRST confirms via a criminal background check, but an offer of employment may not be made for other reasons, for example failing a drug test or agility test while at orientation.  (**Ex. 2**, pp. 42:20-43:12); (**Ex. 1**, pg. 76:4-9.) Accordingly, individual questions again predominate as to the Adverse Action Subclass, as establishing liability will depend on proof that a declination of employment was "based in whole or in part" on the criminal background check.  15 U.S.C. § 1681b(b)(3)(B).

When it comes to the issues in this claim, as CRST does not have any standardized "script" which recruiters or safety personnel must use in speaking with applicants, trial of the issue of whether CRST provided the requisite Disclosure or Adverse Action Notices to White, no matter how resolved, will say nothing about whether <u>other</u> class members received their own notices.

### D.      THE STATUTE OF LIMITATIONS PRESENTS INDIVIDUAL QUESTIONS

In a case where defenses may depend on facts peculiar to each putative class member's case, class treatment is not appropriate because it "would present a nearly insurmountable burden on the District Court."  *In re American Med. Sys.,* 75 F.3d 1069, 1085 (6th Cir. 1996).

In this case, White seeks to certify a five-year class.  (ECF 57, pp. 1 ¶ 2, 13 n.10.)  The statute of limitations, however, gives rise to predominating individual questions of fact.  An action to enforce "any liability" under the FCRA must be brought "not later than the <u>earlier of 2 years after the date of discovery</u> by the plaintiff of the violation that is the basis for such liability

or 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681(p) (emphasis added). Thus, a five-year class period would only apply if the purported class member did not discover the violation that gave rise to his/her claim at some earlier point.

The Sixth Circuit has previously held that when a statute of limitations is triggered by when a class member knew or had the opportunity to discover an alleged statutory violation, the triggering of the statute of limitations presents an individualized question of fact. *Butler v. Sterling, Inc.*, 2000 WL 353502, *7 (6th Cir. 2000); *Rockey*, 199 F.R.D. at 593.[15]

Similarly, in denying class certification based on the FCRA statute of limitations, in *Molina v. Roskam Baking Co.*, No. 1:09-cv-475, 2011 WL 5979087 (W.D. Mich. Nov. 29, 2011), the court held that "because the question of Defendant's liability to a substantial portion of the class turns on the individual question of when certain class members 'discovered' or 'should have discovered' Defendant's alleged misconduct, a class action is not the best method of trying the suit." *Id.* at *5.

Thus, the issue of whether, when, and/or if a proposed class member knew of CRST's alleged misconduct is inherently an individualized inquiry, thereby creating "predominating individual questions of fact." *Id.*, *citing Butler*, 2000 WL 353502 at *7 (6th Cir. 2000).

### E.  WHITE HAS NOT SUFFERED THE "SAME INJURY" AS PUTATIVE CLASS MEMBERS AFTER JULY 21, 2011

White claims CRST violated the Disclosure Notices, which, under his claim, requires an employer to 1) obtain the applicant's consent to obtain a criminal background report, and 2) provide the Summary of Rights. 15 U.S.C. § 1681b(b)(2)(B). When White applied in 2009, the

---

[15] White's passing reference to Judge Polster's order in *Hall v. Vitran Express, Inc.*, No. 1:09-CV-00800 (unreported) (N.D. Ohio Oct. 29, 2010) is unpersuasive and readily distinguishable. In *Vitran*, Judge Polster was actually granting the plaintiff's motion for leave to file an amended complaint, and merely mentioned in passing that the defendant's opposition to amend due to the two year statute of limitations did not render the plaintiff's amendment inherently futile as grounds upon which to deny leave. (Order of Judge Polster attached hereto as **Ex. 4**.)

Summary of Rights required a prospective employer to provide oral, written or electronic notice of the right:

- to obtain a free copy of the consumer report within 60 days; and

- to dispute the accuracy or completeness of the report.

15 U.S.C. § 1681m(a)(3) (West 2010).  On July 21, 2010, however, Congress modified the Summary of Rights as part of the Dodd-Frank Act ("Summary Amendment").[16]  Under the Summary Amendment, an employer must <u>now</u> inform the applicant of a different Summary of Rights, by providing orally, in writing, or electronically:

- the name, address, and telephone number of the consumer reporting agency

- a statement that the consumer reporting agency did not make the decision to take the adverse action

15 U.S.C. § 1681m(a)(3) (West 2012)(stated generally).  Changes became effective on July 21, 2011.[17]

"Rule 23(a) limits class claims to those which are encompassed by the named plaintiff's claims."  *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 579 (S.D. Ohio 1993), *citing General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982).  Under Fed.R. Civ.P. 23(a)(3) a "claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quotation marks omitted), *quoting American Med. Sys.*, 75 F.3d at 1082.  Typicality, however, is not satisfied if a "named plaintiff who proved his own claim would not necessarily have proved anybody else's claim."  *Molina*, 2011 WL 5979087 at *3, *quoting Sprague*, 133 F.3d at 399.

