**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BRUCE WHITE, on behalf of himself and all others similarly situated | ) ) ) | CASE NO. 1:11-CV-02615 |
| | ) | JUDGE: JAMES S. GWIN |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **DEFENDANT CRST, INC.'S (n/k/a** |
| CRST, INC. | ) ) | **CRST EXPEDITED, INC.) REPLY TO PLAINTIFF'S OPPOSITION TO** |
| Defendant. | ) ) | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Defendant CRST, Inc. (n/k/a CRST Expedited, Inc.) ("CRST") pursuant to Loc.R. 7.1(e), submits this Reply to Plaintiff Bruce White's ("White") Opposition to CRST's Motion for Summary Judgment. White's Opposition has failed to show that there is any genuine issue of material fact, and CRST is entitled to judgment as a matter of law.

CRST respectfully submits the attached Memorandum in Support.

                                              Respectfully submitted,

                                              */s/ Gregory J. Lucht*
                                              GREGORY J. LUCHT (0075045)
                                              JEREMY GILMAN (00014144)
                                              DAVID M. KRUEGER (0085072)
                                              **BENESCH FRIEDLANDER
                                              COPLAN & ARONOFF LLP**
                                              200 Public Square, Suite 2300
                                              Cleveland, Ohio 44114-2378
                                              (T):(216) 363-4500. (F): (216) 363-4588
                                              E-mail:     glucht@beneschlaw.com
                                                                     jgilman@beneschlaw.com
                                                                    dkrueger@beneschlaw.com
                                              *Attorneys for Defendant CRST, Inc.*

**MEMORANDUM IN SUPPORT**

I. **INTRODUCTION**

White's misunderstanding of his burden under Fed.R. Civ.P. 56 is apparent due to the fact that he begins by discussing Fed.R. Civ.P. 23 in relation to the merits of his claim and summary judgment. (ECF 54, pg. 2.) White's Opposition continues to confuse the applicable law, testimony, and documentary evidence in this case.

CRST is entitled to summary judgment because White has still failed to present any relevant evidence that CRST acted willfully, as opposed to merely negligently. White argues that CRST's failure to have written FCRA policies creates an issue of willfulness, ignoring the in-person training that CRST gives its recruiters. Rather than offering evidence to support a claim of willfulness in 2009 when he applied to CRST, White reargues his motion for class certification by introducing unauthenticated documents from 2010 and 2011, years after the relevant facts of White's claim.

Moreover, in arguing that CRST willfully violated the Adverse Action Notices, White blatantly mischaracterizes the evidence. The testimony is undisputed, and the evidence is irrefutable, that CRST had knowledge of White's felony charge and misdemeanor conviction prior to procuring his Report. White cannot manufacture evidence simply to survive summary judgment. Even if this Court were to determine that CRST's FCRA interpretation is erroneous, it is still objectively reasonable, such that CRST is entitled to judgment as a matter of law.

II. **LAW & ARGUMENT**

   A. **WHITE'S OPPOSITION FAILS TO CREATE AN ISSUE OF FACT AS TO WHETHER THE DISCLOSURE AND ADVERSE ACTION NOTICES WERE ORALLY PROVIDED TO WHITE**

In evaluating whether to grant summary judgment, the issue is not whether there is evidence that CRST failed to provide the summary of rights under 15 U.S.C. § 1681m, it is

1

whether White affirmatively set forth specific evidence that CRST <u>willfully</u> failed to provide the summary of rights. For purposes of this section, CRST will assume that White's allegations as to the technical FCRA Disclosure and Adverse Action Notice violations in December of 2009 are true. Yet, if there is not sufficient evidence that would allow a finding of willfulness rather than negligence, CRST is entitled to judgment as a matter of law. *Lagrassa v. Jack Gaughen, LLC*, No. 09-cv-0770, 2011 WL 1257384, *5 (M.D. Pa. March 11, 2011), *adopted by* 2011 WL 1257371, *2 (March 30, 2011). Here, White not only fails to present any issue of fact as to a willful violation in 2009, but also misapplies the case law.

