IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BRUCE WHITE on Behalf of Himself and All Others Similarly Situated,**<br><br>         Plaintiff,<br>    v.<br><br>**CRST, INC.,**<br><br>         Defendant. | CASE NO. 1:11-CV-2615<br><br>UNITED STATES DISTRICT JUDGE<br>JAMES S. GWIN |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION**

### A. UNIFORMITY

   **1.   CRST's Understanding of Commonality is Incorrect**.

   CRST misinterprets Rule 23(a)'s commonality element, and incorrectly concludes that it imposes a requirement that the Court find a *single* common question that if answered would fully resolve the case.  Instead, as this Court recently explained: "The Court looks for 'a common issue the resolution of which will advance the litigation.' (internal citations omitted). Even one common question will suffice." *Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012)(Gwin, J.).  "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible ." *Id.* (quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). Cases involving allegations of "a single course of wrongful conduct are particularly well-suited to class certification." *Pfaff v. Whole Foods Mkt. Group, Inc.*, 2010 U.S. Dist. LEXIS 104784 at *16 (N.D. Ohio Sept. 29, 2010)(Gwin, J.).

As in *Siding and Insulation Co.,* "[t]he proposed class involves a common legal theory, violations of the [FCRA]." 279 F.R.D. 442, 445 (N.D. Ohio 2012)(Gwin, J.) And it involves common fact questions, a number of which were earlier pled. *See Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011) (Lancaster, J.).[1]

### 2. Individual Issues do not Predominate.

A Rule 23 order is not "an adjudication of the merits of the case. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)." *Siding & Insulation Co.*, 279 F.R.D. 442 (N.D. Ohio 2012)(Gwin, J.). "In evaluating a motion for class certification, however, the Court does not look at the merits of the claims and must generally accept the facts alleged in the plaintiff's complaint as true. *Kelly v. Montgomery Lynch & Associates, Inc.*, 69 Fed. R. Serv. 3d 1126 at *10 (N.D. Ohio 2007)(Gwin, J). CRST ignores this caution and would have the Court resolve both merits and class certification at this incorrect posture. But if the Court needed to do so, the record contains uncontroverted evidence that CRST never provided the mandatory FCRA disclosures. Indeed, Brandi Northway - who trains CRST's recruiters - testified that she does not inform applicants of their right to dispute inaccurate reports directly with the consumer reporting agency.[2] Moreover, while she may tell an applicant about

---

[1]
> Here, there are numerous questions of law or fact common to the class. These include, but are not limited to, whether the forms used by ClosetMaid to obtain consent to procure a consumer report from the class member violated the FCRA; whether ClosetMaid relied on derogatory information in consumer reports to deny employment to the sub-class members in violation of the FCRA; whether ClosetMaid was required by the FCRA to provide a copy of the consumer report to sub-class members at least five (5) days before refusing to hire the subclass members; and whether ClosetMaid acted willfully. Accordingly, plaintiff has established commonality.

*Reardon v. ClosetMaid Corp*., 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011) (Lancaster, J.).

[2]
> Q. All right. Let's talk about it in a criminal records context or the 20/20 context, as in Mr. White's case. Although you can't recall telling Mr. White anything, what would be your practice if you were talking to an applicant in Mr. White's shoes?

derogatory information in a report, she never tells applicants that CRST must provide a copy of the report upon the applicants' request.[3] Indeed, after more than 8 months of litigation, including significant paper and deposition discovery, there is absolutely no evidence that CRST has in place a single policy or procedure for FCRA compliance.

CSRT's claim that Mr. White would necessarily need to put on testimony from each class member as to whether CRST complied with the FCRA ignores his actual claim. Mr. White has alleged and the evidence submitted proves that CRST simply does not comply with the FCRA. Its challenge to the evidence submitted consists of nothing more than petty needling. When Mr. White states, "Here is the 2009 revision of CRST's hiring procedures," CRST cannot simply respond, "Well how do we know that there even was such a procedure in 2008?" When Mr. White proved through CRST's recruiting trainer, Brandi Northway that CRST has no actual FCRA procedures, CRST cannot properly respond, "Well prove that we did not tell her about our actual procedures." Even if forced to trial, the documents and testimony advanced by Mr. White are sufficient for a factfinder to determine that CRST uniformly violated the FCRA.

