**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **BRUCE WHITE, on Behalf of Himself and All Others Similarly Situated** | |
| Plaintiff, | CASE NO. 1:11-CV-2615 |
| vs. | UNITED STATES DISTRICT JUDGE JAMES S. GWIN |
| **CRST, INC.** | |
| Defendant. | |

**JOINT MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT
AND CERTIFICATION OF THE CLASS FOR SETTLEMENT PURPOSES**

Plaintiffs, Bruce White and the putative class, and Defendant, CRST, Inc. n/k/a CRST Expedited, Inc. (collectively "Parties") jointly move the Court for an Order approving the September 21, 2012 Stipulation of Settlement (Doc. 78) as fair, reasonable and adequate, and authorizing disbursement of the Settlement Fund to the Class Members who have not opted out of said settlement.

A Memorandum in Support is attached hereto and incorporated herein.

Respectfully Submitted,

STUMPHAUZER | O'TOOLE

By: /s/ Matthew A. Dooley
    Dennis M. O'Toole (0003274)
    Anthony R. Pecora (0069660)
    Matthew A. Dooley (0081482)
    5455 Detroit Road, Sheffield Village, Ohio  44054
    Telephone    (440) 930-4001
    Fax:          (440) 934-7208
    Email:        dotoole@sheffieldlaw.com
                 apecora@sheffieldlaw.com
                 mdooley@sheffieldlaw.com

and

CONSUMER LITIGATION ASSOCIATES, P.C.
Leonard A. Bennett (Va. Bar No. 27523)
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, Virginia 23601
Tel:            (757) 930-3660
Fax:            (757) 930-3662
Email:          lenbennett@clalegal.com
*Counsel for Bruce White and the putative class*

and

BENESCH FRIEDLANDER COPLAN &
ARONOFF, LLP

By: /s/ Gregory J. Lucht
    Gregory J. Lucht (0075045)
    Jeremy Gilman (00014144)
    David M. Krueger (0085072)
    200 Public Square, Ste. 2300
    Cleveland, Ohio 44114-2378
    Telephone:     (216) 363-4500
    Fax:           (216) 363-4588
    Email:         jgilman@beneschlaw.com
                   glucht@beneschlaw.com
                   dkrueger@beneschlaw.com
    *Counsel for CRST, Inc.*

**Table of Contents**

**MEMORANDUM IN SUPPORT** ....................................................................... 4

**I.     BACKGROUND** ........................................................................................ 4

**II.    THE PROPOSED SETTLEMENT** ........................................................ 6

**III.   ARGUMENT** ............................................................................................. 7

**A.     THE SETTLEMENT APPROVAL PROCEDURE** ............................... 7

**B.     FACTORS TO BE CONSIDERED BY THE COURT** ................................. 9

**C.     THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE AS A WHOLE**
         10

   *1.     There is no risk of fraud or collusion* ............................................ 10

   *2.     The Complexity, Expense and Likely Duration of Continued Litigation* ................. 11

   *3.     The Amount of Discovery Conducted by the Parties* ...................... 12

   *4.     The Likelihood of Success on the Merits* ...................................... 14

   *5.     The Opinions of Class Counsel and Class Representatives* ........................ 15

   *6.     The Reaction of Absent Class Members* ........................................ 15

   *7.     The Public Interest* ......................................................................... 16

**D.     NOTICE TO THE CLASS WAS REASONABLE AND SATISFIES DUE PROCESS**
         16

**E.     THE CLASS SATISFIES THE REQUIREMENTS FOR CERTIFICATION
UNDER FED. R. CIV. P. 23** ........................................................................... 20

**F.     APPROVAL OF THE REQUEST FOR AN INCENTIVE PAYMENT, ATTORNEYS'
FEES, AND REIMBURSEMENT OF EXPENSES IS APPROPRIATE** ........................... 25

   *1.     The Court should award an incentive payment to the Class Representative* .............. 25

   *2.     The Court should award attorneys' fees based upon a percentage of the common fund.*
         26

**IV.    CONCLUSION** ........................................................................................ 27

**MEMORANDUM IN SUPPORT**

## I.    <u>BACKGROUND</u>

On December 1, 2011, Plaintiff Bruce White ("White") commenced this civil action against CRST, Inc. n/k/a CRST Expedited, Inc. ("CRST") for violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681, *et seq.* (Doc. 1).  The action was brought by White on behalf of himself and all other similarly situated individuals (collectively, "the Class" or "the Class Members") who applied for employment with CRST and about whom CRST obtained a consumer report for employment purposes between December 1, 2006 and July 31, 2012 ("the Class Period").  (Doc. 1)  On April 27, 2012, White filed his First Amended Class Action Complaint ("FAC"), which focused only on CRST's use of consumer reports to evaluate truck drivers who applied via non-in-person means (i.e. online, telephone, facsimile).  (Doc. 29)

Specifically, White alleged that CRST, in the course of procuring consumer reports for employment purposes, willfully violated 15 U.S.C. § 1681b(b)(2)(B)(i) by failing to provide White and Class Members with the summary of rights under 15 U.S.C. § 1681m(a), including verbal, electronic, or written notice of a right to obtain a free copy of a consumer report from the consumer reporting agency within 60 days, and (2) to dispute the accuracy or completeness of any information in the consumer report directly with the consumer reporting agency. Further, White alleged that CRST violated 15 U.S.C. §§ 1681b(b)(3)(B)(i)(I)-(IV) by failing to, within 3 business days of taking adverse action based in whole or in part on a consumer report, provide oral, written, or electronic notice to White and Class Members: (1) that adverse action has been taken based in whole or in part on a consumer report received from a consumer reporting agency; (2) of the name, address and telephone number of the consumer reporting agency that furnished the consumer report; (3) that the consumer reporting agency did not make the decision to take the

4

adverse action and is unable to provide to the consumer the specific reasons why the adverse action was taken; and (4) that the consumer may, upon providing proper identification, request a free copy of a report and may dispute with the consumer reporting agency the accuracy or completeness of any information in a report.  CRST denied White's allegations and maintains that it did not violate the FCRA or, at most, that any violation was technical in nature and non-willful.

