IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **BRUCE WHITE, on Behalf of Himself and All Others Similarly Situated**<br><br>Plaintiff,<br><br>vs.<br><br>**CRST, INC.**<br><br>Defendant. | CASE NO. 1:11-CV-2615<br><br>UNITED STATES DISTRICT JUDGE JAMES S. GWIN |

**PLAINTIFF'S MOTION FOR AN AWARD OF
ATTORNEY FEES, REIMBURSEMENT OF EXPENSES
AND INCENTIVE AWARD TO THE NAMED PLAINTIFF**

Plaintiff, Bruce White and the putative class, respectfully move this Court for an Order awarding attorney fees and costs in the amount of $1,275,000.00 for the representation of White and the putative class in the above-styled litigation against Defendant, CRST, Inc. A Memorandum in Support is attached hereto and incorporated herein.

Respectfully Submitted,

STUMPHAUZER | O'TOOLE

By: /s/ Matthew A. Dooley
    Dennis M. O'Toole (0003274)
    Anthony R. Pecora (0069660)
    Matthew A. Dooley (0081482)
    5455 Detroit Road
    Sheffield Village, Ohio  44054
    Telephone   (440) 930-4001
    Fax:          (440) 934-7208
    Email:      dotoole@sheffieldlaw.com
                 apecora@sheffieldlaw.com
                 mdooley@sheffieldlaw.com
    and

CONSUMER LITIGATION ASSOCIATES, P.C.
Leonard A. Bennett (Va. Bar No. 27523)
12515 Warwick Boulevard
Newport News, Virginia 23606
Tel: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com
*Counsel for Bruce White and the putative class*

## MEMORANDUM IN SUPPORT

Counsel request an award of attorney fees and expenses as a percentage of the common fund, to be capped at a gross percentage of thirty percent (30%) of the actual common fund paid by CRST to and for the benefit of the class. Because the total Settlement Fund is $4.25 million ($4,250,000.00), the full fee and cost recovery, including a service award, requested is $1.275 million ($1,275,000.00). This sum includes all costs and expenses associated with the case and incurred by two law firms and five attorneys that litigated this case on behalf of the class. It is a fee that is calculated against real dollars and not a purely theoretical claims fund. Every dollar leaves CRST and is paid to and for the benefit of the class.[1]

Under the law established in this District, Circuit, and by the Supreme Court, the award requested in this case is appropriate. Still, in order to assure the court that the fee requested is not a dramatic departure from counsel's effort, in support of the fee request, Class Counsel has supplied their recorded lodestar in order to crosscheck the fee award.

### A. A FEE AWARD OF 30% INCLUSIVE OF EXPENSES COMPARES FAIRLY TO AWARDS IN PREVIOUS CLASS ACTIONS.

The focus of a fee determination in a class settlement is the actual benefit obtained for the class, and in this case the benefit is significant where class members receive a substantial cash payment. Manual For Complex Litigation (Fourth) § 21.71 ("Compensating counsel for the actual benefits conferred on the class members is the basis for awarding attorney fees. The 'fundamental focus is the result actually achieved for class members.' That approach is premised on finding a tangible benefit actually obtained by the class members. In comparing the fees sought by the lawyers to the benefits conferred on the class, the court's task is easiest when

---

[1] Counsel also does not attempt to monetize or calculate attorney fees on a percentage of the benefit associated with the various FCRA process changes undertaken by CRST during the litigation.

class members are all provided cash benefits that are distributed."). The "common fund doctrine" has been recognized by the Sixth Circuit. *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) ("In this circuit, we require only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances."); *see also Vassalle v. Midland Funding,* 2011 U.S. Dist. LEXIS 90278, 52-53 (N.D. Ohio Aug. 12, 2011). The Supreme Court has consistently calculated attorney fees in common funds cases on a percentage-of-the-fund basis. *See Sprague v. Ticonic Nat'l* Bank, 307 U.S. 161, 165-67 (1939); *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478-79 (1980); *Blum v. Stenson,* 465 U.S. 886, 900 n. 16 (1984); *see also Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 242 (Oct. 8, 1985) (noting that fee awards in common fund cases have historically been computed based on a percentage of the fund). The Supreme Court has never adopted the lodestar method over the percentage of recovery method in a common fund case, even when lower federal courts began using the lodestar approach in the 1970s. *See Shaw v. Toshiba Am. Info. Sys., Inc.* 91 F. Supp. 2d 942, 943 (E.D. Tex. 2000); *see also Manual for Complex Litigation* § 24.121 at 210.