---

[16] 2010 Acts Pub.L. 111-203, § 1100(F), 124 Stat 1376, 2112.

[17] 2010 Acts. Pub.L. § 1100(H), 124 Stat 2113; 2010 Acts. Pub.L. § 111-203 § 1062(a), 124 Stat. 2039-40, 12 U.S.C. § 5582 (granting Secretary of Treasury authority to designate transfer date); 75 FR 57252 (designating transfer date as July 21, 2011).

White's claims intersect with those of the class only if White can be said to have suffered the "same injury" as the class members. *Dukes*, 131 S.Ct. at 2551; *Whirlpool*, 678 F.3d at 418. The dispositive inquiry is whether White, by proving CRST willfully violated the Disclosure Notices as to him, will thereby also prove the claims of the Disclosure Subclass. *Sprague*, 133 F.3d at 399.

In light of the Summary Amendment, the Summary of Rights for potential class members from July 21, 2011, to date, is substantively different than the Summary of Rights applicable to White.  Thus, even <u>if</u> White were to prove his claim, he will not prove the claims of any Disclosure Subclass members as of July 21, 2011.[18]

### F.       WHITE IS INADEQUATE TO SERVE AS CLASS REPRESENTATIVE

Fed.R. Civ.P. 23(a)(4) "allows class certification only if 'the representative parties will fairly and adequately protect the interest of the class.' This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *American Med. Sys.*, 75 F.3d at 1083.  In determining whether White can fairly and adequately protect the interests of the class, the Court may properly inquire into White's "improper and questionable conduct," including credibility, as it relates to the prosecution of this suit. *Jane B. Martin v. New York City Dept. of Social Srvs.*, 117 F.R.D. 64, 70-71 (S.D.N.Y. 1987); *e.g.*, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 154 (11th Cir. 2003); *Panzirer v. Wolf*, 663 F.2d 365 (2d Cir. 1981); *Cromer Fin. Ltd v. Berger*, 205 F.R.D. 113, 124 (S.D.N.Y. 2001).

White's material misrepresentation on his job application to CRST, further compounded by his intentionally misleading and inconsistent testimony at his deposition, not only renders him unsuitable to serve in the fiduciary capacity necessary for a class representative, but bears a

---

[18] The Summary Amendment not only destroys typicality between White and post-Summary Amendment class members, but also renders White inadequate under Fed.R. Civ.P. 23(a)(4).  *Molina*, 2011 WL 5979087 at *4.

substantial risk of prejudicing the purported class through its impact on the credibility of his testimony.

White claims that any challenge to his adequacy as class representative is immaterial as he only seeks statutory damages.  (ECF 57, pg. 20, ¶ 2.)  While White claims that CRST did not inform him of right to contest the accuracy of the report, CRST's testimony is that this right is communicated to all applicants (**Ex. 1**, pg. 11:9-19); (**Ex. 2**, pp. 55:12-56:4.)  As such, White's credibility is directly at issue as it relates to the substance, quality, and extent of his oral communication with CRST.  White's misrepresentation on his application and inconsistent and false deposition testimony "create[s] serious problems with respect to [his] credibility and could become the focus of cross examination… to the detriment of the class."  *Darwin v. Int'l Harvester Co.*, 610 F.Supp. 255, 257 (S.D.N.Y. 1985); *Friedman-Katz v. Lindt & Sprungli (USA), Inc.*, 270 F.R.D. 150, 159-61 (S.D.N.Y. 2010); *Searcy v. eFunds Corp.*, 2010 WL 1337684, *4 (N.D. Ill. Mar. 31, 2010); *Kaplan v. Pomerantz*, 132 F.R.D. 504, 510 (S.D.N.Y. 2008). His misconduct, thereby inures to the detriment and prejudice of the putative class he seeks to represent.  *Id.*