White erroneously relies upon *Langston v. Rizza Chevrolet, Inc.*, No. 07-CV-5965, 2008 WL 5083111 (N.D. Ill. Nov. 24, 2008), for the proposition that the "failure to develop written procedure or policies for FCRA compliance is evidence of willfulness." (ECF 58, pg. 19.)[1] The court in *Langston*, however, simply did not reach such a conclusion. In *Langston*, both the plaintiff and defendant moved for summary judgment on the issue of willfulness. Like this case, the plaintiff alleged that the defendant's failure to have written FCRA policies constituted evidence of willfulness. <u>Unlike</u> this case, the plaintiff disputed that he had given consent to the defendant to obtain a consumer report. Contrary to White's claim, it was the issue of <u>consent</u>, and not the allegation of unwritten policies, that the court found persuasive. *Id.* at *9, n.5.[2]

---

[1] White's most recent version of his Opposition was untimely filed on July 3, 2012. CRST has endeavored to modify its Reply accordingly to be responsive to the old, defective Opposition and the new Opposition to maintain the existing briefing schedule. CRST, however, maintains its objection stated in its Opposition to Plaintiff's Motion to Deem ECF 46 and 54-1 Timely Filed, filed concurrently with this Reply.

[2] It is also notable that in *Langston*, the Court denied the plaintiff's motion for class certification on the grounds that, as argued in CRST's Opposition to Class Certification, a "*willful* violation of the FCRA is dependent on facts specific to this case," such that the predominance requirement of Fed.R. Civ.P. 23(b)(3) is not satisfied. *Id.* at *12 (emphasis in original).

Thus, in denying the plaintiff's motion for summary judgment, the court rejected the proposition that a lack of written policies created an "inference" of willfulness.[3]

While White argues that CRST does not have written policies with the words "FCRA" on them, there is simply nothing in the statute that mandates that businesses have written FCRA policies. Moreover, the testimony is undisputed that CRST trains its recruiters to, among other things, obtain consent to run a criminal background report, to speak with all applicants regarding the contents of the report and the ability to contest the information, and to confirm the applicant has completed the application, which includes the Disclosure. (**Exhibit 5**, pp. 7:9-21, 10:23-11:23, 69:1-21.)[4,5] Like the plaintiff in *Langston*, White tries to avoid this fact by essentially arguing that a lack of a written policy should create a *per se* question of fact as to willfulness.

In focusing on the facts of this case as it relates to the requirements of § 1681m, White first alleges he was not told he could dispute the information in his criminal background report ("Report"). As discussed in CRST's Motion for Summary Judgment ("Motion"), White has no affirmative recollection of this fact. (ECF 40.) Despite being granted leave to take depositions after CRST filed its Motion, the evidence against White is even stronger in that White's recruiter testified that, as part of her conversation with applicants, she discusses the opportunity to dispute the information contained in reports with all applicants, and specifically after any adverse information is discovered. (**Exhibit 5**, pp. 10:23-11:23, 69:1-21.) In short, White cannot point to any record evidence that he was not informed of his right to challenge the Report.

---

[3] Similarly, the other cases upon which White relies to argue that a lack of written policies allow for an inference of recklessness are equally unpersuasive. Specifically, in *Slantis v. Capozzi & Assocs.*, No. 1:09-CV-00049, 2010 WL 4878846 (M.D. Pa. Aug. 10, 2010), the willfulness allegations centered on the fact that the defendant did not have a permissible purpose for obtaining a consumer report. By White's own admission, that is not the fact in this case, (ECF 58, pg. 8), and there is a large distinction in the willfulness inquiry as to technical violations in the summary of rights versus obtaining consumer reports for entirely impermissible purposes.

[4] Deposition of Brandi Northway, June 22, 2012, filed in its entirety as ECF 51.