Beyond the improper nature of CRST's demand that Mr. White – literally – proves a negative, he can fairly answer each of CRST's "prove we do not have other procedures" demands by his reliance on CRST's responses to his discovery requests. Remarkably, out of no

---

A. The -- I would talk to them after they're already aware of the situation, so my conversation with an individual would be, you know, if you can get me additional documentation to dispute what is happening, I will be more than willing provide that information to additional people --

Northway Dep. p. 71

[3]

Q. Okay. So aside from the information that's conveyed to an applicant in pages 2018 and 2019, you're not aware of any additional information that's provided to the applicant when the HireRight report is used as a basis for DMSing the applicant?

A. Correct.

Northway Dep. p. 81.

3

less than 43,000 putative class members, CRST and its lawyers were unable to locate *even one* person who could testify that he received FCRA disclosures. Nor have they produce *even one* record of having done so. If CRST has not disclosed such witnesses or documents, they not only remain hypothetical, but they are nonexistent for purposes of this case. Fed. R. Civ. P. 37(c)(1); s*ee also Ames v. Van Dyne*, 100 F.3d 956 (6th Cir. 1996) ("Rule 37(c)(1) was promulgated as part of the 1993 amendments to the Federal Rules of Civil Procedure, and provides that "[a] party that[,] without substantial justification[,] fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.") . Further, the Court should correctly assume that had CRST disclosed its other employee trainers, they would have similarly testified. And had CRST produced all of its internal documents used by the yet unnamed alternate recruiters or trainers, they would have confirmed a complete lack of FCRA protocols or actions. "When it would be natural under the circumstances for a party to call a particular witness, or to take the stand as a witness in a civil case, or to produce documents or other objects in his or her possession as evidence and the party fails to do so, tradition has allowed the adversary to use this failure as the basis for invoking an adverse inference." 2 McCormick On Evid. § 264 (6th ed.).[4]

---

[4]

> [I]n some cases an adverse inference may be drawn when a party does not produce evidence peculiarly within its control. "The 'classic' formulation of the rule is that 'if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable.' " *Yuk Shau Mui v. Wing,* No. 86–3673, 1987 WL 38041, *2 (6th Cir. July 10, 1987) (citing *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1893)); *see also Kowalchuk v. United States,* 176 F.2d 873, 877 (6th Cir.1949) ("The general rule is that failure to produce available evidence which would help decide the issue raises the inference that such evidence would be unfavorable to that party if produced.").

*In re U.S. Truck Co. Holdings, Inc.*, 341 B.R. 596, 607-08 (E.D. Mich. 2006).

4

Even assuming variations between recruiters and applicants, these differences are immaterial and certainly do not predominate over the more weighty class claims. In *Reardon*, the employer argued that its FCRA procedures may vary by location and that each had its own set of forms with hiring decisions made on an individualized basis. *Reardon,* 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011) (Lancaster, J.). And yet the court found that common issues predominated, explaining, "[i]t is true that Ms. Beal testified that some hiring decisions were made by individual hiring managers. If it becomes clear that most decisions were not made in a centralized fashion, ClosetMaid should move for decertification of, at a minimum, the subclass." *Id*.

**B.     STATUTE OF LIMITATIONS**

The Limitations of Actions provision of the FCRA is unique and not at all like conventional limitations periods. Following the 2003 amendments and relevant to the facts of this case, 15 U.S.C. §1681p reads as follows:

> An action to enforce any liability created under this subchapter may be brought … no later than the earlier of:
>    (1)  2 years <u>after the date of discovery</u> by the plaintiff <u>of the violation</u> that is the basis for such liability; or
>    (2)  5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p (emphasis added). Congress set the statute of limitations to five years from the date on which the violation occurred, but imposed a punitive provision to prevent a plaintiff from discovering a violation and then delaying the prosecution of his case.