Over the course of seven (7) months of written discovery and depositions, preceded by an even longer period of Class Counsel's pre-filing research and preparation, the Parties ferreted through information concerning the putative class and the specific claims asserted in the FAC. Prior to mediation, CRST filed its Motion for Summary Judgment (Doc. 40) and White filed his Motion for Class Certification (Doc. 45-1).  Both motions were fully briefed and pending when the Parties initially mediated the case with the Honorable James Robertson (Ret.) on August 8, 2012.  Though in-person mediation proved unsuccessful, the Parties continued to correspond regarding their respective settlement positions.

Judge Robertson continued to facilitate discussions for several weeks between the Parties in an attempt to resolve the litigation.  His efforts culminated in a mediator's proposal that the Parties agree to resolve all claims through a $3.8 million settlement fund distributed pro rata to Class Members through a claims process.  White rejected the proposal, but the Parties continued to discuss settlement directly between counsel and met in person on several occasions to negotiate.  Finally, on Saturday, September 1, 2012, still under the mediation supervision of Judge Robertson, the Parties reached an agreement providing for $450,000.00 more than the mediator's proposal.  The details of this settlement were first presented to the Court via the parties' Stipulation of Settlement filed September 21, 2012.  (Doc. 76.)

## II.  <u>THE PROPOSED SETTLEMENT</u>

The provisions of the Stipulation of Settlement, (Doc. 73), provide for cash disbursements to the class, a *cy pres* trust, an incentive award to White, a limited release and attorney fees within the acceptable range for matters of this type.[1]  The salient terms are as follows:

- CRST agreed to pay a total sum of Four Million Two Hundred Fifty Thousand Dollars ($4,250,000.00) (the "Settlement Funds"), from which Class Members shall be paid as follows:

  - **Settlement Class (0-2 Years)** –Settlement Class Members about whom CRST procured a consumer report and/or relied upon or used a consumer report in connection with the Class Members' application for employment with CRST between December 1, 2009 and July 31, 2012 shall receive a gross pro rata sum calculated after submitting a valid claim form, from which attorneys fees and costs shall be deducted.  The net sum payable to these Preliminary Settlement Class Members shall not exceed Two Hundred Dollars ($200.00).

  - **Settlement Class (3-5 Years)** –Settlement Class Members about whom CRST procured a Consumer Report and/or relied upon or used a Consumer Report in connection with the Class Members' application for employment with CRST between December 1, 2006 and November 30, 2009 shall receive a gross pro rata sum calculated after submitting a valid claim form, from which attorney fees and administration costs shall be deducted. The net sum payable to these Preliminary Settlement Class Members shall not exceed One Hundred Twenty-Five Dollars ($125.00).

- The Settlement Funds will settle all claims set forth by the Settlement Classes and include attorney fees and costs, notice and administration of the settlement, and an incentive award to the Named Plaintiff, Bruce White.

- In the event that settlement checks are returned as undeliverable, are not cashed within ninety (90) days, or in the event that the Settlement Funds are not completely distributed for any reason, any remaining funds shall be distributed to two *cy pres* funds selected by Class Counsel subject to the Court's approval up to $250,000.00.  If Settlement Funds remain after the initial disbursement to the *cy pres* beneficiaries, then seventy-five (75%) of such funds shall be disbursed back to the entity that funded the Settlement Funds, with the remaining twenty-five

---

[1] The issues related to class counsel's motion for attorneys' fees are more thoroughly discussed in White's Motion for Attorneys' Fees.

percent (25%) distributed equally to the two *cy pres* beneficiaries.[2]

- CRST shall not be responsible for paying any sum of money exceeding the amount described as the Settlement Funds.

- Upon final approval of the settlement at the Final Fairness Hearing, each Settlement Class Member who has not opted out of the proposed settlement shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished and discharged all claims and causes of action against CRST relating to or arising out of the facts of this suit.

- Upon final approval of the settlement at the Final Fairness Hearing, this civil action will be dismissed with prejudice.

On October 9, 2012, the Court granted preliminary approval of the proposed settlement outlined above. (Doc. 79 at 1-2.)

## III.  ARGUMENT

### A.    THE SETTLEMENT APPROVAL PROCEDURE

Settlement is favored, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost and rigors of prolonged litigation. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); Albert Conte & Herbert Newberg, *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("By their very nature, because of the uncertainties of outcome, difficulties of proof, length of litigation, class action suits lend themselves readily to compromise."). Recognizing that complex litigation can be "notoriously difficult and unpredictable," in the absence of "fraud or collusion" settlements in complex litigation are not to be disturbed. *Granada Invs., Inc. v. DWG Corp.* 962 F.2d 1203, 1205 (6th Cir. 1992) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)).

---

[2] Class Counsel permitted the inclusion of this failsafe for undistributed proceeds estimating – accurately it turns out – that the structure of settlement negotiated would distribute almost entirely for the class.