Since *Blum,* virtually every Circuit Court of Appeals joined the Supreme Court in affirmatively endorsing the percentage of recovery method as an appropriate method for determining an award of attorney fees in common fund cases. *See In re GMC*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047-50 (9th Cir. 2002); *In re Thirteen Appeals Arising out of the San Juan DuPont Plaza Hotel Fire Litig.,* 56 F.3d 295 (1st Cir. 1995); *Gottlieb v. Barry*, 43 F.3d 474, 487 (10th Cir. 1994); *Rawlings v. Prudential-Bache Props., Inc.,* 9 F.3d 513, 515-16 (6th Cir. 1993); *Camden I. Condo. Ass'n, Inc. v. Dunkle*, 946

F.2d 768, 774 (11th Cir. 1991); *Swedish Hosp. Corp v. Shalala*, 1 F.3d 1261, 1268-70 (D.C. Cir. 1993); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 49 (2d Cir. 2000).

It is well-established that the percentage of the fund requested in this case is well within the range of contingency percentages that have been awarded in class cases between 25% and 40%. There is no reason to downwardly depart in this case. "Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." 4 Newberg on Class Actions § 14:6 (4th ed.). *See also In re Rite Aid Corp. Sec. Litig*., 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001) (review of 289 class action settlements demonstrates "average attorney's fees percentage [of] 31.71%" with a median value that "turns out to be one-third"). In an analysis of such historic patterns and guidelines, Reagan W. Silber and Frank E. Goodrich explained:

> Although empirical evidence does not necessarily establish what the court should do in a specific case, it provides benchmark standards for the court to determine the reasonableness of a fee award. Because plaintiffs' attorneys must be able to predict the fee determinations that courts are likely to make years later if they are to undertake lengthy and risky litigation on a contingent fee basis, such benchmarks have particular importance in this area of the law.
>
> National Economic Research Associates, an economics consulting firm, recently conducted an analysis of fee awards in class actions. Using data from 656 shareholder class actions that were settled, dismissed, or resolved by a jury verdict from January 1991 to December 1994, the Dunbar Study found that attorneys' fees in these class actions averaged approximately 32% of the recovery, regardless of the case size. When plaintiffs' judicially approved expenses were added to the fee award, the fees and expenses averaged 34.74% of the created fund.
>
> Furthermore, the Federal Judicial Center Study discussed earlier found that in the four districts studied, most fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement. The survey discovered little variation among the four district courts. Although the four districts were

5

> geographically and demographically diverse, each court seemed to award fees within the same narrow range of percentages. Although there are only a few cases involving recoveries as high as $40 million, the case law does not reflect a trend toward lower percentages in larger cases.

Reagan W. Silber and Frank E. Goodrich, *Common Funds and Common Problems: Fee Objections and Class Counsel's Response*, 17 Rev. Litig. 525, 545-46 (1998).

This range is consistent with the fee percentages awarded in other class cases in this District and Circuit. *See e.g., Hall, et al. v. Vitran Express, Inc.*, N.D. Ohio Case No. 1:09-CV-00800 (2012)(FCRA class settlement mediated before the Honorable Judge Dan Aaron Polster, fees awarded as 30% of the common fund); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) (33% of settlement amount); *Clevenger v. Dillards, Inc.*, 2007 WL 764291 (S.D. Ohio Mar. 9, 2007) (29% of settlement fund); *New England Employees Pension Fund v. Fruit of the Loom*, 234 F.R.D. 627, 634) (W.D. Ky. 2006) (25% of the total settlement fund).

In considering the reasonableness of a fee award, the Court considers six factors: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). In applying the *Ramey* test, Class Counsel's efforts support the reasonableness of a fee award calculated as 30% of the common fund. As discussed below, Class Counsel successfully negotiated settlement awards for each class and litigated to maximize the class size to include a five-year period. This was a significant benefit rendered to the class.