### G.    A CLASS ACTION IS NOT A SUPERIOR METHOD OF ADJUDICATION

#### 1.    The Devastating Potential Class Damages are Completely Disproportional to any Alleged Harm

"In order to satisfy the superiority requirement, the class action must be superior to, 'and not just as good as, other available methods for handling the controversy.'"  *Abby v. City of Detroit*, 218 F.R.D. 544, 549 (E.D. Mich. 2003).  In this regard, the superiority of a class action suit for alleged violations of 15 U.S.C. § 1681 *et seq.*, has been seriously questioned.  *See Hanlon v. Palace Entertainment Holdings, LLC*, No. 11-987, 2012 WL 27461, *4 (W.D. Pa. Jan. 3, 2012); *Leysoto v. Mama Mia I, Inc.*, 255 F.R.D. 693, 699 (S.D. Fla. 2009).

Class certification for alleged violations of 15 U.S.C. 1681n, which provide that a defendant can be liable for statutory damages up to $1,000 per violation, results in "potentially annihilating statutory damages to be awarded against a defendant business" despite the class members having incurred no actual harm, such that a class action is not a superior method of adjudication.  *Id.*; *Watkins v. Simmons & Clark, Inc.*, 618 F.2d 398, 402-03 (6th Cir. 1980); *accord, e.g.*, *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003); *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 347-49 (10th Cir. 1973); *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412, 414 (S.D.N.Y. 1972).  And here, White amended his original Complaint and removed his negligence claims effectively conceding that he suffered no actual damages.

> **2.    Because the FCRA Statutorily Permits Recovery of Attorney's Fees and Punitive Damages, there is Adequate Incentive for Individual Class Members to Prosecute their Claims**

"When a statute allows a prevailing plaintiff to recover attorney's fees and costs, a class action is generally not a superior method for litigating a case."  *Carter v. Welles-Bowen Realty, Inc.*, No. 3:09 CV 400, 2010 WL 908464, *2 (N.D. Ohio March 11, 2010). The Sixth Circuit has observed that:

> class treatment of claims is most appropriate where it is not "economically feasible" for individuals to pursue their own claims.
> \*          \*          \*
> [T]he primary justification for class treatment is largely absent [in cases where the statute's ] provision for the award of attorney's fees and costs to successful plaintiffs eliminates any potential financial bar to pursuing individual claims.

*Coleman v. General Motors Corp.*, 296 F.3d 443, 449 (6th Cir. 2002); *Toldy v. Fifth Third Mortg. Co.*, No. 1:09 CV 377, 2011 WL 4634154, *2 (N.D. Ohio Sept. 30, 2011).

White makes the conclusory assertion that because statutory damages are "limited recoveries," FCRA claims are "ideally suited" for class certification.  (ECF 57, pg. 26.)  White,

however, entirely ignores the fact that the FCRA provides that a prevailing plaintiff, in addition to actual or statutory damages, is entitled to an award of attorney's fees and may receive punitive damages. 15 U.S.C. § 1681n. Thus, individual class members are able to adequately prosecute their claims on their own, and attorneys have adequate incentive to represent individual class members for FCRA violations, such that a class action is not a superior method of adjudication in this suit.[19] *E.g.*, *Molina*, 2011 WL 5979087 at *5-6 ("Plaintiff's argument overlooks the fact that the FCRA awards attorneys' fees to a prevailing consumer," such that consumers have adequate incentive and ability to pursue individual actions, and thus destroying the superiority of a class action); *Grimes v. Race Motion Pictures Birmingham*, 264 F.R.D. 659, 669 (N.D. Ala. 2010); *Villagran v. Central Ford, Inc.*, 524 F.Supp.2d 866, 887 (S.D. Tex. 2007); *Gardner v. Equifax Info. Srvs.*, No. 06-3102, 2007 WL 2261688, *6 (D. Minn. Aug. 7, 2007); *Campos v. Choicepoint, Inc.*, 237 F.R.D. 478, 490 (N.D. Ga. 2006); *Vasquez-Torres v. McGrath's Publick Fish House, Inc.*, No. CV 07-1332, 2007 WL 4812289, *7 (C.D. Cal. Oct. 12, 2007); *Seig v. Yard House Rancho Cucamonga, LLC*, No. CV 07-2105, 2007 WL 6894503, *6 (C.D. Cal. Dec. 10, 2007).

Thus, because the FCRA statutorily provides the right to recover attorney's fees, costs, and punitive damages, "the primary justification for class treatment is largely absent," such that a class action is not a superior method of adjudication in this case. *Coleman v. General Motors Corp.*, 296 F.3d 443, 449 (6th Cir. 2002).