[5] **Exhibits 1-4** were originally attached to CRST's Motion for Summary Judgment. (ECF 40.) For ease of reference and continuity, additional Exhibits submitted with this Reply are numbered beginning at **Exhibit 5**.

3

B. **WHITE'S OPPOSITION FAILS TO CREATE AN ISSUE OF FACT AS TO WHETHER CRST <u>WILLFULLY</u> FAILED TO PROVIDE THE SUMMARY OF RIGHTS UNDER 15 U.S.C. § 1681m**

In addition, the Disclosure itself informed White that he had the right to request a copy of the Report from DAC a/k/a HireRight (hereafter "HireRight"). (**Exhibit 1**, pg. 6.) White's claim to willfulness, therefore, is premised on the notion that the Disclosure did not state it was a "free" report for 60-days. Once again, despite being granted leave to take depositions after being armed with CRST's specific argument in favor of summary judgment, White <u>still</u> failed to obtain any affirmative evidence to support this contention by failing to make any inquiry as to whether Ms. Northway informed White of the right to obtain a "free" copy of the report or dispute its accuracy.[6,7] As CRST obtained White's consent to procure the Report, informed White of his right to obtain a copy of the Report, and White in fact had a copy of his Report and was disputing its accuracy with HireRight, the purpose of the Disclosure Notice provision was satisfied, such that CRST at the very least substantially complied with the Disclosure Notices, sufficient to preclude a finding that CRST "willfully" failed to provide the full address. *See Kiblen v. Pickle*, 33 Wash.App. 387, 395-96, 653 P.2d 1338, 1343 (1982). Regardless, the dispositive fact is that even taking White's allegations at face value, this does not automatically create an issue of fact as to whether there was a "willful" violation. To this end, White makes no effort to explain how these alleged violations created an "unjustifiably high risk of harm," which is necessary to a finding of willfulness. *Safeco*, 551 U.S. at 60.

---

[6] Indeed, the only person to whom White made any inquiry with respect to whether recruiters verbally inform applicants of the right to a "free" report was Scott Randall. Randall, however, wasn't even employed with CRST in 2009, works in a different department than the recruiters, and didn't know whether recruiters provided such information. (**Exhibit 6**, pp. 4:19-5:17, 56:22-57:10.) Deposition of Scott Randall, June 22, 2012, filed in its entirety as ECF 52.

[7] White's criticism in this respect is again underscored by the fact that he already had HireRight's contact information, and had already contacted HireRight, to dispute the information in his report. Indeed, during his deposition, it was revealed that White still has the telephone number for Amber, a HireRight employee, programmed into his phone. (ECF 41, pp. 41:8-42:22.)

4

After laying out his case that CRST is in technical violation of the Disclosure Notices, White spends four (4) pages simply restating law regarding the standard for a "willful" violation. (ECF 58, pp. 16-20.)  Yet, White only spends one paragraph, comprised of three sentences, arguing these facts could lead to a finding of willfulness. (ECF 58, pg. 20, ¶ 1.)  Specifically, White relies upon the following evidence to support his claim of a willful violation:

- A post-suit 2011 email between Brook Willey and HireRight;
- A post-suit 2011 "FCRA Overview" provided by HireRight to Willey;
- A 2010 Contract between HireRight and CRST; and
- A 2002 Contract between HireRight and CRST.

(ECF 58, pg. 20, ¶ 1, citing pages 6-7 of opposition.)

White ignores the fact that the pertinent inquiry in this case is whether there is evidence that CRST willfully violated the FCRA <u>in 2009</u> at the time of White's application to CRST.  To this end, a 2010 contract is immaterial to CRST's conduct at the time of White's application in 2009.  Similarly, a post-suit 2011 email between Willey (who wasn't even employed with CRST in 2009) and HireRight, and an FCRA information package that wasn't provided to CRST until post-suit in 2011, is immaterial as to CRST's conduct at the time of White's application in 2009.