In this case for example, the violation alleged is the result of an omission, not an act. This is important because acts and their consequences can be observed, while omissions, or failures to act, are not so easily detectable. Indeed, they are impossible to detect when the person to whom the duty is owed does not know of the actor's obligation to act in the first

5

place. In such circumstances, when the alleged violation was the failure to disclose a person's right to such disclosures (amongst other information), the violation is not discovered. *Jaynes ex. rel. Jaynes v. Newport News School Board*, 13 Fed.Appx. 166 (4th Cir. 2001) (non-published).[5]

The FCRA statute of limitations' trigger is thus rarely discovered with regard to a violation as in this case. It certainly would not impose a laborious case-by-case trial on the issue. In fact, it is most likely that not one putative class member "discovered the violation." Even if some class members presented such concern, the Court need not to modify the class definition or deny certification. "Challenges based on the statute of limitations … often are rejected and will not bar predominance satisfaction because those issues go to the right of a class member to recover, in contrast to underlying common issues of the defendant's liability." 2 Newberg on Class Actions § 4:26 (4th ed.).[6]

---

[5]
> In general, knowledge that an injury is actionable is irrelevant to the determination of when the injury arose. Here, however, Newport's failure to notify the Parents of their parental rights, in violation of statutory mandates, **is** the alleged injury. The Parents complain that because Newport neglected to inform them of their right to a due process hearing, they were deprived of the opportunity to seek recourse through such a hearing. It follows that the moment they learned they had a right to a hearing was the moment they learned Newport had a duty to inform them of a such a right.

*Id.* at 171 (emphasis in original).

[6]
> The weight of authority is against Whirlpool's argument that because its affirmative defenses will vary from owner to owner, common questions do not predominate. *See In re Energy Sys. Equip. Leasing Sec. Litig., 642 F.Supp. 718, 752–53 (E.D.N.Y.1986)* ("Courts have been nearly unanimous ... in holding that possible differences in the application of a statute of limitations to individual class members, including the named plaintiffs, does not preclude certification of a class action so long as the necessary commonality and ... predominance, are otherwise present.") (citing cases). In any event, even if Whirlpool's statute of limitations defense differs across individual class members, it will be relatively easy to resolve on an individual basis.

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 96441 (N.D. Ohio Sept. 15, 2010) *(Gwin, J.) aff'd,* 678 F.3d 409 (6th Cir. 2012).

Given CRST's total failure to offer even one putative class member who could have or did discover the violation, the Court should not make such a presumption. *Siding & Insulation Co.,* 279 F.R.D. 442 (N.D. Ohio 2012) (defense failed to present evidence that a proposed affirmative defense was anything other than hypothetical). At worst the Court should still approve a class narrowed in the manner it concludes appropriate. *Godec v. Bayer Corp.*, 2011 U.S. Dist. LEXIS 131198 (D. Ohio 2011)(Gwin, J).

## C. MR. WHITE'S CLAIMS ARE TYPICAL OF THE CLAIMS OF THE CLASS

CRST argues that Mr. White's claim under § 1681b(b)(2)(B) is not typical of the claims of putative class members following amendments to the FCRA as part of the Dodd-Frank Act (Doc. 60, pp. 15-16). First, CRST is factually incorrect. For Mr. White, whose claims arose in December, 2009, and all other applicants who applied prior to July 21, 2011, the statutory references to CRST's notice and disclosure obligations remained the same. Second, CRST's confusion would at worst present an uncontroversial scrivener's error – the exact type of which has been previously addressed by the Supreme Court. *Chickasaw Nation v. United States*, 534 U.S. 84, 122 S. Ct. 528, 151 L. Ed. 2d 474 (2001) ("The canon of statutory interpretation requiring a court to give effect to each word if possible is sometimes offset by the canon that permits a court to reject words as surplusage if inadvertently inserted or if repugnant to the rest of the statute.")

More importantly, even if CRST were correct and the changes under the Dodd-Frank Act could be read to alter CRST's notice and disclosure obligations, its argument remains unpersuasive. Indeed, Mr. White does not allege that CRST provided ***the wrong disclosures***; rather he alleges CRST provided ***no disclosures*** required by the FCRA for non-in-person

7

trucking applicants. CRST's failure in this respect transcends any purported amendment to the FCRA and underscores the claims of every class member.