Under the Federal Rules of Civil Procedure, parties proposing the settlement of the claims of a certified class must obtain the Court's approval. *See* Fed. R. Civ. P. 23(e)(1)(A). Rule 23(e) provides in relevant part:

> [t]he court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement, voluntary dismissal, of compromise is fair, reasonable and adequate.

The three-step process for approval of class action settlements in federal court is described in the *Manual for Complex Litigation* §§ 21.632-635 (4th ed. 2004) ("*Manual*") which provides the following procedure:

1.  [p]reliminary approval of the proposed settlement at an informal hearing;

2.  [d]issemination of mailed and/or published notice of the settlement to all affected Class members; and

3.  [a] "formal fairness hearing", or final approval hearing, at which *class members* may be heard regarding the settlement, and at which presentations concerning the fairness, adequacy, and reasonableness of the settlement is presented.

*See also Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983).

Here, the Court has already granted preliminary approval of the proposed settlement, (Docs. 78 and 79), and the Settlement Administrator has completed an initial dissemination of the settlement notice to affected class members.  Affidavit of Risa Neiman attached hereto as Exhibit A. Approximately 81% of all Class Members received Class notice, which is an acceptable delivery rate for a Class not only of this size, but also where many of the Class Members were difficult to locate for reasons such as criminal convictions and uncertain identifiers.  Overall, 19% of Class Members did not receive the notice, which notices were returned without a valid forwarding address.  While it is not ideal, in such a large class action, it is unfortunately not at all unusual that class notice undeliverable for up to 20% of the class. *See In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct

mail portion was estimated to have reached 80% of class members).   Accordingly, the only remaining step is to hold the final fairness hearing to determine whether the settlement is fair, reasonable and adequate.  *Manual* at §§ 21.632-35.

### B.    FACTORS TO BE CONSIDERED BY THE COURT

In evaluating whether a class action settlement is fair, reasonable and adequate, the trial court should consider the following factors: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.  *Granada*, 962 F.2d at 1205; *Vukovich*, 720 F.2d at 922-23.   A settlement is "presumptively reasonable" once preliminarily approved and "[a]n individual who objects, consequently, has a heavy burden of demonstrating that the [settlement] is unreasonable."  *Bronson v. Bd. of Ed.*, 604 F.Supp. 68, 71-72 (S.D. Ohio 1984).  As the Court of Appeals for the Ninth Circuit succinctly stated:

> [t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Speaking on this subject, the Sixth Circuit has held that the question for the court is not which party is correct or has the better argument, but is instead whether the parties are resolving a legitimate legal and factual disagreement.  *International Union, United Auto, Aerospace, and Implement Workers of America v. General Motors Corp.*, 477 F.3d 615, 632 (6th Cir. 2007). In its evaluation, the district court has "wide discretion."  *Shlensky v. Dorsey*, 574 F.2d 131, 147 (3d Cir. 1978).  As the Sixth Circuit has explained:

> [N]o court of appeals, to our knowledge, has demanded that district courts invariably conduct a full evidentiary hearing with live testimony and cross-examination before approving a settlement. Our court, and several others, have instead deferred to the district court's traditionally broad discretion over the evidence it considers when reviewing a proposed class action settlement.

*UAW v. GMC*, 497 F.3d 615, 636 (6th Cir. 2007); *Officers for Justice*, 688 F.2d at 625 (fairness hearing should not be turned into a trial or rehearsal for trial on the merits).

### C.   THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE AS A WHOLE

#### 1.   *There is no risk of fraud or collusion*

Lasting over a year, this action was adversarial from inception through settlement.  Only after extensive document review, intense motion practice, contentious discovery and lengthy negotiation was settlement attainable.  Counsel for both parties vigorously litigated to secure the most desirable outcome for their respective clients, and an agreement was ultimately reached only with the assistance of Judge Robertson.  Notably, the scope of the class size and resulting gross settlement fund is reflective of these facts.

In assessing the first factor, Judge Beckwith of the United States District Court for the Southern District of Ohio stated: "[t]he participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties."  *Hainey v. Parrot*, 617 F. Supp.2d 668, 673 (S.D. Ohio 2007) (Beckwith, J.) (citing *Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2005) and *In re Toys R Us Antitrust Lit.*, 191 F.R.D. 347, 3521 (E.D.N.Y. 2000)).  Here, mediation was conducted with the assistance of Judge Robertson.  The eventual settlement was not easily obtained due to each party's strong position regarding class size (2-year versus 5-year), payments to class members, the administration process, and other disagreements, but

10

through the assistance of Judge Robertson and the diligence of both parties, an agreement was ultimately reached.

Finally, in evaluating possible fraud or collusion, a court should address whether the agreement is the result of either overt misconduct by the negotiators or improper incentives of certain class members at the expense of others. *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003). Here, only eight (8) Class Members filed objections with the Court out of 163,194 total Class Members—less than .005%. And even the few objections are founded on a clear misunderstanding of the litigation. (Docs. 84, 85, 86, 87, 88, 90, and 91.)[3] Moreover, there is no competing litigation pending in any other court. Indeed, the settlement was accomplished through informed, good faith, extensive, and arm's-length negotiations resulting in Class Members receiving an appropriate statutory damage recovery for the alleged FCRA violations.

### 2. The Complexity, Expense and Likely Duration of Continued Litigation

Generally, "settlement avoids the costs, delays, and multitude of other problems" inherent in complex class action litigation. *See In re Telectronics Pacing Sys.*, 137 F.Supp.2d 985, 1013 (S.D. Ohio 2001). Unless the settlement is "clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (quoting *Newberg*, § 11:50 at 155). Simply put, it is proper "to take the bird in hand instead of a prospective flock in the bush." *DIRECTV*, 221 F.R.D. at 526 (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 596, 624 (D. Colo. 1974)).