6

**B.      A CROSS-CHECK OF ATTORNEY TIME SUMMARIES PROVIDE ADDITIONAL SUPPORT FOR CLASS COUNSEL'S REQUEST.**

Although a fee cross-check is unnecessary where there is no indication that the fee award is out of proportion with the class settlement, counsel is providing further support for the benefit of the Court. Unlike a traditional Rule 54 lodestar application, a "cross-check" is obtained by a rough estimate of time spent and expenses incurred. Manual For Complex Litigation (Fourth) § 21.724 (In common fund cases, judges sometimes request "an estimate of the number of hours spent on the litigation and a statement of the hourly rates for all attorneys and paralegals who worked on the litigation. Such information can serve as a 'cross-check' on the determination of the percentage of the common fund that should be awarded to counsel.")  Courts will utilize the lodestar method to cross check the reasonableness of a percentage of common fund fee.  *Van Horn v. Nationwide Prop. and Casualty Ins. Co.*, 2010 U.S. Dist. LEXIS at *8 (N.D. Ohio April 30, 2010) (citing *Rawlings*, at 516).  A lodestar analysis "multiplies the proven number of hours reasonably expended on the litigation by a reasonable hourly rate."  *Van Horn*, at *8 (citing *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999)).  Once the "lodestar figure" has been calculated, a court may adjust it up or down based on a number of factors "designed to account for the specific circumstances of the case."  *Id*.  In contrast, under the other method – the percentage fund method – a court simply "determines a percentage of the settlement to award to class counsel, based on several case-specific factors."  *Id*. at *8 (citing *Rawlings*, at 516). Some courts, including the Northern District of Ohio, employ both methods, using each method to cross-check the other.  *See Van Horn*, at *8-9 (internal citations omitted).

From its inception, this case has been fervently and professionally litigated by both Class Counsel and counsel for CRST.  To date, Class Counsel have expended 1,445.19 hours litigating this case.  Those hours are divided amongst a total of eight (8) individuals from two law firms

7

including five (5) experienced attorneys with vast FCRA and FCRA class action specific experience, Leonard A. Bennett, Dennis M. O'Toole, Susan M. Rotkis, Matthew A. Dooley and Anthony R. Pecora (See Declarations of Leonard A. Bennett and Matthew A. Dooley, attached hereto as Exhibits A and B respectively). The case in fact began long before the initial filing of the Complaint. Between the two firms, counsel investigated, researched and interviewed clients for the case well before filing the complaint. Thereafter, the case proceeded rapidly, as is necessary and effective within the Court's docket. Written discovery was served and answered. Voluminous documents were exchanged, reviewed and disputed. Discovery compromises were negotiated. Depositions were scheduled and completed – only two in Ohio - the rest in Cedar Rapids, Iowa. While cases may occasionally settle at an early stage of litigation, this one did not. As the Court is aware, this settlement and fee motion come only after completion of both summary judgment and class certification briefing and practice.

Although contested litigation required the devotion of substantial time and resources, the mediation, settlement and now class settlement approval process is even more open-ended. The mediation stage of the case itself took place over two (2) months and was finished only when every term of every filed settlement document (motion for preliminary approval, motion for final approval, settlement agreement, class notices, etc.) had been negotiated. Even today, Class Counsel receives direct communications from class members – the class numbered approximately 163,000 consumers – as well as the class administrator whether for minor questions or substantial administrative issues.

Attorney fees and expenses are included here. While an inexact record of work performed[2], the time details evidence the following:

---

[2] It is always difficult to provide a firm estimate of attorney fees and costs in a large class settlement as substantial additional work will continue long after the case is off of the Court's docket.

| FIRM | FEE ESTIMATES | EXPENSES |
|---|---|---|
| Stumphauzer, O'Toole, McLaughlin, and Loughman, Co., LPA | $398,971.00 | $15,394.63 |
| Consumer Litigation Associates, P.C. | $110,037.50 | |
| **TOTAL** | $509,008.50 | $15,394.63 |

A court applying the lodestar method simply multiplies the proven number of hours reasonably expended by a reasonable hourly rate. *See Van Horn*, at *9 (citing *Reed*, at 471). Here, Class Counsel have supported their motion with Declarations to establish 1,445.19 hours reasonably expended in the litigation. Given the number of attorneys, the complexity of the case and amount of work necessary to file, litigate, and settle the case, Class Counsel believes this amount of hours to be reasonable. Assuming the Court accepts this amount as reasonable, the only thing left to be analyzed is the reasonableness of Class Counsel's hourly rates.

In other cases, this Court has stated that "[t]o arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record" and in doing so, may consider "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar requests for fees". *See Van Horn*, at *11-12. Though the Court has previously stated that hourly rates are by no means universal in the Northern District of Ohio, the Court has approved hourly rates ranging from $90 to $825, while showing a preference in class action cases for rates between $250 and $600 depending on the qualifications, skills, and experience of the attorneys making the request. *See Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 815 (N.D. Ohio 2010); *see also Van Horn*, 2010 U.S. Dist. LEXIS 42357 at *12-14.