---

[19] Indeed, in the past three weeks alone, there have been at least four individual actions alleging violations of the FCRA, including willful violations, filed in either the United States District Court for the Northern District of Ohio and/or the Court of Common Pleas, Cuyahoga County, Ohio. *Sokiranski v. Bay View Law Group, P.C., et al.*, No. 1:12-cv-01624-SO (N.D. Ohio June 22, 2012); *Kangisser v. Equifax Info. Srvs.*, No. 1:12-cv-01610-PAG (N.D. Ohio June 21, 2012); *Burkley v. Asset Acceptance LLC*, No. CV-12-785035 (Cuyahoga Cm. Pls. June 14, 2012*); Rini v. Trident Asset Mgmt. LLC*, No. CV-12-784942, ¶ 13 (Cuyahoga Cm. Pls. June 13, 2012) ("Based upon the above cited willful and/or negligent violations of the FCRA, Plaintiff seeks damages * * * in addition to punitive damages and reasonable attorneys' fees as provided in said Act.").

### H.    WHITE'S CLASS (AND SUBCLASS) DEFINITIONS ARE VAGUE, OVERBROAD AND UNTENABLE

White's class and subclass definitions are objectionable for the following reasons:

- White's class and subclass definitions are vaguely limited in scope to the "period provided by 15 U.S.C. §1681p." With this generic reference, White seeks to certify a class under the five year statute of limitations.  However, at the very most, the two year statute of limitations should apply.  (*See* Section IV.D., *supra.*);

- throughout this case, White has exclusively focused on CRST's procurement and/or use of criminal background reports, not "consumer reports" in general.  The proposed class and sub-class definitions are, therefore, overbroad.  *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997);

- while the claims set forth in the First Amended Class Action Complaint are limited to a willful violation and seeks only statutory damages,[20] the class and sub-class definitions are not limited accordingly;

- the proposed subclasses are impermissibly vague as class membership will ultimately "depend on the merits," such that the class is untenable as being first conditioned on CRST's liability.  *Jackson v. Southeastern Pa. Transport. Auth.*, 260 F.R.D. 168, 182 (E.D. Pa. 2009); and

- the proposed class and subclasses are overbroad as members cannot  recover for an alleged violation of 15 U.S.C. § 1681b to the extent that proof of a violation of that section is dependent upon proving a failure to comply with 15 U.S.C. § 1681m.  15 U.S.C. § 1681m(h)(8).  As the proposed class and subclass definitions would include claims based upon CRST's alleged failure to comply with 15 U.S.C. § 1681m, the definition must be narrowed as members are statutorily precluded from recovery for any violation based upon a failure to comply with 15 U.S.C. § 1681m.  *E.g.*, *Perry v. First Nat. Bank*, 459 F.3d 816, 820-23 (7th Cir. 2006).

---

[20] 15 U.S.C. § 1681n provides that a plaintiff claiming a willful violation of the FCRA may elect to obtain actual damages or may alternatively pursue statutory damages at the claimant's election.

## V.  <u>CONCLUSION</u>

Accordingly, CRST respectfully requests this Court to deny Plaintiff's Motion for Class

Certification.

Respectfully submitted,

*/s/ Gregory J. Lucht*
GREGORY J. LUCHT (0075045)
JEREMY GILMAN (00014144)
DAVID M. KRUEGER (0085072)
**BENESCH FRIEDLANDER**
**COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone:     (216) 363-4500
Facsimile:     (216) 363-4588
E-mail: glucht@beneschlaw.com
         jgilman@beneschlaw.com
         dkrueger@beneschlaw.com
*Attorneys for Defendant CRST, Inc.*


## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1</u><br><u>AND CIVIL TRIAL ORDER</u>

This case has been assigned to the Standard Track.  I certify that this Opposition to

Plaintiff's Motion for Class Certification and accompanying Memorandum in Support are in

compliance with Rule 7.1 of the Local Rules for the Northern District of Ohio and this Court's

Order granting CRST leave to file a memorandum up to twenty-five pages in length (ECF 55).

*/s/  Gregory J. Lucht*
*One of the Attorneys for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document was filed electronically on the 5th day of July, 2012 in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System.  Parties may access this filing through the Court's Filing System.

*/s/  Gregory J. Lucht*
*One of the Attorneys for Defendant*