Instead, the only potentially pertinent document upon which White relies is the purported 2002 contract between CRST and HireRight. (ECF 46-1, Exhibit E.)  Despite being granted leave to take depositions for the purposes of opposing summary judgment after CRST filed its Motion, the purported contract is unauthenticated and unsupported by affidavit, such that CRST objects to its evidentiary use by White in opposing summary judgment. Fed.Evid.R. 901; Fed.R. Civ.P. 56(e); *e.g.*, *David A. Flynn, Inc. v. General Motors Accept. Corp.*, 345 Fed.Appx. 974, 979 (6th Cir. 2009) ("This court has repeatedly emphasized that unauthenticated documents do

5

not meet the requirements of Rule 56(e)."); *Toth v. City of Toledo*, No. 3:09-CV-01662, 2010 WL 5230864, *3 (N.D. Ohio Nov. 9, 2010).[8]

Regardless, even entertaining the improper evidence, the purported contract does nothing besides restate 15 U.S.C. § 1681b(b)(2)(B). The contract imparts no additional notice than that which exists by the FCRA's mere actuality. Most importantly, the contract does not create any issue of fact as recklessness requires more than showing that a CRST "should have known" about the FCRA's requirements. *Fryer v. A.S.A.P. Fire & Safety Corp., Inc.*, 658 F.3d 85, 91-92 (1st Cir. 2011). Rather, CRST's alleged conduct must have created an objectively "unjustifiably high risk of harm" to support a finding of willfulness, an issue which White fails to address anywhere in his Opposition. *Safeco*, 551 U.S. at 60.

White has no other evidence to support his claim of a willful FCRA violation. White cites to the testimony of Scott Randall and Brooke Willey as evidence that CRST "willfully" violates the FCRA. Yet, White again confuses the distinction between the merits of his claim under Rule 56 with his arguments for class certification under Rule 23. Neither Randall nor Willey were employed with CRST in 2009, and thus have no knowledge of the facts pertinent to the merits of White's claim. (**Exhibit 6**, pp. 4:19-5:17); (ECF 53, pg. 5:5-7.) White also off-handedly discounts Willey's testimony that CRST's FCRA compliance procedures are under review in light of this lawsuit as evidence that CRST is willfully violating the FCRA. (ECF 58, pg. 7.) White, yet again, ignores the fact that what CRST was doing in 2010, 2011, and through today has no impact on whether CRST willfully violated the FCRA in 2009.[9]

---

[8] Indeed, White has failed to authenticate Exhibits B, C, and E attached to his Opposition to Summary Judgment, (ECF 58), such that they are not proper Fed.R. Civ.P. 56 evidence and should be stricken. Similarly, White failed to authenticate Exhibits E and F attached to his Motion for Class Certification and therefore cannot now rely upon them as evidentiary material in opposing summary judgment. (ECF 46-1).

[9] Also, White's contention that Willey's testimony evidences a willful attitude is meritless. To the contrary, as even White acknowledges, upon the filing of this suit, Willey immediately contacted HireRight regarding FCRA compliance. (ECF 57, Exhibit H.) Such a proactive approach certainly does not evidence willfulness or

Ultimately, "Plaintiff provides no evidence that [defendant's] actions were willful. Therefore, at best his cause of action must be based on negligent noncompliance with the FCRA," such that CRST is entitled to summary judgment. *Hariton v. Chase Auto Fin. Corp.*, No. CV 08-6767, 2010 WL 3075609 (C.D. Cal. Aug. 4, 2010); *Lagrassa*, 2011 WL 1257371 at *2; *Shannon v. Equifax Info. Srvs.*, 764 F.Supp.2d 714, 725 (E.D. Pa. 2011).