### D. MR. WHITE IS AN ADEQUATE CLASS REPRESENTATIVE

CRST concedes that Mr. White's counsel are adequate and it fails to meet its burden to show that Mr. White himself is an inadequate representative. CRST's accusations as to Mr. White's honesty are inappropriate and unjustified. A complete copy of Mr. White's deposition transcript reveals that at most, CRST's repetitive questioning was confusing and difficult for him to answer. To the extent his application contained inconsistencies, Mr. White truthfully responded that the additional decade-old records uncovered by CRST's lawyers appeared accurate, and he simply did not recall the old offenses at the time of his application. (White Dep. pp. 81, 83-84). He also assumed that CRST was seeking conviction information limited to a 10-year period, as the application did for employment information. (Id. at 80-81). As for the 1992 offense (albeit nearly 17 years before the application), Mr. White explained that the criminal information contained on his application was authored by Jean Wallace, his career counselor. (Id. at 81-82)

But even if CRST's accusations were correct, they are irrelevant to a Rule 23 analysis. As *Newberg on Class Actions* summarized:

> Most courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct. The concern underlying these types of challenges is that prior unethical conduct may undermine the representative's capacity to perform her duties with the diligence, integrity, credibility, and wisdom that the class deserves. Courts either do not permit challenges to adequacy on this basis or allow them only to the degree that the personal characteristics are somehow relevant to the litigation; even when permitted, such challenges are rarely upheld.

8

1 Newberg on Class Actions § 3:68 (5th ed.); *see also Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 314-15 (N.D. Ohio 2009).[7]

### E. CLASS CERTIFICATION IS SUPERIOR TO NO CONSUMER CLAIMS AT ALL

CRST suggests two challenges to the superiority of class treatment over other alternatives: (1) the "annihilating damages" (or *Ratner*) arguments, and (2) that an attorneys fee remedy in a statute obviates class actions under that statute. Neither defeats class certification.

#### 1. CRST's "Annihilating Damages" argument has been largely rejected and is irrelevant to Rule 23(b)(3) superiority.

CRST challenges Mr. White's satisfaction of the Rule 23(b)(3) superiority element based on its own speculation as to its exposure to a class wide statutory damages award. (Def. Mem. at 19). CRST's first superiority challenge is simple – because it violated the FCRA rights of a large number of consumers, any litigation that provided adequate redress as envisioned by Congress would significantly impact its finances. Its argument is not based upon any language in either the FCRA or Rule 23. Instead, it is founded upon a 1972 Truth in Lending Act (TILA) district court decision, *Ratner v. Chem. Bank N.Y. Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972). *Ratner* was not a FCRA case. Its reasoning also had no basis in the actual statutory language or in Rule 23. Instead, the New York court executed a controversial judicial philosophy that a policy "mistake" made by Congress was properly corrected by the court rather than the legislature.

Following a 2003 amendment to the FCRA, a wave of class actions were filed to

---

[7]
  Travelers argues that the fact that Lonardo was fired for arguably unethical behavior "is sufficient to call Mr. Lonardo's credibility into question to the point of disqualifying him as a class representative ...." (Doc. 134 at 18.) Additionally, Travelers contends that "what is even more problematic is that he repeatedly provided misleading testimony about the extent of his wrongdoing during his deposition in this case. [...] All things considered, Travelers' argument is simply an attempt to convert confusing testimony (for which it was primarily responsible) into evidence of dishonesty.