---

[3] Hiram Mains filed a Letter Request to Speak at Fairness Hearing, (Doc. 83), which is more appropriately considered as an objection. Ernest Jones also filed a Letter to Request at Fairness Hearing, (Doc. 82), but made no objection to the proposed settlement.

The FCRA is not merely a "complex statutory scheme," but one that has been said to contain "almost incomprehensibly complex provisions" and "esoteric strictures." *See Burrell v. DFS Servs., LLC,* 753 F. Supp.2d 438, 440 (D.N.J. Dec. 7, 2010); s*ee also Narog v. Certegy Check Servs.*, 759 F. Supp.2d 1189, 1194-95 (N.D. Cal. 2011).

Here, if the settlement were rejected, White and all others similarly situated would have to bear the burden of proving that CRST's actions were committed knowingly or recklessly. S*afeco Ins. Co. v. Burr*, 551 U.S. 47, 56-57 (2007) (willful failure to comply can be established by a knowing or reckless violation of the statute).  Proving willful violations can be very expensive and would likely take years to resolve.  If not resolved by mutual agreement, this case will surely proceed to trial, and probable appeal, and will involve further expense and judicial resources.  The trial could last several weeks and involve the introduction of voluminous documentary and deposition evidence and strenuously contested motions, all at great expense to both the Court and the Class.  Avoiding this result and avoiding prolonged, endless litigation in this matter weighs strongly in support of approval of the Settlement.  *See DIRECTV*, 221 F.R.D. at 527.

### 3. *The Amount of Discovery Conducted by the Parties*

To ensure that plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of a proposed settlement, a court must also consider the stage of the proceedings and the extent of discovery conducted. *See In re Telectronics Pacing Sys.*, 137 F.Supp.2d at 1015; *see also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000).  Here, the course and magnitude of discovery in this matter justifies approval. Specifically, the parties reviewed voluminous documents and conducted six depositions - two in Cleveland and four in Cedar Rapids, Iowa.

The sheer amount of discovery undertaken in this case also weighs heavily in favor of final approval. *DIRECTV*, 221 F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."). Initially, Plaintiffs' counsel began this effort long before the filing of this action. Each lead counsel in this case was also lead counsel in a previous action successfully prosecuted against the underlying background check agency used by CRST. *Ryals, Jr., et al v. Hireright Solutions*, *Inc.,* Case No. 3:09-CV-625 (E.D Va. filed October 5, 2009). Almost immediately after the resolution of *Ryals*, present counsel began gathering evidence and developing the case against CRST. This case was then filed on December 1, 2011.

The Court's Case Management Schedule provided that dispositive motions were due by June 7, 2012 and Plaintiff's Motion for Class Certification discovery was due by June 21, 2012, and established a final discovery cut-off of September 27, 2012. (Doc. 30.) The Parties engaged in extensive discovery and engaged in additional discovery even after CRST filed its Motion for Summary Judgment and White filed his Motion for Class Certification. The Parties exchanged thousands of documents, each one reviewed extensively as a determination of the class size and both parties' respective liabilities required such a detailed analysis. Discovery also included extensive deposition testimony – cited by both sides in the contested briefing of the case. Reviewing these documents and conducting this discovery provided invaluable insight into CRST's hiring process and the evolution of CRST's use of consumer reports for employment purposes. As a result, the discovery conducted in this case fully apprised both Parties as to all relevant legal and factual issues. Only after fully briefing CRST's Motion for Summary Judgment and White's Motion for Class Certification and conducting additional discovery did the Parties then engage in extensive and protracted settlement negotiations.

### 4.    *The Likelihood of Success on the Merits*

The uncertainty of success on the merits is a factor which a Court must weigh in favor of approving settlement.  *See Carpenters Health & Welfare Fund v. Coca-Cola Co.,* 2008 U.S. Dist. LEXIS 121093 (N.D. Ga. Oct. 20, 2008) ("…certainty of recovery clearly outweighs Lead Plaintiffs' uncertain prospects of success through continued litigation. This factor therefore favors approval of the settlement.")

Here, the settlement provides for an amount above the minimum statutory damages of $100.00 for each alleged violation of the FCRA.  As explained above, in order to achieve this same result at trial, the Class Members would have to demonstrate that CRST willfully violated the FCRA – *i.e.*, CRST took action involving "an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Safeco*, 551 U.S. at 68.  But even if the Class successfully proved "willfulness" under the FCRA, the Court, in its discretion under 15 U.S.C. § 1681n(a), could ultimately award the minimum statutory damages of $100.00, much less than what the Class Members are guaranteed through the proposed settlement.  *See* 15 U.S.C. § 1681n(a); *see also Aeschbacher v. Cal. Pizza Kitchen, Inc*., No. CV 07-215VBFJWX, 2007 WL 1500853, *3 (C.D. Cal. 2007 April 3, 2007); *Andrade v. Chase Home Fin., L.L.C.*, No. 04 C 8229, 2005 WL 3436400, *6 (N.D. Ill. Dec. 12, 2005); *Hoffer v. Landmark Chevrolet Ltd.,* 245 F.R.D. 588, 604 (S.D. Tex. 2007).  In light of the Court's discretion, duplicating the $200.00 and $125.00 gross payments to members of the Preliminary Settlement Classes is uncertain.