Here, given the complexity of the case and the results achieved, the proposed hourly rates are certainly reasonable.  (See Exhibits A and B).  Additionally, the proposed hourly rates are well within the range of hourly rates this Court has declared reasonable in other similar cases.  Assuming the Court finds both the proposed hourly rate and the proven amount of reasonable hours expended to be reasonable, the lodestar in this case would be $509,008.50.  If the Court approves an award of all litigation expenses in the amount of $15,394.63, the requested common fund fee is reduced to $1,259,605.37.  The multiplier for the full hours as detailed would be 2.47.

Such multipliers are within the range of fairness and are common.  In an opinion written on December 6, 2010, Judge Dan Aaron Polster summarized a survey of 1,120 class action cases, which found that the average multiplier used in federal and state courts across the country was 3.89.  *See In Re: Oral Sodium*, at *26 (FN 28).  Courts nationwide have – many times over – approved multipliers larger than the one Class Counsel requests here, sometimes in cases in which much less work was completed.  *See, e.g., In re Charter Commc'n, Inc*., Sec. Litig., No. MDL 1506, 4:02- CV-1186 CAS, 2005 WL 4045741, at *1, *18 (E.D. Mo. June 30, 2005) (approving lodestar multiplier of 5.61); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig*., 364 F. Supp. 2d 980, 989 (D. Minn. 2005) (multiplying lodestar by 4.7 in a case involving review of documents as well as discovery responses that was resolved without taking any depositions and after only two days of mediation); *In re Rite Aid Corp*. Sec. Litig., 362 F. Supp. 2d 587, 589 (E.D. Pa. 2005) (awarding lodestar multiplier of 6.96 despite the fact that the parties engaged in mostly informal discovery and took no depositions); *Maley v. Del Global Techs. Corp.,* 186 F.Supp.2d 358, 362 (S.D.N.Y. 2002) (describing multiplier of 4.65 as "modest" in a case in which plaintiffs conducted no depositions, only interviews, and confirmatory discovery consisted of tens of thousands of pages of documents); *In re NASDAQ Market-Makers Antitrust*

*Litig.*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier and noting that multipliers between 3 and 4.5 have become common); *Di Giacomo v. Plains All Am. Pipeline*, Nos. Civ.A.H-99- 4137, Civ.A.H-99-4212, 2001 WL 34633373, at *3, *11 (S.D. Tex. Dec. 19, 2001) (endorsing multiplier of 5.3 despite no depositions being taken and most of the discovery was informal or documentary); see also *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1051 (9th Cir. 2002) (affirming multiplier of 3.65 to compensate class counsel for risk of taking the case); *Roberts v. Texaco, Inc*., 979 F. Supp. 185, 197-98 (S.D.N.Y. 1997) (approving multiplier of 5.5 in what the court described as risky and hard fought litigation); *In re Interpublic Sec. Litig.,* 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (awarding multiplier of 3.96); *In re WorldCom, Inc. Sec. Litig*., 388 F. Supp.2d 319, 353 (S.D.N.Y. 2005) (awarding multiplier of 4).

To the extent the Court determines Class Counsel's fee based upon the lodestar and multiplier method (the later reserved largely for class action fee awards), the Court must also consider the value of the benefit rendered to the class, whether the services were undertaken on a contingent fee basis, and the complexity of the litigation in the course of applying the requested multiplier. *See Van Horn*, at *15-16. The settlement provides for a common fund of $4,250,000.00 less attorneys fees, costs, and settlement administration costs. (Doc. 79). From this common fund, class members will receive either $125.00 or $200.00. (Doc. 79). This recovery represents a statutory damage award both above the minimum amount of statutory damages for an FCRA violation **and** greater than the amount proposed by Judge Robertson's Mediator's Proposal.

Equally important to the Class Members is the fact that in the wake of this case, CRST has remedied the deficient FCRA policies to ensure that Mr. White's experience is not repeated with either the Class Members or other applicants. This was a primary concern of Mr. White and

his counsel as the case progressed, and he has expressed the importance of changing this all-too-common phenomenon, which he believes to be a recurring issue throughout the trucking industry.

Two aspects of this case make it unique in terms of its complexity relative to other cases. First, it is a nationwide class action. By its very nature, it is more complex than the average case, requiring significant discovery and intense motion practice. But perhaps more important, this was brought under the FCRA. Courts across the country have recognized that the "FCRA is not merely a 'complex statutory scheme' […] but one that has been said to contain 'almost incomprehensibly complex provisions' and 'esoteric strictures'". *Narog v. Certegy Check Servs.,*, 759 F.Supp.2d 1189 (N.D. Cal. 2011) (citing *Burrell v. DFS Services, LLC,* 753 F. Supp.2d 438 (D. N.J. 2010) (other internal citations omitted)); *see also Skwira v. U.S.*, 344 F.3d 64 (1st Cir. Mass. 2003) (citing the Supreme Court's decision in *TRW Inc. v. Andrews*, 534 U.S. 19 (2001) referring to the FCRA as a "complex statutory scheme"); *see McSherry v. Capital One FSB*, 236 F.R.D. 516, 521 (W.D. Wash. 2006) (stating that courts generally agree that the FCRA is an elaborate, comprehensive legislative scheme).