### C. WHITE CANNOT MANUFACTURE A DISPUTE AS TO ADVERSE ACTION BY MISLEADING THE COURT AS TO THE RECORD EVIDENCE

#### 1. CRST Had No Duty to Provide the Adverse Action Notices as its Decision Was Not "Based in Whole or in Part" on the Report

White mischaracterizes the record evidence in arguing that CRST's decision not to offer White a job was based upon the Report. White's misrepresentation of the evidence centers around whether CRST had knowledge of White's criminal charge for Shooting With Intent to Kill prior to obtaining the criminal background report on December 1, 2009. Indeed, White repeatedly claims that "[t]he notion that Mr. White shot at a human bring could only come from his HireRight report," (ECF 58, pg. 4, ¶ 1), and that "nowhere other than the criminal background report is there any mention of shooting with intent to kill." (ECF 58, pg. 15, ¶ 1.)

This is a blatant mischaracterization of the record evidence in this case. **On September 10, 2009**, White, through Roadmaster, submitted his application and court records to CRST. These documents disclosed that White had been charged with a felony Shooting With Intent to Kill, which was reduced to discharge of a firearm.

---

indifference as to CRST's FCRA obligations. To the contrary, what would be alarming is if CRST did not take any steps to review its FCRA procedures. To the extent that CRST has not completed its review and is working with counsel, CRST's efforts to make a diligent inquiry should be lauded. White's complaint as to the "devastating impact" of the alleged FCRA violations in the interim is underscored by the fact that White is seeking statutory, rather than actual, damages in this suit.

7

> Count # 1.    Count as Filed: SWIK, SHOOTING WITH INTENT TO KILL, in violation of 21 O.S. 652
> Date Of Offense: 10/22/1992
>
> Party Name:    Disposition Information:
>
> Defendant: WHITE, BRUCE D    Disposed: CONVICTION, 11/24/1992, Guilty Plea.
> Count as Disposed: OTHER WEAPONS OFFENSES (MF: SWIK - RED TO DISCHARGING FIREARM) (OWPN)
> Violation of 21 O.S. 1272-1289
>
> *[handwritten: Reduces to ✓ / Shot gun up into the air]*
>
> Docket
>
> | Date | Code | Count | Party | Serial # | Entry Date | User Name | | |
> |---|---|---|---|---|---|---|---|---|
> | 10-23-1992 | INFOD | - | | 19214329 | Oct 26 1992 12:00:00:000AM | uploadKRA | - | $ 0.00 |
> | INFORMATION SHOOTING WITH INTENT TO KILL | | | | | | | | |

(**Exhibit 3A**, CRST002021.)

White then claims that Roadmaster, upon learning that CRST was offering White a pre-hire letter, "confirmed" with CRST "that the inaccurate HireRight report would not later bar Mr. White from further consideration." (ECF 58, pg. 3, ¶ 1.) Such an exchange never took place. Rather, what the **September 18, 2009** email correspondence <u>actually</u> states is:

>   CRST:        "Jean: I have attached a pre hire letter for Bruce White."
>   Roadmaster:  "<u>This is for real</u>? You looked at the background reports I sent, right?"
>   CRST:        "Right… he has a Misd. for Discharge of a firearm… correct?"
>   Roadmaster:  "<u>Yes, intent to kill but reduced to discharge of a firearm</u>."

(**Exhibit 3B**.) (emphasis added.) Contrary to White's assertion, Roadmaster never made any effort to ensure White's employment despite the "inaccurate HireRight report"; rather, Roadmaster went out of its way to ensure that CRST <u>was aware of the felony charge</u>.