*Stanich v. Travelers Indem. Co.*, 259 F.R.D. 294, 314-15 (N.D. Ohio 2009)

prosecute violations of the statute's new prohibition on printing unredacted account numbers on credit card receipts. Some federal courts reacted to these cases (often brought against small 'mom and pop' businesses such as restaurants and dry cleaners) by adopting the *Ratner* analysis to find that class treatment was not superior. However, these minority view cases were thereafter rejected by every circuit court that considered the issue. *See Murray v. GMAC Mort. Corp.,* 434 F.3d 948, 953 (7th Cir. 2006) (reasoning that "[t]he reason that damages can be substantial ... does not lie in an 'abuse' of Rule 23; it lies in the legislative decision to authorize awards as high as $1,000 per person" for violations of Fair Credit Reporting Act); *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (decisional panel refused to find as concurrence suggested as to superiority). Even in *Hanlon v. Palace Entm't Holdings, LLC*, cited by CRST for the proposition that "the superiority of a class action suit for alleged violations of 15 U.S.C. § 1681 et seq., has been seriously questioned" (Doc. 60, p. 18), Judge Lancaster rejected the defendant's argument, instead explaining, "[h]owever, the U.S. Court of Appeals for the Ninth Circuit has disagreed, overruling the contrary precedent in its jurisdiction and holding that the amount and proportionality of potential damages should not be considered for purposes of certification." 2012 WL 27461 (W.D. Pa. Jan. 3, 2012).[8] Nearly every court since *Murray* has similarly ruled. When a defendant made the same argument in a 2007 case, the district court issued a scathing order rejecting it as "frivolous" and cautioning its proponent under Fed. R. Civ. P. 11. *Asbury v. People's Choice Home Loan, Inc.*, 2007 U.S. Dist. LEXIS 17654 at *2 (N.D. Ill. Mar. 12, 2007) (Hibbler, J.).

---

[8] Judge Lancaster also certified a FCRA case nearly identical to the one *sub judice*. *Reardon v. ClosetMaid Corp.*, 2011 U.S. Dist. LEXIS 45373 (W.D. Pa. Apr. 27, 2011) (Lancaster, J.).

### 2. Regardless of the possibility of recovering attorneys fees, consumers will not bring individual FCRA cases for recoveries between $100 and $1,000.

CRST's only other superiority challenge is based upon its recitation of decisions that have found - upon facts specific to those cases - that an available attorneys fee remedy mitigated as a factor against superiority. Yet even the cases cited by CRST are inapposite in this instance. For example, in *Coleman v. Gen. Motors Acceptance Corp.*, the plaintiff sought certification under Rule 23(b)(2) in an Equal Credit Opportunity Act ("ECOA") case that sought substantial **actual damages**. 296 F.3d 443, 449 (6th Cir. 2002). The Sixth Circuit did not suggest a *per se* rule against certifying a class in a fee-shifting case. Rather, this was one in a series of factors (the last one in the list actually) that mitigated against superiority. Similarly, in *Toldy v. Fifth Third Mortg. Co.*, the court considered a RESPA case in which the plaintiff had sought **treble damages**. 2011 U.S. Dist. LEXIS 113274 (N.D. Ohio Sept. 30, 2011) (Wells, J.)

But CRST's suggestion that the Court adopt a *per se* rule to bar class actions in fee-shifting consumer cases would represent a remarkable departure from decades of trial and appellate court decisions finding class treatment superior in consumer cases, most of which were fee-shifting. In fact, the Fourth Circuit has expressly rejected this patently flawed superiority challenge.[9] Moreover, this Court has previously found class treatment superior in such cases. *See e.g. Kelly,* 69 Fed. R. Serv. 3d 1126 (N.D. Ohio 2007) (Gwin, J.) ("Certification in this [FDCPA] case is important because each individual class member's claim may be small,

---

[9]

> Apparently sensing the shallowness of the district court's analysis, Weis Markets argues that the availability of attorney's fees and punitive damages under FCRA makes individual lawsuits feasible. Weis Markets' argument is without merit. First, the low amount of statutory damages available means no big punitive damages award on the horizon, thus making an individual action unattractive from a plaintiff's perspective. Second, there is no reasoned basis to conclude that the fact that an individual plaintiff can recover attorney's fees in addition to statutory damages of up to $1,000 will result in enforcement of FCRA by individual actions of a scale comparable to the potential enforcement by way of class action. (citations omitted).