Moreover, members of the Five-Year Class would bear the burden of proving that they were unaware of CRST's alleged violations, such that they could not have brought their action within the two-year statute of limitations imposed by 15 U.S.C. § 1681p(1).  *See also* 15 U.S.C. § 1681p(2).  Success at trial was certainly not a forgone conclusion.

### 5.     The Opinions of Class Counsel and Class Representatives

In evaluating the adequacy of the terms of the settlement, the trial court is entitled to – and should – rely upon the judgment of experienced counsel for the parties.  *See DIRECTV*, 221 F.R.D. at 528 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal quotations and citations omitted). The basis for such reliance is that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

Here, Class Counsel (Declarations of Leonard Bennett, Dennis M. O'Toole, Matthew A. Dooley and Anthony R. Pecora are attached as Exhibits B, C, D and E respectively) and Defense Counsel are seasoned practitioners with extensive FCRA litigation experience.  With first-hand knowledge regarding settlements in similar FCRA cases, both Class Counsel and Defense Counsel believe the settlement is fair, reasonable, and adequate.  *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 852 (E.D. La. 2007).   Based on their collective experience, understanding of the strengths and weaknesses of the case and analysis of the discovery produced to date, counsel jointly recommend that the Court approve the settlement.  Finally, White has also requested that the settlement be approved as his interests coincide with the interests of the Class.

### 6.     The Reaction of Absent Class Members

In evaluating a proposed class action settlement, the Court should look to the reaction of the class members.  *Brotherton v. Cleveland*, 141 F.Supp.2d 894, 906 (S.D. Ohio 2001).  Here, approximately 163,194 Class Members were provided notice of the proposed Settlement by direct mail.  See Exhibit A.  Only eight (8) Class Members have filed objections with the Court

and only twenty (20) Class Members filed exclusions with the Settlement Administrator.[4]  Even

the eight (8) objections are based on a misunderstanding of the litigation and cite issues that

could not be resolved by this case.  The overwhelming silence from Class Members, lack of

objectors and only 20 opt-outs demonstrates that the settlement is adequate.  *Id.*; *In re Delphi*

*Corp. Sec. Litig.*, 248 F.R.D. 483, 488-89 (E.D. Mich. 2008); *In re Cardizem Antitrust Litig.*, 218

F.R.D. 508, 527 (E.D. Mich. 2003); Newberg on Class Actions, §11.48.

### 7.      *The Public Interest*

Lastly, the Court must consider the public interest in approving the settlement.  *See In re*

*Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 535 (3d Cir. 2004) (there is an overriding public

interest in settling class action litigation, and it should therefore be encouraged).  The settlement

of this matter brings closure to over a year of litigation, and the proceedings that gave rise to it

bring relief to job applicants nationwide.

### D.      NOTICE TO THE CLASS WAS REASONABLE AND SATISFIES DUE PROCESS

In class actions certified under Rule 23(b)(3), notice must meet the requirements of both

Federal Rules of Civil Procedure 23(c)(2) and 23(e).  Rule 23(e) specifies that no class action

may be dismissed or compromised without court approval, preceded by notice to class members.

Fed. R. Civ. P. 23(e).  Rule 23(c)(2) requires that notice to the class must be "the best practicable

under the circumstances, including individual notice to all members who can be identified

through reasonable effort."  Fed. R. Civ. P. 23(c).  The Rule also requires that the notice inform

potential class members that: (1) they have an opportunity to opt out; (2) the judgment will bind

---

[4] In order to be excluded from the settlement, Class Members were required to file requests for exclusion with the Settlement Administrator.  (ECF 78-1, pg. 5, ¶ 13); (ECF 78-2, pg. 5, ¶ 17.)  Certain Class Members, such as Charles E. Toombs, ineffectually requested exclusion by filing with the Court rather than the Settlement Administrator (ECF 89).

all class members who do not opt out; (3) and any member who does not opt out may appear through counsel. *Id.* The Court must consider the mode of dissemination and the content of the notice to assess whether such notice was sufficient. *See* Federal Judicial Center, *Manual for Complex Litig.* § 21.312 (4th 2004).

Here, the class list was compiled from information provided by HireRight Solutions, Inc. ("HireRight") (the consumer reporting agency from whom CRST procured class members' consumer reports), CRST, and the Settlement Administrator. Together, data from multiple sources was cross-referenced to identify unique class members with maximum precision and then to obtain the most recent address information available. The addresses were then checked against the United States Postal Services' National Change of Address ("NCOA") database.[5] Once the class list was compiled, notice was provided by direct mail, postage pre-paid. The professional class action administrator generated and mailed the notices. See Exhibit A. Notices that were returned with new forwarding addresses were re-mailed. Notices returned without a forwarding address were subjected to a second screening and mailing process. After the re-mailing, the Settlement Administrator was able to locate and mail notices to 132,187 of 163,194 class members. Aside from retaining a private investigator, the Settlement Administrator undertook all reasonable efforts to locate each class member.

There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather, "individual notice must be provided to those Class Members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-76 (1974). Rule 23(e) gives the Court "virtually complete" discretion as to the

---

[5] The NCOA database "is a secure dataset of approximately 160 million permanent change-of-address (COA) records consisting of the names and addresses of individuals, families and businesses who have filed a change-of-address with the USPS" https://ribbs.usps.gov/index.cfm?page=ncoalink last viewed on May 11, 2011.

manner of service of settlement notice.  *See, e.g.*, *Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985) (direct notice satisfies due process).