By comparison, in *Van Horn,* this Court stated that despite being a class action, at its core the case was a simple breach of contract claim, and not one that presented complex legal issues or a "novel legal theory or unproven grounds for recovery." *Van Horn*, at *19-20. In so finding, the Court reduced the plaintiff's counsels' requested multiplier from 1.78 to 1.2. *Van Horn*, at *19-20. Such is not the case here.

Moreover, Class Counsel agreed to represent Mr. White and the Class Members on a contingent basis. Class Counsel did so recognizing the substantial risk that a great deal of time and money could be wasted if unsuccessful. All of the risk and expense was borne by Class

Counsel. Even when the mediator's proposal left Class Counsel with a way out, they continued to negotiate for the Class Members. In fact, Class Counsel continued these negotiations risking a guaranteed recovery in the face of a difficult jury trial and an uncertain recovery until they had accomplished a better payment for the class.

By any measure the settlement was an excellent result for the class. And while it is true that Class Counsel's requested fee is large, it is their success in litigating the case, negotiating the settlement and executing the outcome that creates a fee of such size. By either percentage of common fund or a cross-check of the work and expenses incurred, the requested fee is fair.

### C. THE REQUESTED SERVICE PAYMENT FOR CLASS REPRESENTATIVE BRUCE WHITE IS FAIR AND REASONABLE.

Generally, it is within the Court's discretion to grant or deny an award of an incentive award. *See Hadix v. Johnson,* 322 F.3d 895, 897 (6th Cir. 2003*)*; *see also In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 535 (E.D. Mich. 2003) (Incentive awards for a named plaintiff are "common in class actions"). The Parties have agreed that Mr. White should receive an incentive award of $15,000.00 deducted from the common fund for his service as the named class representative. Not concerned with personal gain, Mr. White participated in the drafting of the pleadings and actively assisted Class Counsel in prosecuting the case. During discovery, he traveled to Cleveland from Tulsa, Oklahoma to attend the case management conference and to appear for his deposition. He also spent considerable time and effort assisting Class Counsel effectively prosecute this case and ultimately negotiate a settlement on behalf of over 160,000 individuals not unlike himself. Indeed, without his participation, the case would never have been filed and relief likely would not have been provided to he and his fellow Class Members. *Physicians of Winter Haven LLC v. Steris Corp.*, 2012 U.S. Dist. LEXIS 15581, 15-16 (N.D. Ohio Feb. 6, 2012) (Baughman, J.) ("Courts within this district, however, have recognized that in

common fund cases, and where the settlement agreement provides for incentive awards, 'class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled by virtue of class membership alone.'").

**WHEREFORE**, Plaintiff, Bruce White, respectfully requests that the Court enter an order awarding Class Counsel $1,275,000.00 in attorney fees and costs, and an incentive award to Mr. White of $15,000.00.

        Respectfully Submitted,

        STUMPHAUZER | O'TOOLE

    By: /s/ Matthew A. Dooley
        Dennis M. O'Toole (0003274)
        Anthony R. Pecora (0069660)
        Matthew A. Dooley (0081482)
        5455 Detroit Road
        Sheffield Village, Ohio 44054
        Telephone   (440) 930-4001
        Fax:   (440) 934-7208
        Email:   dotoole@sheffieldlaw.com
            apecora@sheffieldlaw.com
            mdooley@sheffieldlaw.com
    and

    CONSUMER LITIGATION ASSOCIATES, P.C.
    Leonard A. Bennett (Va. Bar No. 27523)
    12515 Warwick Boulevard
    Newport News, Virginia 23606
    Tel:   (757) 930-3660
    Fax:   (757) 930-3662
    Email:   lenbennett@clalegal.com
    *Counsel for Bruce White and the putative class*

## CERTIFICATE OF SERVICE

    This will certify that a copy of the foregoing Plaintiff's Motion for an Award of Attorney Fees, Reimbursement of Expenses and Incentive Award to the Named Plaintiff was filed electronically this 21st day of February, 2013. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or via regular mail.

                                        /s/ Matthew A. Dooley  
                                        Matthew A. Dooley