While White's attempt to manufacture a factual dispute is understandable given that this issue is dispositive of whether CRST had an obligation to provide the Adverse Action Notices, such assertion is shocking as White is the one who claims that CRST is "disingenuous" in representing otherwise. (ECF 58, pg. 4, ¶ 1.) White's claim that "[t]he notion that Mr. White shot at a human being could only come from HireRight report," (*id.*), is directly contradicted by every piece of evidence; indeed, it is notable that White fails to cite to a single piece of record evidence after making such claim. (*Id.*) The record evidence is clear and unambiguous that

8

CRST had knowledge of White's felony charge for Shooting with Intent to Kill prior to obtaining the Report.[10]

When CRST's safety department concluded "[w]ith the recent discharge and the weapon charges, I would say DMS," it is clear that CRST was relying upon the basis for the criminal charge, and not the inaccurately reported conviction, in declining White an employment offer. (**Exhibit 3D**.) (emphasis added.) Even if there were any lingering ambiguity as to the basis of CRST's decision, when again offered proof that White was not convicted of the felony, CRST's safety department acknowledged that it was already aware of that fact, stating "I understand he pled it down but he shot at some, DMS." (**Exhibit 3D**.)

Moreover, White makes no effort to dispute the fact that CRST runs a criminal background report on any applicant that self-discloses a criminal background. (**Exhibit 5**, pp. 40:10-21, 50:6-10.) The fact that CRST ran a Report on White does not mean that there is an automatic issue of fact that any subsequent decision to decline White's application was based in part on the Report as there are other reasons to run a report on a self-disclosed criminal to ensure that the disclosure is complete.

In addition, White's reliance on the FTC Staff Summary Report of "40 Years of the FCRA" for the argument that CRST based its decision "in part" on the Report is misplaced. (ECF 58, pg. 16.) Even assuming that the FTC's Staff Summary were authoritative, White fails to articulate what "further investigation" was prompted by the Report, such that CRST had to provide the Adverse Action Notice. To the contrary, the evidence in this case is clear that CRST

---

[10] White's passing claim that an "Accurint" report was also used to take adverse action, (ECF 58, pp. 11-12), deserves no credence as the record is clear that the Accurint report did not contain any information about the criminal conviction at issue. White is again using creative license to speculate as to issues of fact. The Accurint report could not have been used in taking any adverse action against White because (1) the report itself shows that it did not report any information about White's 1992 charge or conviction, (ECF 58, Exhibit B, pg. 3), which is further evidenced by the fact that (2) in deciding to decline White an invitation to orientation, CRST even noted that "Accurint provides no information about this offense." (**Exhibit 3D**.)

9

had full knowledge of White's criminal charge and ultimate plea conviction prior to obtaining the Report on December 1, 2009, (**Exhibits 3A**, CRST002021; **3B**), and CRST's notes explicitly state it was White's prior job termination and criminal "charges" that were the basis of his disqualification, independent of the fact that he ultimately pled the charge down.  (**Exhibit 3D**.)  White's Report did not prompt "further investigation" which led to CRST's decision.

Moreover, the FTC's Staff Summary is not authoritative over the Supreme Court's decision in *Safeco Ins. Co. v. Burr*, 551 U.S. 47 (2007).  As the Supreme Court concluded in *Safeco*, "not all 'adverse actions' require notice."  *Id.* at 63-64.  Rather, the Report must have been a "necessary condition" of the decision such that the consumer "would gain something if the challenge succeeded."  *Id.*  CRST was aware of the proper charge and conviction prior to obtaining the Report, such that White had nothing to "gain" from challenging the Report, and CRST had no duty to provide the Adverse Action Notices.  *Id.*

### 2. CRST's Interpretation of 15 U.S.C. § 1681b(b)(3)(B) is Objectively Reasonable, Entitling CRST to Summary Judgment as to the Issue of "Willfulness"

CRST cannot be held liable for "willfully" failing to provide the Adverse Action Notices unless its interpretation of the statute, even if ultimately erroneous, was objectively unreasonable.  *Safeco*, 551 U.S. at 69; *e.g.*, *Van Straaten v. Shell Oil Prods. Co. LLC*, --- F.3d --, 2012 WL 134011, *2 (7th Cir. 2012); *Long v. Hilfiger*, 671 F.3d 371, 376 (3d Cir. 2012).