*Stillmock v. Weis Markets, Inc.*, 385 F. App'x. 267, 274-75 (4th Cir. 2010).

resulting in a diminished incentive to sue to enforce his or her rights.") The Court is not alone. *See e.g. Mick v. Level Propane Gases, Inc.*, 203 F.R.D. 324, 326 (S.D. Ohio 2001) (Sargus, J.) (Certifying a FCRA class action); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 271 F.R.D. 572, 575 (N.D. Ohio 2010) (Gaughn, J.) (certifying a Fair Debt Collection Practices Act case); *Tedrow v. Cowles*, 68 Fed. R. Serv. 3d 1564 (S.D. Ohio 2007) (Frost, J.) ("As Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers."); *Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 324 (S.D. Ohio 2009) (Speigel, J.) (certifying an ECOA class action).

While it is theoretically possible to find an attorney who (a) understands the FCRA; (b) has experience litigating in federal court and (c) would take a contingency case where his best day would be payment of his hourly rate, there is still no realistic incentive for the consumer himself to undertake the litigation for $100 to $1,000. To advance a $350 filing fee? Be deposed, missing time from work and family? Wait for and endure trial? It is simply not reasonable to conclude that individual litigation would be a superior option for consumers.

Of course the size of recovery is a factor setting a strong presumption of superiority. "[T]here is a strong presumption in favor of a finding of superiority" in a statutory damages FCRA case where, as here, "the alternative to a class action is likely to be no action at all for the majority of class members." *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387, 396 (N.D. Ill. 2006). This presumption is rooted in the policy that lies "at the very core of the class action mechanism"—namely, "overcom[ing] the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Thus, as Judge Easterbrook noted in *Murray*

*v. GMAC Mortgage*, "Rule 23(b)(3) was designed for situations such as [those involving FCRA impermissible use claims], in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray,* 434 F.3d at 953. The reality is that with or without the possible reimbursement of attorneys fees, the alternative to class treatment in these cases is not hundreds of thousands, or even hundreds, of individual actions. "As courts have repeatedly recognized, the statutory damages available under the FCRA are 'too slight to support individual suits.' " *White v. E-Loan, Inc*., 2006 U.S. Dist. LEXIS 62654 at *28 (N.D. Cal. Aug. 18, 2006). As this Court explained, "[t]he most compelling rationale for finding superiority in a class action is the existence of a 'negative value suit'. A negative value suit is one in which the costs of enforcement in an individual action would exceed the expected individual recovery." *Pfaff*, 2010 U.S. Dist. LEXIS 104784 at *18 (N.D. Ohio Sept. 29, 2010) (Gwin, J.).

Unlike an ECOA case charging that a defendant discriminated against a class of consumers or a RESPA claim premised on the allegation that consumer were overcharged, a FCRA claim presents a more formidable set of obstacles for consumers and individual prosecution of their claims. CRST's preference to insist on consumers prosecuting their cases individually ignores the fact that consumers do not likely even know they have a claim. *Kelly v. Montgomery Lynch & Assocs*., 2007 U.S. Dist. LEXIS 93656 (N.D. Ohio Dec. 19, 2007) (Gwin, J) ("Further, many of the potential class members may not know that their rights are being violated or may be unable to find a competent attorney to represent them. A class action lawsuit, therefore, is the most appropriate mechanism in this situation to advance the interests of the potential parties and to conserve the time and resources of this Court.").

Class members would never consider bringing individual claims because they are unaware their rights have been violated—having little lay knowledge of the complex blanket of

13

FCRA protections. *See, e.g.*, *Bonner v. Home123 Corp.*, 2006 U.S. Dist. LEXIS 54418 at *22 (N.D. Ind. Aug. 4, 2006) (Simon, J.) ("[M]any of the persons in these classes may be unaware that the form letter sent by defendants may violate the FCRA, and a class action suit may help to safeguard their rights."); *White*, 2002 U.S. Dist. LEXIS 26610, at *58 ("Because . . . individual putative class members may not be aware of the violation of their [FCRA] rights, it appears improbable that the putative class members would possess the initiative to litigate their claims individually.").