As a backstop, the Settlement Administrator also established a website, www.crstclassaction.com, containing copies of the class notice.  Internet email and website communications are routinely included in notification requirements of class action settlements. *See Browning v. Yahoo! Inc.*, 2006 WL 3826714 (N.D. Cal, 2006); *Farinella v. Paypal, Inc.*, 2009 WL 1211912 (E.D.N.Y., 2009); *Choicke v. Slippery Rock Univ.*, 2007 WL 2317323 (W.D. Pa., 2007); *Todd v. Retail Concepts, Inc.*, 2008 WL 3981593 (M.D. Tenn. 2008).  CRST also served notice of the settlement upon the relevant state and federal authorities as required by the Class Action Fairness Act of 2005, 28 U.S.C. §1715.  Class Counsel has not received any correspondence or objections from state attorneys general or any other noticed authorities.

More than 81% of the Class Members received notice, which means that 19% of the Class Members did not receive notice due to outdated or invalid addresses.  Thus, almost a fifth of the class did not have the opportunity to object, exclude or be heard.  Pursuant to Section 4.3 of the Stipulation of Settlement (Doc. 79), Class Counsel strongly considered directing the Settlement Administrator to initiate a second notice process. The Administrator achieved not only an acceptable delivery rate of 81%, but also an expected delivery rate given the fact that many of the Class Members appear to be off-grid for a number of reasons, including incarceration, criminal convictions, and incomplete or wrong identifiers that would prevent the Settlement Administrator from obtaining the information necessary to locate the missing Class Members.

Class Counsel, with the knowledge and consent of Defendant's counsel, went so far as to instruct the Settlement Administrator to again begin comparing each Class Member's last known address with data maintained by Accurint.  Class Counsel intended to pay the cost of the second notice from any attorney fee awarded to Class Counsel from the Common Fund. Once Class Counsel started work with the Settlement Administrator to implement the plan, it became apparent that the marginal utility of sending a second notice was outweighed by the fact that it would likely not yield a significantly better delivery rate and that it would delay the final fairness hearing and final approval of the Settlement.  See Exhibit B at ¶¶ 16-20.

Courts have held, "[w]hat amounts to reasonable efforts under the circumstances is for the Court to determine after examining the available information and possible identification methods . . . 'In every case, reasonableness is a function of [the] anticipated results, costs, and amount involved.'" *Fisher v. Va. Elec. & Power Co.,* 217 F.R.D. 201, 227 (E.D. Va. 2003) (citations omitted). The Supreme Court has concluded that direct notice satisfies due process, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812-13 (1985), and other courts have approved mailed-notice programs that reached a similar percentage of class members as the class notice reached in this case. *See In re Serzone*, 231 F.R.D. 221, 236 (S.D. W. Va. 2005) (approving notice program where direct mail portion was estimated to have reached 80% of class members); *Martin v. United Auto Credit Corp.*, 3:05cv00143 (E.D. Va. Aug. 29, 2006) (Final Order approving class notice with approximately 85% delivery): *Ryals v. HireRight Sols*., Civ. No. 3:09-CV-625 (E.D Va.)(approving class notice with approximately 84% delivery).

The delivery rate is consistent with other class actions and more than satisfies the due process requirements of Rule 23.  The statistically small number of objections received following confirmed notice to approximately 132,000 Class Members is compelling, and even assuming

that a proportional number of Class Members might object from an additional mailing, the result is still an excellent one for the class.

### E.    THE CLASS SATISFIES THE REQUIREMENTS FOR CERTIFICATION UNDER FED. R. CIV. P. 23

In the course of approving the settlement, the Court must also certify the litigation as a class action under Fed. R. Civ. P. 23. White and the putative class satisfy the four requirements of Fed. R. Civ. P. 23(a): numerosity, commonality, typicality and adequacy of representation. Further, the putative class satisfies Fed. R. Civ. P. 23(b)(1) and Fed. R. Civ. P. 23(b)(3) by presenting common questions that are a significant aspect of the case and can be resolved for all members in a single adjudication, avoiding the risk of inconsistent results. *Hanlon v. Chrysler Corp*, 150 F.3d 1011, 1019 (9th Cir. 1998).

#### 1.  Numerosity

First, the Class satisfies the numerosity requirement of Rule 23(a)(1) that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This does not mean that joinder must be impossible nor does it contemplate any required minimum number of class members to satisfy the requirement. *See Rabidoux v. Celani,* 987 F.2d 931, 935 (2d Cir. 1993); *see also Miller v. Univ. of Cincinnati*, 241 F.R.D. 285, 288 (S.D. Ohio 2006); *Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984); *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F. Supp. 1404, 1407-08 (D. Md. 1984). Generally, where the class numbers over 25 members, joinder is considered impracticable. *See Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967). Under this standard the Class here, comprised of approximately 163,194 members, is sufficiently large such that joinder of all class members would be impracticable.

### 2. *Common Questions of Law or Fact*

Similarly, the Class satisfies the commonality requirement of Rule 23(a)(2), as the Class Members share predominant questions of law that predominate over all individual issues. This rule requires that there be at least one question of law or fact common to the members of the class. *In re American Med. Sys.,* 75 F.3d 1069, 1080 (6th Cir. 1996). The commonality standard is liberal and commonality cannot be trumped by factual variances in the individual grievances amongst class members. *Jeffreys v. Commc'ns Workers*, 212 F.R.D. 320, 322 (E.D. Va. 2003).

Here, the Class consists of individuals about whom CRST procured a Consumer Report and/or relied upon or used a Consumer Report in the course of evaluating the individual for employment between December 1, 2006 and July 31, 2012. Whether or not each of the Class Members' rights under 15 U.S.C. § 1681b(b)(2)(B) and/or 15 U.S.C. § 1681b(3)(B) were violated are the predominant questions of law and fact which have propelled this litigation forward to the presented resolution.