White relies upon *Gillespie v. Equifax Info. Srvs., LLC*, No. 05-C-138, 2008 WL 4316950 (N.D. Ill. Sept. 15, 2008) for the proposition that CRST cannot claim its interpretation of the "in whole or in part" is reasonable as there is nothing to suggest that CRST "formally" adopted such policy pre-litigation. (ECF 58, pp. 18-19.)  While not formally overruling *Gillespie*, the Seventh Circuit abrogated this holding and rejected this reasoning in *Long*, holding:

> Long's additional arguments on this point are unpersuasive. He contends that it is possible that Hilfiger "did not actually rely on any interpretation" of §

10

>1681c(g)(1), and instead "disregarded the statute altogether and is only now seizing upon a post hoc 'objectively reasonable' interpretation in order to shield itself from liability." This argument, however, is expressly foreclosed by *Safeco*, which held that evidence of subjective bad faith or intent of the defendant is irrelevant when there is an objectively reasonable interpretation of the statute that would allow the conduct in question. Thus, Long's allegation about Hilfiger's actual knowledge or intent as to FACTA's requirements is immaterial to the objective reasonableness analysis.

*Id.* (citations omitted), *citing Safeco*, 551 U.S. at 70, n.20.

Even the 2011 FTC Staff Summary upon which White relies acknowledges that the duty to provide the Adverse Action Notices is not triggered if the adverse action is based upon information directly provided with an application. FTC, "40 Years of Experience with the Fair Credit Reporting Act," at 85 (2011).[11] Ultimately, even if CRST's interpretation of 15 U.S.C. § 1681b(b)(3)(B) were erroneous, there can be no reasonable dispute that CRST had knowledge of the proper felony charge and misdemeanor conviction prior to obtaining the Report, and the evidence demonstrates that it was the original criminal charge, coupled with White's termination from his prior job, which served to disqualify him; as such, there is an objectively reasonable basis to conclude that CRST's declination of employment was not based even "in part" on the inaccurate Report, such that CRST still cannot be said to have "willfully" violated the statute.

---

[11] Notably, the FTC's Staff Summary wasn't published until 2011; however, whether an interpretation of the FCRA is "objectively reasonable" is to be judged by the law available at the time of the alleged violation; *i.e.*, 2009. *E.g.*, *Long*, 671 F.3d at 376-77. Moreover, there is no citation to the "further investigation" language to indicate that it was promulgated earlier. Regardless, White's Report did not prompt "further investigation" which led to the decision not to offer White a job, such that there was still no duty to provide the Adverse Action Notices.

### III. CONCLUSION

Accordingly, CRST respectfully requests this Court grant its Motion for Summary Judgment.

Respectfully submitted,

 */s/ Gregory J. Lucht*
GREGORY J. LUCHT (0075045)
JEREMY GILMAN (00014144)
DAVID M. KRUEGER (0085072)
**BENESCH FRIEDLANDER
COPLAN & ARONOFF LLP**
200 Public Square, Suite 2300
Cleveland, Ohio 44114-2378
Telephone: (216) 363-4500
Facsimile:     (216) 363-4588
E-mail: glucht@beneschlaw.com
               jgilman@beneschlaw.com
               dkrueger@beneschlaw.com
*Attorneys for Defendant CRST, Inc.*

### CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 AND CIVIL TRIAL ORDER

This case has been assigned to the Standard Track.  I certify that this Reply to Plaintiff's Opposition to CRST's Motion for Summary Judgment and accompanying Memorandum in Support are in compliance with Rule 7.1 of the Local Rules for the Northern District of Ohio and this Court's Civil Trial Order.

*/s/ Gregory J. Lucht*
*One of the Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing document was filed electronically on the 5th day of July, 2012 in accordance with the Court's Electronic Filing Guidelines.  Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System.  Parties may access this filing through the Court's Filing System.

*/s/ Gregory J. Lucht*
*One of the Attorneys for Defendant*