There is a more obvious problem with CRST's superiority positions. On the one hand it argues that the large class exposure it faces would be "devastating." On the other hand, it claims that left to their own individual claims, class members would bring their own cases as effectively as if prosecuted as a class. The two positions are logically mutually exclusive. The contradictory but necessary assumption of that argument—no matter how untrue—is that CRST's exposure would be at least as great against a series of individual claims. If CRST's argument was correct, it would be at greater risk of annihilation if the case were ***not*** litigated as a class.[10] One district court rejected this argument for that reason alone.[11]

---

[10] In fact, if CRST is correct that tens of thousands of individual cases will somehow be filed, it is certain that CRST's financial loss would be even greater than in this action. Its own attorneys fees and costs as well as payment of the fees of individual plaintiff's counsel would dwarf its class exposure.

[11]
> Indeed, the sum of the actual damages suffered by a class of plaintiffs will be the same regardless of whether their claims are prosecuted as a single class action or as a myriad of individual suits. In the absence of any theory to explain why the amount of statutory damages awarded would expand faster than the size of the class, the assumption that class action treatment exacerbates concerns about excessive damages awards is either a product of mathematical error or based on the assumption that defendants who injure large number of individuals are less culpable than those who spread the effects of their unlawful conduct less widely. While the former could be chalked up to the mathematical illiteracy of the legal profession, the latter rationale is clearly incompatible with the purpose of Rule 23, which is in part intended to serve as vehicle for redressing widely dispersed harm that might otherwise go uncompensated. *Id* at 39-40.

*UMG Recordings, Inc. v. Hummer Winblad Venture Partners (In re Napster, Inc.),* 377 F. Supp. 2d 796 (N.D. Cal. 2005) (Patel, J.) (emphasis added); *see also Pirian v. In-N-Out Burgers*, 2007 U.S. Dist. LEXIS 25384 (C.D. Cal. Apr. 5, 2007) (Carter, J.).

CRST concludes its argument with the suggestion that a PACER search of the docket had revealed the filing of multiple FCRA cases.  But even without reviewing the cited cases, Mr. White is confident that each involves conventional credit reporting and most likely alleged inaccuracies in the plaintiff's file.  CRST actually proves Mr. White's better point: not a single class member has ever initiated an individual FCRA lawsuit against CRST, let alone one under the sections alleged by Mr. White. *Pfaff,* 2010 U.S. Dist. LEXIS 104784 at *19 (N.D. Ohio Sept. 29, 2010) (Gwin, J.) ("The second factor—pending litigation—cuts in favor of certification.  Only one other lawsuit concerning Whole Foods' case-discount program is pending and that case seeks a California-only class.").

### E.  THE COURT CAN AMEND THE CLASS DEFINITION

CRST concludes its opposition with a single-spaced list of five arguments regarding the classes as pled.  While Mr. White summarily denies these impediments (to the extent they are understood), they should receive only glancing treatment as CRST has omitted any explanation or support.  Further, as the Court is aware, if it determines that the proposed class definitions are defective as pled, it may modify the class definition(s) accordingly. *Id.; see also Godec,* 2011 U.S. Dist. LEXIS 131198 (N.D. Ohio 2011) (Gwin, J.).

    Respectfully submitted,

    STUMPHAUZER, O'TOOLE, McLAUGHLIN,
    McGLAMERY & LOUGHMAN CO., LPA

By:    /s/ Matthew A. Dooley
    Matthew A. Dooley (OH Bar 0081482)
    Anthony R. Pecora (OH Bar 0069660)
    5455 Detroit Road
    Sheffield Village, Ohio  44054
    Telephone:    (440) 930-4001
    Facsimile:    (440) 934-7208
    Email:    mdooley@sheffieldlaw.com
    *Counsel for Bruce White and the putative Class*

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing document was filed electronically on the 12th day of July, 2012 in accordance with the Court's Electronic Filing Guidelines. Notice of this filing will be sent to all parties by operation of the Court's Electronic Filing System. Parties may access this filing through the Court's Filing System.

/s/ Matthew A. Dooley
*Counsel for Bruce White and the putative class*