### 3. *Typicality*

The Class also satisfies the typicality requirement of Rule 23(a)(3) which requires the claims of a named plaintiff to be typical of the claims of the class. A named plaintiff's claim is typical if the named plaintiff possesses the same interest and suffers the same injury as the class members. *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). Put differently, typicality exists when the claim of the named plaintiff "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and […] his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).

In this case, there is only a single claim for decision by the Court for White as well as the Class Members.  The scope of White's claim is coextensive with those of the Class Members; his claims are *identical* to those of the Class Members and his interests are squarely aligned with them.  Specifically, White's claims arise out of the exact same practice which guided CRST's actions in the course of obtaining and using consumer reports to make employment decisions during the Class Period.  As such, White's claims are typical of the common claims held by the class.

### 4.  Adequate Representation

The final component of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Adequacy requires showing that "(1) the named plaintiff[s] [have] interests common with, and not antagonistic to, the Class' interests; and (2) the plaintiff[s'] attorney is qualified, experienced and generally able to conduct the litigation."  *In re Southeast Hotel Props. Ltd. P'ship Investor Litig.*, 151 F.R.D. 597, 607 (W.D.N.C. 1993); *Wiseman v. First Citizens Bank & Trust Co.*, 212 F.R.D. 482, 489 (W.D.N.C. 2003).

Here, White understands and accepts his responsibilities as class representative and has no interest that is adverse to the Class Members.  Further, White and the Class Members seek statutory damages as the result of the same alleged FCRA violations of CRST.  Given the identical nature of the claims between White and the other Class Members, there is no potential for conflicting interests in this action, and there are no disagreements between White's interests and those of the Class Members.  At the same time, White's counsel are experienced in class action litigation, specifically in the FCRA context,  and are competent to represent the interests

of the class without conflict. See Exhibits B, C, D and E. Accordingly, the class to be represented meets the adequacy prong of Rule 23.

### 5. *Rule 23(b) Factors*

#### a. <u>Predominance</u>

The Rule 23(b)(3) requirement that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members is also met by the proposed Class. Essentially, the predominance inquiry tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This requirement is satisfied where the question common to the Class is "at the heart of the litigation" or there is an essential common factual link between all class members and the defendants for which the law provides a remedy. *See Powers v. Hamilton County Public Defender Comm.*, 501 F.3d 592, 619 (6th Cir. 2007); *see also Talbott v. GC Servs., Ltd. P'shp.*, 191 F.R.D. 99, 105 (W.D. Va. 2000). Notably, it has been held that "[p]redominance is a test readily met in certain cases alleging consumer . . . fraud." *Amchem Prods.*, 521 U.S. at 625.

Here, the "common nucleus of operative fact" is that all Class Members, by definition, were allegedly not provided notices under the FCRA before and after CRST obtained a consumer report and/or took adverse action based in whole or in part upon the consumer report. With statutory damages arising under identical circumstances for each Class Member, there are few individual issues which arise. Rather, the issues that predominate relate to whether: (1) CRST's conduct was uniform as to the Class Members, and (2) the relative culpability of CRST's conduct. Indeed, the certification of this class requires no individualized inquiry into damages.

These class-wide issues predominate, and the Class meets the predominance standard set forth in Rule 23(b)(3).

### b.  **Superiority**

Finally, the Class also satisfies the Rule 23(b)(3) requirement that a class action be superior to other methods for the fair and efficient adjudication of the controversy.  The factors relevant to a superiority inquiry are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability.  *Pfaff v. Whole Foods Mkt. Group, Inc.,* 2010 U.S. Dist. LEXIS 104784 (N.D. Ohio Sept. 29, 2010)*; see also Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *Newsome v. Up-To-Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).  While efficiency is the primary focus of a superiority analysis, it is proper for a court to consider the ability and initiative of the class members to enforce their rights, as well as the anticipated amount of recovery for each class member.  *See Talbott*, 191 F.R.D. at 106; *Triad v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974); *Advisory Committee Note* to 1996 Amendment to Rule 23.

Here, White seeks only statutory damages of no less than $100.00 and no more than $1,000.00 per violation.  Thus, the amount in controversy for any individual claimant in this class is small and pales in comparison to the costs of discovery and litigation.  As a result, none of the individual Class Members possess any controlling interest in the litigation.  Likewise, the absence of any competing classes or other individual claims suggests that without class certification, it is unlikely that the Class Members would obtain any form of relief.  *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997).  Simply put, unless the Court certifies this class, it is highly unlikely that the Class Members will receive relief of any kind.

### 6.   *Additional Considerations*

Because the Court is confronted with a request for settlement-only certification, it "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods.*, 521 U.S. at 620.  And the names and current addresses of Class Members were obtainable from HireRight.   Moreover, individual issues that may and/or could exist do not destroy class cohesion for purposes of settlement because the settlement provides for distribution of benefits to all class members based upon objective criteria—the common issues alleged by White, "when considered in light of the proposed settlement, predominate over any individual issues between class members."  *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 347 (N.D. Ohio 2001).   Accordingly, settlement is proper so long as the Court finds that the settlement overall is fair, reasonable, and adequate to Class Members.  Fed. R. Civ. P. 23(e); *see, e.g.*, *Olden v. Gardner*, 294 Fed.Appx. 210, 217 (6th Cir. 2008).

### F.   APPROVAL OF THE REQUEST FOR AN INCENTIVE PAYMENT, ATTORNEYS'   FEES, AND REIMBURSEMENT OF EXPENSES IS APPROPRIATE

#### 1.   *The Court should award an incentive payment to the Class Representative*

It is within the Court's discretion to grant or deny an award of an incentive award.  *See Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003*)*.  The Parties have agreed that White should receive an incentive award of $15,000.00 for his service as a named class representative.  This was negotiated only after agreement on class settlement terms and was reached through Judge Robertson.   White participated in the drafting of the pleadings, traveled from Oklahoma to Cleveland, Ohio on two separate occasions for Court hearings and depositions and actively assisted his counsel in prosecuting the case. Without White's participation in this matter, the case may not have been filed and relief would not have been provided to Class Members.

### 2. The Court should award attorneys' fees based upon a percentage of the common fund.

While Plaintiff intends to separately file a Motion for Attorney Fees and Reimbursement of Costs, it is important to note that the Supreme Court has consistently calculated attorneys' fees in common funds cases on a percentage-of-the-fund basis.  *See  Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478-79 (1980); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 165-67 (1939); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (noting that fee awards in common funds cases have historically been computed based on a percentage of the fund).  The Supreme Court has never adopted the lodestar method over the percentage of recovery method in a common fund case, even when district courts began using the lodestar approach in the 1970s. *See Shaw v. Toshiba Am. Info. Sys., Inc.* 91 F. Supp. 2d 942, 943 (E.D. Tex. 2000); *see also Manual for Complex Litig.* § 24.121 at 210.

Since *Blum,* virtually every Circuit Court of Appeals has joined the Supreme Court in affirmatively endorsing the percentage of recovery method as an appropriate method for determining an amount of attorneys' fees in common fund cases.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-50 (9th Cir. 2002); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 49 (2d Cir. 2000); *In re GMC,* 55 F.3d 768, 821-22 (3d Cir. 1995)' *In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.,* 56 F.3d 295 (1st Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 515-16 (6th Cir. 1993); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).

The "common fund doctrine" has been recognized by the Sixth Circuit. *See Rawlings*, 9 F.3d at 516 ("In this circuit, we require only that awards of attorney's fees by federal courts in

common fund cases be reasonable under the circumstances."); *see also Vassalle v. Midland Funding,* 2011 U.S. Dist. LEXIS 90278, 52-53 (N.D. Ohio Aug. 12, 2011). In considering the reasonableness of a fee award, the Court looks to six factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188, 1196 (6th Cir. 1974).

In applying the *Ramey* test, Class Counsel's efforts support the reasonableness of a fee award calculated as 30% of the common fund. In addition to the above, Class Counsel conducted extensive discovery, traveled to Iowa to take the depositions of CRST representatives, participated in complex motion practice and successfully negotiated a settlement award for the class size to include a five-year period. This was a significant benefit rendered to the class. *See, e.g., Hall v. Vitran Express, Inc.*, Case No. 1:09-CV-00800 (N.D. Oh. filed April 7, 2009.)*; Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) (33% of settlement amount); *Clevenger v. Dillards, Inc.*, 2007 WL 764291 (S.D. Ohio Mar. 9, 2007) (29% of settlement fund); *New England Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627, 634) (W.D. Ky. 2006) (25% of the total settlement fund).

## IV. <u>CONCLUSION</u>

The Parties reached a settlement that provides genuine relief to Class Members by providing each class member who submits a valid claim form with a monetary benefit that is above the statutory minimum damage. The terms of the settlement and circumstances

surrounding negotiations as well as the finite end to a costly and protracted litigation satisfies the Sixth Circuit's strictures for final approval.

      **WHEREFORE**, White and the putative class, and CRST jointly move the Court for an order entering the final approval of this settlement and award the incentive payment, attorney fees and costs as requested herein.

Respectfully Submitted,

STUMPHAUZER | O'TOOLE

By: /s/ Matthew A. Dooley
    Dennis M. O'Toole (0003274)
    Anthony R. Pecora (0069660)
    Matthew A. Dooley (0081482)
    5455 Detroit Road
    Sheffield Village, Ohio  44054
    Telephone    (440) 930-4001
    Fax:         (440) 934-7208
    Email:      dotoole@sheffieldlaw.com
               apecora@sheffieldlaw.com
               mdooley@sheffieldlaw.com
    and

    CONSUMER LITIGATION ASSOCIATES, P.C.
    Leonard A. Bennett (Va. Bar No. 27523)
    12515 Warwick Boulevard
    Newport News, Virginia 23606
    Tel:         (757) 930-3660
    Fax:         (757) 930-3662
    Email:      lenbennett@clalegal.com
    *Counsel for Bruce White and the putative class*

    and

    BENESCH FRIEDLANDER COPLAN &
    ARONOFF, LLP

By: /s/ Gregory J. Lucht
    Gregory J. Lucht (0075045)
    Jeremy Gilman (00014144)
    David M. Krueger (0085072)
    200 Public Square, Ste. 2300

Cleveland, Ohio 44114-2378
Telephone:      (216) 363-4500
Fax:            (216) 363-4588
Email:          jgilman@beneschlaw.com
                glucht@beneschlaw.com
                dkrueger@beneschlaw.com
*Counsel for CRST, Inc.*

## CERTIFICATE OF SERVICE

This will certify that a copy of the foregoing Joint Motion for Order Granting Final Approval of Class Action Settlement and Certification of the Class for Settlement Purposes  was filed electronically this 15th day of February, 2013.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via regular mail.


/s/ Matthew A. Dooley
Matthew A. Dooley